IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, and VICTOR HUGO CATALAN MOLINA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>LIBRE BY NEXUS, INC.,<br><br>    Defendant. | No. 17-cv-00755-CW<br><br>ORDER ON MOTION TO COMPEL, MOTION TO DISMISS, AND MOTION FOR SANCTIONS<br><br>(Dkt Nos. 34, 35, 65) |

Before the Court are three motions. Defendant Libre by Nexus, Inc. brings a motion to compel arbitration, a motion to dismiss, and a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, and Victor Hugo Catalan Molina oppose these motions. On August 14, 2018, the parties appeared for a hearing. Having considered the papers and the arguments of counsel, the Court DENIES the motion to compel arbitration, GRANTS the motion to dismiss in part, and DENIES the motion for sanctions.

BACKGROUND

Libre by Nexus, Inc. (LBN) is a Virginia corporation with its principal place of business in Verona, Virginia. Docket No. 28 (Second Amended Complaint (SAC)) ¶ 14. LBN provides services to families seeking the release of their family members from immigrant detention. See id. ¶ 3, Declaration of David Dow See III (Dow See Decl.) ¶ 1.

Vasquez and Ortiz are from Honduras. SAC ¶¶ 71, 88. Molinas is from Mexico. Id. ¶ 106. All three crossed the Mexico-United States border to seek asylum because they were targets for violence in their home countries. Id. ¶¶ 71, 88, 106. They were each detained by United States Immigration and Customs Enforcement (ICE). Id. ¶¶ 72, 89, 107. While they were detained, their spouses contacted LBN to assist with their release. Id. ¶¶ 75, 92, 110.

Vasquez crossed the border on December 1, 2015 and was detained in Texas. Id. ¶ 72. The bond for his release was set at $10,000. Id. ¶ 73. LBN helped arrange for his release on February 10, 2016. Id. ¶ 75; Dow See Decl. ¶¶ 2-3. On that same day, an LBN representative picked him up, dined with him, gave him a cell phone to call his family, and drove him approximately five hours to LBN's offices in San Antonio, Texas. Dow See Decl. ¶ 4. At the LBN office, later that same day, the LBN representative presented Vasquez with disclosures and agreements written in English and discussed some portions of the agreements with him in Spanish. Id. ¶ 5; SAC ¶ 78. He then signed the agreements. Id.

Ortiz crossed the border on April 2, 2015 and was detained in Texas. Id. ¶ 89. Her bond was set at $20,000. Id. ¶ 90. On June 2, 2015, her spouse contacted LBN, which helped arrange for issuance of a bond for $20,000 by Statewide Bonding Company the following day. Id. ¶ 92; Dow See Decl. ¶ 8. Upon her release, an LBN representative also picked her up, dined with her, gave her a cell phone, and drove her approximately five hours to LBN's offices in San Antonio. Dow See Decl. ¶ 9. On June 4, 2015, the

LBN representative presented Ortiz with disclosures and agreements written in English and discussed some portions of the agreements with her in Spanish. Id. at ¶ 10. She then signed the agreements. Id.

On December 18, 2015, Molina crossed the border and was detained in San Diego, California. SAC ¶ 107. His bond was set at $10,000. Id. ¶ 108. On February 9, 2016, Molina's spouse contacted LBN about his release. Id. ¶ 110; Dow See Decl. ¶ 12. LBN arranged for a bond to be posted two days later, on February 11, 2016. Id. ¶ 13. When Molina was released on February 11, 2016, an LBN representative picked him up, gave him a cell phone, and drove him about thirty minutes to LBN's office in San Diego. Id. ¶ 14. Later that same day, the LBN representative presented Molina with disclosures and agreements written in English and discussed portions of the agreements with him in Spanish. Id. ¶¶ 15-16. He then signed the agreements. Id.

All three Plaintiffs signed a GPS Monitoring and Disclosure Statement (GPS Monitoring Agreement), whereby they agreed to wear a GPS electronic tracking device on their ankles. Dow See Decl., Ex. B (Vasquez agreements), Ex. D (Ortiz agreements), and Ex. F (Molina agreements). The GPS Monitoring Agreement contained the following arbitration provision:

> IN THIS ARBITRATION CLAUSE, "YOU" REFERS TO THE RESPONDENT. EITHER NEXUS PROGRAMS OR RESPONDENT MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN THEM DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST NEXUS PROGRAMS, INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER

>RIGHTS THAT BUYER WOULD HAVE MAY NOT BE AVAILABLE IN ARBITRATION.
>
>Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Paragraph/Clause, and the arbitrability of the claim or dispute), between Respondent and Nexus Programs or its/their employees, agents, successors or assigns, which arise out of or relate to this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at the election of Respondent or Nexus, be resolved by neutral, binding, arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. Respondent expressly waives any right Respondent may have to arbitrate a class action. Respondent may choose any one of the following arbitration organizations and its applicable rules: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org) or JAMS, 1920 Main St., Ste. 300, Irvine, CA 92614 (www.jamsadr.com). Respondent may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

The sole Spanish document provided to Plaintiffs contains only five key points. SAC ¶ 29, Ex. A. It does not list the $420 monthly rental payment or the arbitration clause. See id.

On February 15, 2017, Plaintiffs filed a putative class action on behalf of themselves and a class of similarly situated individuals. Docket No. 1 (Complaint). On June 9, 2017, Plaintiffs amended their complaint. SAC. Plaintiffs allege that LBN preys on Spanish-speaking migrant detainees' vulnerability and limited understanding of English "to foist crushing financial terms and GPS shackles" on them "in exchange for its 'service' of arranging for a third party to post [their] bonds." SAC ¶¶ 1-3. LBN advertises in English and gives detainees lengthy English-language disclosures and agreements to sign, despite knowing that almost all detainees speak Spanish and cannot speak English. Id. ¶ 4. LBN provides detainees with a one-page "key facts" sheet in

4

1  Spanish, which provides only five points and omits crucial
2  information about fees and dispute resolution. Id. ¶¶ 26-27, 29.
3  LBN also intimidates detainees by creating the false impression
4  that it is associated with ICE and can order the detention of
5  immigrants. Id. ¶¶ 30-31, 40. LBN charges exorbitant fees
6  relative to other bond companies and misrepresents the amount and
7  nature of the fees. Id. ¶¶ 5, 23-24, 32-34. For example, LBN
8  requires clients to wear a GPS ankle bracelet, which it leases to
9  clients for an $880 activation fee plus $420 a month until the
10 bond is cancelled. Id. ¶¶ 23-24, 32-33. These fees do not go
11 towards repayment of the clients' debt and are disproportionate
12 to the actual cost of the bracelet. Id. ¶¶ 58-68. The fees
13 compensate LBN excessively for arranging immigration bonds with
14 third parties. Id. LBN also makes numerous other
15 misrepresentations and charges other hidden fees. See, e.g., id.
16 ¶¶ 41, 45-61. Plaintiffs brought claims under the (1) "unfair,"
17 "fraudulent," and "unlawful" prongs of the California Unfair
18 Competition Law (UCL), Business & Professions Code §§ 17200 and
19 17500, et seq.; (2) the California Consumers' Legal Remedies Act
20 (CLRA), California Civil Code §§ 1750, et seq.; (3) the
21 California Translation Act (CTA), California Civil Code § 1632;
22 (4) the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.
23 §§ 1692-1692(p); and (5) the Rosenthal Fair Debt Collection
24 Practices Act (RFDCPA), California Civil Code §§ 1788-1788.32.

DISCUSSION

I.  Motion to compel arbitration

    A.  Legal standard

    The Federal Arbitration Act (FAA) provides that any

agreement within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA represents a "liberal federal policy favoring arbitration agreement, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). A party to a valid arbitration agreement may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In considering a motion to compel arbitration, a court should consider "whether a valid arbitration agreement exists" and "whether the agreement encompasses the dispute at issue." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). If so, the court should enforce the agreement. Id.

B. Discussion

LBN moves to compel arbitration of Plaintiffs' claims pursuant to the arbitration clause in the GPS Monitoring Agreement. LBN contends that the arbitration clause is a valid arbitration agreement that encompasses the dispute at issue. Plaintiffs disagree. They first assert that the arbitration clause is invalid because there was no mutual assent and that it is unenforceable under McGill v. Citibank, N.A., 2 Cal. 5th 945 (2017), and the CTA. Plaintiffs then assert that the arbitration clause does not cover their asserted claims.

1. Fraud in the execution

Plaintiffs contend that the motion to compel arbitration cannot be granted because there was fraud in the execution of the

1  arbitration clause.  If there is fraud in the execution of the
2  agreement, such that "the promisor is deceived as to the nature
3  of his act," then "mutual assent is lacking" and the contract is
4  void.  Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394,
5  415 (1996).  This theory can apply to void arbitration clauses.
6  Id. at 415-16.  To succeed on this theory, Plaintiffs must show:
7  (1) misrepresentation and (2) reasonable reliance on that
8  misrepresentation.  Id. at 419-20; Ramos v. Westlake Servs. LLC,
9  242 Cal. App. 4th 674, 688-89 (2015).
10      Two cases are instructive.  In Rosenthal, the court
11 considered whether an investment agreement's arbitration clause
12 could be enforced against several individuals who spoke and
13 understood very little English.  Rosenthal, 14 Cal. 4th at 427.
14 The investment company representative purported to translate the
15 English-language agreement orally, but did not mention the
16 agreement's arbitration clause.  Id.  The court held that the
17 individuals reasonably relied on the representative's statements
18 given their previous relationship with the company, their limited
19 ability to understand English, and the representations that the
20 oral translation was accurate.  Id. at 427-28.  The court
21 concluded that this was enough to show fraudulent inducement.
22 Id.
23      Similarly, in Ramos, the court considered whether a car
24 purchase contract's arbitration clause could be enforced against
25 a plaintiff whose primary language was Spanish, not English.
26 Ramos, 242 Cal. App. 4th at 686-87.  The plaintiff and the car
27 company's representative negotiated the contract in Spanish.  Id.
28 The representative then provided the plaintiff "with what

7

purported to be a translation of the English language contract he was about to sign." Id. at 687. The representative did not advise the plaintiff of the contract's arbitration clause. Id. The court held that the plaintiff reasonably relied on the Spanish translation, which did not disclose the arbitration clause, in signing the agreement. Id. The court concluded that there was fraud in the execution of the arbitration clause, which could not be enforced to compel arbitration. Id. at 688.

Here, Plaintiffs have sufficiently shown that LBN fraudulently concealed the arbitration clause. The parties agree that LBN did not provide Plaintiffs with a written Spanish version of the arbitration clause. The "key facts" sheet does not mention the arbitration clause. See SAC, Ex. A. Instead, LBN contends that it translated the entire contract (including the arbitration clause) into Spanish orally. But Plaintiffs each testified that LBN representatives did not translate or explain the arbitration clause. Persinger Decl., Ex. A (Vasquez Depo.) at 67, 69-70, 114-115; Ex. B (Molina Depo.) at 49-50, 53-55, 58, 107; Ex. C (Ortiz Depo.) at 75, 79-83, 131. And LBN's own evidence shows that it is unlikely that its representatives translated the arbitration clause into Spanish for Plaintiffs. David Dow See, the LBN representative who oversees the verbal translation process, testified that he could not recall whether representatives translated the arbitration clause for potential clients. Persinger Decl., Ex. D (Dow See Depo.) at 49:1-51:6. He could not even say what Spanish word would be used to translate the term "arbitration." Id. at 51:6-14. He also testified that there was no policy or manual that tells

representatives how to translate "arbitration" from Spanish to English. Id. at 51:15-21. Accordingly, it is likely that LBN representatives did not disclose the arbitration clause to Plaintiffs during the sign-up process.

Plaintiffs only speak and read Spanish and are not proficient in English. SAC ¶¶ 78, 87, 95, 105, 112, 123. LBN representatives purported to translate the English-language contract into Spanish orally. Thus, Plaintiffs reasonably relied on LBN's oral representations and "key facts" sheet as accurate translations of the English-language agreements. Ramos, 242 Cal. App. 4th at 690 (finding fraudulent inducement where defendant presented plaintiff with what purported to be a Spanish translation of an English translation, which in fact "completely omitted the arbitration agreement" defendant later sought to enforce). Moreover, Plaintiffs were asylum-seekers who depended on LBN for lodging and transportation. They also testified that, based on LBN's representations, and the fact that LBN had already collected thousands of dollars from their relatives, they thought the agreement was already a done deal. Vasquez Depo. at 51; Molina Depo. at 35-36; Ortiz Depo. at 34, 49, 79, 121, 136. Under the circumstances, Plaintiffs reasonably relied on LBN's representations. Rosenthal, 14 Cal. 4th at 428 (holding that if true, plaintiffs' allegations of a prior relationship with defendant, their limited ability to understand English, and defendant's representations that its oral representations accurately reflected the terms of the agreement were sufficient to show fraudulent inducement). LBN therefore fraudulently induced Plaintiffs to sign the arbitration clause, which is void

9

1 and cannot be enforced.

2         2.   McGill

3 Plaintiffs also argue that the arbitration clause is unenforceable under McGill. In McGill, the California Supreme Court held that an arbitration provision "is invalid and unenforceable under state law insofar as it purports to waive" a plaintiff's right to seek "public injunctive relief." McGill, 2 Cal. 5th at 961. This arises from California Civil Code section 3513, a generally applicable contractual defense which provides that "a law established for a public reason cannot be contravened by a private agreement." Id. (quotations omitted). There, McGill brought claims under the UCL, false advertising law, and the CLRA targeting Citibank's advertising and marketing practices. Id. at 956-57. Citibank sought to enforce its arbitration agreement against McGill's claims, which required arbitration of all claims on an individual basis and prohibited class actions. Id. at 952. The court ruled that the arbitration agreement would prevent McGill from requesting public injunctive relief in any forum, which would "seriously compromise the public purposes the statutes were intended to serve." Id. at 961. Accordingly, the arbitration agreement could not be enforced. Id.

Here, the GPS Monitoring Agreement's arbitration clause requires individual arbitration of all claims, so long as a party requests it, as LBN seeks to do. The arbitration clause further states that any right to arbitrate a class action is "expressly waived." As in McGill, the arbitration agreement purports to waive Plaintiffs' right to request public injunctive relief.

10

1   Enforcing such an agreement would "seriously compromise the
2   public purposes" of the UCL, CLRA, and other statutes.
3   Accordingly, the arbitration clause cannot be enforced.
4       LBN responds that McGill does not apply because this case
5   affects only a few thousand detainees crossing the border and
6   thus does not seek public injunctive relief.  But the number of
7   detainees is not determinative.  Instead, the Court looks at the
8   nature of the relief sought.  The McGill court distinguished
9   between "private injunctive relief," or "relief that primarily
10  resolves a private dispute between the parties and rectifies
11  individual wrongs," from "public injunctive relief," or "relief
12  that by and large benefits the general public."  Id. at 955
13  (internal citations and punctuation omitted).  Here, Plaintiffs
14  seek an "order enjoining LBN from continuing to violate the UCL,
15  CLRA, California Translation Act, FDCPA, and RFDCPA."  FAC at 28.
16  Plaintiffs' complaint targets false and misleading statements in
17  LBN's marketing materials, disclosures, and contracts, among
18  other things.  See, e.g., SAC ¶¶ 32 (describing
19  misrepresentations in disclosures and contracts); 35 (describing
20  misleading information on LBN's website).  The proposed
21  injunction will not benefit the named Plaintiffs directly,
22  "because the plaintiff has already been injured, allegedly, by
23  such practices and is aware of them."  Id.  Rather, the proposed
24  injunction is intended to benefit members of the public who are
25  exposed to LBN's false and deceptive business practices.  See id.
26  at 957 (holding that claims seeking to enjoin Citibank's "unfair,
27  deceptive, and misleading advertising, and material omissions"
28  requested public injunctive relief).  Plaintiffs' proposed

11

injunction therefore falls squarely into the definition of public injunctive relief provided by McGill.

### 3. Other arguments

Plaintiffs also contend that the arbitration clause cannot be enforced because of the CTA and that the scope of the arbitration clause does not cover their claims. Because the Court has already determined that the arbitration clause is void and unenforceable, it need not reach these arguments.

In sum, because the GPS Monitoring Agreement's arbitration clause is void because of fraudulent inducement and unenforceable under McGill, LBN's motion to compel arbitration must be denied.

## II. Motion to dismiss

### A. Legal standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and

12

construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

B.  Discussion

LBN moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on two counts: the FDCPA claim (Count VI) and the CTA claim (Count V).

1.  FDCPA claim

LBN asserts that Plaintiffs' FDCPA claim cannot be sustained because it is not a debt collector under the FDCPA. The FDCPA applies to debt collectors, which it defines as either: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). LBN asserts that debt collection is not its principal purpose and it does not collect debts that are owed or due another.

The SAC makes clear that LBN's business model is to collect fees to indemnify a third-party bond company. See, e.g., SAC ¶ 171 ("LBN's Lease Agreements serve as a loan or extension of credit for the percentage of bail paid by a third-party bail

13

bondsmen."); ¶ 65 ("the fees represent a hidden indemnification fee that LBN charges for indemnifying immigration bail bonds it procures for third parties."). Construing Plaintiffs' allegations in the light most favorable to them, a portion of the collected fees could go to third-party bond companies. This would mean that LBN collects debts on behalf of another, the third-party bond companies. Thus, Plaintiffs have stated a claim under the FDCPA. If LBN contends that it does not pass along any fees to third parties, then that is a matter for summary judgment after discovery.

In their reply brief, LBN appears to argue that Plaintiffs fail to allege other elements of the FDCPA. Because these arguments were not raised in the opening brief, they are waived.

### 2. CTA claim

LBN contends that Plaintiffs' CTA claim must be dismissed. The CTA provides:

> (b)Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, that includes a translation of every term and condition in that contract or agreement:
>
> . . .
>
> (2) A loan or extension of credit secured other than by real property, or unsecured, for use primarily for personal, family, or household purposes.

If a business fails to comply with this section, the consumer "may rescind the contract or agreement." Cal. Civ. Code § 1632(k). LBN asserts that the CTA claim is time-barred. The

14

statute of limitations for this claim is one year.  See Cal. Code Civ. Proc. § 340(a) ("An action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation.").  See also Legrama v. Fremont Inv. & Loan, No. C 10-02945 MEJ, 2010 WL 5071600, at *11 (N.D. Cal. Dec. 7, 2010); Delino v. Platinum Comm. Bank, 628 F. Supp. 2d 1226, 1234 (S.D. Cal. 2009).

LBN contends that Plaintiffs' suit is barred because Plaintiffs all signed their contracts with LBN more than one year before the filing date of this case, February 15, 2017.  Vasquez signed on February 10, 2016.  Molina signed on February 11, 2016.  Ortiz signed on June 4, 2015.

Plaintiffs respond that the statute of limitations should equitably be tolled, especially with respect to Vasquez and Molina, who missed the deadline for filing suit by less than five days.  Plaintiffs argue that equitable tolling would "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court."  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001).  Plaintiffs misunderstand the doctrine of equitable tolling, however.  This doctrine applies where these elements are present: the defendant received timely notice of the plaintiff's claims, the defendant will not be prejudiced, and the plaintiff engaged in good faith and reasonable conduct, for example, by seeking another remedy.  Id. at 1137.  The doctrine does not apply simply because Plaintiffs missed the deadline by only a few days.

1   Plaintiffs do, however, make another argument for equitable
2   tolling.  They contend that the doctrine should apply because LBN
3   fraudulently concealed Plaintiffs' claims.  A "statute of
4   limitations may be tolled if the defendant fraudulently concealed
5   the existence of a cause of action in such a way that the
6   plaintiff, acting as a reasonable person, did not know of its
7   existence."  <u>In re Animation Workers Antitrust Litig.</u>, 123 F.
8   Supp. 3d 1175, 1194 (N.D. Cal. 2015).  The plaintiff bears the
9   burden of pleading and proving fraudulent concealment, which
10  requires that: "(1) the defendant took affirmative acts to
11  mislead the plaintiff; (2) the plaintiff did not have actual or
12  constructive knowledge of the facts giving rise to its claim; and
13  (3) the plaintiff acted diligently in trying to uncover the facts
14  giving rise to its claim."  <u>Id.</u> (internal quotation marks
15  omitted).  Here, Plaintiffs allege that LBN deceived Plaintiffs
16  by giving them English-language disclosures and agreements while
17  providing a limited and misleading oral translation and "key
18  facts" sheet in Spanish.  Plaintiffs allege that this disguised
19  the facts giving rise to their claims.  The complaint does not,
20  however, allege the other two prongs of fraudulent concealment,
21  <u>i.e.</u>, that Plaintiffs did not have actual or constructive
22  knowledge of the facts giving rise to their claims and that they
23  acted diligently to try to uncover the facts giving rise to their
24  claims.  For example, Plaintiffs do not allege that they did not
25  know that the "key facts" sheet was not an accurate translation
26  of the agreements and that they sought an English translation
27  once they knew or had reason to know of this fact.  Accordingly,
28  the Court dismisses the CTA with leave to amend to add such

16

allegations, if Plaintiffs can truthfully do so.

III. Motion for sanctions

    A.    Legal standard

Rule 11 provides that by "presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," it is not being presented for "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that the legal and factual allegations are not frivolous and have a proper basis. The movant must comply with the safe harbor requirements of Rule 11(c)(2), which requires that the motion must first be served and must not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

    B.    Discussion

LBN brings a motion for Rule 11 sanctions against Plaintiffs and their attorneys. LBN's Rule 11 motion relies on the same grounds as its motion to dismiss: that Plaintiffs' FDCPA and CTA claims are barred as a matter of law and lack evidentiary support. LBN served its Rule 11 motion on Plaintiffs on June 26, 2017, satisfying the safe harbor requirement of Rule 11(c)(2).

As discussed above, Plaintiffs' FDCPA claim survives Rule 12(b)(6) scrutiny. Thus, the FDCPA claim is not frivolous and has proper legal and factual basis. LBN's motion is denied with respect to this claim.

As for the CTA claim, Plaintiffs could still allege facts showing fraudulent concealment, which would support equitable tolling of the statute of limitations. In any event, the Court finds that Plaintiffs' allegations in support of this claim are not so frivolous as to merit an award of Rule 11 sanctions. LBN's motion is therefore denied with respect to this claim as well.

## CONCLUSION

LBN's motion to compel arbitration (Docket No. 35) is DENIED. LBN's motion to dismiss (Docket No. 34) is DENIED with respect to the FDCPA claim and GRANTED with respect to the CTA claim. Plaintiffs shall have twenty-one days to amend their CTA claim. LBN's motion for sanctions (Docket No. 65) is DENIED.

IT IS SO ORDERED.

Dated: August 20, 2018

CLAUDIA WILKEN
United States District Judge

18