ANNICK M. PERSINGER, SBN 272996
MAREN I. CHRISTENSEN, SBN 320013
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone (510) 254-6808
Facsimile (202) 973-0950
*apersinger@tzlegal.com*
*mchristensen@tzlegal.com*

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, VICTOR HUGO CATALAN MOLINA, and KEVIN CALDERON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>LIBRE BY NEXUS, INC. and JOHN DOES 1-50,<br><br>      Defendants. | CASE NO. 4:17-cv-00755-CW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO CLASS OF SETTLEMENT; MEMORANDUM IN SUPPORT**<br><br>Date:    July 7, 2020<br>Time:   2:30 p.m.<br>Courtroom:  TBD<br>Judge:   Hon. Claudia Wilken |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND ..................................................................... 3

III.    TERMS OF THE PROPOSED SETTLEMENT ............................................... 4

    A.      The Settlement Class ................................................................................ 4

    B.      The Benefits for the Settlement Class ...................................................... 4

        1.      Direct Monetary Relief ................................................................. 5

        2.      Non-Monetary Relief .................................................................... 6

    C.      Payment of Administrative Expenses, Attorneys' Fees & Costs, Service Awards............. 7

    D.      The Release of Settlement Class Members' Claims. ................................ 8

    E.      The Proposed Notice Plan Under the Settlement. ..................................... 9

IV.     LEGAL FRAMEWORK .................................................................................. 10

V.      Argument ......................................................................................................... 11

    A.      The Settlement Is Fair, Adequate, and Reasonable. ............................... 11

        1.      The Settlement Is the Product of Arm's Length Negotiations. ............ 11

        2.      The Settlement Has No Obvious Deficiencies............................. 12

        3.      The Settlement Does Not Improperly Grant Preferential Treatment. ............ 13

        4.      The Settlement Falls within the Range of Possible Approval. ............... 14

    F.      The Court Should Provisionally Certify the Class. ................................. 19

        1.      The Settlement Class Satisfies Rule 23(a). ................................. 19

        2.      Predominance of Common Questions and Superiority of a Class Action ........... 22

    G.      The Proposed Notice Is Adequate and Should be Approved. ................. 23

    H.      The Fees, Costs, and Service Awards to be Requested are Reasonable. ............. 24

VI.     CONCLUSION ................................................................................................ 25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 4:17-cv-00755-CW

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Adams v. Inter-Con Sec. Sys. Inc.,*
No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .................................. 12

4

5

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 620 (1997) ................................................................................................ 19

6

*Chavez v. Blue Sky Natural Beverage Co.,*
268 F.R.D. 365 (N.D. Cal. 2010) .................................................................................... 20

7

8

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1269 (9th Cir. 1992) ......................................................................................... 10

9

*Coates v. Farmers Grp., Inc.,*
No. 15-cv-01913-LHK, 2016 WL 5791413 (N.D. Cal. Sep. 30, 2016) ............................ 25

10

11

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .................................................................. 15

12

*Custom LED, LLC v. eBay, Inc.,*
No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) .............................. 17

13

14

*Fishman v. Tiger Nat. Gas Inc.,*
No. C 17-05351 WHA, 2019 WL 2548665 (N.D. Cal. June 20, 2019) ............................. 24

15

*Forcellati v. Hyland's, Inc.,*
No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ............................... 20

16

17

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................................................. 12

18

*Gen. Tel. Co. of the Southwest Falcon,*
457 U.S. 147 (1982) ....................................................................................................... 20

19

20

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 11

21

*Haralson v. U.S. Aviation Servs. Corp.,*
383 F. Supp. 3d 959 (N.D. Cal. 2019) .............................................................................. 2

22

23

*Harris v. Vector Mktg. Corp.,*
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................... 14

24

*In re High-Tech Employee Antitrust Litig.,*
No. 11-cv-02509, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ...................................... 10

25

26

*In re Lidoderm Antitrust Litig.,*
No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sep. 20, 2018) .......................... 24

27

*In re Mego Fin. Corp,*
213 F. 3d 454 (9th Cir. 2000) ......................................................................................... 10

28

*In re Netflix Privacy Litig.,*
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................................................ 15

*In re NVIDIA Corp. Derivative Litig.,*
  No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............................................ 18

*In re Syncor ERISA Litig.,*
  516 F.3d 1095 (9th Cir. 2008) ............................................................................................ 10

*In re Tobacco Cases II,*
  240 Cal. App. 4th 779, 192 Cal. Rptr. 3d 881 (2015) .............................................................. 17

*Johnson v. Triple Leaf Tea Inc.,*
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................................................ 16

*Kirkorian v. Borelli,*
  695 F. Supp. 446 (N.D. Cal. 1988) ...................................................................................... 18

*Ma v. Covidien Holding, Inc.,*
  No. SACV 12-02161, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................................... 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 11, 12, 18

*Quintero v. Mulberry Thai Silks, Inc.,*
  No. C 08-02294 MHP, 2008 WL 4666395 (N.D. Cal. Oct. 21, 2008) ............................................ 20

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ...................................................................................... 11, 15

*See In re MyFord Touch Consumer Litig.,*
  No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .......................................... 13

*Slaven v. BP Am., Inc.,*
  190 F.R.D. 649 (C.D. Cal 2000) .......................................................................................... 19

*Stewart v. Applied Materials, Inc.,*
  No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................................... 18

*Vincent v. Reser,*
  No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .............................................. 24

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ..................................................................................................... 19

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ............................................................................................ 11

*Yahoo! Inc. Customer Data Sec. Breach Litig.,*
  No. 16-MD-02752, 2019 U.S. Dist. LEXIS 15034 (N.D. Cal. Jan. 30, 2019) .......................... 10, 11

*Zeisel v. Diamond Foods, Inc.,*
  No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) .............................................. 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE No. 4:17-CV-00755-CW

**STATUTES**

Fed. R. Civ. P. 23 ................................................................................................................... 9, 17-22

Fed. R. Civ. P. 30(b)(6) ................................................................................................................. 3

**TREATISES**

Newberg on Class Actions § 14:03 (3d ed. 1992) ........................................................ 12, 18, 25, 27

Manual for Complex Litigation, § 21.312 (4th ed. 2004) ........................................................... 17

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:17-CV-00755-CW

## NOTICE OF MOTION AND MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 7, 2020 at 2:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Judge Claudia Wilken of the United States District Court for the Northern District of California, Oakland Division, in Courtroom 6, located at the Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiffs Juan Quintanilla, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon, by and through their undersigned counsel of record, will and hereby do move for entry of the [Proposed] Preliminary Approval and Provisional Class Certification Order (the "Preliminary Approval Order") submitted herewith, which:

(1)     preliminarily grants the proposed class action settlement on the terms set forth in the Settlement Agreement and Release and exhibits thereto, dated May 13, 2020 (collectively the "Agreement" or "Settlement Agreement");[1]

(2)     certifies, for settlement purposes only, the Settlement Class as defined in the Settlement Agreement, appoints Named Plaintiffs as Class Representatives of the Settlement Class, and appoints Class Counsel as counsel for the Settlement Class;

(2)     approves dissemination of Class Notice to all Settlement Class Members who would be bound by the settlement of this class action as set forth in the Settlement Agreement;

(3)     directs the dissemination of Class Notice in the form and manner set forth in the Settlement Agreement; and

(4)     sets a hearing date to determine whether the proposed settlement, proposed notice, and Class Counsel's motion for Final Approval, Fee Application, and Service Award Application should be approved.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the declaration of Annick Persinger ("Persinger Decl."), the declaration of Jason S. Rathod ("Rathod Decl."), the declaration of Jesse Newmark

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Settlement Agreement.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:17-CV-00755-CW

("Newmark Decl."), the declaration of Jennifer M. Keogh Regarding Proposed Notice Plan ("Keogh Decl."), the pleadings and papers on file in this action, and any additional information or argument as may be required by the Court.

Plaintiffs respectfully submit that (1) the proposed Settlement falls within the range of reasonableness such that preliminary approval is warranted; (2) that the proposed Settlement Class meets the requirements of Rule 23 and should be certified for settlement purposes; (3) that the proposed Class Notice and administration of settlement procedures are appropriate and meet the requirements of due process such that the Court should order notice to be disseminated; and (4) that the Court should approve the proposed schedule and procedures for Class Notice, making claims, opting out, objecting, and conducting a Final Approval Hearing.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 4:17-cv-00755-CW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon ("Plaintiffs"), by and through Class Counsel, respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Motion").[2] The Settlement Agreement and Release ("Agreement") was negotiated after multiple mediations, following over three years of contested litigation. If approved, the settlement will provide significant direct monetary and injunctive relief to a class of individuals facing the hardships of immigration, detention, and financial distress.

Plaintiffs' operative complaint, the Third Amended Complaint, Dkt. No. 102, alleges that Defendant Libre by Nexus ("Defendant" or "LBN") misrepresented its services and pricing to impose excessive charges and ankle shackles on immigrant detainees with limited English-language proficiency and knowledge about immigration bail bonds. According to Plaintiffs' allegations, Defendant's false and deceptive advertising and pricing scheme violated California's unfair competition and false advertising laws, Cal. Bus. & Prof. Code §§ 17200-17509 ("UCL"), and the California Consumers' Legal Remedies Act, Cal. Civ. Code §§ 1750-1756 ("CLRA").

Class Counsel and Defendant's Counsel conducted an extensive examination and investigation of the facts and law relating to the matters in the litigation. Such investigation and discovery included the exchange and review of thousands of pages of documents, document and deposition subpoenas of third-party surety companies, depositions of the Named Plaintiffs, and a 30(b)(6) deposition of Defendant. Rathod Decl. ¶¶ 15-19. Class Counsel also conducted outreach to and received information from numerous Class Members and third-party witnesses, including former LBN employees and immigration attorneys and organizations that represent LBN clients and sponsors. *Id.* ¶¶ 6, 19. The Parties engaged in substantial motion practice as well, including Defendant's motions to compel arbitration and dismiss certain claims, and various discovery motions and motions to amend the pleadings.

---

[2] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement and Release attached to the Declaration of Jason Rathod here as Exhibit 1.

Although Plaintiffs believe that they would be successful were the case to proceed to trial, continued litigation carries a considerable risk of a lesser recovery or none at all. Defendant vigorously denies liability and intends to move for summary judgment if the litigation proceeds. To prevail at trial, Plaintiffs first would have to win their motion to certify a nationwide consumer class, defeat Defendant's anticipated motion for summary judgment, maintain class certification through the entry of judgment, and overcome numerous substantive defenses. Plaintiffs also still face a pending Ninth Circuit appeal of this Court's order denying Defendant's motion to compel arbitration and denying in part Defendant's motion to dismiss certain claims. Even if Defendant were to lose on appeal, and Plaintiffs were to certify a class and prevail at trial, Defendant has provided evidence of limited capital that is unlikely to satisfy a judgment, and the ultimate result would likely be an allocation of limited funds akin to that achieved by settlement. And any recovery would likely be delayed by further appeals.

Because the Settlement "(1) [is] the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval," preliminary approval is proper. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966-67 (N.D. Cal. 2019). Under the Settlement Agreement, Defendant has agreed to provide a Settlement Amount of $3.2 million to cover direct monetary benefits including cash payments, debt relief, administrative costs, service awards, and reasonable attorneys' fees and costs. Rathod Decl., Ex. 1, Agreement ¶ II.A.1. Defendant has also agreed to extensive injunctive relief that will provide critical benefits to the class. After the Class Members are notified and have the opportunity to object, at the Final Approval Hearing, Class Counsel will seek approval of Service Awards payable to the four Class Representatives from the Settlement Amount not to exceed $40,000 total, and 25% of the Settlement Amount in attorneys' fees and expenses. *Id.* ¶ III.A, B.

As explained in more detail below, this is a robust, hard-earned settlement that achieves the fundamental objectives of the lawsuit. Through this settlement, Class Members will have the opportunity to achieve a certain recovery with the benefit of a consumer-friendly procedure supervised by an experienced Settlement Administrator. Class Members will also benefit significantly from the agreed-upon injunctive relief, which addresses Plaintiffs' allegations that Defendant made

2

misrepresentations, failed to translate its contracts, and required burdensome ankle shackles, among other things. For all of these reasons, the Court should find that the proposed Settlement falls within the range of reasonableness and grant preliminary approval.

## II.    PROCEDURAL BACKGROUND

On February 15, 2017, Plaintiffs Juan Quintanilla Vasquez and Gabriela Perdomo Ortiz, through their counsel Tycko & Zavareei LLP, Migliaccio & Rathod LLP, and Centro Legal de la Raza, filed a Class Action Complaint alleging that Defendant made misrepresentations and employed unfair business practices. Dkt. 1. Plaintiffs subsequently amended their pleadings, adding Plaintiffs Victor Hugo Catalan Molina and Kevin Calderon, among other amendments. Dkts. 14, 25, 102. On July 10, 2017, Defendant filed a Motion to Dismiss Counts V and VI of the Second Amended Complaint, Dkt. 34, and a Motion to Compel Arbitration, Dkt. 35. On August 20, 2018, the Court denied in part and granted in part Defendant's Motion to Dismiss and denied its Motion to Compel Arbitration. Dkt. 76.

On September 18, 2018, Defendant filed a Notice of Appeal to the Ninth Circuit of the Court's Order on the Motion to Compel and Motion to Dismiss. Dkt. 80. Defendant then filed Motions to Stay Pending Appeal and for Leave to Appeal Order Denying Motion to Dismiss Pursuant to 28 U.S.C. Section 1292(b). Dkts. 86, 87. On November 20, 2018, the Court denied Defendant's Motions. Dkt. 98.

Plaintiffs served LBN with discovery requests and noticed its deposition under Rule 30(b)(6) of Federal Rule of Civil Procedure. Rathod Decl. ¶ 15. LBN produced thousands of pages of documents in response to Plaintiffs' discovery requests. *Id.* ¶ 17. Defendant deposed all four of the Named Plaintiffs. *Id.* ¶ 18. On June 22, 2017, Plaintiffs conducted a 30(b)(6) deposition of LBN. *Id.* ¶ 16. Discovery was set to close shortly after the parties reached an agreement to settle.

Prior to reaching the Settlement, the Parties participated in several all-day mediation sessions over a span of almost two years, including three with Hon. James R. Lambden of ADR Services, Inc. and three with Jill R. Sperber, Esq. of Judicate West. *Id.* ¶¶ 20, 22-24, 36-37. The Parties also convened for several other in-person sessions (including two in Washington D.C. and one in San Francisco) and telephonic sessions without the assistance of a mediator. *Id.* ¶¶ 20, 32. On September 4, 2019, the Parties participated in an all-day mediation conducted by Ms. Sperber, which resulted in the Parties agreeing

3

on the material terms of the Settlement. *Id.* ¶ 37. Following months of back and forth between the Parties to finalize the settlement paperwork, an irreconcilable dispute arose, necessitating another all-day mediation to be conducted by Ms. Sperber, which occurred on May 13, 2020, and which finally resulted in a fully executed settlement agreement.

## III.   TERMS OF THE PROPOSED SETTLEMENT

### A.   The Settlement Class

The proposed Settlement Class is comprised of three Subclasses and consists of "all current or former LBN program participants and sponsors who paid, or caused to be paid on their behalf, a fee to LBN." Rathod Decl., Ex. 1, Agreement ¶ I.z. Excluded from the Class are: (a) individuals for whom LBN or any surety or bond company has paid a treasury invoice or the bond or for whom a demand for payment for breach of a bond has been made by the U.S. Government which remains outstanding or open; (b) any judge or magistrate presiding over this action and members of their families; (c) Defendant and its current or former employees; and (d) all persons who properly execute and file a timely request for exclusion. *Id.* The three proposed Subclasses are:

i.   **"The Current Program Participant Subclass,"** defined as all current LBN program participants and sponsors who paid, or caused to be paid on their behalf, a fee to LBN;

ii.   **"The Former and Current Program Participant Payments Subclass,"** defined as all former LBN program participants who paid, or caused to be paid on their behalf, a Program Payment to LBN and all current LBN program participants who, within six months of final approval of the settlement have been issued a Form I-391[3]; and

iii.   **"The Sponsor Payments Subclass,"** defined as all sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

### B.   The Benefits for the Settlement Class

Plaintiffs' Complaint sought to achieve restitution and injunctive relief, which were substantially accomplished through the litigation and settlement of this case. The settlement provides monetary relief in the form of a $3.2 million Settlement Amount that includes direct cash payments and debt relief and will be used to pay Notice and other Administrative costs, Court-approved attorneys' fees and costs,

---

[3] A Form I-391 confirms that immigration proceedings have terminated for the program participant. LBN represents that, as of September 4, 2019, based on its own data as well as data from surety companies, that 2,214 I-391 Forms had been issued to LBN program participants.

and requested service awards for Named Plaintiffs. *See* Rathod Decl. Ex. 1, Agreement ¶ II.A.  The settlement also provides extensive and meaningful injunctive relief for the Class. *Id.* ¶ II.B.

### 1.   Direct Monetary Relief

From the $3.2 million Settlement Amount, LBN will provide $750,000 to the Settlement Administrator for distribution as cash payments to the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass. Each member of the Payment Subclasses shall be entitled to receive a pro rata payment from the $750,000 Cash Settlement Fund. Rathod Decl., Ex. 1, Agreement ¶ II.A.1.a. The pro rata payment shall be the $750,000 cash payment amount divided by the number of Class Members in the Payment Subclasses who LBN identifies for automatic payment or who submit valid claims, and do not opt out from the Settlement. *Id.* The checks shall indicate that they expire 180 days after issuance. *Id.* Because of financial constraints imposed by COVID-19, Defendant will fund the Subclass upon the earlier of: (a) certain pre-COVID revenue benchmarks being reached, beginning in December 2021; or (b) January 2024, through 12 monthly payments starting January 1, 2023. *See id.* ¶ II.C.2.

After the distribution of the initial cash payments, any residual funds shall be redistributed by the Settlement Administrator on a *pro rata* basis to members of the Payment Subclasses that cashed the first check sent to them within sixty days. *Id.* ¶ II.A.1.a.i. Remaining funds following the second distribution, if any exist, will be provided as a *cy pres* award to Al Otro Lado and the Northwest Immigrant Rights Project, subject to the Court's approval. *Id.* Both of these organizations are national nonprofit legal service providers who provide services to immigrants in removal proceedings and detention, such as the Class Members in this case. None of the parties or their counsel have any relationship with the proposed cy pres recipients, other than Centro Legal de la Raza's occasional interaction with the two other nonprofit organizations as needed in providing services to immigrant communities.

The Settlement also provides that Defendant will confer additional financial relief for the Current Program Participant Subclass in the form of: (a) Consecutive Payment Discounts; (b) Timely and In Full Payment Discounts; (c) Total Payment Caps; and (d) a minimum of $150,000 in annual fee waivers, as defined in the Agreement. *Id.* ¶¶ II.A.2, II.B.1.j, m.

### 2.    Non-Monetary Relief

As part of this settlement, Class Counsel have negotiated critical non-monetary relief that the Class sought to achieve at the start of the litigation. Rathod Decl. Ex. 1, Agreement ¶ II.B. As a result of the Settlement Agreement, LBN will translate its documents into Spanish and at least one other non-English language, to ensure disclosure of the material terms of its services. LBN will also significantly improve its efforts to ensure the Class and future detainee clients and their sponsors are aware of the material terms of the contracts, their responsibilities, and the nature of LBN's services.

Moreover, since the start of the litigation, LBN has substantially reduced the percentage of program participants wearing ankle monitors to approximately 27%, and has transitioned all Class Members to technologically upgraded ankle monitors that are substantially less burdensome on the wearer. Rathod Decl. ¶ 42. Specifically, the monitors are significantly smaller and do not require anyone to tether themselves to an electrical outlet, as alleged in the initial Complaint, since the monitors have a removable, rechargeable battery pack.

As further defined in the Settlement Agreement, Defendant has specifically agreed to:

a.  translate changes made to its contract into Spanish and at least one additional language by court-certified translators;

b.  post its contract in print and audio formats in Spanish on its website;

c.  continue to inform participants of the contours of the contract in clear and concise terms, based on LBN's implementation of a new contract after the start of this litigation;

d.  use best efforts to mail its contract to prospective program participants prior to their release from ICE custody;

e.  obtain informed representations that potential participants are aware of their rights and opportunities and have had the opportunity to consult with an attorney;

f.  provide participants with its contract and the opportunity for an oral translation prior to signing the contract;

g.  not threaten to report program participants, sponsors, or family members to ICE or otherwise threaten immigration detention;

h.  modify the criminal prosecution language of its contract as detailed in the Settlement Agreement;

i.  make a representation that it presently does not intend to engage in "debt collection" activities for past due monthly recurring Program Payments through external providers as to any debts owed as of September 1, 2019;

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:17-CV-00755-CW

j.   continue its fee waiver program for financially distressed clients, and now provide a minimum of $150,000 in fee waivers per year;

k.   remove leg-affixed GPS monitors in the event of pregnancy or medical necessity;

l.   not require a leg-affixed GPS monitor for new program participants who have an immigration bond with a face value of less than $7,500 unless otherwise required by a bond or surety company;

m.   remove GPS monitors, stop all GPS monitoring, and stop all monthly payments, upon termination of immigration proceedings; and

n.   ensure that the percentage of program participants required to wear ankle monitors does not increase, use best efforts to lower this percentage going forward, and transition away from ankle monitors altogether – to instead use less intrusive wrist monitors, cellular telephones, or periodic check-ins – by December 31, 2021.

*See* Rathod Decl., Ex. 1, Agreement at ¶ II.2.B.1.

### C.   Payment of Administrative Expenses, Attorneys' Fees & Costs, Service Awards

The Parties request that the Court appoint JND Legal Administration to serve as the Settlement Administrator. JND is a highly respected and experienced Settlement Administrator, with experience in administering complex litigation matters. Keogh Decl. ¶ 6-9. The Settlement Administrator's fees and all other notice and administration costs of the settlement will be paid by LBN from the Settlement Amount and be no greater than $80,000. Rathod Decl., Ex. 1, Agreement ¶ IV.E.7. Defendant's counsel recommended JND after soliciting bids from three highly reputable settlement administrators. After receiving detailed bids from each, Defendant's counsel recommended JND because of JND's experience and expertise, because JND submitted the most competitive bid, and because Defendant's counsel believes that JND is best suited to take appropriate measures to ensure the privacy of class member information that is especially sensitive for the immigrants that make up the Class in this case. *Id.* ¶ 55. Class Counsel have had no prior engagement with JND. *Id.* ¶ 54. Class Counsel believe the anticipated administrative costs, capped at $80,000, are reasonable given the nationwide notice and coordination of payments to the Payments Subclasses, as well as the anticipated number of Settlement Class Members (estimated to be approximately 48,000, *see* Keogh Decl. ¶ 13). Rathod Decl. ¶ 55. Defendant will pay the anticipated administrative costs, which represent only 2.5% of the total $3,200,000 Settlement Amount.

In addition, subject to the Court's approval and after the Class is notified and has had the opportunity to object, Plaintiffs intend to request, and Defendant will not oppose, Service Awards to each Class Representative in the amount of $10,000, for a total of $40,000. *Id.* ¶ III.B. The Service Awards are designed to compensate Class Representatives for their time and effort undertaken in and risks of pursuing this action, and their broader releases of claims against Defendant. Plaintiffs spent substantial time on this action, have assisted with the investigation of this action and the drafting of the complaint, have been in contact with counsel frequently, have prepared for, traveled to, and participated in depositions, and have stayed informed of the status of this action, including settlement. Rathod Decl. ¶ 54. Importantly, due to their immigration status, the risk to Plaintiffs in bringing this case goes beyond that of many class action plaintiffs. *Id. See also* Newmark Decl.¶¶ 25-28. Further, Plaintiffs worked closely on litigation that was conducted in a language they did not speak. Newmark Decl. ¶¶ 25-28. Also, the time that these Plaintiffs spent on this litigation at times took them away from their jobs that were essential to maintaining their households. *Id.*

Class Counsel will also request at Final Approval of the Class Action Settlement, and Defendant will not oppose, an award of attorneys' fees and expenses in an amount of twenty-five percent of the total $3.2 million Settlement Amount. Rathod Decl. ¶ 44. The Parties negotiated and reached an agreement regarding fees and costs only after agreeing to all material terms of the Settlement. *Id.* Additionally, while the settlement in this case includes substantial injunctive and programmatic relief, Class Counsel's eventual fee request will only be based on twenty-five percent of the Settlement Amount. That $800,000 request will also compensate Class Counsel for expenses. In other words, Class Counsel will not seek a separate award for costs. Counsel's eventual $800,000 request is far below Class Counsel's combined lodestar of $1,689,048.35 and the $68,648.62 they have expended in costs. *Id.* ¶¶ 49-52. Class Counsel's request is subject to this Court's approval and will serve to compensate them for the time, risk, and expense Counsel incurred pursuing claims on behalf of the Class Members. The reasonableness of this request is discussed in Section V.D below.

### D.  The Release of Settlement Class Members' Claims

In exchange for these settlement benefits, each Named Plaintiff and each Class Member who has not opted out of the Settlement Class shall release Defendant from the released claims, as further

set forth in the Settlement Agreement. Rathod Decl., Ex. 1, Agreement ¶ V.A. The Named Plaintiffs will also release Defendants from all claims, known or unknown. Upon the effective date of the settlement, Defendant will release Plaintiffs from any and all claims it has or may have against the Plaintiff releasees with respect to any claim for existing Program Payments or fees. *Id.* ¶ V.B.

### E.  The Proposed Notice Plan Under the Settlement

The Parties' proposed plan of notice is designed to reach as many Class Members as possible and is the best notice practicable under the circumstances. The Proposed Notice Plan under the settlement provides the following. Within fourteen days of entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with access to the telephone numbers of the Former and Current Program Participant Payments Subclass Members and the Sponsor Payments Subclass Members for whom it has contact information. Rathod Decl., Ex. 1, Agreement ¶ IV.E.1.

Notice of the Settlement will be provided, within thirty days of the entry of the Preliminary Approval Order, to the Class as follows: (1) direct Text Message Notice in both English and Spanish to all Former and Current Program Participant Payments Subclass Members, and Sponsor Payments Subclass Members, for whom Defendant has telephone numbers; (2) direct Postcard Notice to the Subclass Members for whom text message notice and two additional message attempts or other information indicates that the message did not reach the recipient; (3) published notice in La Opinion, El Sol, and El Mundo; (4) mailed notice to the American Immigration Lawyers Association and National Immigration Project of the National Lawyers Guild; and (5) publication of the Detailed Notice on the Settlement Website. *Id.* ¶ IV.E, Exs. E-G.

The proposed notices inform Class Members about the proposed settlement, their rights as to the $3.2 million Settlement Amount, their rights to object or opt-out of the Settlement; and the prospective request for Attorneys' Fees and Expenses and Service Awards. Rathod Decl, Ex. 1, Agreement ¶ IV.C, Exs. E-G. The notices refer Class Members to the Settlement Website where they can obtain the Detailed Notice providing more details about this litigation and the settlement, online and printable versions of the procedures to request exclusion from the class, a fuller discussion of the release, and methods to obtain additional information. *Id.* ¶ IV.E.5. The Settlement Website will also contain a contact information page including: addresses and telephone numbers for the Settlement

9

1    Administrator, Class Counsel, and Defense Counsel; the Settlement Agreement; the date of the Final

2    Approval Hearing; the motion for approval of the Settlement; the applications for Attorneys' Fees and

3    Expenses and Service Awards; and other important documents in this litigation. *Id.* ¶ IV.E.6.

4    **IV.    LEGAL FRAMEWORK**

5        The Ninth Circuit has a strong judicial policy that favors the settlement of class actions. *See In re*

6    *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269,

7    1276 (9th Cir. 1992). The settlement of complex cases greatly contributes to the efficient utilization of

8    scarce judicial resources and achieves the speedy provision of justice. "The claims, issues, or defenses

9    of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). A decision

10   "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he

11   is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp*, 213 F. 3d 454,

12   458 (9th Cir. 2000). "[To] approve a class action settlement under Rule 23, a district court must conclude

13   that the settlement is 'fundamentally fair, adequate, and reasonable.'" *Yahoo! Inc. Customer Data Sec. Breach*

14   *Litig.*, No. 16-MD-02752, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019).

15       Rule 23(e) "require[s] a two step process for the approval of class action settlements: the Court

16   first determines whether a proposed class action settlement deserves preliminary approval and then,

17   after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee*

18   *Antitrust Litig., No. 11-cv-02509, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014)* (internal quotation

19   marks omitted). Preliminary approval is appropriate where "the proposed settlement appears to be the

20   product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not

21   improperly grant preferential treatment to class representatives or segments of the class, and falls within

22   the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161, 2014 WL 360196, at

23   *10 (C.D. Cal. Jan. 31, 2014) (internal quotation marks omitted). "The question for preliminary approval

24   . . . is whether it is within the range of reasonableness." *Id.* at *4 (internal quotation marks omitted).

25   While the factors under Rule 23(e) apply to final approval, the Court should also look to them to

26   evaluate preliminary approval. The factors include: (A) the adequacy of representation by Class Counsel

27   and the Named Plaintiffs; (B) whether the proposal was negotiated at arm's length; (C) the adequacy of

28

the relief provided for the class; and (D) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(A)-(D).

At the settlement hearing, the Court will be asked to grant final approval to the Settlement Agreement on behalf of the Settlement Class. Thus, at this preliminary approval stage and solely for purposes of this settlement, the Court should determine that certification of the Settlement Class appears to be appropriate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Rule 23(a) sets forth four prerequisites to class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id.* Under Rule 23(b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*

## V.    Argument

### A.    The Settlement Is Fair, Adequate, and Reasonable.

Largely following the Federal Rule of Civil Procedure 23(e)(2)(C) and (D) factors for reviewing the terms of a class action settlement, courts in the Ninth Circuit find that approval of a settlement and notice to the class is appropriate when: "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Yahoo!*, 2019 WL 387322, at *4. As detailed below, the Settlement Agreement meets this standard and therefore merits preliminary approval.

#### 1.    The Settlement Is the Product of Arm's Length Negotiations.

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). *See also* Fed. R. Civ. P. 23(e)(2)(B). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*DIRECTV*"); 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining

11

the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting Manual for Complex Litigation, Third § 30.42 (1995)).

Before agreeing upon the terms of the Settlement Agreement, the Parties conducted a thorough examination and investigation of the facts and law relating to the matters in this litigation. Such investigation and discovery included requesting and receiving written discovery responses from LBN, examining LBN's documents, and questioning LBN about its documents at a 30(b)(6) deposition. Rathod Decl. ¶¶ 15-20. In addition, Defendant deposed the four Class Representatives, and Class Counsel issued written document and deposition subpoenas to third-party surety companies. *Id.* ¶ 19. Some of these third parties produced documents, which Plaintiffs analyzed before entering into the Settlement Agreement. *Id.* Class Counsel also conducted outreach to, and received information from, numerous Class Members and third-party witnesses, including former LBN employees, immigration attorneys, and organizations that represent LBN clients and sponsors. *Id.*

Further, the Parties negotiated the proposed settlement in good faith with the assistance of independent, experienced mediators, Hon. James R. Lambden of ADR Services, Inc. and Jill R. Sperber, Esq. of Judicate West, during six all-day mediation sessions over the course of almost three years. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

### 2.    The Settlement Has No Obvious Deficiencies.

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

The relief obtained by Plaintiffs in the Agreement is remarkable in that it secures the essential relief Plaintiffs sought to accomplish in this litigation – injunctive relief ensuring that Defendants will

12

no longer engage in the challenged practices, and a substantial common fund for the Class. In that regard, as detailed above, the settlement will provide, for example, translation of contracts, better monitoring devices, and a reduction of the number of program participants that will have to wear monitoring devices. *See* Rathod Decl., Ex. 1, Agreement ¶ II.B. In addition to the $3.2 million common fund, the settlement will also provide significant monetary relief in the form of total payment caps, and discounts for on time payment, as well as discounts for consecutive payments. *Id.* ¶ II.A. Further, because the Parties have agreed upon an experienced Settlement Administrator, the proposed method of distributing relief is effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Thus, the settlement does better than achieving rough justice for Class Members. Indeed, especially given the extensive programmatic relief provided by the settlement negotiated in this case, the benefits to the class members go beyond what could have been achieved after a trial victory.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment.

The Settlement Agreement treats Settlement Class Members fairly. *See* Fed. R. Civ. P. 23(e)(2)(D). Although the settlement divides Settlement Class Members into Subclasses, each of the Subclasses receives substantial benefits and all Settlement Class Members are entitled to obtain relief based on the group for which they qualify. Membership in the groups is determined by: (1) whether the Class Member is a current or former program participant; (2) whether the Class Member has been issued a Form I-391 [confirming that immigration proceedings have terminated for the program participant]; and (3) whether the Class Member is a program participant or a sponsor.

This allocation plan treats all Class Members fairly based on the alleged harms they have suffered and whether they will benefit from the changes to LBN's business practices going forward. The plan fairly protects the interests of all parties by directing cash payments to former program participants and sponsors who are no longer, or within six months of Final Approval will no longer be, in immigration proceedings, and will therefore not benefit substantially from the prospective changes to LBN's policies. In turn, current program participants and sponsors will benefit financially from the debt relief, as well as the financial and non-financial changes to LBN's policies. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *9-10  (N.D. Cal. Mar. 28, 2019) (approving settlement paying a lower amount in relation to the comparative weakness of certain claims).

Because this plan will treat Class Members equitably relative to each other, it should be approved as fair, reasonable, and adequate.

Named Plaintiffs will receive relief from the Settlement Amount in accordance with the allocation plan, and benefit from policy changes, in the same manner as all other Settlement Class Members. Separately, Class Counsel will seek reasonable service awards to compensate the Named Plaintiffs for their time and risks undertaken, and broader release of claims. The amounts sought by Named Plaintiffs are well within the range of approval for class action settlements that provide significant benefits to the class. *See* Fed. R. Civ. P. 23(e)(2)(c)(ii).

### 4.     The Settlement Falls within the Range of Possible Approval.

"[T]o determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

### a.     The Strength of Plaintiffs' Case, and Risk, Expense, Complexity, and Likely Duration of Further Litigation

Here, Class Counsel engaged in arm's length negotiations with Defendant's counsel, and was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Although Plaintiffs and Class Counsel had confidence in Plaintiffs' claims, a favorable outcome was not assured. *Id.* ¶¶ 40-41. They recognize that they would face risks at class certification, summary judgment, and trial, as well as in the pending appeal on this Court's order on Defendant's motion to compel arbitration and dismiss certain claims. *Id.* Defendant vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Class suffered any harm or damages. Plaintiffs would also face risks in certifying a class and maintaining class status through trial. Even assuming that the Court were to grant a motion for class certification, Defendant could still move to decertify the Class at any time. *See In re Netflix*

14

*Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citation omitted)).

In addition, Defendant have heavily litigated this case and would no doubt present a vigorous defense at trial, continue with the pending appeal, and seriously consider any opportunities for future appeals. There is no assurance that the Class would prevail or, even if they did, that they would be able to obtain an award of damages more than achieved here absent such risks. Thus, in the eyes of Class Counsel, the proposed Settlement provides Settlement Class Members with an outstanding opportunity to obtain significant relief at this stage in the litigation. Rathod Decl. ¶¶ 42-43; Newmark Decl. ¶¶ 22-23; Persinger Decl. ¶¶ 2-6. The Settlement Agreement also eliminates the risks that might prevent the Class from obtaining any relief. *Id.* Notably here, Defendant has provided evidence of limited capital that is unlikely to satisfy a judgment. *Id.*

### b.   Risk of Maintaining Class Action Throughout Trial

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. *See* Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004); *Rodriguez*, 563 F.3d at 966, *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Plaintiffs and Defendant vehemently disagree about the merits of Plaintiffs' claims. For instance, Defendant will likely contend that Plaintiffs and the Class were not injured by Defendant's representations and are legally barred from restitution, since they received the exact services they paid for – the paying of their bonds and release from detention.

Plaintiffs and Class Counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, and equitable and that a settlement of the litigation and the prompt provision of effective relief to the Settlement Class are in the best interests of the Settlement Class Members. Rathod Decl. ¶ 48; Persinger Decl. ¶ 2; Newmark Decl. ¶¶ 22-23.

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE No. 4:17-cv-00755-CW

Class Counsel also expect that Defendant would likely appeal from a decision certifying the Class pursuant to Rule 23(f), and/or move for decertification at a later date. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.,* No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

Moreover, even if Plaintiffs prevailed at trial, there is a substantial likelihood that Class Members would not be awarded significantly more than is offered to them under this Settlement. Assuming that the Court granted class certification, prevailing at trial would require further risky litigation and likely involve an expensive battle of experts. Defendants would certainly appeal any verdict favorable to the Class, resulting in further delay and the risk that a favorable verdict would be overturned on appeal. By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays and the risks of the appellate process.

### c.   Amount Offered in Settlement

Here, Class Representatives and Class Counsel secured for the Settlement Class a settlement that provides a $3.2 million common fund in cash and debt relief, as well as extensive injunctive relief with significant financial and non-monetary benefits for the Class. Besides its substantial size in absolute numbers, the Settlement Fund is also reasonable in relation to the Settlement Class's potential damages. *See, e.g.*, *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *Custom LED, LLC v. eBay, Inc.,* No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable . . . .").

After Court-approved fees and costs, service awards, and the costs of notice are deducted from the $3.2 million settlement, the approximate $2.28 million remaining in the fund will be distributed to the Former and Current Program Participant Subclass and the Sponsor Payment Subclass.[4] Of the

---

[4] The approximate $2.28 million is calculated by subtracting $800,000 in fees and costs, $80,000 for capped notice expenses, and $40,000 in service awards from the $3.2 million Settlement Amount.

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:17-cv-00755-CW

remaining amount after the deduction of fees, costs, service awards, and notice costs, $750,000 is specifically set aside for cash payments.[5] The rest of the fund will be distributed as debt relief.

While the Settlement Amount provides extensive monetary relief from the fund to the Former and Current Program Participant Payments Subclasses, the estimated maximum damage for Plaintiffs and the putative class is difficult to quantify, for several reasons. It is unlikely that Plaintiffs would be able to receive a total refund because they would have to demonstrate that the benefit Defendant conferred had "*no* value to them." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795, 192 Cal. Rptr. 3d 881 (2015) (emphasis in original). Because it would be difficult to prove that monthly payments should be fully refunded, the only potential restitution left would be related to Plaintiffs' UCL claim that Defendant violated the insurance code, or in other words, the amounts that Class members incurred when Defendant connected them with a bondsman. This theory too would have faced significant risk because that amount would only be recoverable assuming that (1) the Court certified the same class period as the Settlement Class period; (2) Plaintiffs survived summary judgment on all elements and also convinced a jury that liability was proven, and (3) the Court and jury accepted Plaintiffs' damage theory, including proof of damages as to each injury alleged in this case. Anything less than a complete victory on each point would decrease recoverable damages, and each element at issue continues to be strongly contested by Defendant. The amount is therefore fair given the substantial risks that Plaintiffs would face prior to and at trial.

In addition to the monetary benefits, the Settlement Agreement provides critical injunctive relief, both financial and non-monetary, sought by Plaintiffs and the Class since the filing of this lawsuit, including: (1) translation and posting of documents in written and audio formats; (2) clear and concise contract terms; (3) policies to ensure meaningful review of contracts by program participants and their

---

[5] At this time, it is difficult to estimate the amount that will be awarded to each member of the Former and Current Program Participant Payments, and Sponsor Payments, Subclasses. As of September 4, 2019, approximately 2,214 program participants had completed their immigration proceedings and their participation in Defendant's program. Thus, if the remainder of the Settlement Amount was divided today, the amount per participant/sponsor pair would be around $340 in cash payments. However, the settlement is designed so that it will capture participants who finish their immigration proceedings and their participation in Defendant's program within six months of final approval. As the number of participants who finish their participation in Defendant's program increases, the amount awarded to each member in cash payments will go decrease.

sponsors; (4) a substantial reduction in the percentage of participants required to wear ankle monitors and commitments not to increase that percentage, to use best efforts to reduce the percentage going forward, and to transition away from ankle monitors altogether by December 31, 2021; (5) a transition of all participants wearing an ankle monitor to a technologically updated monitor that is substantially less burdensome on the wearer (and does not require anyone to tether themselves to an electrical outlet); (6) a removal of any language threatening contact with ICE or immigration detention; (7) modification of the criminal prosecution language in LBN's contract; (8) a commitment to annual fee waivers of at least $150,000; (8) the prompt removal of ankle monitors for pregnancy or other medical reasons; (9) the removal of GPS monitors and stop of all monthly payments, upon termination of immigration proceedings; (10) an on-time and in-full payment discount to limit the maximum monthly payment to $415 (less than the $420 amount charged by LBN at the time this lawsuit was filed, and substantially less than the $475 amount now charged to many participants); (11) a consecutive payment discount to further reduce the monthly payment amount; and (12) a total payment cap (implemented following *preliminary* approval) to limit the total monthly payments to the face amount of the immigration bond.

Indeed, the alleged claims in this action were largely focused on this critically needed injunctive relief – *e.g.*, translating contracts, refraining from immigration-related threats, and removing burdensome ankle monitors that required Class Members to stay in one place while charging. Plaintiffs and Class Counsel therefore prioritized and fought hard to obtain the Settlement's substantial injunctive relief.

Importantly, Defendant also provided evidence of serious financial difficulties significantly impacting their ability to pay. Separately, Class Counsel obtained extensive financial documents – through third-party subpoenas and documents filed in separate legal actions against Defendant – further documenting these financial issues. Plaintiffs and Class Counsel therefore reasonably considered these financial issues in assessing the Settlement and determined that any "total victory" in this case – likely after many more years of litigation and appeals – would almost certainly be on paper only.

### d.   Class Counsel's Experience

Although not articulated as a separate factor in Rule 23(e), courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. *See DIRECTV,*

221 F.R.D. at 528; *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Deference to Class Counsel's evaluation of the Settlement is proper because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer, immigrants' rights, and other class action litigation. Rathod Decl. ¶ 32; Persinger Decl. ¶ 7, Ex. 1; Newmark Decl. ¶¶ 3-21. Based on their experience, including comparable cases that they have settled, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation. Rathod Decl. ¶ 39; Persinger Decl. ¶¶ 4-5; Newmark Decl. ¶ 22.

### F.    The Court Should Provisionally Certify the Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.") Here, the Classes, defined in Section III.A above, meet the requirements of Rule 23(a) and (b).

### 1.    The Settlement Class Satisfies Rule 23(a).

### a.    Rule 23(a)(1): Numerosity

The first requirement for maintaining a class action is that its members are so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal 2000). Here,

the proposed Class consists of thousands of members. Accordingly, numerosity is established.

**b.      Rule 23(a)(2): Commonality**

The second requirement of Rule 23 is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established if Plaintiffs' and Class Members' claims "depend on a common contention . . . capable of class-wide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met. 1 Newberg on Class Actions § 3.10, at 3-50 (1992); *Quintero v. Mulberry Thai Silks, Inc.*, No. C 08-02294 MHP, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 21, 2008) ("In the Ninth Circuit, the requirements of Rule 23(a)(2) are to be construed permissively." (internal quotation marks omitted)).

Here, all of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories. Plaintiffs allege that Defendant followed common policies and practices to misrepresent the amount and nature of fees and other aspects of its services, and failed to provide Spanish translations. Commonality is satisfied by the existence of these common factual issues. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("'Because a determination of the truth or falsity of Defendant[s'] representation of [the products'] efficacy will resolve an issue that is central to the validity of each one of the claims in one stroke,' and the products' efficacy can be established on a class-wide basis through . . . expert testimony, Plaintiffs have sufficiently shown commonality." (alterations in original)); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *7 (N.D. Cal. June 7, 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010).

Second, Plaintiffs' claims are brought under legal theories common to the Class as a whole. Alleging a common legal theory alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members. Thus, commonality is satisfied.

20

### c.       Rule 23(a)(3): Typicality

The third requirement of Rule 23(a) is that the claims of the representative plaintiff be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances. *See Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 161 (1982).

Plaintiffs' claims are typical of those of the Class. Like those of the Class, Plaintiffs' claims arise out of the alleged misrepresentations regarding Defendant's fees and other aspects of their services, and Defendant's failure to provide Spanish translations. Plaintiffs therefore have precisely the same claims as the Class and must satisfy the same elements for each of the claims. The Named Plaintiffs and all Class Members allegedly have been injured in the same way by the same course of conduct. Therefore, Plaintiffs satisfy the typicality requirement.

### d.       Rule 23(a)(3): Adequacy

The final requirement of Rule 23(a) requires that the representative plaintiffs and their counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires only that class representatives do not have interests antagonistic to the class, that class counsel are competent, and that both would vigorously pursue the class claims. *See Hanlon*, 150 F.3d at 1020-21. Adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 Newberg on Class Actions, *supra*, § 11.28, 11-59.

Class Counsel and the Named Plaintiffs have vigorously and competently pursued the Class Members' claims. The extensive investigations and litigation, and arm's-length settlement negotiations, that they undertook demonstrate that Plaintiffs and Class Counsel adequately represent the Class. Moreover, the Named Plaintiffs and Class Counsel have no conflicts of interest with the Class. *See* Rathod Decl. ¶ 53. Rather, the Named Plaintiffs, like each absent Class Member, have a strong interest in proving Defendant's common course of conduct and obtaining redress. In pursuing this litigation, Class Counsel, as well as the Named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all Class Members. Class Counsel have extensive experience and

1    expertise in prosecuting complex class actions, including for consumer fraud and immigrants' rights.

2    Accordingly, Rule 23(a)(4) is satisfied.

3              2.       **Predominance of Common Questions and Superiority of a Class Action**

4              In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must meet one of the three

5    requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d

6    1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds

7    that the questions of law or fact common to the members of the class predominate over any questions

8    affecting only individual members, and that a class action is superior to other available methods for

9    fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule

10   23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best

11   by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

12           **Here**, the proposed Class is well-suited for certification under Rule 23(b)(3) because questions

13   common to all Class Members predominate over questions affecting only individual Class Members.

14   Predominance exists "[w]hen common questions present a significant aspect of the case and they can

15   be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.

16           In this case, common questions of law and fact exist and predominate over any individual

17   questions, such as: (1) whether Defendant engaged in unfair, unlawful, and/or fraudulent business

18   practices under California law; (2) whether Defendant misrepresented and/or failed to disclose material

19   facts; (3) whether Defendant made false or misleading statements of facts; (4) whether Defendant's

20   conduct was intentional and knowing; and (5) whether Plaintiffs and the Class have been injured by the

21   wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive,

22   and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount

23   of such relief. Specifically, Plaintiffs allege that Defendant made misrepresentations and omissions, and

24   failed to provide Spanish translations, through its standard form contracts and policies.  Because these

25   contracts and policies were the same classwide, the claims turn on the same common questions of law

26   and fact.

27           **Further**, a class action is superior to other available means for the fair and efficient adjudication

28   of the claims of the Settlement Class Members. The individual Class Members lack the resources to

22

undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to show Defendant's liability. This is particular true here for the Settlement Class of current and former immigrant detainees and their sponsors, who are likely to be low-income and face linguistic, cultural, and geographic barriers to pursuing their own claims. In addition, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### G.   The Proposed Notice Is Adequate and Should be Approved.

Upon preliminary approval, notice must be directed to Class Members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed. R. Civ. P. 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. Manual for Complex Litigation, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows Settlement Class Members to decide whether to opt out of or take part in the class, or object to the settlement and argue against final approval by the Court. *Id*. The proposed Class Notice here informs the Class of their rights and includes a comprehensive plan for direct notice, via Text Message Notice or, alternatively, Postcard Notice for those Class Members for whom Defendant has contact information, Published Notice, targeted Notice to organizations for

23

immigration attorneys who represent Class Members, Online Notice, and a Settlement Website, and constitutes the best notice practicable under the circumstances. *See* Agreement at ¶ IV.E, Exs. D-G.

The Class Notice accurately informs Class Members of the important terms of the Settlement, the Class to be certified, the date and location of the Final Approval Hearing, and the rights of all parties, including the rights to file objections and to opt out of the Class (and how to do both). The Class Notice here therefore satisfies both the substantive and manner of distribution requirements of Rule 23 and due process. Accordingly, Plaintiffs respectfully request that this Court approve the notice outlined in the Settlement Agreement.

### H.   The Fees, Costs, and Service Awards to be Requested are Reasonable.

Though "[t]he court will not approve a request for attorneys' fees until the final approval hearing, . . . class counsel should include information about the fees they intend to request and their lodestar calculation in the motion for preliminary approval." N.D. Cal., Procedural Guidance for Class Action Settlements. Class Counsel will petition the Court for an award of fees and costs in the amount of $800,000, based on the common fund method of calculations. This is twenty-five percent (25%) of the common fund, *i.e.*, the direct monetary benefit to all members of the Class, and a significantly smaller percentage than courts often approve and of the Settlement's total measurable value counting monetary and non-monetary benefits from the injunctive relief. *See In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *4 (N.D. Cal. Sep. 20, 2018) (noting that "a fee award of one-third is within the range of awards in this Circuit," and collecting cases).

"In common fund cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method," when evaluating class counsel's request for attorney fees. *Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2019 WL 2548665, at *4 (N.D. Cal. June 20, 2019) (internal quotation marks omitted). The Ninth Circuit has established "25% of the common fund as a benchmark award for attorney fees." *Id.* at *11. In this case, Class Counsel seek twenty-five percent of only the Settlement Amount.

In addition, "[a]ttorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL

621865, at *5 (N.D. Cal. Feb. 19, 2013); *see also* Fed. R. Civ. P. 23(h). Here, Class Counsel makes no separate request for their expenses, totaling $68,648.64.

Class Counsels' request also represents a substantial discount on their reasonable lodestar. Specifically, Class Counsel have spent hundreds of hours on the case, for a total lodestar of $1,689,048.35 applying reasonable hourly rates. The request for twenty-five percent (25%) of the common fund therefore represents only forty-seven percent (47%) of Class Counsel's reasonable lodestar.

Finally, Plaintiffs will petition the Court for service awards of $10,000 for the four Class Representatives ($40,000 total). In support of this application, Plaintiffs will evidence their substantial time invested in the matter, personal risks, and contributions to the sizeable settlement, as well as their broader releases of claims against Defendant. *See, e.g.*, *Coates v. Farmers Grp., Inc.*, No. 15-cv-01913-LHK, 2016 WL 5791413, at *1 (N.D. Cal. Sep. 30, 2016) (approving service awards from $10,000 to $25,000 per plaintiff as "reasonable given the risks these Plaintiffs assumed and the amount of time they spent in conjunction with prosecuting this case"); Rathod Decl. at ¶ 54 (detailing the significant Plaintiff involvement including by producing discovery (including electronic discovery such as text messages), attending deposition, and assisting counsel with the case in investigation, litigation, and mediation); Newmark Decl. ¶¶ 25-28 (same).

## VI.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class for settlement purposes only; (3) designate Plaintiffs as Class Representatives, and appoint Class Counsel as counsel for the Class; (4) appoint JND Legal Administration as the Settlement Administrator; (5) schedule a Final Approval Hearing; (6) approve procedures for and forms giving Class Notice to members of the Class; (7) mandate procedures and deadlines for exclusion requests and objections.

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:17-CV-00755-CW

Dated: June 2, 2020

Respectfully submitted,


/s/ Annick M. Persinger
ANNICK M. PERSINGER, SBN 272996
MAREN I. CHRISTENSEN, SBN 320013
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone (510) 254-6808
Facsimile (202) 973-0950
apersinger@tzlegal.com
mchristensen@tzlegal.com

JESSE NEWMARK, SBN 247488
AIDIN CASTILLO, SBN 280262
**CENTRO LEGAL DE LA RAZA**
3022 International Blvd., Suite 410
Oakland, CA 94601
Telephone (510) 437-1863
jnewmark@centrolegal.org
acastillo@centrolegal.org

NICHOLAS A. MIGLIACCIO, *pro hac vice*
JASON S. RATHOD, *pro hac vice*
**MIGLICACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Telephone (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Attorneys for Plaintiffs*

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:17-CV-00755-CW