**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, and VICTOR HUGO CATALAN MOLINA, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>LIBRE BY NEXUS, INC. and JOHN DOES 1-50,<br><br>DEFENDANTS. | Case No. 4:17-cv-00755<br><br>**DECLARATION OF JASON S. RATHOD IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Hon. Claudia Wilken |

I, Jason S. Rathod, declare as follows:

1.      I am an attorney at law licensed to practice in the District of Columbia and the State of Illinois. I am also admitted *pro hac vice* in this matter and a partner at Migliaccio & Rathod LLP ("M&R"), counsel of record for Plaintiffs. I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Settlement and Approval of Notice to Class of Settlement. Unless otherwise noted, I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

2.      Attached hereto as **EXHIBIT 1** is a true and correct copy of the Class Action Settlement Agreement.

3.      This declaration addresses: (a) the history of this litigation, which includes a summary description of the legal services provided by M&R and co-counsel in this litigation to date; (b) evaluation of the proposed settlement; (c) the risks borne by Plaintiffs' counsel; (d) the lodestar of M&R; (e) Plaintiffs' counsel's continuing obligations in this litigation and under the Settlement Agreement, a true and correct copy of which is attached hereto as **EXHIBIT 1;** (f) the Service Award request for Plaintiffs; and (g) other information required by the Northern District of California's Procedural Guidance for Class Action Settlements.

**A.      History of this Litigation**

4.      While a thorough detailing of work performed in a case is often reserved for the final approval stage, I thought the Court would benefit from understanding the work performed at this stage as well. The work detailed below is from my perspective and I am certain that my co-counsel can and, at the final approval stage, will further detail the work it performed as well.

5.      M&R began investigating the subject matter of this lawsuit in November 2016 after Jeff Kaliel, a former attorney at the firm of one of my co-counsel, Tycko & Zavareei ("T&Z"), and I became aware of a number of the facts underlying the complaint.

6.      In November and December of 2016, and January and February of 2017, I spoke and exchanged emails with representatives of several immigrants' rights non-profit organizations from across the country as part of our further investigation. This outreach often occurred in coordination with Mr. Kaliel at T&Z. This included an in-person meeting with representatives from two prominent

immigrant rights organizations based in Washington D.C. I personally also had at least a half dozen telephone conversations with attorneys in similar organizations based in different parts of the U.S. In some of these conversations I spoke with the attorneys' clients who had contracts with LBN and had M&R's then law clerk and now associate, Ashley Pileika, assist with translation. These conversations were an important part of gathering background information on LBN, its operations, and how it impacted the clients of organizations that provide direct services to immigrant clients. Throughout the investigation, I regularly conferred with my law partner Nicholas Migliaccio about the nature of the potential case and strategies for moving forward.

7.     In early December of 2016, I began corresponding with Aidin Castillo, now the directing attorney of the Immigrants' Rights Program at Centro Legal de la Raza ("Centro Legal"), who is also co-counsel in this case. She had clients with ankle monitors through LBN and I learned more about LBN's practices from her extensive experience in immigration law and the specific facts impacting her clients. On a few occasions, I was able to speak with the clients on the phone with Ms. Castillo's assistance.

8.     In early 2017, M&R, T&Z, and Centro Legal (collectively, "Plaintiffs' counsel") formalized a co-counsel agreement and began jointly representing Mr. Juan Quintanilla Vasquez and Ms. Gabriela Perdomo Ortiz in this putative class action litigation. To ensure that the clients fully comprehended the nature of our representation and their responsibilities as class representatives, M&R arranged and paid for a professional Spanish translation of its multi-page class action retainer, and Ms. Castillo reviewed the retainer agreement with them.

9.     The Complaint was finalized in mid-February in coordination with Centro Legal, including attorneys Ms. Castillo and Mr. Jesse Newmark, the litigation director at Centro Legal, and T&Z, including attorneys in its Oakland office such as Ms. Annick Persinger. The Complaint was filed on February 15, 2017.

10.     On March 3, 2017, an LBN representative reached out to Plaintiff Vasquez to say that LBN would be at his home in two hours to remove his ankle monitor.  Plaintiff Vasquez informed Plaintiffs' counsel.  Plaintiffs' counsel immediately reached out to LBN to inquire about the reason for the removal and the associated paperwork that it would require Plaintiff Vasquez to sign.  Plaintiffs'

counsel also advised LBN that it should not go to Plaintiff Vasquez's home to remove the ankle monitor until Plaintiffs' counsel could be present.

11.     For the next few months, I and other Plaintiffs' counsel continued to investigate the factual circumstances surrounding the claims, including by having further conversations with other non-profit organizations. Plaintiffs' counsel also prepared Freedom of Information Act requests that were sent to different federal governmental agencies to try to fortify and expand the factual allegations.

12.     In April and May of 2017, Plaintiffs' counsel worked collaboratively on amending the Complaint to, among other things, add Mr. Victor Hugo Catalan Molina as an additional named plaintiff and add additional claims. That First Amended Complaint was filed on May 3, 2017.

13.     In May, Plaintiffs' counsel conferred internally and with defense counsel in advance of the parties' Joint Case Management Statement and the Initial Case Management Conference, which took place on May 23, 2017.

14.      To resolve a dispute with LBN, Plaintiffs agreed to amend the Complaint and remove certain claims. On May 10, 2017, LBN moved to partially dismiss the Complaint and to compel arbitration.

15.     Plaintiffs engaged in extensive discovery related to the motion to compel arbitration. M&R edited discovery requests and the 30(b)(6) notice, both of which T&Z took the lead in preparing. M&R took the lead in preparing the objections to the discovery requests served by Defendant on Plaintiffs, and worked with Centro Legal to provide substantive responses to the requests and assemble the document production. The document production was comprehensive and included electronically stored information such as text messages between Plaintiffs and Defendant.

16.     I second-chaired the 30(b)(6) deposition of Libre by Nexus in northern Virginia, which was taken by T&Z, and which was focused on arbitration issues, but also elicited critical information about the nature of Defendant's business operations and information systems, guiding future discovery from Defendant as well as third party discovery. As second chair, I prepared a set of questions to be asked about Defendant's operations, and conferred with Mr. Kaliel of T&Z on breaks about asking additional questions to glean further information.

17.     Following the 30(b)(6) deposition, I prepared a detailed deficiency letter that was sent to LBN about gaps in its discovery production, including deficiencies revealed by the 30(b)(6) deposition. Plaintiffs' counsel met and conferred with Defendant about these deficiencies, prompting a supplemental production. In this initial phase of litigation, Defendant ultimately produced over 7,000 documents.

18.     In the summer of 2017, Defendant also deposed each Plaintiff as well as sponsor co-signers of Plaintiffs, including Kevin Calderon, who is named as an additional Plaintiff in the settlement Complaint. T&Z and Centro Legal took the lead in preparing the Plaintiffs and co-signers for deposition and defended the depositions, which took place in Oakland, California. M&R assisted in the preparation of the depositions.

19.     In July 2017, I prepared several document and deposition subpoenas to third parties, including bond and surety companies, that Defendant had worked with. After the subpoenas were finalized, M&R arranged for service and took the lead in conferring with the targets of the subpoenas over time. Around this time, I also know that my co-counsel corresponded and met with a former employee of LBN to gather additional information.

20.     On August 1, 2017, Plaintiffs filed their opposition to Defendant's Partial Motion to Dismiss, on which T&Z took the lead and M&R and Centro Legal provided input on as well. The litigation was stayed by stipulation on August 10, 2017 for private mediation. Plaintiffs' counsel collaboratively drafted a comprehensive mediation statement. In advance of the mediation in San Francisco before Hon. James A. Lambden, Plaintiffs' counsel, myself included, had an in-person meeting among themselves in Oakland, California, followed by an in-person meeting with Defendant and defense counsel. The parties then had an all-day session in San Francisco before Judge Lambden on October 10, 2017, which was unsuccessful.

21.     In October 2017, Plaintiffs received a civil investigative demand ("CID") from the federal Consumer Financial Protection Bureau ("CFPB"). M&R and Centro Legal took the lead in responding to the CID, including by assembling the relevant information and redacting sensitive material.

22.     On November 29, 2017 and January 25, 2018, the case was again stayed by stipulation as the parties continued settlement negotiations and another mediation before Judge Lambden, on March 29, 2018.

23.     In preparation for the mediation, and in the event that mediation failed, M&R researched the viability of various avenues of liability and damages and also took the lead on preparing the revised mediation statement. Plaintiffs' counsel collaboratively strategized in advance of the mediation.

24.     Another all-day mediation session took place in San Francisco on March 29, 2018 before Judge Lambden but was unsuccessful.

25.     Following breakdown in settlement discussions, Defendant re-noticed its Motions to Dismiss and to Compel Arbitration. Defendant also filed a Motion for Sanctions under Rule 11. Plaintiffs opposed all of the motions and counsel worked collaboratively on the opposition to the Motion to Compel arbitration, which was not previously filed, with M&R, T&Z, and Centro Legal each taking different substantive portions of the brief.

26.     The Court held oral argument on the motions on August 14, 2018. Ms. Persinger of T&Z and Mr. Newmark of Centro Legal appeared and argued at the hearing for Plaintiffs. I assisted in preparing co-counsel for the argument, including with strategy calls and exchanging emails about the likely arguments we would face and the best responses to present. On August 20, 219, the Court issued its order largely denying Defendant's motions.

27.     Beginning in August 2018, I also worked closely with my associate, Erick Quezada, to review  the discovery produced by Defendant to-date, identify additional areas of discovery, and draft a First Set of Interrogatories and Second Set of Requests for Production of Documents. Plaintiffs' counsel collaborated in reviewing and finalizing the requests, which were served on Defendant by T&Z on September 24, 2018.

28.     In September 2018 Defendant filed a notice of appeal of the Court's order denying Defendant's motion to compel arbitration and, in October, filed a motion for leave to appeal the order denying the motion to dismiss, as well as a motion to stay pending appeal.

29.     Plaintiffs opposed the motions. M&R took the lead in opposing the motion to stay, while T&Z took the lead in opposing the motion for leave, with all counsel providing feedback on the respective oppositions.

30.     In September and October 2018, I continued to research an alternative avenue of liability under the Unfair Competition Law ("UCL") and drafted an amendment to the Complaint as well as a motion for leave reflecting this theory. That motion was filed on October 29, 2018. That same day I filed a motion to extend the discovery deadlines because, in part, Defendant still had to meaningfully respond to Plaintiffs' discovery requests.

31.     In October 2018, Defendant substituted Michael Hassen for its previous counsel. In connection with the motions filed and also with outstanding discovery, I met and conferred with Mr. Hassen and occasionally Ms. Mary Donne Peters, who has represented Defendant throughout the litigation. In the course of these conversations, settlement discussions were revisited.

32.     In October and November, I had several settlement discussions with Mr. Hassen and exchanged settlement term sheets. We had one in-person meeting between us in Washington D.C. to advance the discussions and another all-day meeting with Mr. Hassen, Ms. Peters, myself, and my partner, Mr. Migliaccio in Washington D.C. The parties moved closer to resolution and had another all-day session in San Francisco, CA on December 12, 2018, which included Mr. Migliaccio and me as well as T&Z and Centro Legal. The parties were yet again unable to reach agreement but continued to engage in settlement discussions and exchange term sheets.

33.     In January, the parties agreed that the assistance of a mediator could help them finalize a settlement. By stipulation, on February 28, 2019, the parties stayed discovery for another mediation before Judge Lambden. In advance of the mediation, the parties continued to exchange term sheets and discuss settlement in an attempt to narrow the areas of disagreement. M&R also took the lead on preparing the supplemental mediation statement and exhibits. On March 15, the parties had a full-day mediation session in San Francisco with Judge Lambden but were unable to reach agreement.

34.     In early April, 2019, following the expiration of the Court's stay for mediation, I began efforts to meet and confer with Defendant on discovery deficiencies and to re-engage third parties to whom subpoenas had been sent. Throughout April and May, I sent several emails and had several,

lengthy telephone calls in an attempt to meet and confer with Defendant about outstanding discovery. I also served six notices of deposition of LBN employees. On a number of occasions, when the parties had reached an impasse on discovery disputes, I drafted joint letters to the Court in preparation for a motion to compel and asked Defendant to insert its positions.

35. On May 24, 2020, as discovery disputes had reached a boiling point, I received a call from Defendant's counsel Sean Sullivan and Kenneth Payson that they would be taking the lead on the case for Defendant, that they would work with Defendant to supplement its production and believed that one last settlement push and stay would be worthwhile.

36. Defendant did make a meaningful supplemental document production, which M&R reviewed. The parties continued to discuss settlement among themselves and then held an all-day in-person mediation session on August 16, 2019 in San Francisco before Jill R. Sperber of Judicate West. The parties made significant progress but could not reach a final deal. On September 4, 2019, the parties held another all-day mediation before Ms. Sperber and reached agreement on material terms, which were reflected in a multi-page and detailed term sheet.

37. Over the next several months, the parties worked to finalize the settlement agreement and related paperwork but reached another impasse in March of this year, necessitating another mediation before Ms. Sperber on May 13, 2020. That mediation resulted in an executed settlement agreement between the parties, which is attached hereto as **EXHIBIT 1**.

**B.      Evaluation of the Proposed Settlement Agreement**

38. A true and correct copy of M&R's resume is attached as **EXHIBIT 2**. M&R has substantial experience in the litigation, certification, and settlement of class action cases.

39. Based on my experience, Defendants' counsel are also highly experienced in complex civil litigation of this kind. It is my considered opinion that counsel for each side have fully evaluated the strengths, weaknesses, and equities of the parties' respective positions and believe that the proposed settlement fairly resolves their respective differences.

40. This litigation involved sharply opposed positions on several fundamental legal and factual issues. Defendant has argued the following (a) it is not a "debt collector" under the Fair Debt Collection Practices Act, nor an "insurer" or "bail licensee" under the California Insurance code; (b)

the fees charged were lawful and fair and amounted to an upfront charge to cover hard costs along with a monthly recurring charge for a full suite of services so its conduct cannot be viewed as unfair, deceptive, or fraudulent under consumer protection laws; (c) those same claims fail also because the fees charged were transparent as they were conspicuously disclosed in contracts that Plaintiffs signed and that were explained orally by LBN employees in whichever language a program participant preferred; (d) there can be no class certification in a litigation context because individualized questions of materiality, reliance, and injury would predominate – here, Plaintiffs and class members received varied information from LBN (different individuals dealt with different case managers and representatives), Plaintiffs gave varied responses as to how they were deceived, and Defendant's practices changed throughout the class period.

41.     Plaintiffs maintain that the claims are meritorious; that the Court would certify the proposed Classes; that they would establish liability and recover substantial damages if the case proceeded to trial; and that the final judgment entered for Plaintiffs and the classes would be affirmed on an appeal. But Plaintiffs' ultimate success would require them to clear, in whole or in part, each hurdle. Conversely, Defendants' success at any stage could or would spell defeat for Plaintiffs and the Settlement Class. Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings.

42.     The settlement offers substantial non-monetary and monetary relief. In terms of non-monetary relief, the Settlement Agreement requires LBN to (a) translate changes made to its contract into Spanish and at least one additional language by court-certified translators; (b) post its contract in print and audio formats in Spanish on its website; (c) inform participants of the contours of the contract in clear and concise terms, based on LBN's implementation of a new contract after the start of this litigation; (d) use best efforts to mail its contract to prospective program participants prior to their release from ICE custody; (e) obtain informed representations that potential participants are aware of their rights and opportunities and have had the opportunity to consult with an attorney; (f) provide participants with its contract and the opportunity for an oral translation prior to signing the contract; (g) not threaten to report program participants, sponsors, or family members to ICE or otherwise threaten immigration detention; (h) modify the criminal prosecution language of its contract;

(i) make a representation that it presently does not intend to engage in "debt collection" activities for past due monthly recurring Program Payments through external providers as to any debts owed as of September 1, 2019; (j) continue its fee waiver program for financially distressed clients, and now provide a minimum of $150,000 in fee waivers per year; (k) remove leg-affixed GPS monitors in the event of pregnancy or medical necessity; (l) not require a leg-affixed GPS monitor for new program participants who have an immigration bond with a face value of less than $7,500 unless otherwise required by a bond or surety company; (m) remove GPS monitors, stop all GPS monitoring, and stop all monthly payments, upon termination of immigration proceedings; and (n) ensure that the percentage of program participants required to wear ankle monitors does not increase, use best efforts to lower this percentage going forward, and transition away from ankle monitors altogether – to instead use less intrusive wrist monitors, cellular telephones, or periodic check-ins – by December 31, 2021; and (o) impose a total payment cap limiting the total monthly payments to the face amount of the immigration bond.

43. The settlement also offers substantial monetary relief. The settlement establishes a $3.2 million common fund. From the $3.2 million, LBN will provide $750,000 to the Settlement Administrator for distribution as cash payments to the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass. Each member of the Payment Subclasses shall be entitled to receive a pro rata payment from the $750,000 Cash Settlement Fund. The pro rata payment shall be the $750,000 cash payment amount divided by the number of Class Members in the Payment Subclasses who LBN identifies for automatic payment or who submit valid claims, and do not opt out from the Settlement. The checks shall indicate that they expire 180 days after issuance. Because of financial constraints imposed by COVID-19, Defendant is unable to fund the Subclass until the earlier of: (a) certain revenue benchmarks being reached, beginning in December 2021; or (b) January 2024, through 12 monthly payments starting January 1, 2023. After the distribution of the initial cash payments, any residual funds shall be redistributed by the Settlement Administrator on a *pro rata* basis to members of the Payment Subclasses that cashed the first check sent to them within sixty days. Remaining funds following the second distribution, if any exist, will be provided as a cy pres award to Al Otro Lado and the Northwest Immigrant Rights Project, subject to the Court's approval. Both of

these organizations are national nonprofit legal service providers who provide services to immigrants in removal proceedings and detention, such as the Class Members in this case. None of the parties or their counsel have any relationship with the proposed cy pres recipients, other than Centro Legal de la Raza's occasional interaction with the two other nonprofit organizations as needed in providing services to immigrant communities. The Settlement also provides that Defendant will confer additional financial relief for the Current Program Participant Subclass in the form of: (a) Consecutive Payment Discounts; (b) Timely and In Full Payment Discounts; (c) Total Payment Caps; and (d) a minimum of $150,000 in annual fee waivers, as defined in the Agreement. *Id.* ¶¶ II.A.2, II.B.1.j, m.

44.     Class Counsel will request at Final Approval, and LBN has agreed not to oppose, an award of attorneys' fees and expenses in the amount of twenty five percent of the total $3.2 million Settlement Amount. The Parties negotiated and reached agreement regarding fees and costs only after agreeing to all material terms of the Settlement.

45.     On the basis of the investigation and evaluation by Plaintiffs' counsel, including me, and our experience with and knowledge of the law and procedure governing the claims of Plaintiffs and the Settlement Class, it is our belief that it is in the best interest of the class to enter into this Settlement. Indeed, in light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to class members in the form of the prospective non-monetary relief outlined above, as well as the monetary relief. In addition, the allocation of benefits under the Settlement treats all Class Members fairly based on the strength of their claims. There was a substantial risk that class members would recover only nominal damages, or nothing at all. Even in the best case, it could take several years to get a judgment for class members and, even then, there would be a strong possibility that it would be a judgment in paper only. I say that after having reviewed a sworn statement by Defendant about its financial condition and receiving representations it has made about its financial outlook caused in no small part because of the Covid-19 pandemic. The Settlement provides substantial relief to the certified class now.

46.     Plaintiffs and Plaintiffs' counsel appropriately determined that the Settlement outweighs the gamble of continued litigation. While I firmly believe in the merits of this litigation and that Plaintiff would ultimately win at trial, I also believe that recovery is far from guaranteed and that

the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with possible interlocutory appellate review, pretrial motion practice, trial, and final appellate review. After taking into account the foregoing along with other risks and the costs of further litigation, I am satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the litigation and the prompt provision of effective relief to the Settlement Class are in the best interest of the Settlement Class Members.

### C.   The Risks Borne by Plaintiffs' Counsel, Including M&R

47.     In accepting this case, Plaintiffs' Counsel bore considerable risk. M&R took this case on a fully contingent basis, meaning that we were not paid for any of our time, and that we paid all costs and out of pocket expenses without any reimbursement to date. During the pendency of this case, M&R turned away other work. In evaluating the case at the outset, my partner and I recognized that M&R would be contributing a substantial amount of time and advancing significant costs in prosecuting a class action, with no guarantee of compensation or recovery, in the hopes of prevailing against a well-funded defense. We did take some solace, however, knowing that at least some of the statutes under which Plaintiffs would be suing authorized fee-shifting to a prevailing plaintiff who achieved a benefit for the class members and general public.

48.     Because Defendants were represented by a large, highly-skilled and well-resourced litigation firm, there was increased risk that Plaintiffs would not certify a class and/or receive a verdict for the defense after a prolonged trial.

### D.   Lodestar and Expenses for M&R

49.     Since the outset of this case, M&R has spent a total 883.7 hours working on this case, including for the work detailed above, which involved the following categories, among other things: (1) investigating the merits of the case (2) coordinating litigation efforts with co-counsel; (3) drafting and revising Plaintiffs' Complaint and four Amended Complaints; (4) engaging in written discovery including writing deficiency letters and engaging in meet and confer sessions; ; (5) attending deposition; (6) drafting and filing motions and memoranda ; (7) drafting and reviewing mediation statements; (8) negotiating settlement terms; and (9) drafting and revising settlement documents. The time this reflects

was time actually spent, in the exercise of reasonable judgment by lawyers and staff of M&R, which are available for *in camera* submissions to the Court upon request. Given the ongoing nature of the notice program, there will likely be many additional hours not yet recorded for this case, both prior to and after final approval. The hourly rates shown in the table below for the attorneys and staff at M&R are the same as the regular rates – pursuant to the "adjusted Laffey Matrix" – charged by M&R for their services in other cases and as have been approved by state and federal courts across the country. For example, M&R's rates were recently approved in a collective action settlement in the United States District Court for the Eastern District of Michigan. *See Whitfield v. Trinity Rest. Grp., LLC*, No. 18-10973, 2019 U.S. Dist. LEXIS 182055 (E.D. Mich. Oct. 3, 2019) . M&R's rates were also approved in *Singer, et al. v. Postmates*, No. 4:15-cv-01284-JSW (N.D. Cal. April 25, 2018) (Dkt. 98), where M&R served as co-counsel in a multistate wage theft class and collective action in which couriers alleged they were misclassified as exempt from minimum wage and overtime laws. That suit settled on a common fund basis for $8.75 million. M&R proffered a declaration detailing our lodestar using rates consistent with the foregoing rate scale (*see* Dkt. 89-3), and the full attorneys' fee request was ultimately approved (*see* Dkt. 98).

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Nicholas Migliaccio | 54.25 | $747 | $40,524.75 |
| Jason Rathod | 650.7 | $747 | $486,072.90 |
| Erick Quezada | 90.6 | $372 | $33,703.20 |
| Ashley Pileika | 14.5 | $372 | $5,394.00 |
| Bruno Ortega | 7.65 | $202 | $1,545.30 |
| Dominique Reid | 16 | $202 | $3,232 |
| **TOTAL** | 833.7 | | $570,472.15 |

50.     I have also reviewed the declarations of my co-counsel, Jesse Newmark and Annick Persinger, on behalf of their organizations. Adding their lodestar amounts to M&R's yields a total lodestar amount of $1,689,048.35.

51.     Expenses are accounted for and billed separately and are not duplicated in my professional billing rate. M&R has not received reimbursement for expenses incurred in connection with this litigation. As of June 1, 2020, M&R incurred a total of $ 24,393.70 in unreimbursed actual third-party expenses in connection with the prosecution of these cases. The actual expenses incurred in the prosecution of these cases are reflected on the computerized accounting records of my firm, based on receipts and check records, and accurately reflect all actual expenses incurred. These unreimbursed costs and expenses were incurred in connection with the effective prosecution of this litigation and include mediation, travel, translation and process server fees.

52.     I have also reviewed the expenses detailed in the declarations of my co-counsel Jesse Newmark and Annick Persinger, on behalf of their organizations. Adding their expenses to M&R's yields a total of $68,648.62.

### E.     Plaintiffs' Counsel's Continuing Obligations to Class Members

53.     I am aware of no conflicts between Plaintiff's Counsel and the the Class Members. If this Court grants preliminary approval to the Settlement, Plaintiffs' counsel, including M&R, will establish standardized procedures to ensure that all inquiries from Settlement Class Members are timely and accurately handled. M&R will also work with the Settlement Administrator to assure that settlement website functions properly (i.e., is easy to use and properly designed). M&R will also work with the Settlement Administrator to assure that notice is disseminated in accordance with the terms of the Settlement Agreement. M&R will receive updates from the Settlement Administrator regarding the administration of the settlement. M&R will continue in this capacity should the settlement be finally approved. M&R will prepare for and appear at the fairness hearing. If the settlement is approved and fees awarded, M&R also will oppose any appeals that may be filed. Under the terms of the settlement, M&R will also need to monitor LBN's finances to determine if it meets the thresholds triggering payments into the settlement fund, and M&R will do so. Based on my experience with class actions, I

anticipate that there will be at least another 100 hours of work before this Litigation is entirely complete and that is assuming the Court's judgment is not appealed.

### F.      Service Award to Plaintiffs

54.     Plaintiffs are requesting a Representative Service Award of $10,000 for each Plaintiff. To date, Plaintiffs' involvement in this litigation has been superb. For example, Plaintiffs searched their personal records for relevant documents and attended deposition. Plaintiffs also took on substantial risk, most importantly the risk of publicity. Further, Plaintiffs also agreed to enter into a broader release than the other class members. In my opinion, Plaintiffs' participation in this litigation has been exemplary. Mr. Newmark has also set forth a more detailed explanation of the work done by Plaintiffs and the risks they have taken in his declaration in support of this Motion.

### G.      Information Required by the Northern District of California's Procedural Guidance for Class Action Settlements.

55.     The proposed settlement administrator is JND Legal Administration. Defendant is bearing the costs of claims administration and they initially proposed the administrator as competent to handle a complex class action settlement like the one here. JND is a highly respected and experienced Settlement Administrator, with experience in administering complex litigation matters. Further details regarding JND's background and expertise are described in the declaration of Jennifer M. Keough. Defendant's counsel recommended JND after soliciting bids from JND, Angeion Group, and Postlethwaite & Netterville, three highly reputable settlement administrators. After receiving detailed bids from each, which I also received and reviewed, Defendant's counsel recommended JND both because they submitted the most competitive bid, and because Defendant's counsel had experience with JND from prior settlements. Given the sensitive nature of the class member information here, Defendant's counsel believed that JND would take appropriate measures to ensure the privacy of that data. Class Counsel has had no prior engagement with JND. Based on my review of JND's proposal and the declaration of Ms. Keough, and based on  defense counsel's representations about its experiences with JND in other class action settlements, I believe that JND will adequately and professionally discharge its duties as settlement administrator, and that the anticipated administrative costs, capped at $80,000, are reasonable given the nationwide notice and coordination

1    of payments to the Payments Subclasses, as well as the anticipated number of Settlement Class

2    Members.

3         56.     Pursuant to N.D. Cal. Procedural Guidance for Class Action Settlements ("N.D. Cal.

4    Guide") ¶11, M&R provides the following information for a comparable settlement. While M&R has

5    other settlements comparable in settlement amount, they primarily are wage theft or product defect

6    settlements that are different in nature than this case. One case that is comparable in that it involves

7    allegations of excessive fees charged to "subprime" borrowers, who can be more difficult to reach

8    because they are a more transient population, is *Carr v Transit Employees Federal Credit Union*, Civil

9    Action No. 2017 CA 008613 B (D.C. Super. Ct. 2019). There, a borrower asserted claims on behalf of

10   54 class members against a credit union following its failure to comply with Washington, D.C.

11   regulations in the repossession, notification, storage, and sale of District of Columbia borrowers'

12   collateral. The parties agreed to settle for $215,000 on the following core terms: (a) each class member

13   received a pro-rata distribution from a common fund based on the number of violations per class

14   member (which resulted in an average recovery of $842.69 per class member); (b) each class member

15   whose vehicles was sold at auction was made eligible to request a deletion of the three major credit

16   bureaus' tradelines associated with their auto loan account with the credit union;  and (c) the defendant

17   agreed to 1) no longer seek repossession fees and daily storage fees in excess of the statutory

18   maximums; 2) ensure redemption letters state the correct storage address of repossessed vehicles; 3)

19   use commercially reasonable efforts to ensure third-party repossession vendors stores repossessed

20   automobiles in compliance with Washington D.C. regulations; and 4) ensure that no further collection

21   actions be taken on deficiency judgments. In *Carr*, the defendant agreed to pay plaintiff's counsel up to

22   $71,666 in attorneys' fees, or 1/3 of the total settlement amount. Plaintiff's counsel also had $1,206.36

23   in costs. Notice was sent by first-class mail and the costs of settlement administration were capped at

24   $11,000. Of the 54 class members, only three notices were ultimately returned undeliverable. Following

25   the expiration of the checks, only eight checks remained uncashed, which, under the terms of the

26   settlement agreement, are deposited into the Washington D.C. Unclaimed Property Unit. Nine

27   individuals timely filed tradeline deletion requests (which required class members to affirmatively

28   submit a document), and two made untimely requests, which were honored.

DECLARATION OF JASON S. RATHOD IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
-15-

1    I declare under penalty of perjury of the laws of the United States and the State of California

2    that the foregoing is true and correct. Executed on

3    June 2, 2020 in Washington D.C.

4

5    Dated: June 2, 2020                                    Respectfully submitted,

6                                                           By: /s/ Jason S. Rathod

7                                                               Jason S. Rathod

8                                                           **MIGLICACCIO & RATHOD LLP**
                                                            JASON S. RATHOD, *pro hac vice*
9                                                           412 H St NE, Suite 302
                                                            Washington, DC 20002
10                                                          Telephone (202) 470-3520
                                                            jrathod@classlawdc.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

This Confidential Settlement Agreement and Release (the "Settlement Agreement") is made by and between Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan, and Kevin Calderon ("Plaintiffs"), and Libre by Nexus ("LBN").

**RECITALS**

WHEREAS, on February 15, 2017, Plaintiffs filed a putative class action against LBN in the United States District Court, Northern District of California, entitled *Vasquez et al. v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW (the "Action"), asserting numerous claims for violations of California and federal law;

WHEREAS, on July 10, 2017, LBN moved to dismiss a portion of the complaint and to compel arbitration;

WHEREAS, on August 20, 2018, the court presiding over the action denied LBN's motion to compel arbitration and granted in part and denied in part LBN's motion to dismiss;

WHEREAS, on December 6, 2018, Plaintiffs filed the operative Third Amended Complaint in this Action, asserting claims for violations of the California Unfair Competition Law, the California Consumers Legal Remedies Act, the federal Fair Debt Collection Practices Act, and California's Rosenthal Fair Debt Collection Practices Act;

WHEREAS, on September 18, 2018, LBN appealed the court's denial of its motion to compel arbitration, and the appeal remains pending (the "Appeal");

WHEREAS, on or before December 15, 2019, the Plaintiffs will file a joint motion for leave to file an amended Settlement Complaint defining the Settlement Class, the Former and Current Program Participant Payments Subclass, the Sponsor Payments Subclass, and adding Plaintiff Kevin Calderon as class representative of the Sponsor Payments Subclass;

WHEREAS, Plaintiffs' Counsel and Defendant's Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in this Action.  Such investigation and discovery included: the exchange and review of thousands of pages of documents, including of electronically stored information; depositions of the Named Plaintiffs and

a 30(b)(6) deposition of LBN; and Plaintiffs' Counsel's review of confidential financial information provided by LBN;

WHEREAS, prior to the consummation of this agreement, the Parties participated in several all-day mediation sessions, including three with Hon. James R. Lambden of ADR Services, Inc. and two with Jill R. Sperber, Esq. of Judicate West, as well as several other in-person sessions (including two in Washington D.C. and one in San Francisco) and telephonic sessions without the assistance of a mediator;

WHEREAS, on Sept. 4, 2019, the Parties participated in an all-day mediation session with Ms. Sperber that resulted in a term sheet and the settlement memorialized in this Settlement Agreement. The Settlement Agreement was arrived at after extensive arm's length negotiations conducted in good faith by counsel for the Parties, and is supported by the Plaintiffs. The Parties did not negotiate attorneys' fees and costs until after relief had been fashioned for the Settlement Class;

WHEREAS, the Parties agree that LBN's service facilitates the much-needed freedom of immigrants from detention;

WHEREAS, the Parties agree that the foregoing Settlement Agreement is not an admission of liability by LBN or by Plaintiffs that their claims lacked merit;

WHEREAS, Plaintiffs and Plaintiffs' Counsel, after taking into account the risks and the costs of further litigation, are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Action and the provision of effective relief to the Class are in the best interest of the Settlement Class Members;

WHEREAS, it is the intention of the Parties to settle and dispose of, fully and completely, any and all claims, demands and causes of action that are or could have been asserted by Plaintiffs in the Action, including the Appeal.

**NOW THEREFORE**, in consideration of the mutual promises contained herein, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, it is hereby agreed by and between the Parties as follows:

# I.   <u>DEFINITIONS</u>

a.      "Class Counsel" means Centro Legal De La Raza, Migliaccio & Rathod LLP, and Tycko & Zavareei LLP.

b.      "Class Notice" means the Court-approved "Notice of Class Action Settlement" as described more fully in Section IV, below.

c.      "Class Representatives" means Juan Quintanilla Vasquez, Gabriela Jamileth Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon.

d.      "Court" means the United States District Court, Northern District of California.

e.      "Defendant's Counsel" means Davis Wright Tremaine LLP.

f.      "District Court Final Approval Date" means the day on which the Court's Settlement Approval Order and Final Judgment (defined at paragraph I.i. below) is entered.

g.      "Fee and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses, which is not to exceed Eight Hundred Thousand Dollars ($800,000.00). Any Fee and Expense shall be deducted from the Settlement Amount but not from the Cash Settlement Fund reserved for cash payment to Settlement Class Members, as defined below.

h.      "Final Approval Hearing" means the hearing held by the Court to determine whether to finally approve the settlement set forth in this Settlement Agreement as fair, reasonable and adequate.

i.      "Final Settlement Approval Date" means the date which is thirty one (31) days after entry of Settlement Approval Order and Final Judgment on the Parties and all objectors to the Settlement Agreement, if any, without any appeal being taken, or if an appeal or request for review has been taken, the date on which the Settlement Approval Order and Final Judgment has been affirmed by the court of last resort to which an appeal or request for review has been taken and such affirmance is no longer subject to further appeal or review, or the date of denial of review after exhaustion of all appellate remedies.

j.      "Incentive Awards" means any awards sought by application to and approved by the Court that are payable to the Class Representatives from the Class Settlement Amount, not to exceed Forty Thousand Dollars ($40,000.00) total. Any Incentive Awards shall be deducted from the Settlement Amount but not from the Cash Settlement Fund reserved for cash payment to Settlement Class Members, as defined below.

k.      "ICE" means United States Immigration and Customs Enforcement.

l.      "DHS" means United States Department of Homeland Security.

m.      "LBN Contract" is defined to mean all paperwork provided by LBN to or signed by LBN program participants and/or sponsors, a current copy of which will be attached as an exhibit to the Motion for Preliminary Approval. .

n.      "Notice and Other Administrative Costs" means all costs and expenses actually incurred by the Settlement Administrator (defined below) in the publication of Class Notice, providing notice as required by 28 U.S.C. § 1715(b), establishment of the Settlement Website, and the processing, handling, reviewing claims, and opt-outs, or as otherwise agreed to by the Parties and the Claims Administrator or as ordered by the Court.  All such costs and expenses shall be deducted from the Settlement Amount but not from the Cash Settlement Fund reserved for cash payment to Settlement Class Members, as defined below.

o.      "Parties" means Juan Quintanilla Vasquez, Gabriela Jamileth Perdomo Ortiz, Victor Hugo Catalan Molina, Kevin Calderon, and LBN.

p.      "Preliminary Approval" means that the Court has entered an order preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing and content of notice to Settlement Class Members.

q.      "Preliminary Approval Date" means the date on which the Court enters an Order granting Preliminary Approval.

r.      "Preliminary Approval Order" means the order preliminarily approving the settlement and proposed Class Notice, substantially in the form attached hereto as Exhibit A.

s.      "Program Payments" is defined as monthly payments subsequent to the program participant's release from detention, and therefore excludes the initial payment and set up fees made by the program participants and/or their sponsors and are not bond collateral payments.

t.      "Released Persons" means:

i.      "LBN Releasees": LBN and each of its present, former, and future parents, predecessors, successors, assigns, assignees, affiliates, subsidiaries, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, insurers, bond companies and each person or entity acting or purporting to act for them or on their behalf; and

ii.     "Plaintiff Releasees": Plaintiffs and each Member of the Payment Subclasses who has fully paid their obligations to LBN and who has not opted out of the Settlement Class.

u.      "Residual Funds" means the amount of any checks issued to Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass that remain uncashed one hundred eighty [180] days after the date of issuance.

v.      "Response Deadline" means the date by which Settlement Class Members must file exclusions from or objections to the settlement.

w.      "Settlement Administrator" means the independent third-party administrator to be retained to provide services in the administration of this settlement, including providing Class Notice to the Settlement Class Members, the processing and evaluation of Claims, and the processing of other documents or tasks as provided for in this Settlement Agreement or as otherwise agreed to by the Parties or as ordered by the Court. The name of the Settlement Administrator is:  JND Legal Administration.

x.      "Settlement Amount" Settlement Amount, as used herein, means an amount of $3,200,000 in monetary consideration (including the value of debt forgiveness, the value of cash

payments, settlement administration and notice costs, incentive awards, and attorneys' fees and costs) to be made available by LBN pursuant to this settlement, which represent LBN's total monetary liability under this Settlement Agreement. The Settlement Amount is non-reversionary. The monetary consideration to the Settlement Class from the Settlement Amount is comprised of two distinct parts – the "Cash Settlement Fund" and the "Debt Forgiveness Fund" as defined below:

   i. The "<u>Cash Settlement Fund</u>" consists of Seven Hundred and Fifty Thousand Dollars ($750,000) of the Settlement Amount that will be reserved to be paid to the Former and Current Program Participant Payments Subclass and to the Sponsor Payments Subclass (collectively, the "Payments Subclasses").

   ii. The "<u>Debt Relief Fund</u>" consists of the remainder of the Settlement Amount after payment of the Cash Settlement Fund, Notice and Other Administrative Costs, Incentive Awards, and the Fee and Expense Award.

  y. "<u>Settlement Approval Order and Final Judgment</u>" means an order and judgment issued and entered by the Court, substantially in the form as that attached hereto and made a part hereof as Exhibit B, approving this Settlement Agreement as binding upon the Parties and the Settlement Class Members and dismissing the Action with prejudice, and setting the amount for an award of attorneys' fees and costs not to exceed twenty-five percent of the total Settlement Amount to Class Counsel. The Settlement Approval Order and Final Judgment shall constitute a judgment within the meaning and for purposes of Rule 54 of the Federal Rules of Civil Procedure. The Parties jointly shall request the Court to enter the proposed Settlement Approval Order and Final Judgment substantially in the form attached hereto and made a part hereof as Exhibit C.

  z. "<u>Settlement Class</u>" shall be defined as all current or former LBN "program participants" and "sponsors" who paid, or caused to be paid on their behalf, a fee to LBN. Excluded from the Class are: (a) individuals for whom LBN or any surety or bond company has paid a treasury invoice or the bond or for whom a demand for payment for breach of a bond has been made by the U.S. Government which remains outstanding or open; (b) any judge or magistrate

presiding over this action and members of their families; (c) Defendant and its current or former employees; and (d) all persons who properly execute and file a timely request for exclusion. The Settlement Class is comprised of three Subclasses:

i.       "The Current Program Participant Subclass" shall be defined as all current LBN "program participants" and "sponsors" who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN.

ii.       "The Former and Current Program Participant Payments Subclass" shall be defined as all former LBN "program participants" who paid, or caused to be paid on their behalf, a Program Payment to LBN and all current LBN program participants who, within six months of the Final Settlement Approval Date have been issued a Form I-391. LBN represents that, as of September 4, 2019, data from surety companies and otherwise reveals that there are 2,214 I-391 Forms that have been issued to LBN program participants.

iii.       "The Sponsor Payments Subclass" shall be defined as all sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

aa.   "Settlement Class Members" means those persons who are members of the Settlement Class and who do not timely and validly request exclusion from the Settlement Class.

bb.   "Settlement Website" means a website operated and maintained by the Settlement Administrator solely for purposes of making available to the Settlement Class Members the documents, information, and Form I-391 submission process described in Section IV.E.8 below.

## II.      SETTLEMENT CONSIDERATION

### A.      Monetary Benefit to Settlement Class Members.

1.       Benefit to the Settlement Class Members from the Settlement Amount. The $3.2 Million Settlement Amount will be used to provide benefits to or on behalf of the Settlement Class as follows: (i) cash payments to the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass, (ii) debt relief to the Current Program Participant Subclass, (iii) payment of Notice and Other Administrative Costs actually incurred by the

Settlement Administrator, discussed in Section II.A.c.i. below, (iv) the Fee and Expense Awards, discussed in Section II.A.1.c.ii below, and (v) any Incentive Awards to the Class Representatives, as discussed in Section II.A.1.c.ii below.

    a.    <u>Cash Payments to the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass</u>: Pursuant to the schedule below, LBN will pay $750,000 to the Settlement Administrator to distribute to the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass in cash payments. Each member of the Payments Subclasses shall be entitled to receive a *pro rata* payment from the Payments Subclasses Cash Settlement Fund. The *pro rata* payment shall be the cash payment amount ($750,000) divided by the number of Settlement Class Members in the Former and Current Program Participant Subclass and Sponsor Payments Subclass. The checks shall indicate that they expire one hundred eighty [180] days after the date of issuance.

    i.    <u>Distribution of Residual Funds</u>: Any Residual Funds shall be distributed by the Settlement Administrator on a *pro rata* basis to members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass who cashed the first check sent to them within sixty [60] days after the expiration of the checks issued pursuant to paragraph II.A.1.a. If any funds are remaining after this second distribution, those funds will be paid, subject to the Court's approval, to the following 26 U.S.C. § 501(c)(3) non-profit organizations:  Al Otro Lado; Northwest Immigrant Rights Project.

    b.    <u>Debt Relief to the Current Program Participant Subclass</u>: The remainder of the Class Settlement Amount, after payment of the Payments Subclasses Cash Settlement Fund, Notice and Other Administrative Costs, Incentive Award, and Fee and Expense Award, will consist of credits to be made to the accounts of current program participants for past due program fees due and owing as of the date the Plaintiffs file their motion for Preliminary Approval. Each member of the Current Program Participant Subclass shall be entitled to receive a *pro rata* credit from the Debt Relief Fund. The *pro rata* credit shall be the Debt Relief Fund divided by the number of Settlement Class Members in the Current Program Participant Subclass.

However, for each member of the Current Program Participant Subclass who has past due program fees lower than the *pro rata* payment, the *pro rata* payment amount in excess of the past due program fees shall be redistributed to members of the Subclass with remaining past due program fees.  This process shall continue until the Debt Relief Fund is exhausted.

      c.    <u>Schedule of LBN's Payments of the Settlement Amount:</u> LBN shall make payments of the Settlement Amount in accordance with the following schedule:

      i.    <u>Initial Deposit</u>: LBN shall pay an initial deposit for Notice and Other Administrative Costs to the Settlement Administrator within [14] days of the Preliminary Approval Date, and shall thereafter make periodic payments of Notice and Other Administrative Costs within [30] days after approval by Class Counsel and LBN's Counsel of an invoice by the Settlement Administrator.  Any such deadline may be extended by mutual consent of the Parties.

      ii. <u>Payments of Cash Settlement Fund, Fee and Expense Award, and Incentive Awards:</u> LBN shall have paid to the Settlement Administrator the $750,000 amount for the Cash Settlement Fund, the amount of the Fee and Expense Award, and the amount of any Incentive Awards to the Class Representatives, as approved by the Court, upon the following occurrences:

      a.    Beginning December 1, 2021, if Libre's gross revenues reach the following thresholds, representing the amount of Libre's revenues with a one-year look back when compared to Libre's 2019 revenues (the "Benchmark"), Libre shall pay into an escrow account established by the Settlement Administrator the following amounts to fund the Cash Settlement Fund, Fee and Expense Award, and Incentive Awards, until such amounts are paid in full:

- 75%-80%   -   $1,000 week
- 80%-90%         $10,000 week

- 90%-100%          $25,000 week
- 100%-110%        $100,000 week

The Benchmark shall be re-determined on a quarterly basis, such that Libre's commitment the escrow fund shall increase or decrease based on Libre's Benchmark for that quarter. The Settlement Administrator shall be responsible for disbursing the Cash Settlement Fund, Fee and Expense Award, and Incentive Awards from the funds that Libre places in escrow pursuant to a schedule the parties shall agree upon to minimize settlement administration and check printing and mailing expenses.

b.  In the event that the foregoing payment schedule does not satisfy the total amount by January 1, 2023, then the balance due will be paid in twelve (12) equal monthly installments beginning January 20, 2023.

In all cases, the Settlement Administrator shall be responsible for timely and properly filing all informational and other tax returns necessary or advisable with respect to the Settlement Fund.

iii.   Credits: LBN shall apply the credits to the accounts of current program participants for past due program fees due and owing as of the date the Plaintiffs file their motion for Preliminary Approval, within [20] days after: (a) the Final Settlement Approval Date; and (b) Class Counsel informs LBN in writing of the *pro rata* payment formula for the credits.

2.   Additional Monetary Relief for the Current Program Participant Subclass:

a.   Consecutive Payment Discounts: Program participants who make three (3) consecutive monthly payments on time and in full will have their monthly recurring fee reduced by ten percent (10%) [the "Consecutive Payment Discount"]. Program participants who

make an additional three (3) consecutive monthly payments on time and in full (for a total of 6 consecutive on time and in full payments) will have their monthly recurring fee reduced by a further ten percent (10%) from the original fee amount set for each program participant [the "Second Consecutive Payment Discount"] for a total of a twenty percent (20%) discount from their original recurring fee.  LBN shall identify the program participants who are eligible for the Consecutive Payment Discount and Second Consecutive Payment Discount on the 15th day following January 1 and the 15th day following July 1 in each calendar year, and the discount shall be applied on the next full month following the identification of qualifying program participants (i.e. in February and August). Program participants shall receive their respective 10% or 20% discounts going back to the time of compliance, even though LBN would not identify or apply those discounts until later. For instance, if a participant makes three full and timely payments in February, March, and April, they are entitled to the 10% discount for May and June; for logistical reasons, LBN may not identify the participant until July or apply the discount until August, but the participant should be credited at the reduced rate for May and June (even if they made a late or partial payment those months). The mandatory nature of the Consecutive Payment Discounts shall sunset three years after the Final Settlement Approval Date.

        b.    <u>Timely and In Full Payment Discount</u>: If, as of the Final Settlement Approval Date, a program participant currently pays more than $420 per month in monthly recurring program fees, and that program participant pays on time and in full by the first of the month, such program participant's monthly recurring fee for the month in which the timely and in full payment was made shall be reduced to $415.

        c.    <u>Total Payment Cap:</u> To provide more certainty and clarity to program participants who are fully compliant with performance and payments regarding the total amount in Program Payments they may have to make, LBN will impose a total payment cap for Program Payments, excluding the initial payment and set up fees made by the program participants and/or their sponsors, to an amount not to exceed the face amount of the bond.  This in no way

constitutes an admission or concession that program participants' fees are not connected to LBN's suite of services.

d.      As used in this section, a payment shall be considered "on time and in full" when the full amount of such monthly recurring payment is received by LBN before midnight on the second business day of each month.  LBN will not charge program participants late fees if payments are received after the second business day of each month, so long as the full amount owed is received at some point during the month in which the fee is due.

e.      LBN shall implement the above cap providing additional monetary relief within twenty [20] days after the Court enters the Preliminary Approval Order.

f.      LBN shall implement the above discounts providing additional monetary relief by the later of April 1, 2020, or within twenty [20] days after the Final Settlement Approval Date.

**B.      Non-Monetary Benefits to Settlement Class Members.**

1.      LBN's Business Practices. Upon or before the later of April 1, 2020, or within twenty [20] days of the Final Settlement Approval Date, LBN will provide the following programmatic and other non-monetary benefits to Settlement Class Members:

a.      Translate Contract: LBN will translate changes made to the LBN Contract into Spanish by a court-certified translator. Within a reasonable period of time, but no later than three months after the Final Settlement Approval Date, LBN will translate the LBN Contract into any language for which the percentage of program participants met or exceeded five percent (5%) of the total volume of program participants as of January 1, 2019.  LBN's best present estimate is that, based on current figures, the LBN Contract will need to be translated into one additional language;

b.      Post Contract and Audio Online, and Offer Verbal Translations: LBN will post the LBN Contract on its website. LBN will also post audio versions of the LBN Contract in Spanish on its website. Before a prospective program participant or sponsor signs any

part of the LBN Contract, LBN will offer to play the audio version or orally read the terms of the contract into Spanish for any Spanish-speaking potential participant or sponsor;

        c.     <u>Clear and Concise Contract Terms</u>: The LBN Contract will continue to inform program participants, in clear and concise terms, of the contours of the contract they are entering into;

        d.     <u>Best Efforts to Mail</u>: When feasible, LBN will also use best efforts to mail the LBN Contract to prospective program participants so that they receive the documents and are able to review them prior to release from ICE custody. Notwithstanding the foregoing, LBN shall not be required to mail the LBN Contract if such mailing would significantly delay the release of the prospective program participant and shall not be required to prove or document that the program participant actually received the LBN Contract prior to release;

        e.     <u>Sponsor Rights and Opportunities</u>: Prior to the release of a prospective program participant ("prospective participant") from ICE custody and before the prospective participant signs any part of the LBN Contract, LBN will obtain from the sponsor a representation that the sponsor: (a) received or had access to the LBN Contract prior to the prospective participant's release; (b) had the right and opportunity to consult with an attorney of their choice; (c) had the right and opportunity to meet in person (if allowed by the detention facility) or via telephone with the prospective participant, privately and outside the presence of LBN to discuss the Contract prior to the prospective participant signing; and (d) had the right and opportunity to have the LBN Contract translated by the entity of their choice. The sponsor shall further attest, prior to the prospective participant's release, that he or she understands these rights and (1) that he or she used best efforts to contact the prospective participant, in person or by telephone, (2) that if possible, he or she went over all of the terms of all of the LBN Contract with the prospective participant, and (3) that the prospective participant has advised the sponsor that they understand and agree to all of the terms of the Contract.

        f.     <u>Provide Contract to Participants Prior to Signing</u>: Before a prospective participant signs any part of the LBN Contract, LBN will provide the prospective

participant with the LBN Contract and provide the oral translation or translation opportunity set forth above.

g.  <u>No Immigration-Related Threats</u>: LBN and its agents will not threaten, verbally or in writing, to report any program participant, sponsor, or family member to ICE or otherwise threaten immigration detention.  LBN may, however, inform program participants of the potential consequences of failing to appear for hearings. In the case of program participants for which a bond has been breached and a notice of breach has been issued by DHS, LBN or its subsidiaries may have a duty to produce the individual program participant to DHS.

h.  <u>Modified Criminal Prosecution Language</u>: LBN shall remove the current language in Paragraph 3.4 of the LBN Contract, but may include the following disclosure in its contracts with program participants, in lieu of the current language: "Please Note: Destroying, tampering with, or disabling LBN's GPS monitoring device by anyone other than a law enforcement officer or LBN or any of its authorized agents, may result in criminal prosecution. Please contact LBN if you need assistance in order to avoid tampering with the device."

i.  <u>Debt Collection Representations</u>: To date, LBN has neither engaged in "debt collection" activities through external providers, nor provided adverse information about a program participant's credit-worthiness in the past.  For the Settlement Class Members, LBN has no present intention to engage in "debt collection" activities for past due monthly recurring Program Payments through external providers as to any debts owed as of September 1, 2019.

j.  <u>Fee Waiver Program</u>: LBN will continue its fee waiver program for financially distressed clients in which it awards waivers of its fees (in whole or in part) on a needs basis each year.  Program participants who receive such a fee waiver are not be required to make any payment for the approved month or months, such time periods to be specifically agreed to by LBN in writing and which may include month to month waivers on a case-by-case basis.  LBN will post on its website fee waiver forms for financial hardship and agrees to continue such fee waiver program the value of fee waived to be determined by LBN but which shall not be less than

$150,000 per year. LBN shall have the sole and exclusive right to determine which program participants shall be entitled to participate in the fee waiver program.

        k.     <u>GPS Monitor Removal for Pregnancy or Medical Necessity</u>: LBN will use commercially reasonable best efforts to ensure that leg-affixed GPS monitors are removed in the event of pregnancy or medical necessity within fourteen [14] days of the date that LBN receives the request for removal (with supporting documentation from a licensed physician or licensed physician's assistant) if the program participant is able to present to a LBN office, and within sixty [60] days if the program participant is not able to visit an LBN office. LBN reserves the right to require an independent medical examination by an LBN-approved licensed physician (at LBN's cost) prior to approval of a GPS removal request. LBN reserves the right (in its sole and absolute discretion) to require the program participant whose leg-affixed GPS device is removed to wear and/or use a smaller GPS device (such as a wrist unit) or to use another electronic check-in device or method following removal of the leg-affixed GPS device.  Any monitoring device shall be subject to removal if pregnancy or other medical need requires, subject to the documentation and verification requirements above.

        l.     <u>No Leg-Affixed GPS Monitors for Bonds Under $7,500</u>: Unless required in writing by a bond company or a surety company for a particular potential client, LBN will not require a leg-affixed GPS monitor for new program participants who have an immigration bond with a face value of less than $7,500, but may in its discretion, require a wrist monitoring GPS unit or other electronic check-in device.  LBN's best present estimate is that, based on current figures, approximately 19% of program participants have bonds under $7,500.

        m.     <u>GPS Monitor Removal and No Further Payments Upon Termination of Immigration Proceedings</u>: Upon its receipt of an I-391 or I-210, LBN shall also remove any GPS monitor, stop all GPS monitoring, and stop all monthly payments, upon verification that a program participant's removal case has terminated, and if necessary, their compliance with a removal order, with documentation as set forth in Appendix A and posted on LBN's website.  If the program participant presents to a LBN office with the appropriate documentation during

regular business hours for staffed offices, the removal of the GPS monitor shall be done immediately.  If the program participant does not present to a LBN office, the removal of the GPS monitor shall be done within thirty [30] days.  If the program participant does not have the I-391 but can present documentation sufficient to prove that an I-391 will be issued as set forth in Appendix A, LBN shall suspend payments and GPS monitoring and remove any leg-affixed GPS monitor but may, in its sole discretion, require telephone check-ins or other forms of monitoring until the I-391 is received by LBN.  If the program participant presents to a LBN office, the removal of the leg-affixed GPS monitor shall be done immediately.  If the program participant does not present to a LBN office, the removal of the leg-affixed GPS monitor shall be done within thirty [30] days.

> n.      <u>Less Intrusive and Reduced Monitoring</u>: LBN also represents that: (1) since the commencement of this lawsuit, the percentage of program participants wearing ankle monitors has been reduced substantially to approximately 27% percent; and (2) LBN has transitioned program participants to a technologically upgraded ankle monitor.  LBN shall: (1) ensure that such use percentages do not increase relative to the total population of LBN clients; and (2) use best efforts to lower these use percentages going forward. LBN will within a reasonable period of time, but no later than December 31, 2020, ensure that all program participants who wear ankle monitors have the technologically upgraded ankle monitor used by the company so long as such program participants present to LBN offices. Within a reasonable period of time, but no later than December 31, 2021, LBN agrees to use commercially reasonable efforts to transition away from use of ankle monitors altogether and to instead use a wrist bracelet monitor or other similarly less intrusive monitors, such as cellular telephones or periodic check-ins.. LBN, however, shall be excused from compliance with the terms of this paragraph to the extent such compliance is prohibited by government regulations or written requirements of a surety company, with such writing provide to Plaintiffs' counsel by LBN.

### III.   CLASS COUNSEL ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

A.      Attorneys' Fees, Costs and Expenses. On or before twenty-one (21) days prior to the Response Deadline, Class Counsel will petition the Court for an award of attorneys' fees and costs in an amount not to exceed twenty-five percent of the total $3.2 Million Settlement Amount (the "Fee Application"). LBN agrees not to oppose a request for attorneys' fees and expenses that does not exceed twenty-five percent of the Settlement Amount. The Attorneys' Fees and Costs Award in the amount of twenty-five percent of the Class Settlement Amount shall be the total obligation of LBN to pay for attorneys' fees, costs and/or expenses of any kind.

B.      Incentive Awards. On or before twenty-one (21) days prior to the Response Deadline, Class Counsel will petition the Court for approval of Incentive Awards payable to the Class Representatives in amounts not to exceed $10,000 for each Class Representative, for a total of $40,000 (the "Service Award Application").

C.      LBN shall pay the Fee and Expense Award, and any Incentive Awards to the Class Representatives to the Settlement Administrator pursuant to the schedule set forth in paragraph II.A.1.c.ii  above.

### IV.   NOTICE TO CLASS AND ADMINISTRATION OF SETTLEMENT

A.      Preserving Confidentiality of Class Member Information. The Settlement Administrator has executed a Confidentiality Agreement. The Settlement Administrator, Class Counsel, and Defendant's Counsel understand and agree that they will be provided with certain personal identifying information relating to Settlement Class Members, they agree to keep this information secure and not to disclose or disseminate this information to any third parties, and they agree such information will be used solely for the purpose of effecting this settlement. The Confidentiality Agreement executed by the Settlement Administrator provides additional provisions for protection of Class Member information that may be provided to it during the course of administering this settlement.

B.     Class Notice. The Class Notice is attached hereto as Exhibit D and the Parties agree that it conforms to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clauses), and any other applicable law, but is subject to approval and revision, in manner and form, by the Court.

C.     General Notice Terms. The Class Notice:

1.     Informs Settlement Class Members that, if they do not exclude themselves from the Class, they may be eligible to receive the relief under the proposed settlement;

2.     Contains a short, plain statement of the background of the Action, the Class certification and proposed settlement;;

3.     Describes the proposed settlement relief outlined in this Settlement Agreement;

4.     States that any relief to Settlement Class Members is contingent on the Court's final approval of the proposed settlement.

D.     Notice of Exclusion and Objection Rights. The Class Notice informs Settlement Class Members of their rights to exclude themselves from the Class or object to the proposed settlement, as described in paragraph IV.E.9 below.

E.     Time and Manner of Notice.

1.     As soon as practicable, but starting within fourteen (14) days of entry of the Preliminary Approval order, LBN shall provide the Settlement Administrator with access to the telephone numbers for members of the Former and Current Program Participant Payments Subclass Members, and the Sponsor Payments Subclass Members for whom LBN has contact information. In providing such access, LBN may rely on its reasonably available electronic records and is only obligated to provide the last known telephone number as it presently exists in its business records. The access provided to the Settlement Administrator shall be through a secure portal that permits the Settlement Administrator to access the telephone numbers for use in providing notice, but does not permit the Settlement Administrator to download, copy or otherwise retain any numbers or other Settlement Class identifying information onto its servers or other

devices utilized to provide notice to the Settlement Class, except temporarily as necessary to send the notice contemplated in this agreement.  To the extent any such information is downloaded, copied or otherwise retained on a server or device beyond the term necessary to effectuate notice, whether intentionally, or unintentionally, or by operation of the device at issue, all such information shall be immediately deleted upon discovery.

2. <u>Text Message Notice.</u>  As soon as practicable, but starting no later than within thirty [30] calendar days of entry of the Preliminary Approval Order, the Settlement Administrator shall send a text message in both English and Spanish to all the Former and Current Program Participant Payments Subclass Members, and the Sponsor Payments Subclass Members for whom LBN has telephone numbers.  The text messages will be substantially similar to the sample notice contained in Exhibit E, and will provide details on how to access a prerecorded message that will be in English and Spanish and that provides information to the Settlement Class on the settlement and how to access the Settlement Website.  If a text message sent to a Settlement Class Member fails to send, the Settlement Administrator will make up to two additional text message attempts on days and times chosen by the Settlement Administrator as reasonably likely to achieve delivery.

3. <u>Postcard Notice</u>.  If, even after the two additional text message attempts, a text message fails to send or the Settlement Administrator receives other information indicating that the message did not reach the intended recipient, the Settlement Administrator shall send a Postcard Notice by mail to that Settlement Class Member.  For any such Postcard Notice LBN shall provide the Settlement Administrator with access to mailing addresses for such Class Members for whom LBN has contact information. In providing such access, LBN may rely on its reasonably available electronic records and is only obligated to provide the last known mailing address as it presently exists in its business records. The access provided to the Settlement Administrator shall be through a secure portal that permits the Settlement Administrator to access the mailing addresses for use in providing notice, but does not permit the Settlement Administrator to download, copy or otherwise retain any addresses or other Settlement Class identifying

information onto its servers or other devices utilized to provide notice to the Settlement Class, except temporarily as necessary to send the notice contemplated in this agreement.  To the extent any such information is downloaded, copied or otherwise retained on a server or device beyond the term necessary to effectuate notice, whether intentionally, or unintentionally, or by operation of the device at issue, all such information shall be immediately deleted upon discovery. The Postcard Notice will be substantially similar to the sample notice contained in Exhibit F.

   4. <u>Publication Notice.</u>  As soon as practicable, but starting within thirty (30) calendar days of entry of the Preliminary Approval Order, the Settlement Administrator shall place a notice of the settlement in the following periodicals: La Opinion, El Sol, and El Mundo and mail the publication notice to the following organizations: American Immigration Lawyers Association, National Immigration Project of the National Lawyers Guild. The Publication Notice will be substantially similar to the sample notice contained in Exhibit G.

   5. <u>Posting of the Class Notice.</u> As soon as practicable, but starting within thirty (30) calendar days of entry of the Preliminary Approval Order, the Settlement Administrator will post the Class Notice referenced in paragraph IV.B. on the Settlement Website.

   6. <u>Additional Information for the Class.</u>

   a. <u>Settlement Website</u>. Prior to the date on which the Settlement Administrator initiates the Class Notice, the Settlement Administrator shall also establish the Settlement Website, which shall contain:

    i. The Class Notice, in both Spanish and English.

    ii. A contact information page that includes the address for the Settlement Administrator and addresses and telephone numbers for Class Counsel and Defendant's Counsel;

    iii. The Settlement Agreement;

    iv. The signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof;

v.      A description of the method by which Settlement Class Members may submit their I-391s; and

vi.     (when they become available) the publicly filed motion for Final Approval, Fee Application, Service Award Application, and any papers and declarations in support thereof.

b.     The Settlement Website shall remain accessible until thirty (30) calendar days after the Settlement Administrator has completed its obligations under this Settlement Agreement.

7.     <u>Responsibilities of Settlement Administrator.</u> The Parties will retain one or more Settlement Administrators (including subcontractors) to help implement the terms of the proposed Settlement Agreement. The Settlement Administrator(s) shall be responsible for administrative tasks, including, without limitation (a) notifying the appropriate state officials about the settlement, (b) arranging, as set forth herein, for distribution of Class Notice (in the form approved by the Court) to Settlement Class Members, (c) answering inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel or their designee, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (e) establishing the Settlement Website that posts notices and other related documents, (f) receiving and processing claims and distributing payments, and (g) otherwise assisting with implementation and administration of the Settlement Agreement terms. The actual costs and expenses of the Settlement Administrator, which the Settlement Administrator has agreed shall be no more than $80,000, will be paid from the Settlement Amount.

8.     <u>Process for Obtaining Monetary Relief from the Settlement Amount.</u> Members of the Former and Current Program Participant Payments Subclass, and the Sponsor Payments Subclass, for whom LBN has a record of having been issued a Form I-391 within six [6] months of the Final Settlement Approval Date, and who have not timely excluded themselves

from the settlement, will automatically receive a *pro rata* share of the $750,000 Cash Settlement Fund from the Settlement Amount set aside for the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  Members of the Former and Current Program Participant Payments Subclass, and the Sponsor Payments Subclass, may also submit a Form I-391 to LBN, or to the Settlement Administrator through means set forth on the Settlement Website, which shall include options to submit in paper via first class mail or online at the Settlement Website.  Any valid Form I-391 received by the Settlement Administrator or LBN on or before the date six months from the date of the Final Settlement Approval Date shall be considered timely submitted for purposes of including the Class Member in the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  These Settlement Class Members, who have not timely excluded themselves from the settlement, will receive a *pro* rata share of the $750,000 Cash Settlement Fund from the Settlement Amount set aside for the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  Payments of the *pro rata* share of the Settlement Amount shall be made in the manner and pursuant to the schedule set forth in paragraph II.A.1.c.ii.

9.  Requests for Exclusion. As set forth below, Settlement Class Members shall have the right to opt out of the Class and this settlement.

a.  In the event a Settlement Class Member wishes to be excluded from the settlement and not to be bound by this Settlement Agreement, that person must, prior to the Response Deadline, submit in paper via first class mail or online at the Settlement Website a notice of intention to opt-out of the settlement to the Settlement Administrator. The request for exclusion, must: be postmarked or submitted online before the Response deadline; include the Settlement Class Member's name, address, and telephone number; be signed and dated by the Settlement Class Member; and contain a clear request that the individual would like to "opt-out" or be excluded, by use of those words or other words clearly indicating a desire not to participate in the settlement. Any Settlement Class Member who timely and properly requests exclusion in

compliance with these requirements will not be entitled to any benefit under the settlement, and will not be bound by this Settlement Agreement or the Final Approval Order and Judgment.

10.   <u>Objection Requirements.</u> As set forth below, any Settlement Class Member may object to this Settlement Agreement, the Fee Application, and/or the Incentive Award application.

a.   Any Settlement Class Member who has not submitted a timely opt-out form and who wishes to object to the fairness, reasonableness, or adequacy of the settlement must sign and mail a letter to the Settlement Administrator, stating their intention to object to the settlement.

b.   For a written objection to be considered, the written objection must:

    i.   be postmarked on or before the Response Deadline;

    ii.   include the objecting Settlement Class Member's name, address, and telephone number,

    iii.   be personally signed and dated by the objecting Settlement Class Member;

    iv.   state each objection and the specific legal and factual bases for each; and

    v.   include proof that the Settlement Class Member is or was an LBN program participant.

11.   <u>Failure to Object</u>. Any Settlement Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed settlement, Fee Application, Fee and Expense Award, Incentive Award Application, or Incentive Awards.

12.   <u>Responses to Objections</u>. The Class Representatives, Class Counsel, and/or LBN may file responses to any timely written objections no later than seven (7) days prior to the Final Approval Hearing.

## V.     **MUTUAL RELEASES**

A.     <u>Release by Settlement Class Members</u>.  Upon the Final Settlement Approval Date, each Plaintiff and each Settlement Class Member who has not opted out of the Settlement Class releases, waives, and forever discharges LBN Releasees from any and all claims they have or may have against the LBN Releasees with respect to any claim or issue which was or could have been brought in the litigation as of the Final Settlement Approval Date, any claim related to payments, services or products offered by LBN, and any claim regarding the manner of Class Notice (the "Released LBN Claims").  Settlement Class Members acknowledge that they have been fully and fairly compensated for all claims that have been made or which could have been made as of the date of the settlement.  The foregoing acknowledgement is not intended to limit the rights and remedies available, if any, to any regulatory authorities.  The Parties acknowledge that Plaintiffs and Settlement Class Members cannot release claims brought by governmental entities.

B.     <u>Release by Class Representatives.</u> Upon the Final Settlement Approval Date, the Class Representatives also release all claims arising, or that could arise in the future, out of any conduct or omissions occurring as of the date of the Settlement Agreement that might be attributable to LBN, including waiving any such claims, rights or benefits they may have under Cal. Civ. Code § 1542 and any similar federal or state law, right, rule, or legal principle that may be applicable.  The Parties agree and acknowledge that this waiver is an essential term of this Settlement Agreement.  California Civil Code § 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.

C.     <u>Release by LBN.</u> Upon the Final Settlement Approval Date, LBN releases, waives, and forever discharges Plaintiffs' Releasees from any and all claims it has or may have against the Plaintiff Releasees with respect to any claim for existing Program Payments or fees (the "Released Plaintiffs' Claims").

D.     Sole and Exclusive Remedy.   This settlement shall be the sole and exclusive remedy for any and all claims released in this Section V against any of the Parties.  All releasing Parties shall be barred from initiating, asserting, or prosecuting the released claims as described in this Section V.  The foregoing exclusive remedy and bar terms are not intended to limit the rights, if any, of any regulatory authorities.

## VI.     CERTIFICATION OF THE SETTLEMENT CLASS

A.     The Parties agree, for settlement purposes only, that this Action shall be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3), with a class consisting of all Settlement Class Members, the Current Program Participant Subclass, the Former and Current Program Participant Payments Subclass, and the Sponsor Payments Subclass, with Juan Quintanilla Vasquez, Gabriela Jamileth Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon as Class Representatives, and with Centro Legal De La Raza, Migliaccio & Rathod LLP, and Tycko & Zavareei LLP as Class Counsel.  LBN specifically reserves any and all rights with respect to any individuals who opt out of this settlement, including but not limited to enforcing the terms of the contractual arbitration agreement.

B.     Any certification of a conditional, preliminary, or final settlement class pursuant to the terms of this Settlement shall not constitute, and shall not be construed as, an admission on the part of LBN that this Action, or any other proposed or certified class action, is appropriate for trial class treatment pursuant to the Federal Rules of Civil Procedure or any state or federal class action statute or rule.

## VII.     COURT APPROVAL PROCEDURES

A.     Motion for Preliminary Approval. The Class Representatives, through Class Counsel, shall apply to the Court for entry of the Preliminary Approval Order (substantially in the form attached as Exhibit H) as soon as practicable following the signing of this Settlement Agreement for the purpose of, among other things:

1.     Finding that the requirements for provisional certification the Settlement Class have been satisfied;

2.     Appointing Plaintiffs as the Class Representatives;

3.     Appointing Class Counsel as counsel for the Settlement Class;

4.     Appointing JND Legal Administration as the Settlement Administrator;

5.     Scheduling a Final Approval Hearing on a date ordered by the Court, provided in the Preliminary Approval Order, and in compliance with applicable law, to determine whether the settlement should be approved as fair, reasonable and adequate, and to determine whether the Settlement Approval Order and Final Judgment should be entered dismissing the Action with prejudice;

6.     Approving the Class Notice plan set forth in Section IV above;;

7.     Preliminarily approving the form of the Settlement Approval Order and Final Judgment;

8.     Preliminarily enjoining Plaintiffs and the Settlement Class Members who do not properly and timely request exclusion from the Settlement Class from prosecuting any Released LBN Claims against any LBN Releasees;

9.     Establishing dates by which the Parties shall file and serve all papers in support of the application for final approval of the settlement and in response to any valid and timely objections;

10.     Providing that all Settlement Class Members will be bound by the Settlement Approval Order and Final Judgment dismissing the Action with prejudice unless such Settlement Class member timely files a valid written request to opt out in accordance with this Settlement Agreement and the Class Notice; and

11.     Approving the objection, and exclusion procedures for Settlement Class Members.

B.     <u>Motion for Final Approval.</u> The Class Representatives, through Class Counsel, shall file a motion for Final Approval 100 days after the court grants Preliminary Approval, that seeks to obtain from the Court a final Settlement Approval Order and Final Judgment in the form substantially similar to Exhibit I that does all of the following:

1.      Finds that the Court has personal and subject matter jurisdiction over the Settlement Class Members and the Action, and that venue is proper;

2.      Certifies the Settlement Class for settlement purposes;

3.      Approves the settlement;

4.      Finds that the Class Notice given in the manner described herein constitutes the best notice practicable and in full compliance with California law, federal law, and due process;

5.      Confirms that Class Representative, Settlement Class Members, and LBN have released all released claims described in Section V above and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of those claims against the released parties described in Section V above;

6.      Identifies those who have timely opted out of the settlement; and

7.      Within ninety (90) days of issuing the payments pursuant to paragraph II.A.1.c.ii above, the Parties will provide the Court a report verifying their compliance with this Settlement Agreement to the date of the report.

8.      Court Retains Jurisdiction. The Court retains jurisdiction relating to the administration, consummation, validity, enforcement, and interpretation of this Settlement Agreement, the Settlement Approval Order and Final Judgment, any final order approving the Fee and Expense Award and Incentive Awards, and for any other necessary purpose.

C.      Dismissal of the Appeal. Within seven (7) days of the Final Settlement Approval Date, LBN shall dismiss the Appeal with prejudice.

D.      Filing of the Third Amended Complaint. Following the execution of this Settlement Agreement, with Court approval, the Parties agree that Plaintiffs will file a Third Amended Complaint that brings claims on behalf of the Sponsor Subclass.

E.      Confidentiality Until Preliminary Approval. The terms of the settlement shall remain confidential until the Parties move for preliminary approval.

F.    <u>Mutual Non-Disparagement</u>. The Parties and their counsel agree not to make any disparaging public statements about the Parties and counsel.  The Parties agree that they will not make any statements to undermine, disparage, and discredit the settlement before, during and after the settlement approval process.

G.    <u>Counterparts</u>. This **Settlement** Agreement may be executed in one or more counterparts, with the same force and effect as if executed in one complete document.

H.    <u>Facsimile Signature Deemed Original</u>. The Parties and their counsel may execute this Settlement Agreement in counterparts (any one or all of which may be facsimile or PDF/electronic copies), and execution in counterparts shall have the same force and effect as if all signatories had signed the same document.

I.    <u>Effectiveness of Agreement.</u> This Settlement Agreement shall become effective upon the last date of its execution by all of the persons for whom signature spaces have been provided below.

J.    <u>Authority</u>. Each individual signing this **Settlement** Agreement warrants and represents that he or she has full capacity and authority to execute the **Settlement** Agreement on whose behalf he or she so signed.

K.    <u>Governing Law</u>. This **Settlement** Agreement is made and entered into in the State of California and shall, in all respects, be interpreted, enforced and governed by and under the laws of the State of California, without regard to conflict of law provisions.

L.    <u>Amendments and/or Modifications</u>. This **Settlement** Agreement may be amended or modified only by a writing signed by all Parties to this **Settlement** Agreement.

M.    <u>Headings</u>. Paragraph headings are for reference only and shall not affect the interpretation of any paragraph thereto.

N.    <u>Warranty</u>. Each of the Parties to this **Settlement** Agreement warrants that no promise or inducement has been made or offered by any of the Parties, except as set forth herein, and that this **Settlement** Agreement is not executed in reliance upon any statement or representation of any of the Parties or their representatives, not otherwise reflected herein.

O.      Successors and Assigns. This **Settlement** Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective agents, heirs, insurers, successors and assigns.

P.      Further Assurances. The Parties hereto expressly agree to execute such other documents and to take such other action as may be reasonably necessary to further the purpose of this **Settlement** Agreement.

Q.      Interpretation of Agreement. In the event that any provision of the **Settlement** Agreement requires interpretation, it is agreed by the Parties that the person interpreting or construing this **Settlement** Agreement shall not apply a presumption that the terms of this **Settlement** Agreement shall be more strictly construed against one Party, by reason of the rule of construction that a document is to be construed more strictly against the Party who (by itself or through its agent) prepared the document, it being agreed among the Parties that all Parties have participated in the preparation of this **Settlement** Agreement.

R.      Entire Agreement. This **Settlement** Agreement constitutes the full and entire agreement between the Parties and each Party acknowledges that there are no representations, warranties, agreements, arrangements, or undertakings, oral or written, between the Parties relating to the subject matter of this **Settlement** Agreement, which were not fully expressed herein.

S.      Parties Rely on Own Judgment. The Parties hereto, and each of them, represent and declare that in executing this **Settlement** Agreement, they rely solely upon their own judgment, belief and knowledge, and on the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims and that they have not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matters made by any of the Parties hereto or by any person representing them or any of them. The Parties acknowledge that no Party hereto nor any of her or its representatives has made any promise, representation, or warranty whatsoever, written or oral, as any inducement to enter into this **Settlement** Agreement, except as expressly set forth in this **Settlement** Agreement.

T.  <u>Investigation</u>. Each Party to this **Settlement** Agreement has made such investigation of the facts pertaining to this settlement and this **Settlement** Agreement and of all the matters pertaining thereto as it deems necessary.

U.  <u>Voluntary Settlement</u>. The Parties hereto, or a responsible representative thereof, and each of them, further represent and warrant that they have carefully read this **Settlement** Agreement and know and understand the contents thereof, and that they signed this **Settlement** Agreement freely and voluntarily.

V.  <u>Continuing Jurisdiction</u>. The Court shall retain exclusive and continuing jurisdiction over this Settlement Agreement and over all Parties and Settlement Class Members to interpret, effectuate, enforce, and implement this Settlement Agreement.  The Court shall have exclusive jurisdiction to resolve any disputes involving this Settlement Agreement.

W.  <u>Attorneys' Fees</u>. In any action or proceeding arising out of or to enforce the terms of this **Settlement** Agreement, the prevailing party in said action or proceeding shall be entitled to recover all reasonable attorneys' fees and costs incurred.

X.  <u>Severability</u>. If any provision, paragraph, clause, or sentence in this **Settlement** Agreement is declared to be illegal, void, invalid, or unenforceable by a court or other authority with jurisdiction thereof, the remaining provisions, paragraphs, clauses and sentences shall be severable and shall remain in full force and effect. The Parties agree that a void or invalid paragraph, clause, or provision shall not affect the validity or enforceability of the remaining provisions of this **Settlement** Agreement.

Y.  <u>Revert to Status Quo</u>.  This Settlement Agreement is governed by the terms of Federal Rule of Evidence 408 and is for settlement purposes only, and neither the fact of, nor any provision contained in this Settlement Agreement or its attachments, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as, any admission of the validity of any claim, defense or any fact alleged by any of the Parties in the Action or in any other pending or subsequently filed action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or admission by any Party of any claim, defense or allegation

made in the Action or any other action, nor as an admission by any Party of the validity of any fact or defense asserted against them in the Action or any other action.  If the Court should for any reason fail to approve this Settlement Agreement in the form agreed to by the Parties, decline to enter the Settlement Approval Order and Final Judgment in the form described in paragraph I.i., or impose any condition to approval of the settlement to which the Parties do not consent, or if the Settlement Approval Order and Final Judgment is reversed or rendered void, then (a) this Settlement Agreement shall be considered null and void, (b) neither this Settlement Agreement nor any of the related negotiations shall be of any force or effect, and (c) all Parties to this Settlement Agreement shall stand in the same position, without prejudice, as if the Settlement Agreement had been neither entered into nor filed with the Court.  Invalidation of any portion of this Settlement Agreement shall invalidate this Settlement Agreement in its entirety unless the Parties agree in writing that the remaining provisions shall remain in full force and effect.  This includes that the provisional certification of the Settlement Class shall have no bearing in deciding whether the claims asserted in the Action are or were appropriate for class treatment in the absence of settlement.  If this Settlement Agreement terminates or is nullified, the provisional class certification shall be vacated by its terms, and the Action shall revert to the status that existed before the execution of this Settlement Agreement.  Upon nullification of this Settlement Agreement, Class Representatives shall be free to pursue any claims available to them, and LBN shall be free to assert any defenses available to it, including, but not limited to, denying the suitability of this case for class treatment.  Nothing in this Settlement Agreement shall be argued or deemed to estop any Party from asserting such claims or defenses.  In the event the Court should for any reason fail to approve this Settlement Agreement in the form agreed to by the Parties, decline to enter the Settlement Approval Order and Final Judgment in the form described in paragraph I.i., or impose any condition to approval of the settlement to which the Parties do not consent, or if the Settlement Approval Order and Final Judgment is reversed or rendered void, the Parties will negotiate in good faith to address the issues raised by said events, including seeking mediation with Jill R. Sperber.

Z.      Exhibits.  All of the Exhibits to this Settlement Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

AA.     Waiver.  The waiver by one Party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Settlement Agreement.

BB.     Calculation of Time.  All time listed in this Settlement Agreement is in calendar days.  Time is calculated by (a) excluding the day of the event that triggers the period; (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

**IN WITNESS WHEREOF,** the Parties hereto have entered into and executed this Settlement Agreement as indicated below:

Date:  June 2, 2020    By: _____

Juan Quintanilla Vasquez

Date:  June 2, 2020    By: _____

Gabriela Perdomo Ortiz

Date:  June 2, 2020    By: _____

Victor Hugo Catalan

Date:  June 2, 2020    By: _____

Kevin Calderon

*Class Representatives*

DocuSign Envelope ID: 8E1A7C2E-1167-4FC4-88BE-95317036C359

Date: 5/13/2020          By: _____

                                 Annick M. Persinger
                                 TYCKO & ZAVAREEI LLP

Date: _____          By: _____

                                 Jesse Newmark
                                 Centro Legal de la Raza

Date: _____          By: _____

                                 Jason Rathod
*Counsel for Plaintiffs*             Migliaccio & Rathod LLP

Date: _____          By: _____

                                 Micheal Donovan
*Defendant*                        Libre By Nexus

Date: _____          By: _____

                                 Sean M. Sullivan
                                 Davis Wright Tremaine LLP

*Counsel for Defendant*

Date: _____   By: _____

                                    Gabriela Perdomo Ortiz

Date: _____   By: _____

                                    Victor Hugo Catalan

Date: _____   By: _____

                                    Kevin Calderon

*Class Representatives*

Date: _____   By: _____

                                    Annick M. Persinger
                                    TYCKO & ZAVAREEI LLP

Date: May 13, 2020   By: _____

                                    Jesse Newmark
                                    Centro Legal de la Raza

Date: _____   By: _____

                                    Jason Rathod
                                    Migliaccio & Rathod LLP

*Counsel for Plaintiffs*

Date: _____   By: _____

                                    [NAME]
                                    Libre By Nexus

*Defendant*

Date: _____   By: _____

                                    [NAME]

*Counsel for Defendant*

Page 33 of 34

TYCKO & ZAVAREEI LLP

Date: _____   By: _____

                          Jesse Newmark
                          Centro Legal de la Raza


Date: 5/13/2020   By:   *Jason S. Rathod*

                          Jason Rathod
                          Migliaccio & Rathod LLP

*Counsel for Plaintiffs*


Date: _____   By: _____

                          [NAME]
                          Libre By Nexus

*Defendant*


Date: _____   By: _____

                          [NAME]

*Counsel for Defendant*


Page 33 of 34

Date: _____     By: _____

                         Annick M. Persinger
                         TYCKO & ZAVAREEI LLP


Date: _____     By: _____

                         Jesse Newmark
                         Centro Legal de la Raza


Date: _____     By: _____

                         Jason Rathod
                         Migliaccio & Rathod LLP

*Counsel for Plaintiffs*

Date: *May 13, 2020*     By: _____

                         Micheal Donovan
                         Libre By Nexus

*Defendant*


Date: _____     By: _____

                         Sean M. Sullivan
                         Davis Wright Tremaine LLP

*Counsel for Defendant*


Page 33 of 34

Date: _____   By: _____

                    Annick M. Persinger
                    TYCKO & ZAVAREEI LLP

Date: _____   By: _____

                    Jesse Newmark
                    Centro Legal de la Raza

Date: _____   By: _____

                    Jason Rathod
                    Migliaccio & Rathod LLP

*Counsel for Plaintiffs*

Date: _____   By: _____

                    Micheal Donovan
                    Libre By Nexus

*Defendant*

Date: 5/13/2020   By: _____

                    Sean M. Sullivan
                    Davis Wright Tremaine LLP

*Counsel for Defendant*

Page 33 of 34

**Appendix A – Documentation Sufficient to Show Termination of Immigration Proceedings**

1. Immigration judge order granting relief from removal and reflecting that all parties waived appeal;

2. Immigration judge order granting relief from removal and 30 days or more have passed since that order, and either (a) documentation confirming that no appeal is pending through the Executive Office for Immigration Review (EOIR) E-Registry, or (b) LBN confirmation that no appeal is pending through EOIR's Case Status Information Line;

3. Board of Immigration Appeals' order sustaining an immigration judge's grant of relief from removal;

4. Immigration judge order denying relief from removal and reflecting that all parties waived appeal, and a completed Form I-392;

5. Immigration judge order denying relief from removal, a completed Form I-392, and either (a) documentation confirming that no appeal is pending through the EOIR E-Registry, or (b) LBN confirmation that no appeal is pending through EOIR's Case Status Information Line;

6. Board of Immigration Appeals' order sustaining an immigration judge's denial of relief or reversing an immigration judge's grant of relief without an order of remand, and a completed Form I-392; or

7. Immigration judge order granting voluntary departure and reflecting that all parties waived appeal, and a completed Form I-392.

# Exhibit A

NICHOLAS A. MIGLIACCIO (*Pro Hac Vice*)
JASON S. RATHOD (*Pro Hac Vice*)
MIGLICACCIO & RATHOD LLP
412 H St. NE, Suite 302
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

ANNICK M. PERSINGER (Bar No. 272996)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
apersinger@tzlegal.com

JESSE NEWMARK (Bar No. 247488)
AIDIN CASTILLO (Bar No. 280262)
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863
jessenewmark@centrolegal.org
acastillo@centrolegal.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, and VICTOR HUGO CATALAN MOLINA, and KEVIN CALDERON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIBRE BY NEXUS, INC. and JOHN DOES 1-50,<br><br>Defendants. | CASE NO. 4:17-cv-00755-CW<br><br>**CLASS ACTION**<br><br>**[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION ORDER** |

On _____, this Court heard the motion by plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon ("Plaintiffs") for preliminary approval of class settlement and provisional class certification. Defendant Libre by Nexus, Inc. ("LBN") did not oppose the motion.  This Court reviewed the motion, including the Settlement Agreement and Release ("Agreement" or "Settlement").  Based on this review and the findings below, the Court finds good cause to GRANT the motion.

**FINDINGS:**

A.     Unless otherwise specified, defined terms in this Preliminary Approval and Provisional Class Certification Order have the same definition as the terms in the Agreement.

B.     The Agreement resulted from extensive arm's-length negotiations with participation of an experienced mediator.

C.     For settlement purposes only, the Classes are so numerous that joinder of all Class Members is impracticable, Plaintiffs' claims are typical of the Classes' claims, there are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members, and class certification is superior to other available methods for the fair and efficient adjudication of the controversy.

D.     The Court finds that (a) the detailed Class Notice, Text Message Notice, Postcard Notice, and Publication Notice constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of Fed. R. Civ. P. 23, the California and United States Constitutions, and other applicable law.

E.     The Agreement falls within the range of possible approval as fair, reasonable and adequate.

**IT IS ORDERED THAT:**

1.     **Settlement Approval.**   The Agreement, including the Class Notice, Text Message Notice, Postcard Notice, and Publication Notice, is preliminarily approved.

2.     **Provisional Certification.**   The following Classes are provisionally certified for settlement purposes only:

[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION ORDER
Case No. 17-cv-00755-CW

a. <u>"Settlement Class"</u> shall be defined as all current or former LBN "program participants" and "sponsors" who paid, or caused to be paid on their behalf, a fee to LBN. Excluded from the Class are: (a) individuals for whom LBN or any surety or bond company has paid a treasury invoice or the bond or for whom a demand for payment for breach of a bond has been made by the U.S. Government which remains outstanding or open; (b) any judge or magistrate presiding over this action and members of their families; (c) Defendant and its current or former employees; and (d) all persons who properly execute and file a timely request for exclusion. The Settlement Class is comprised of three Subclasses:

i. <u>"The Current Program Participant Subclass"</u> shall be defined as all current LBN "program participants" and "sponsors" who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN.

ii. <u>"The Former and Current Program Participant Payments Subclass"</u> shall be defined as all former LBN "program participants" who paid, or caused to be paid on their behalf, a "Program Payment" to LBN and all current LBN "program participants" who, within six months of the "Final Settlement Approval Date" have been issued a Form I-391.

iii. <u>"The Sponsor Payments Subclass"</u> shall be defined as all sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

3. **Appointment of Class Representatives and Class Counsel.** Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon are conditionally certified as the Class Representatives to implement the Parties' Settlement in accordance with the Agreement.  Tycko & Zavareei LLP, Migliaccio & Rathod LLP, and Centro Legal De La Raza are conditionally appointed as Class Counsel for settlement purposes.  Plaintiffs and Class Counsel must fairly and adequately protect the Classes' interests.

4. **Appointment of Settlement Administrator.** JND Legal Administration is hereby appointed as the Settlement Administrator for this case.

[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION ORDER
Case No. 17-cv-00755-CW

5.      **Provision of Class Notice.**  The Settlement Administrator, will notify Class Members of the Settlement in the manner specified in the Agreement.

6.      **Objection to Settlement.**  Class Members who have not submitted a timely written exclusion request pursuant to the Agreement and who want to object to the Agreement, the Fee Application and/or the Incentive Award Application may sign and mail a written objection to the Settlement Administrator. Written objections must: (i) be postmarked on or before the Response Deadline; (ii) include the objecting Settlement Class Member's name, address, and telephone number; (iii) be personally signed and dated by the objecting Settlement Class Member; (iv) state each objection and the specific legal and factual bases for each; and (v) include proof that the Settlement Class Member is or was an LBN program participant. Any Settlement Class Member who does not provide a timely written objection or who does not make a record of his or her objection at the Final Approval Hearing shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed settlement, Fee Application, Fee and Expense Award, Incentive Award Application, or Incentive Award. The Class Representatives, Class Counsel, and/or LBN may file responses to any timely written objections no later than seven (7) days prior to the Final Approval Hearing.

7.      **Requesting Exclusion.**  Settlement Class Members shall have the right to opt out of the Class and the settlement. In the event a Settlement Class Member wishes to be excluded from the settlement and not to be bound by this Settlement Agreement, that person must, prior to the Response Deadline, submit in paper via first class mail or online at the Settlement Website a notice of intention to opt-out of the settlement to the Settlement Administrator. The request for exclusion, must: be postmarked or submitted online before the Response deadline; include the Settlement Class Member's name, address, and telephone number; be signed and dated by the Settlement Class Member; and contain a clear request that the individual would like to "opt-out" or be excluded, by use of those words or other words clearly indicating a desire not to participate in the settlement. Any Settlement Class Member who timely and properly requests exclusion in compliance with these requirements will not be entitled to any benefit under the settlement, and will not be bound by this Settlement Agreement or the Final Approval Order and Judgment

[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION ORDER
Case No. 17-cv-00755-CW

8.      **Termination.**  If the Agreement terminates for any reason, the following will occur: (a) Class certification will be automatically vacated; (b) Plaintiffs will stop functioning as the Class Representatives and Class Counsel will stop functioning as class counsel; and (c) this Action will revert to its previous status in all respects as it existed immediately before the Parties executed the Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

9.      **No Admissions.**  Nothing in this Order is, or may be construed as, an admission or concession on any point of fact or law by or against any Party.

10.      **Stay of Dates and Deadlines.**  All discovery and pretrial proceedings and deadlines, are stayed and suspended until further notice from the Court, except for such actions as are necessary to implement the Agreement and this Order.

11.      **Injunction Against Asserting Released Claims Pending Settlement Approval.** Pending final determination of whether the settlement should be approved, Class Representatives, all Settlement Class Members, and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are preliminarily enjoined from commencing or prosecuting against the LBN Releasees any action or proceeding in any court or tribunal asserting any of the Released LBN Claims, provided, however, that this injunction shall not apply to individual claims of any Settlement Class Members who timely exclude themselves in a manner that complies with this Order.  This injunction is necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

12.      **Fees and Cost Application.** Class Counsel shall file their Fee, Expense, and Incentive Payment Application, together with all supporting documentation, on or before twenty-one (21) days prior to the Response Deadline, sufficiently in advance of the expiration of the objection period that any Settlement Class Member will have sufficient information to decide whether to object and, if applicable, to make an informed objection..

13.      **Discretion of Counsel.**  Counsel are hereby authorized to take all reasonable steps in connection with approval and administration of the Settlement not materially inconsistent with this

[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION ORDER
Case No. 17-cv-00755-CW

Order or the Agreement, including, without further approval of the Court, making minor changes to the content of the Class Notice that they jointly deem reasonable or necessary.

14.     **Final Approval Hearing.** On _____ 2020, at _____ , this Court will hold a Final Approval Hearing to determine whether the Agreement should be finally approved as fair, reasonable, and adequate. This Court may order the Final Approval Hearing to be postponed, adjourned, or continued. If that occurs, the Parties will not be required to provide additional notice to Settlement Class Members.

**IT IS SO ORDERED.**

DATED: _____                    _____

Hon. Claudia Wilken
UNITED STATES DISTRICT JUDGE

[PROPOSED] PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION ORDER
Case No. 17-cv-00755-CW

# Exhibit B / C

NICHOLAS A. MIGLIACCIO (*Pro Hac Vice*)
JASON S. RATHOD (*Pro Hac Vice*)
MIGLICACCIO & RATHOD LLP
412 H St. NE, Suite 302
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

ANNICK M. PERSINGER (Bar No. 272996)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
apersinger@tzlegal.com

JESSE NEWMARK (Bar No. 247488)
AIDIN CASTILLO (Bar No. 280262)
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, CA 94601
Tel: (510) 437-1863
jessenewmark@centrolegal.org
acastillo@centrolegal.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JUAN QUINTANILLA VASQUEZ, GABRIELA
PERDOMO ORTIZ, and VICTOR HUGO
CATALAN MOLINA, and KEVIN CALDERON,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

    vs.

LIBRE BY NEXUS, INC. and JOHN DOES 1-50,

        Defendants.

Case No. 4:17-cv-00755-CW

**[PROPOSED] FINAL APPROVAL
ORDER AND JUDGMENT**

On _____, 2020, this Court heard the unopposed motion for final approval of class action settlement ("Motion") brought by Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon ("Plaintiffs"). The Court reviewed (1) the motion and the supporting papers, including the Settlement Agreement and Release ("Agreement" or "Settlement"); (2) any objections filed with or presented to the Court; (3) Plaintiffs' and Defendant Libre by Nexus, Inc.'s ("LBN") (collectively, "the Parties") responses to any objections; and (4) counsel's arguments. Based on this review and the findings below, the Court finds good cause to GRANT the Motion.

**FINDINGS:**

1.      Unless otherwise specified, defined terms in the Agreement have the same definition as used in this Final Approval Order and Judgment.

2.      This Court has jurisdiction over the subject matter of the Agreement with respect to and over all parties to the Agreement, including Plaintiffs and all Settlement Class Members.

3.      Venue is proper in this judicial district.

4.      The Court finds the Settlement was entered into in good faith, that it is fair, reasonable, and adequate, and that it satisfies the standards and applicable requirements for final approval of this class action settlement under Federal Rules of Civil Procedures 23(a) and 23(b)(3).

5.      The Parties adequately performed their obligations to date under the Agreement.

6.      Defendant LBN and the Settlement Administrator provided notice to the Class Members in compliance with the Agreement, Rule 23, the California and United States Constitutions, and other applicable law. The notice: (a) fully and accurately informed Class Members about the lawsuit and Settlement; (b) provided sufficient information so that the Class Members were able to decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the proposed Settlement; (c) provided procedures for Class Members to file written objections to the proposed Settlement, appear at the final Fairness Hearing, and state objections to the proposed Settlement; and (d) provided the time, date, and place of the final Fairness Hearing.  The Court has afforded a full opportunity to all Settlement Class Members to be heard.  Accordingly, the Court

[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT
Case No. 17-cv-00755-CW

determines that all Settlement Class Members, except those who timely excluded themselves from the Settlement Class, are bound by this Final Approval Order and Judgment.

7.    Within ten (10) days after the filing of the proposed Agreement in this Court, LBN served a notice of the proposed settlement upon the appropriate state official of each State in which a Class member resides and upon the Attorney General of the United States.  The Court finds that the notice provided by LBN satisfied the requirements of 28 U.S.C. § 1715(b) and that more than ninety (90) days have elapsed since LBN provided the required notice, as required by 28 U.S.C. § 1715(d).

8.    An award of $ _____ in attorneys' fees and costs to Class Counsel is fair and reasonable in light of the nature of this case, Class Counsel's experience and efforts in prosecuting this Action, and the benefits obtained for the Class.

9.    An incentive award to Plaintiffs in the amount of $ _____ (each) is fair and reasonable in light of Plaintiffs' risks (including financial, professional, and emotional) in commencing this Action as the Class Representatives, the time and effort spent by Plaintiffs in litigating this Action as the Class Representatives, Plaintiffs' full release and waiver of all known and unknown claims, and Plaintiffs' public interest and service.

**IT IS HEREBY ORDERED THAT:**

1.    **Class Members:** For Settlement purposes only, the Court makes final its preliminary certification of the following Settlement Class:

> **Settlement Class:** All current or former LBN "program participants" and "sponsors" who paid, or caused to be paid on their behalf, a fee to LBN. Excluded from the Class are: (a) individuals for whom LBN or any surety or bond company has paid a treasury invoice or the bond or for whom a demand for payment for breach of a bond has been made by the U.S. Government which remains outstanding or open; (b) any judge or magistrate presiding over this action and members of their families; (c) Defendant and its current or former employees; and (d) all persons who properly execute and file a timely request for exclusion.

The Class is also comprised of three Subclasses, defined as follows:

> **Current Program Participant Subclass:** All current LBN "program participants" and "sponsors" who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN.

> **Former and Current Program Participant Payments Subclass:** All former LBN "program participants" who paid, or caused to be paid on their behalf, a "Program Payment" to LBN and all current LBN "program participants" who, within six months of the "Final Settlement Approval Date" have been issued a Form I-391.

2

**Sponsor Payments Subclass:** All sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

2.      **Binding Effect of Order:** This Order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Class Members, including those who did not properly request exclusion under paragraph ___ of the Preliminary Approval and Provisional Class Certification Order. This Order does not bind persons who filed timely and valid requests for exclusion. Attached as **Exhibit A** is a list of persons who properly requested to be excluded from the Settlement.

3.      **Objections Overruled**.  The Court has considered and hereby overrules all objections brought to the Court's attention, whether properly filed or not.

4.      **No Admission**.  Neither this Final Approval Order and Judgment nor the Agreement is an admission or concession by Defendant of the validity of any claims or of any liability or wrongdoing or of any violation of law and not an admission by Plaintiffs that their claims lacked merit.

5.      **Dismissal.** This Court hereby dismisses this Action with prejudice all claims of Class Representatives and Settlement Class Members against LBN that have been, or could have been, alleged in the Action.

6.      **Release.** Plaintiffs and all Settlement Class Members who did not properly request exclusion are deemed to have released and discharged LBN from all claims arising out of or asserted in this Action and claims released under the Settlement Agreement, as described in the Agreement.

7.      By operation of this judgment, Plaintiffs, but not Settlement Class Members, also expressly waive any and all claims, rights, or benefits they may have under California Civil Code § 1542 and any similar federal or state law, right, rule, or legal principle that may apply.  California Civil Code § 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8.      LBN releases, waives, and forever discharges Plaintiffs and each Member of the Payments Subclasses ("Plaintiff Releasees") who has fully paid their obligations to LBN and

who has not opted out of the Settlement Class from any and all claims it has or may have against the Plaintiff Releasees with respect to any claim for existing Program Payments or fees.

9. **Injunction Against Asserting Released Claims.** Class Representatives and the Settlement Class Members, and LBN, having released all claims as described above, are permanently enjoined from commencing or prosecuting any of those claims against the released parties as described above, provided, however, that this injunction shall not apply to individual claims of any Settlement Class Members listed in Exhibit A who properly excluded themselves from the Settlement Class. This injunction is necessary to protect and effectuate the settlement, this Final Approval Order and Judgment, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

10. **Class Relief.** The Settlement Amount will be used to provide benefits to or on behalf of the Settlement Class as set forth in the Agreement. Payments shall be made according to the schedule set forth in the Agreement.

a. **Cash relief.** The Settlement Administrator shall issue a payment to each Former and Current Program Participant Payments Subclass Member and Sponsor Payments Subclass Member in accordance with the Agreement. Following a secondary distribution, any unused funds shall be paid to the Cy Pres Recipients in accordance with the Agreement.

b. **Debt relief.** The remainder of the Settlement Amount, after payment of the cash relief referenced above, Notice and other Administrative Costs, any Incentive Award as set forth herein, and any Fee and Expense Award as set forth herein, will consist of credits to be made to the accounts of current program participants for past due program fees due and owing as of the date the Plaintiffs filed their motion for Preliminary Approval, as set forth in the Agreement.

c. **Additional monetary relief.** As set forth in the Agreement, members of the Current Program Participant Subclass will benefit from several financial changes to their contracts with LBN and LBN's business practices. First, Program Participants who make three (3) consecutive monthly payments on time and in full will have their monthly recurring fee reduced by ten percent (10%) [the "Consecutive Payment Discount"]. Program Participants who make an additional three (3) consecutive

monthly payments on time and in full (for a total of 6 consecutive on time and in full payments) will have their monthly recurring fee reduced by a further ten percent (10%) from the original fee amount set for each program participant [the "Second Consecutive Payment Discount"] for a total of a twenty percent (20%) discount from their original recurring fee. Second, Program Participants who pay more than $420 per month in monthly recurring program fees, and pay on time and in full by the first of the month, shall have their payment that month reduced to $415. Third, LBN will impose a total payment cap for Program Payments, excluding the initial payment and set up fees made by the program participants and/or their sponsors, to an amount not to exceed the face amount of the bond. Fourth, LBN will stop all monthly payments upon termination of immigration proceedings. Fifth, LBN will provide fee waivers of at least $150,000 per year to Program Participants.

d.   **Other business practice changes.** Libre will also provide programmatic and other non-monetary benefits to Settlement Class Members through other business practice changes set forth in the Agreement, which include but are not limited to: (1) translating written and verbal contracts and posting them online; (2) providing clear and concise contract terms; (3) using best efforts to ensure meaningful program participant and sponsor review of contracts prior to signing; (4) not making any immigration-related threats; (5) modifying language on criminal prosecution; (6) representing that LBN has no present intent to collect certain debt from program participants or their sponsors; (6) removing GPS monitors in a timely manner for pregnancy or medical necessity, or upon termination of immigration proceedings; (7) not requiring leg-affixed GPS monitors for new program participants with bonds of less than $7,500 (impacting approximately 19% of program participants); (8) transitioning to technologically upgraded ankle monitors that are less intrusive and do not require program participants to stay in place to charge the monitors, by December 31, 2020 at the latest; and (9) using commercially reasonable efforts to transition away from use of ankle monitors altogether and to instead use wrist bracelet monitors or other similarly less intrusive monitors, such as cellular telephones or periodic check-ins, by December 31, 2021 at the latest. Further details as to these business practices and any exceptions are set forth in the Settlement Agreement.

11.   **Attorneys' Fees and Costs.** Class Counsel is awarded $ _____ total in fees ($ _____) and costs ($ _____) to be paid from the Settlement

Amount, but no the Cash Settlement Fund, in accordance with the timeliness set forth in the Settlement Agreement.

12. **Incentive Award.** Plaintiffs are each awarded $ _____ as a service award to be paid from the Settlement Amount, but not the Cash Settlement Fund, in accordance with the timelines set forth in the Agreement.

13. **Settlement Administrator Costs.** The Court approves the payment to the Settlement Administrator in a total amount not to exceed $ _____, to be paid from the Settlement Amount, but not the Cash Settlement Fund, without prejudice to the Parties' ability to agree to pay increased amounts to the Settlement Administrator based on material changes in the assumptions originally used by the Settlement Administrator in setting the cap.

14. **Judgment.** The Court finds there is no reason for delay and directs the Clerk to enter judgment in accordance with the terms of this Order as of the date of this order.

15. **Court's Jurisdiction.** Without affecting the finality of this Final Approval Order and Judgment, pursuant to the Parties' request, the Court retains jurisdiction over this Action and the Parties until final performance of the Agreement.

16. **Status Report.** By no later than _____, 202_, Class Counsel shall file a status report to the Court specifying the total amount paid to Authorized Claimants and the total amount of uncashed checks that will be paid to the approved Cy Pres Recipients.

**IT IS SO ORDERED.**

DATED: _____          _____
                                        Hon. Claudia Wilken
                                        UNITED STATES DISTRICT JUDGE

[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT
Case No. 17-cv-00755-CW

# Exhibit D

Detailed Notice

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**IF YOU PAID LIBRE BY NEXUS IN CONNECTION WITH RELEASE FROM IMMIGRATION DETENTION, FOR YOURSELF OR AS A SPONSOR OF ANOTHER PERSON, YOU SHOULD READ THIS NOTICE CAREFULLY BECAUSE IT WILL AFFECT YOUR LEGAL RIGHTS AND OBLIGATIONS.**

*A FEDERAL COURT AUTHORIZED THIS NOTICE.*
*THIS IS NOT AN ADVERTISEMENT FROM A LAWYER.  YOU ARE NOT BEING SUED.*

- A settlement ("Settlement") has been proposed in the class action lawsuit *Vazquez et al. v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW, pending in the United States District Court for the Northern District of California.  You may be a Settlement Class Member in the proposed Settlement and may be entitled to participate in the proposed Settlement.

- The United States District Court for the Northern District of California has ordered the issuance of this notice in this Action.  Libre by Nexus ("LBN") denies it did anything wrong and has defended itself throughout the lawsuit.  The Court has not decided who is right.  Both sides have agreed to settle the dispute to avoid burdensome and costly litigation.

- If the Court gives final approval to the Settlement, LBN will provide a check or electronic payment to Settlement Class Members who have timely provided a U.S. Immigration and Customs Enforcement Form I-391 (Notice of Immigration Bond Cancelled) to LBN or the Settlement Administrator – confirming that their immigration case has been closed.  The amount of a Settlement Class Member's payment depends upon the number of persons who participate in the Settlement.

- If the Court gives final approval to the Settlement, Settlement Class Members, regardless of whether they are able to provide a Form I-391, may be entitled to receive debt relief, discounts, payment caps, and/or non-monetary relief as discussed below.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **SUBMIT A FORM I-391** | Unless LBN already has a record of your receiving a Form I-391, this is the only way to get a payment under the Settlement.  Visit the Settlement website located at www.lbnsettlement.com for instructions on submitting a Form I-391 to LBN or the Settlement Administrator. | Deadline: **[Month] [Day], [Year]** |

-2-

| **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT** | | |
|---|---|---|
| **EXCLUDE YOURSELF** | If you exclude yourself from the Settlement, you will not receive a payment or debt relief under the Settlement.  Excluding yourself is the only option that allows you to bring or maintain your own lawsuit against LBN regarding the allegations in the Action ever again. | Deadline: **[Month] [Day], [Year]** |
| **OBJECT** | You may write to the Court about why you object to (i.e., don't like) the Settlement and think it shouldn't be approved.  Submitting an objection does not exclude you from the Settlement. | Deadline: **[Month] [Day], [Year]** |
| **GO TO THE "FAIRNESS HEARING"** | The Court will hold a "Fairness Hearing" to consider the Settlement, the request for attorneys' fees and costs of the lawyers who brought the Action, and the Class Representatives' request for service awards for bringing the Action. <br><br> You may, but are not required to, speak at the Fairness Hearing about any objection you submitted to the Settlement. | Hearing Date: **[Month] [Day], [Year]** |
| **DO NOTHING** | If LBN already has a record of your receiving a Form I-391, you will receive a payment under this Settlement.  Otherwise, you will not receive any payment but may receive debt relief, discounts, payments caps, and/or non-monetary relief as discussed below.  You will also give up your right to object to the Settlement and you will not be able to be part of any other lawsuit about the legal claims in this case. | N/A |

• These rights and options – **and the deadlines to exercise them** – are explained in more detail below.

• The Court in charge of this Action has preliminarily approved the Settlement and must decide whether to give final approval to the Settlement.  The payments and other relief for Settlement Class Members discussed here will be provided only if the Court gives final approval to the Settlement and, if there are any appeals, after the appeals are resolved in favor of the Settlement.  ***Please be patient***.

## WHAT THIS NOTICE CONTAINS

**BACKGROUND INFORMATION** ..................................................................................**5**

    1.    Why did I get this notice?

    2.    What is this lawsuit about?

    3.    Why is this a class action?

    4.    Why is there a Settlement?

    5.    How do I know if I am part of the Settlement?

    6.    I'm not sure if I am included.

**THE PROPOSED SETTLEMENT** ....................................................................................**6**

    7.    What relief does the Settlement provide to the Settlement Class Members?

**HOW TO REQUEST A PAYMENT UNDER THE SETTLEMENT –
SUBMITTING A FORM I-391** .........................................................................................**9**

    8.    How can I get a Settlement payment?

    9    When will I get a Settlement payment?

**THE LAWYERS IN THIS CASE AND THE REPRESENTATIVE PLAINTIFFS**..............**9**

    10.    Do I have a lawyer in this case?

    11.    How will the lawyers be paid?

    12.    Will the Class Representatives receive any compensation for their efforts?

**DISMISSAL OF ACTION AND RELEASE OF ALL CLAIMS** ..........................................**10**

    13.    What am I giving up to obtain relief under the Settlement?

**HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT** .......................................**10**

    14.    How do I exclude myself from the Settlement?

**HOW TO OBJECT TO THE SETTLEMENT** ....................................................................**10**

    15.    How do I tell the Court that I disagree with the Settlement?

    16.    What is the difference between excluding myself and objecting to the Settlement?

**FAIRNESS HEARING** ....................................................................................................**11**

    17.    What is the Fairness Hearing?

    18.    When and where is the Fairness Hearing?

    19.    May I speak at the hearing?

**ADDITIONAL INFORMATION** .....................................................................................**12**

    20.    How do I get more information?

    21.    What if my address or other information has changed or changes after I submit a
Form I-391?

**1.     *Why did I get this notice?***

You received this Notice because a Settlement has been reached in this Action.  If you are a member of the Settlement Class you may be eligible for the relief detailed below.

This Notice explains the nature of the Action, the general terms of the proposed Settlement, and your legal rights and obligations.  To obtain more information about the Settlement, including information about how you can see a copy of the Settlement Agreement (which defines certain capitalized terms used in this Notice), see Section 20 below.

**2.     *What is this lawsuit about?***

Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan, and Kevin Calderon (the "Class Representatives") filed a lawsuit against LBN on behalf of themselves and all others similarly situated.  The lawsuit alleges LBN deceived consumers into believing, among other things, that LBN was their only option to leave detention, that the financial terms were manageable, that LBN could return them to detention, and that wearing an LBN ankle "bracelet" would not be onerous, when in fact the terms of LBN's loans are alleged to be onerous and exploitative.  The lawsuit also alleges that LBN unlawfully charges its clients exorbitant fees to "lease" an ankle bracelet that is not required by law.  Plaintiffs claim that as a result of LBN's false and deceptive practices, consumers desperate for themselves or their loved ones to be released from immigration detention suffered money damages.

LBN denies each and every one of the allegations of unlawful conduct, any wrongdoing, and any liability whatsoever, and believes its actions complied with applicable law.  LBN has asserted many defenses it believes would succeed at trial.  No court or other entity has made any judgment or other determination of any liability.  LBN further denies that any Class Member is entitled to any relief and, other than for settlement purposes, that this Action is appropriate for certification as a class action.

**The issuance of this Notice is not an expression of the Court's opinion on the merits or the lack of merits of the Representative Plaintiffs' claims in the Action.**

For information about how to learn about what has happened in the Action to date, please see Section 20 below.

**3.     *Why is this a class action?***

In a class action lawsuit, one or more people called "Representative Plaintiff(s)" (in this Action, Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon) sue on behalf of other people who allegedly have similar claims. For purposes of this proposed Settlement, one court will resolve the issues for all Class Members.  The company sued in this case, LBN, is called the Defendant.

**4.     *Why is there a Settlement?***

The Representative Plaintiffs have made claims against LBN.  LBN denies that it has done anything wrong or illegal and admits no liability.  The Court has **not** decided that the Class Representatives or LBN should win this Action or any other pending action.  Instead, both sides

agreed to a Settlement.  That way, they avoid the cost of a trial, and the Settlement Class Members will receive relief now rather than years from now, if at all.

**5.**      ***How do I know if I am part of the Settlement?***

The Court has decided that everyone who fits any of these descriptions is a Settlement Class Member for purposes of the proposed Settlement:

- <u>Settlement Class</u>:  All current or former LBN "program participants" and "sponsors" who paid, or caused to be paid on their behalf, a fee to LBN.

- <u>Current Program Participant Payment Subclass</u>:  All current LBN "program participants" and "sponsors" who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN.

- <u>Former and Current Program Participant Payment Subclass</u>:  All former LBN "program participants" who paid, or caused to be paid on their behalf, a Program Payment to LBN and all current LBN program participants who, within six months of final approval of the settlement have been issued a Form I-391.

- <u>Sponsor Payment Subclass</u>:  All sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

Excluded from the Settlement Class are individuals for whom LBN or any surety or bond company has paid a treasury invoice or the bond or for whom a demand for payment for breach of a bond has been made by the U.S. Government which remains outstanding or open.  Also excluded from the Settlement Class are LBN and its current and former employees, the Court, the Court's staff, and their families.  All persons who properly execute and file a timely request for exclusion are also excluded from the Settlement Class.

**6.**      ***I'm not sure if I am included.***

If you are not sure whether you are included, you can visit the settlement website: <u>www.lbnsettlement.com</u> or contact your lawyers, who are identified in paragraph 10 below.

**7.**      ***What relief does the Settlement provide to the Settlement Class Members?***

The relief you are eligible for will depend on which Subclass you belong to. The Subclass definitions can be found above, in paragraph 5.

<u>Payments</u>:

All members of the Former and Current Program Participant Payment Subclass or the Sponsor Payment Subclass who timely provide an I-391 to LBN or the Settlement Administrator, and who do not opt out of the Settlement, are entitled to receive a check or electronic payment to be issued by the Settlement Administrator from the Cash Settlement Amount.  The Cash Settlement Amount is $750,000, to be funded by LBN.  The attorneys' fees and costs to be paid

to Class Counsel, the awards to the Class Representatives for bringing this Action, and the costs of the Settlement Administrator for providing notice to the Settlement Class of the Settlement and administering the settlement, will not be subtracted from the Cash Settlement Amount. The actual amount of the cash settlement distributed to each Settlement Class Member will be determined by the number of eligible Settlement Class Members six months after final approval of the settlement and the number of eligible Settlement Class Members who cash or otherwise negotiate their checks or electronic payments.

Debt Forgiveness:

All members of the Current Program Participant Payment Subclass, who do not opt out of the Settlement, will receive debt relief. The debt relief will consist of credits made to the accounts of current program participants for past due program fees due and owing as of the date the Plaintiffs file their motion for Preliminary Approval.

The debt relief will amount to $3.2 million, minus the Cash Settlement Amount ($750,000), attorneys' fees and costs to be paid to Class Counsel, and the awards to the Class Representatives for bringing this Action. Class Counsel intends to seek attorney's fees and costs in the amount of 25% of the Settlement Amount, or $800,000, and service awards for the Class Representatives in the amount of $10,000 each, or $40,000 total. Thus, estimated debt relief provided to the Current Program Participant Payment Subclass is $1.6 million. The actual amount of credit provided to each Settlement Class Member will also depend on the number of eligible Settlement Class Members.

Discounts:

Members of the Current Program Participant Subclass who make three (3) consecutive monthly payments on time and in full will have their monthly recurring fee reduced by ten percent (10%) going forward. For instance, if a participant makes three full and timely payments in February, March, and April, they are entitled to the 10% discount for May and June and the months afterward; for logistical reasons, LBN may not identify the participant until July or apply the discount until August, but the participant should be credited at the reduced rate for May and June (even if the participant made a late or partial payment those months).

Members of the Current Program Participant Subclass who make an additional three (3) consecutive monthly payments on time and in full (for a total of 6 consecutive on time and in full payments) will have their monthly recurring fee reduced going forward by a further ten percent (10%) from the original fee amount set for each program participant for a total of a twenty percent (20%) discount from their original recurring fee.

Furthermore, Members of the Current Program Participant Subclass who pay more than $420 in monthly recurring program fees, and who pay on time and in full by the first of the month, will have their recurring fees for those months reduced to $415. For instance, if a Member of the Current Program Participant Subclass pays $475 in monthly recurring program fees, and that Subclass Member pays on time and in full on August 1, then that Subclass Members' payment for the month of August will be $415.

<u>Cap on Payments</u>:

LBN will change its policy so that a customer's total monthly program payments – excluding the initial payment and set up fees – will not exceed the total amount of their immigration bond.

<u>Non-Monetary Relief</u>:

In addition to the monetary benefits described above, LBN will comply with the following business practices:

- Translate its contract into Spanish and any other language for which there are at least 5% program participants;

- Post written and audio versions of its contract, in Spanish, on its website;

- Ensure the contract terms are clear and concise;

- Use best efforts to mail the contract to program participants for review, prior to their release from ICE custody;

- Ensure that sponsors have sufficient opportunity to review the contract in their preferred language, consult with an attorney, and discuss the contract with the program participant;

- Provide prospective program participants with the LBN contract;

- Abstain from verbal or written threats to report any program participant, sponsor, or family member to ICE or otherwise threaten immigration detention, although LBN may continue to inform its customers of the potential consequences of failing to appear for hearings;

- Modify language in its contract regarding potential criminal prosecution for tampering with the ankle bracelet device;

- Provide fee waivers of at least $150,000 per year for financially distressed clients and provide forms for this program on its website;

- Remove a program participant's ankle bracelet within 14 days of the program participant's request to have it removed for pregnancy or medical necessity, if the participant presents to a LBN office, or within 60 days if the participant is not able to visit a LBN office.

- Discontinue the use of ankle bracelets for any program participant whose bond is under $7,500;

- Remove a program participant's ankle bracelet and stop monthly payments upon verification that the program participant's immigration removal case has been closed;

- Reduce the use of ankle bracelets generally, transition to an upgraded ankle bracelet that does not require the wearer to be tethered to an electrical outlet while the device recharges by December 31, 2020, and transition to a wrist bracelet monitor or other similarly less intrusive monitor, such as cellular telephones or periodic check-ins, by December 31, 2021.

**8.** *How can I get a Settlement payment?*

If you are a member of the Former and Current Program Participant Payment Subclass or the Sponsor Payment Subclass, as defined in paragraph 5, and timely provide a Form I-391, you are entitled to receive a Settlement payment. If LBN already has a record of your receiving a Form I-391, you will be sent a payment under this Settlement unless you opt out. However, to be certain that LBN has received your Form I-391, you may wish to follow the instructions below to resubmit your Form. Also, your check will be sent to the last address on file with LBN so if you have changed addresses or are unsure if your current address is on file, please update your address by filling out the form at www.lbnsettlement.com/updateaddress.

If LBN does not have a record of your receiving a Form I-391, you must submit a Form I-391 to LBN or the Settlement Administrator with six months of the date of final approval of the settlement. Otherwise, you will not receive any payment but may still receive debt relief, discounts, payment caps, and/or non-monetary relief as discussed below. You can send a copy of your Form I-391 to the Claims Administrator by mail to [address] or email to [administrator email address], or upload the form on the secure portal at [website address]. Instructions for submitting your Form I-391 are available at [website address].

**9.** *When will I get a Settlement payment?*

As described in Sections 17 and 18, the Court will hold a hearing on [Month] [Day], [Year] at [time], to decide whether to approve the Settlement. If the Court approves the Settlement, after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. You can check on the progress of the case on the website dedicated to the Settlement at www.lbnsettlement.com. *Please be patient.*

**10.** *Do I have a lawyer in this case?*

The Court has ordered that the non-profit organization Centro Legal de la Raza, and the law firms of Migliaccio & Rathod LLP and Tycko & Zavareei LLP, ("Class Counsel") will represent the interests of all Settlement Class Members. You can contact your lawyers by email at: info@classlawdc.com or by phone at 202-470-3520. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**11.** *How will the lawyers be paid?*

Class Counsel will petition the Court to receive attorneys' fees and costs up to 25% of the $3.2 million Settlement Amount, or $800,000 (total). The Court will make the final decision as to the amount to be paid to the attorneys for their fees and costs. You will not be required to separately pay any attorneys' fees or costs.

**12.      *Will the Class Representatives receive any compensation for their efforts?***

The Class Representatives will request a service award of up to $10,000 (each), or $40,000 total, for their services as class representatives and their efforts in bringing the Action.  The Court will make the final decision as to the amount to be paid to the Class Representatives.

**13.      *What am I giving up to obtain relief under the Settlement?***

If the Court approves the proposed Settlement, unless you exclude yourself from the Settlement, you will be releasing your claims against LBN.  This generally means that you will not be able to file a lawsuit, continue prosecuting a lawsuit, or be part of any other lawsuit against LBN regarding the allegations in the Action, as of the date of final approval of the Settlement.  The Settlement Agreement, available on the Internet at the website www.lbnsettlement.com contains the full terms of the release.

**14.      *How do I exclude myself from the Settlement?***

You may exclude yourself from the Settlement Class and the Settlement.  If you want to be excluded, send a letter or postcard to the Settlement Administrator that must: (i) state the name and case number of the Action; (ii) include your name, address, and telephone number; (iii) be personally signed and dated by you; and (iv) contain a clear request that you would like to "opt out" or be excluded, by use of those or other words clearly indicating a desire not to participate in the Settlement.  The letter or postcard must be postmarked no later than [Month] [Day], [Year] and sent to the Settlement Administrator at:

*Vasquez et al. v. Libre by Nexus Settlement*
c/o _____
[Address]
[City] [State], [Zip Code]

If you timely request exclusion from the Settlement Class, you will be excluded from the Settlement Class, you will not be bound by the judgment entered in the Action, and you will not be precluded from prosecuting any timely, individual claim against LBN based on the conduct complained of in the Action.

**15.      *How do I tell the Court that I disagree with the Settlement?***

At the date, time, and location stated in Section 18 below, the Court will hold a Fairness Hearing to determine if the Settlement is fair, reasonable, and adequate, and to also consider the attorneys' who initiated the Action's request for an award of attorneys' fees and costs, and a service award to the Class Representatives.

If you wish to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, you must submit the objection no later than (*i.e.*, postmarked by) [Month] [Day], [Year] to the Settlement Administrator at:

*Vasquez et al. v. Libre by Nexus Settlement*
c/o _____
[Address]
[City] [State], [Zip Code]

Any written objections must: (i) state the name and case number of the Action; (ii) state the objector's intention to object to the Settlement and/or appear at the Final Approval Hearing to make an objection to the Settlement on the record; (iii) include the objecting Settlement Class Member's name, address, and telephone number; (iv) be personally signed and dated by the objecting Settlement Class Member; (v) state each objection and the specific legal and factual bases for each; (vi) include information sufficient to show that the objector is a member of the Settlement Class.   The objection will not be valid if it only objects to the lawsuit's appropriateness or merits.  You may, but need not, submit your objection through counsel of your choice.  If you do make your objection through an attorney, you will be responsible for your personal attorney's fees and costs.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FAIRNESS HEARING.**

If you intend to appear at the Fairness Hearing through counsel, you must also identify the attorney(s) representing you who will appear at the Fairness Hearing and include the attorney(s) name, address, phone number, e-mail address, and the state bar(s) to which counsel is admitted.  Also, if you intend to request the Court to allow you to call witnesses at the Fairness Hearing, such request must be made in your written brief, which must also contain a list of any such witnesses and a summary of each witness' expected testimony.

### 16.     *What is the difference between excluding myself and objecting to the Settlement?*

Objecting is simply telling the Court that you disagree with something about the Settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you don't want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

### 17.     *What is the Fairness Hearing?*

The Court has preliminarily approved the Settlement and will hold a hearing to decide whether to give final approval to the Settlement.  The purpose of the Fairness Hearing will be for the Court to determine whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the award of attorneys' fees and expenses to the attorneys who initiated the Action; and to consider the request for a service award to the Class Representatives.

### 18.     *When and where is the Fairness Hearing?*

On [Month] [Day], [Year] at [time], a hearing will be held on the fairness of the proposed Settlement.  At the hearing, the Court will be available to hear any objections and arguments concerning the proposed Settlement's fairness.   The hearing will take place before the

Honorable Judge Claudia Wilken, Oakland Federal Courthouse, 1301 Clay Street, Oakland, California 94612, Second Floor, Courtroom 6, on _____, 2020, at \_\_\_\_am/pm.  The hearing may be postponed to a different date or time or location without notice.  Please check www.lbnsettlement.com for any updates about the Settlement generally or the Fairness Hearing specifically.  If the date or time of the Fairness Hearing changes, an update to the Settlement website will be the only way you will be informed of the change.

**19.**    *May I speak at the hearing?*

At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.  You may attend, but you do not have to.  If you have requested exclusion from the Settlement, however, you may not speak at the Fairness Hearing.

**20.**    *How do I get more information?*

To see a copy of the Settlement Agreement, the Court's Preliminary Approval Order, the application for attorneys' fees and costs, and the operative complaint filed in the Action, please visit the Settlement website located at: www.lbnsettlement.com.  Alternatively, you may contact the Settlement Administrator at the email address [xxxx]@[xxxx].com or the U.S. postal (mailing) address:  [Address] [City], [State], [Zip Code].

This description of this Action is general and does not cover all of the issues and proceedings that have occurred.  In order to see the complete file you should visit www.lbnsettlement.com or the Clerk's office at 1301 Clay Street, Oakland, California 94612.  The Clerk will tell you how to obtain the file for inspection and copying at your own expense.

**21.**    *What if my address or other information has changed or changes after I submit a Claim Form?*

It is your responsibility to inform the Settlement Administrator of your updated information.  You may do so at the address below:

*Vasquez et al. v. Libre by Nexus Settlement*
c/o _____
[Address]
[City] [State], [Zip Code]

\*\*\*\*

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE.**

# Exhibit E

**Text Message Notice**

This message is authorized by the United States District Court for the Northern District of California in *Vasquez v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW.  IF YOU PAID LIBRE BY NEXUS IN CONNECTION WITH RELEASE FROM IMMIGRATION DETENTION, FOR YOURSELF OR AS A SPONSOR OF ANOTHER PERSON YOU MAY BE ENTITLED TO RECEIVE A PAYMENT, DEBT FORGIVENESS, OR OTHER RELIEF FROM A CLASS ACTION SETTLEMENT.  YOUR RIGHTS MAY BE AFFECTED.  <u>CLICK HERE</u> FOR MORE INFORMATION**.**

# Exhibit F

**What is the lawsuit about?** The name of the lawsuit is *Vazquez et al. v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW, pending in the U.S. District Court for the Northern District of California. The lawsuit alleges Libre by Nexus (LBN) deceived consumers into believing, among other things, that LBN was their only option to leave detention, that the financial terms were manageable, that LBN could return them to detention, and that wearing an LBN ankle "bracelet" would not be onerous, when in fact the terms of LBN's loans are onerous and exploitative. LBN denies all wrongdoing. **The Court has not decided who is right.**

**You received this notice because LBN's records indicate you may be a Class Member.** You are included in the Settlement Class if you meet any of the following descriptions: <u>Current Program Participant Payment Subclass</u>: All current LBN program participants and sponsors who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN; <u>Former and Current Program Participant Payments Subclass</u>: All former LBN program participants who paid, or caused to be paid on their behalf, a Program Payment to LBN and all current LBN program participants who, within six months of final approval of the settlement have been issued a Form I-391; <u>Sponsor Payments Subclass</u>: All sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

**What are your options?** If you are a Class Member, you must choose whether to stay in the Settlement Class. If you stay in the Settlement Class, and money or benefits are obtained, you will be notified about how you can share in any benefits for which you are eligible. You will be bound by all orders and judgments of the Court, whether favorable or not, and you won't be able to sue LBN for the claims at issue in this case. If you want to stay in the Settlement Class, **YOU DO NOT HAVE TO DO ANYTHING NOW.**

To exclude yourself from the lawsuit, you must send a letter asking to be excluded. Instructions for making this request can be found at the website or by calling the toll-free number below. You must mail your exclusion request postmarked by **[DATE]**. If you exclude yourself, you cannot get any money or benefits from this lawsuit, but you will not be bound by any orders or judgments in this case. If you do not request exclusion, you may (but do not have to) enter an appearance in the Court through your own counsel. Detailed information is available at the website and toll-free number listed below.

**www.XXXXXXXXXXXXXXXXXX.com    •    1-XXX-XXX-XXXX**

Vasquez v. Libre Class Action
Administrator
PO Box XXXX
City, State XXXXX-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
City, ST
PERMIT NO. XXX

If you have made
payments to Libre
by Nexus, or had
payments made to
Libre by Nexus on
your behalf, a
class action
lawsuit may affect
your rights.

<u>Important Notice About a Class Action Lawsuit</u>



John Q. Public
123 Locust St.
Anytown, OH 00000-0000

# Exhibit G

LEGAL NOTICE                                                    LEGAL NOTICE

**What is the lawsuit about?** The name of the lawsuit is *Vazquez et al. v. Libre by Nexus, Inc.*, Case No. 4:17-cv-00755-CW, pending in the U.S. District Court for the Northern District of California. The lawsuit alleges Libre by Nexus (LBN) deceived consumers into believing, among other things, that LBN was their only option to leave detention, that the financial terms were manageable, that LBN could return them to detention, and that wearing an LBN ankle "bracelet" would not be onerous, when in fact the terms of LBN's loans are onerous and exploitative. LBN denies all wrongdoing. **The Court has not decided who is right.**

**You received this notice because LBN's records indicate you may be a Class Member.** You are included in the Settlement Class if you meet any of the following descriptions: Current Program Participant Payment Subclass: All current LBN program participants and sponsors who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN; Former and Current Program Participant Payments Subclass: All former LBN program participants who paid, or caused to be paid on their behalf, a Program Payment to LBN and all current LBN program participants who, within six months of final approval of the settlement have been issued a Form I-391; Sponsor Payments Subclass: All sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

**What are your options?** If you are a Class Member, you must choose whether to stay in the Settlement Class. If you stay in the Settlement Class, and money or benefits are obtained, you will be notified about how you can share in any benefits for which you are eligible. You will be bound by all orders and judgments of the Court, whether favorable or not, and you won't be able to sue LBN for the claims at issue in this case. If you want to stay in the Settlement Class, **YOU DO NOT HAVE TO DO ANYTHING NOW**.

To exclude yourself from the lawsuit, you must send a letter asking to be excluded. Instructions for making this request can be found at the website or by calling the toll-free number below. You must mail your exclusion request postmarked by **[DATE]**. If you exclude yourself, you cannot get any money or benefits from this lawsuit, but you will not be bound by any orders or judgments in this case. If you do not request exclusion, you may (but do not have to) enter an appearance in the Court through your own counsel. Detailed information is available at the website and toll-free number listed below.

| www.XXXXXXXXXXXXXXXXX.com | • | 1-XXX-XXX-XXXX |
|---|---|---|

# EXHIBIT 2

# M&R

## MIGLIACCIO&RATHOD LLP

## SUMMARY

The attorneys at Migliaccio & Rathod LLP ("M&R") have decades of experience in complex civil litigation and have successfully prosecuted a number of noteworthy consumer protection, environmental contamination, civil rights, privacy, and wage theft. The firm's attorneys, located in Washington D.C. and California, focus primarily on class or collective actions and take all of their cases on a contingent basis. The attorneys at the firm have litigated cases leading to recoveries of hundreds of millions of dollars in recoveries for consumers, workers, and other victims of corporate misconduct. M&R has a track record of investing the time, energy, and resources necessary to develop cases which implicate significant economic, societal, and health concerns.

## NOTABLE MATTERS AND SUCCESSES

o  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 535 (6th Cir. 2012). Represented classes of insureds against several major insurance companies for the failure to use technological advances in verifying the addresses of insureds, leading to overcharges. Litigation culminated in several multi-million dollar settlements.

o  *Matthews v. TCL Communications et al.,* Case No. 3:17-cv-95 (W.D.N.C.). Represented plaintiffs in a class action brought on behalf of purchasers of Alcatel OneTouch Idol 3 smartphones who alleged that a firmware update removed Band 12 LTE functionality from their phones, greatly reducing their functionality. Served as Court-appointed class counsel in a class action settlement which provided class members with either the reinstatement of Band 12 LTE functionality on their phones, or new phones with LTE Band 12 functionality.

o  *In re: JUUL Labs, Inc. Products Litigation*, Case No. 3:18-cv-02499 (N.D. Cal.) M&R was appointed as co-lead interim class counsel in action brought on behalf of a nationwide class arising from marketing and sale of electronic cigarettes by JUUL, the world's largest e-cigarette manufacturer, which is valued at several billions of dollars.

o  *Wheeler et al. v. Lenovo (United States) Inc*., Case No. 13-0007150 (D.C. Sup. Ct.) and *Kacsuta v. Lenovo (United States), Inc*., Case No. 13-00316 (C.D. Cal.). Represented plaintiffs in a class action brought on behalf of purchasers of Lenovo laptops that suffered from Wi-Fi connectivity problems. Served among the Court-appointed class counsel in a nationwide settlement where Lenovo agreed to refund $100 cash or issue a $250 voucher (which required no purchase to use) to owners of the laptops.

o  *Camara, et al. v. Mastro's Restaurants LLC*, Case No. 1:18-cv-00724 (D.D.C.). M&R is lead counsel in a conditionally certified nationwide collective action lawsuit on behalf of servers who were allegedly not paid minimum wage.

o  *Valsartan N-Nitrosodimethylamine (NDMA) Products Liability Litigation*, MDL Case No: 1:19-md-02875-RBK-JS (D.N.J.). Represent plaintiffs in multi-district litigation arising from



worldwide recalls of generic Valsartan that had been found to be contaminated with probable human carcinogens. M&R was appointed to the Plaintiffs' Steering Committee and serves as co-chair of the medical monitoring committee.

o   *Adeli v. Silverstar Automotive, Inc.*, Case No. 5:17-cv-05224 (W.D. Ark.).  M&R was co-lead trial counsel in this individual consumer fraud suit for economic losses that resulted in a trial verdict of over $5.8 million, the vast majority of which was in punitive damages (judgment later reduced to $533,622, inclusive of a reduced but sizable punitive damages amount, which was affirmed by the Eighth Circuit Court of Appeals).

o   *Nelson v. Sabre Companies LLC*, Case No. 1:15-cv-0314 (N.D.N.Y.).  M&R was lead counsel in this nationwide collective action that settled for $2.1 million on behalf of oil and gas workers for unpaid overtime.

o   *Fath et al. v. Honda North America, Inc.*, Case No. 0:18-cv-01549 (D. Minn.). M&R is serving on the Plaintiff Steering Committee in this putative nationwide action arising from Honda's alleged manufacture, design, marketing and sale of vehicles with an oil dilution defect.

o   *Beture v. Samsung Electronics America*, Case No. 17-cv-05757 (D.N.J.). M&R was appointed as co-lead interim class counsel in action brought on behalf of a nationwide class arising from a hardware defect affecting hundreds of thousands of Samsung Galaxy Note 4 smartphones.

o   *Restaino et al. v. Mario Badescu, Inc.*, Case No. MID-L-5830-14 (N.J. Super. Ct.). Represented 36 individuals who had become physically addicted to undisclosed corticosteroids in a purportedly botanical face cream, and sought damages for personal injuries arising from the symptoms of topical steroid withdrawal. After three years of litigation, the case settled for significant relief to the plaintiffs.

o   *Peppler, et al. v. Postmates, Inc.*, Case No. 2015 CA 006560 (D.C. Sup. Ct.) and *Singer, et al. v. Postmates, Inc.*, 4:15-cv-01284-JSW (N.D. Cal.).  Represented plaintiffs in a wage theft class action against application-based courier startup company, alleging that the couriers were misclassified as independent contractors.  M&R was named class counsel in the settlement agreement providing for $8.75 million in relief to a nationwide class.

o   *Bland v. Calfrac Well Services*, Case No. 2:12-cv-01407 (W.D. Pa.). Represented oil field workers in a nationwide collective and class action lawsuit against Defendant Calfrac Well Services for its alleged failure to properly pay overtime to its field operators. After extensive litigation, the case settled for $6 million, which provided a gross recovery per class member of between $250 and approximately $11,500.

o   *Walsh et al. v. Globalstar, Inc.*, Case No. 3:07-cv-01941 (N.D. Cal.), represented Globalstar satellite telephone service customers who brought claims that Globalstar knew that it was experiencing failures in its satellite constellation and its satellite service was rapidly deteriorating and was no longer useful for its intended purpose, yet failed to disclose this



information to its potential and existing customers. Served as Court-appointed class counsel in a nationwide settlement that provided an assortment of benefit options, including, but not limited to, monetary account credits, free minutes, or cash back for returned equipment.

o   *Snodgrass v. Bob Evans*, Case No. 2:12-cv-768 (S.D. Ohio). Represented Bob Evans' Assistant Managers in a case alleging that Bob Evans, a restaurant chain with hundreds of locations predominantly in the Midwest, had misclassified its Assistant Managers as exempt from federal and state overtime laws. After a landmark ruling on the application of the so-called "fluctuating workweek" method of payment, the lawsuit settled for $16.5 million. The gross recovery per class member was approximately $6,380. In issuing its order approving the settlement, the court took special note of the "competence of class counsel in prosecuting this complex litigation."

o   *Delandro v. County of Allegheny*, Case No. 06-927 (W.D. Pa.). Represented pre-trial detainees who were subjected to unlawful strip searches prior to their admission at Allegheny County Jail, located in Pittsburgh, PA. After winning class certification, partial summary judgment on liability, and an injunction, the case settled for $3 million.

o   *Nnadili v. Chevron*, Case No. 02-1620 (D.D.C.). Represented owners and residents of properties in the District of Columbia that were contaminated with gasoline constituents from leaking underground storage tanks that were installed by Chevron. The plaintiffs, who resided in over 200 properties in the Riggs Park neighborhood of Northeast Washington, D.C., alleged that Chevron's contamination interfered with the use and enjoyment of their property, impacted their property values, constituted a trespass on their land, and caused fear and emotional distress. The United States Environmental Protection Agency conducted an extensive investigation into the contamination. After approximately five years of litigation, the case settled for $6.2 million.

o   *Corbin v. CFRA, LLC*, Case No. 1:15-cv-00405 (M.D.N.C.).  Represented 1,520 servers in collective action against major IHOP franchise for wage theft violations, culminating in $1.725 million settlement.

o   *Craig v. Rite Aid*, Case No. 4:08-CV-2317 (M.D. Pa.).  Represented Rite Aid Assistant Managers in a case alleging that Rite Aid had misclassified its Assistant Managers as exempt from federal and state overtime laws. Plaintiffs alleged that their primary duties involved manual labor such as loading and unloading boxes, stocking shelves, cashiering and other duties which are not exempt under federal and state overtime laws.  After extensive litigation, the case settled for $20.9 million, covering over 1,900 current and former assistant store managers. In issuing its order approving the settlement, the court stated that the settlement "represents an excellent and optimal settlement award for the Class Members" resulting from "diligent, exhaustive, and well-informed negotiations."



o   *Ousmane v. City of New York,* Case No. 402648/04 (NY Sup. Ct.).  Represented New York City street vendors in a pro bono class action suit against the City of New York for excessive fines and helped secure a settlement with a value of over $1 million.

o   *Stillman v. Staples*, Case No. 07-849 (D.N.J.). Represented Staples Assistant Managers in Fair Labor Standards Act Claims for unpaid overtime. Served as a member of the trial team where the plaintiffs won a nearly $2.5 million verdict against Staples for unpaid overtime on behalf of 342 sales managers after a six-week jury trial. After the verdict, nearly a dozen wage and hour cases against Staples from across the country were consolidated in a multi-district litigation. Served in a central role in the consolidated litigation, which lasted nearly two years after the *Stillman* verdict. The consolidated litigation ultimately settled for $42 million.

o   *In re National Security Agency Telecommunications Records Litigation*, Case No. 3:06-md-01791 (N.D. Cal.). Represented Sprint subscribers in privacy suit against telecom companies to enjoin the alleged disclosure to the National Security Agency of telephone calling records. Appointed, with co-counsel, interim lead counsel for the Sprint subscriber class in the MDL proceedings. The litigation was ultimately dismissed after Congress granted retroactive immunity to the telecom companies.

## **ATTORNEYS**

### *Nicholas A. Migliaccio*

Nicholas Migliaccio has been practicing for over 16 years, and litigates across the firm's practice areas. He has successfully prosecuted numerous noteworthy class and mass action cases over the course of his career, and has been appointed class counsel in both litigation and settlement classes. He has been recognized by his peers as a Superlawyer in 2016 - 2019.

Mr. Migliaccio graduated from the State University of New York at Binghamton in 1997 (B.A., *cum laude* in Environmental Studies and Philosophy) and received his law degree from Georgetown University Law Center in 2001, where he was an Editor of the Georgetown International Environmental Law Review.

**Notable Cases Include:**

• Represented assistant managers in a Fair Labor Standards Act misclassification case and served as a member of the trial team for a six-week jury trial that resulted in a $2.5 plaintiffs' verdict. After the verdict, nearly a dozen wage and hour cases against the defendant from across the country were consolidated in a multi-district litigation. Served in a central role in the consolidated litigation, which ultimately settled for $42 million.
• Represented worker class in wage theft assistant manager misclassification case against national restaurant chain that culminated in a $16.5 million settlement

# M&R
## MIGLIACCIO&RATHOD LLP

- Represented worker class in wage theft rate miscalculation case against multinational fracking company, resulting in $6 million settlement
- Represented plaintiffs in a consumer class in defective laptop case against multinational computer manufacturer, resulting in a nationwide settlement where defendant agreed to refund $100 cash or issue a $250 voucher (which required no purchase to use) to owners of the laptops.
- Represented pre-trial detainees who were subjected to unlawful strip searches prior to their admission at Allegheny County Jail, located in Pittsburgh, PA. After winning class certification, partial summary judgment on liability, and an injunction, the case settled for $3 million.
- Represented owners and residents of properties in the District of Columbia that were contaminated with gasoline constituents from leaking underground storage tanks that were installed by a major oil company. The plaintiffs alleged that the contamination interfered with the use and enjoyment of their property, impacted their property values, constituted a trespass on their land, and caused fear and emotional distress. After extensive litigation, the case settled for $6.2 million.
- Represented New York City street vendors in a pro bono class action suit against the City of New York for excessive fines and helped secure a settlement with a value of over $1 million.

**Admissions:**

- New York
- Washington, D.C.
- United States Court of Appeals for the Third Circuit
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Sixth Circuit
- United States District Court for the District of Colorado
- United States District Court for the District of Columbia
- United States District Court for the District of Maryland
- United States District Court for the Eastern District of Michigan
- United States District Court for the Eastern District of New York
- United States District Court for the Northern District of New York
- United States District Court for the Southern District of New York
- United States District Court for the Western District of New York
- United States District Court for the Western District of Pennsylvania

**Education:**

- Georgetown University Law Center, J.D., 2001
- State University of New York at Binghamton, BA, 1997

**Publications and Speaking Engagements:**



- Co-authored "Environmental Contamination Treatise: Overview of the Litigation Process," in R. Simons, Ph.D, When Bad Things Happen to Good Property (Environmental Law Institute, 2005).
- Presentation on *The Motor Carrier Act Exception to the FLSA's Overtime Provisions - 13(b)(1) and the SAFETEA-LU Amendments*, Worker's Injury Litigation Group / Ohio Association of Justice Meeting, Winter 2014.
- Presentation on *Litigating Fair Labor Standards Act Collective Action Cases,* Worker's Injury Litigation Group / Ohio Association of Justice Convention, Fall 2011.

**<u>Awards:</u>**

- SuperLawyers, 2016, 2017, 2018, and 2019



*Jason S. Rathod*

Jason Rathod litigates class actions across the firm's areas of practice, including consumer protection, worker rights, and civil rights. Mr. Rathod has been appointed class counsel in a number of noteworthy class actions. He has been the principal brief writer in several critical submissions, before trial and appellate courts, that resulted in favorable rulings concerning class certification and summary judgment. He was also co-lead trial counsel in an individual auto fraud case involving economic losses in which the jury returned a plaintiff verdict on all counts and awarded millions of dollars in punitive damages (later reduced on remittitur but to a sizable sum).

Mr. Rathod has been recognized as a leader in his field beyond the courtroom. He is the author of several published works, including a law review article on aggregate litigation in poor countries. Another recent law review article that he co-authored, comparing public and private enforcement in the United State and Europe, was cited by the Consumer Financial Protection Bureau in its proposed rule prohibiting class action waivers in the fine print of consumer contracts.

Mr. Rathod graduated from Grinnell College in 2006 (B.A. with honors in Political Science and Religious Studies). After college, he traveled to Fiji, Mauritius, South Africa, Trinidad & Tobago, Guyana, and Suriname on a Watson Fellowship, studying the Indian Diaspora. He graduated law school from the Duke University School of Law in 2010, where he was an Articles Editor of the Duke Law Journal. In law school, he also worked for the Self-Employed Women's Association in Ahmedabad, India on behalf of street vendors seeking an injunction against the city government for unlawful harassment and evictions.

<u>**Notable Cases Include**</u>:

- Representing consumer classes in insurance overcharge cases, including by drafting appellate briefs about the propriety of class certification. The Sixth Circuit Court of Appeals affirmed order for the classes 3-0, leading to several multi-million-dollar settlements;
- Representing consumer in consumer fraud trial for economic losses that resulted in verdict for the Plaintiff on all counts and a multimillion dollar punitive damages award (later reduced on remittitur, but still totaling in the hundreds of thousands of dollars);
- Representing consumer class at trial in product defect class action;
- Representing worker class in wage theft assistant manager misclassification case against national restaurant chain that culminated in a $16.5 million settlement;
- Representing worker class and collective against multinational startup company for Independent contractor misclassification claims, resulting in $8.75 million settlement;

# M&R
## MIGLIACCIO&RATHOD LLP

- Representing worker class in wage theft rate miscalculation case against multinational fracking company, resulting in $6 million settlement;
- Representing over 1,500 servers in multistate collective action, resulting in $1.72 million settlement;
- Representing consumer class in defective laptop case against multinational computer manufacturer; and
- Representing consumer class in defective construction case against multinational home builder, drafting key briefs leading to class certification and maintenance of suit in court, rather than arbitration.

**Education:**

- Duke University School of Law, J.D. 2010
- Grinnell College, B.A., 2006

**Admissions:**

- Illinois
- Washington, D.C.
- United States Court of Appeals for the District of Columbia Circuit
- United States Court of Appeals for the Third Circuit
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Eighth Circuit
- United States District Court for the District of Columbia
- United States District Court for the District of Maryland
- United States District Court for the Western District of Pennsylvania
- United States District Court for the District of Colorado
- United States District Court for the Eastern District of Michigan

**Publications and Speaking Engagements:**

- *The Arc and Architecture of Private Enforcement Regimes in the United States and Europe*: *A View Across the Atlantic*, 14 U.N.H. L. Rev. 303 (2016) (co-authored)
- *Trying the Class Action: Practical Tips from the Pros* (June 4, 2015) (panelist)
- *Emerging Markets, Vanishing Accountability: How Populations in Poor Countries Can Use Aggregate Litigation to Vindicate Their Rights*, 24 Transnat'l L. & Contemp. Probs. 69 (2014)
- *Note: Not Peace, But a Sword: Navy v. Egan and the Case Against Judicial Abdication in Foreign Affairs*, 59 Duke L.J. 595 (2009)

**Awards:**

- SuperLawyers Rising Stars, 2017, 2018, 2019, and 2020



*Esfand Y. Nafisi*

Esfand Nafisi worked for several years at a corporate law firm before joining the plaintiffs' bar. During that time, he quickly demonstrated an aptitude for high-stakes trial work and innovation in complex electronic discovery, including the development of statistical sampling models, database discovery, and marshaling these tools to develop trial theory. As part of a trial team in an antitrust matter brought on behalf of a small corporation, Esfand was responsible for managing a team of seven attorneys, preparing witness examinations, creating trial demonstratives, and developing case theory and themes. Esfand also represented a Fortune 100 company in parallel criminal investigations from the U.S. Department of Justice, U.S. Postal Inspectors, numerous states' attorneys general, and FinCEN. In that matter, he played an extensive role, including managing a group of 32 attorneys, developed technology-assisted review protocols that were vetted and approved by DOJ officials, and developing and drafting presentations for high-ranking meetings in a matter that resulted in $100,000,000 settlement.

Now, as an advocate for consumers and others impacted by corporate misconduct, Mr. Nafisi's practice focuses on class actions, with a focus on corporate misconduct arising from emerging or new technologies.

**Notable Cases Include:**

- Represented corporate plaintiff in antitrust litigation that settled at trial for $125,000,000. *Insignia Sys. V. News America Marketing In-Store*, Case No. 04-cv-4213 (D. Minn.).
- Represented Fortune 500 company in parallel wire fraud and money laundering investigations by federal authorities, which settled on favorable terms.
- Represented consumers in case alleging unlawful concealment of defective graphical processing units that led to nationwide repair and reimbursement program. *Book v. Apple*, Case No. 14-cv-04746 (N.D. Cal.).
- Represented three dozen individuals in consolidated personal injury action arising from undisclosed corticosteroids in an over-the-counter face cream. Worked closely with leading experts to develop theory of injury arising from topical steroid withdrawal. After three years of litigation, achieved more than $16,000,000 in relief to 36 plaintiffs. *Restaino et al. v. Mario Badescu, Inc.*, Case No. MID-L-5830-14 (N.J. Super. Ct.).
- Represented consumers in case against NVIDIA, Inc. related to misrepresentations concerning performance of graphics cards.

**Education:**

- Northwestern University School of Law, J.D. 2009
- George Mason University, B.S., 2006

**Admissions:**

- California



- New York
- Washington, D.C.
- United States District Court for the Northern District of California
- United States District Court for the Eastern District of California
- United States District Court for the District of Columbia

**<u>Publications and Speaking Engagements</u>:**

- *Daubert and its Discontents* 76 BROOK. L. REV. 131 (2010) (co-authored)

- *Developing Case Theory in Complex Litigations*, New York (2011)

- *Of Wheat and Chaff: Predictive Coding in Federal Biomet Case*, 159 Chicago Daily Law Bulletin 101 (May 22, 2013)



*Erick Quezada*

Prior to joining Migliaccio & Rathod, LLP, Mr. Quezada worked as Legal Fellow at a plaintiff-side employment litigation firm where he served as an advocate for employees facing discrimination, retaliation, and wage theft. Erick has written briefs resulting in favorable summary judgment rulings and examined witnesses in arbitration. As part of Migliaccio & Rathod LLP, Mr. Quezada strives to represent those marginalized and exploited by unlawful corporate practices.

Mr. Quezada graduated from Washington State University in 2013, receiving a B.A., *magna cum laude*, in Political Science and Criminal Justice System Studies. He received his J.D. from the Georgetown University Law Center in 2017, where he served as an editor for the *Tax Lawyer*, Georgetown's tax focused journal published by the ABA. While attending law school, Mr. Quezada worked as a research assistant with a focus in consumer protection and critical race theory literature. Throughout his second and third years of law school, Mr. Quezada provided litigation support to his professor working on the General Motors Ignitions Switch Defect litigation.

**<u>Notable Cases Include</u>**:

- Assisted in the representation of consumers in the ongoing General Motors Ignitions Switch MDL

**<u>Education</u>**:

- Georgetown University Law Center, J.D., 2017
- Washington State University, B.A., 2013

**<u>Admissions</u>**:

- Washington, D.C.



*Ashley M. Pileika*

As an associate at Migliaccio & Rathod LLP, Ms. Pileika's practice focuses on complex class and collective actions on behalf of those harmed by corporate or governmental wrongdoing. Ms. Pileika has represented a wide range of clients in disputes involving unfair business practices, wage theft, pharmaceutical injuries, data privacy breaches, and unconstitutional detentions. She has extensive experience in all aspects of state and federal litigation, including motion practice and discovery.

Prior to joining Migliaccio & Rathod LLP, Ms. Pileika completed a fellowship with the Office of the Attorney General for the state of Connecticut in the Civil Rights and Torts Division. Ms. Pileika graduated with highest honors from the University of North Carolina at Chapel Hill with a B.S. in Business Administration and a minor in Social and Economic Justice. She received her J.D. from Notre Dame Law School, where she served as Senior Articles Editor for the Notre Dame Journal of Legislation and Co-President of the Hispanic Law Students Association. In addition to clerking for Migliaccio & Rathod LLP, while in law school, Ms. Pileika externed for several public defender offices including the Public Defender Service for the District of Columbia (P.D.S.) and the Federal Public Defender for the Eastern District of California. Ms. Pileika also spent a summer at the U.S. Embassy in Bogotá, Colombia assisting the Judicial Attaché on operations involving national security, international law, and diplomacy.

**Notable Cases Include**:

- Assisted in representing a certified class of 400 detainees whose constitutional rights were violated by the Montgomery County Jail in Montgomery County, New York. After winning class certification and defeating the County's motion for summary judgment, a preliminary settlement of $1 million has been reached by the parties.
- Assisted in deposing and defending six expert witnesses and drafting a *Daubert* motion to admit expert witnesses on general causation in a pharmaceutical injury case against Forest Pharmaceuticals, Inc. on behalf of mothers who took Lexapro during pregnancy and gave birth to children with neurodevelopmental damage.
- Assisted in representing 1,520 servers in collective action against major IHOP franchise for wage theft violations, culminating in $1.725 million settlement.

**Education**:

- Notre Dame Law School, J.D., 2018
- University of North Carolina at Chapel Hill, B.S., 2012

**Admissions**:

- Washington, D.C.



- New York
- United States District Court for the Southern District of New York