Jesse Newmark (SBN 247488)
Aidin Castillo (SBN 280262)
CENTRO LEGAL DE LA RAZA
3022 International Blvd., Suite 410
Oakland, California 94601
Telephone: (510) 437-1863
jnewmark@centrolegal.org
acastillo@centrolegal.org

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, VICTOR HUGO CATALAN MOLINA, and KEVIN CALDERON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIBRE BY NEXUS, INC. and JOHN DOES 1-50,<br><br>Defendants. | Case No. 4:17-cv-00755-CW<br><br>**DECLARATION OF JUAN QUINTANILLA VASQUEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Claudia Wilken |

1. My name is Juan Quintanilla Vasquez. I am a named Plaintiff and Class Representative in this case. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so. I am providing this declaration in support of Plaintiffs' Motion for Fees, Costs, and Service Awards.

2. I came to the United States in December 2015 seeking asylum. I fled my home country of Honduras because I was the target of gang violence.

3. I was placed in detention in Houston, Texas, and an Immigration Judge set my bond for $10,000.

4. My wife and I eventually contacted Libre by Nexus (LBN), who arranged for my bond to be paid.

5. In exchange, we made payments to LBN and I had to wear an ankle monitor.

6. My wife and I believed that LBN could cause me to be sent back to immigration detention or back to Honduras. An LBN employee told me that I could be locked up if I missed my payments.

7. I paid a total of well over $10,000 to LBN, including up front and monthly fees.

8. Because I work as a day laborer, it has been very difficult for me and my family to pay my fees to LBN and for our other expenses. I have had to work side jobs like collecting cans for recycling to earn enough money.

9. I first spoke with my counsel about this case in December 2016.

10. I met with Aidin Castillo, an attorney for Centro Legal, on about December 7, 2016, to discuss my situation and a potential lawsuit against LBN.

11. In December 2016 and January 2017, I also had multiple meetings and calls with Ms. Castillo and the other attorneys about the facts in this case, signed forms, and spent time searching my records for documents. I also took photos of my ankle monitor for the case.

12. In February 2017, I again met with my attorneys a number of times, to review and sign a retainer and the complaint in this case, and to share and discuss the documents I had found. I also had a number of phone calls with my attorneys about the facts in this case, my financial hardships, and LBN's actions.

13. From March to June 2017, I met with my attorneys about two more times and had a number of calls with them. I reviewed the amended complaint and again searched for and reviewed documents for the case. I also talked more with my attorneys about the facts in my case, my contract with LBN, and my ankle monitor.

14. In July 2017, I had phone calls and met with my attorneys to prepare for a deposition. I then went to the deposition in San Francisco, which lasted all day.

15. In 2018 and 2019, I stayed in contact with my attorneys to talk about my situation with LBN and get updates on the case and settlement talks.

16. In 2020, I had more phone calls with my attorneys to discuss and review the settlement and other updates.

17. During this time, I have also spent many hours talking with my wife and family and thinking about the case on my own, to prepare for meetings and the deposition. I also made time to be available to speak with my attorneys during a number of mediations, and reviewed and corrected my deposition transcript.

18. I did all of this even though it was very difficult for me and my family, because I cared about changing the policies at LBN for others in my situation.

19. I decided to file this class action because I knew that many others were affected by the same policies, but would be too scared to come forward. I felt a responsibility to stand up for their rights too.

20. I had fled Honduras because of violence to seek asylum. I had also just gotten out of immigration detention, because LBN had arranged for my bond to be paid. I was still in immigration removal proceedings to decide my asylum claims.

21. My attorneys also told me that a class action could take a long time and that there was no guarantee we would win anything. They also told me that class actions could be difficult and time-consuming and that I would have to act in the best interest of others who went through a similar process with LBN, even if it meant a greater sacrifice from me.

22. Over the last almost four years, I have been very anxious about this case and possible retaliation.

23. I was very frightened and nervous about starting the case. I remember telling my attorneys many times that I was terrified that LBN would have immigration send me back to my country. I could barely sleep when I knew we filed the complaint. I was very stressed and could hardly eat. I felt like at any moment a representative from LBN was going to call me and yell at me for being part of this case. But I prayed, my whole family prayed. We knew it was the right thing to do, because of how much I suffered having to walk around and go to work with the ankle monitor.

24. I was also worried that the case would cause problems for my brother-in-law, who was a co-sponsor. He was upset when he learned I was part of the lawsuit, and said I was going to get the entire family in trouble. I spent many sleepless nights praying that we would all be okay.

25. The deposition was especially difficult. I was really nervous. I was afraid that LBN could use any information I shared against my family or me and that could affect my immigration case. I remember having many conversation with my attorneys about this. Being questioned in San Francisco by LBN's attorneys was frightening. They did not seem to understand what had happened to us and made us feel like we did something wrong. It was hard for me to be asked questions about why I came to the United States, and how we earned money to pay LBN. I worked as a day laborer and I worked really hard, but I was also always in fear that if we didn't make enough money to pay LBN, we would be sent back. Thinking about it still makes my stomach hurt.

26. I decided to participate in the lawsuit because I drew my strength from knowing that what was happening was not right. I had welts and scarring on my leg because of the shackle. I felt like a prisoner. It was humiliating and I did not think it was right to frighten people. I wanted to help change things for other people.

27. I also had to take unpaid time away from work for my attorney meetings and deposition. I do not remember the exact number of times, but it was many times. I would say 9 or 10 times I had to miss work. This was a really big deal for me because I am the head of my household. If I miss even one day of work, that means the amount of money I am able to

Page 3 of 4

*Vasquez v. Libre by Nexus, Inc.* Case No. 4:17-cv-00755-CW
QUINTANILLA VASQUEZ DECL. ISO MOTION FOR FEES, COSTS, AND SERVICE AWARDS

bring home that month is less, and that is really hard because we really don't have any other support in this country and nobody was going to help us if we couldn't pay our rent.

28. Traveling to my attorney meetings and deposition was also very difficult. I used public transportation. It takes me about one hour to get to Centro Legal because I have to walk to the bus stop and then take a bus to the office. Sometimes I was working and then had to take a bus home to pick up documents and then go to Centro Legal. So travel took a lot of time for me. It took even more time when I had to travel to meetings in San Francisco. That took closer to two hours because I had to take a bus to the BART and then take BART to San Francisco. I experienced a lot of anxiety having to make these trips. I couldn't even sleep the nights before I knew I had to do this. This anxiety is from what happened to me in my country. I had never been on BART except to go to immigration court and that made me very nervous.

29. I did not expect, nor was I ever promised that I would receive a service award. However, I believe that the proposed service award would fairly compensate me for the time, effort, and sacrifices I have made with this case. I also understand that I have signed a release of all claims I could have against LBN, which is a bigger release than the rest of the class.

30. I am very proud of the outcome of this case because I believe it will make things better for other clients and sponsors of LBN.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct, and that this declaration was executed in Oakland, California, on September 1, 2020.

*[signature]*
JUAN QUINTANILLA VASQUEZ