IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>LIBRE BY NEXUS, INC.,<br><br>      Defendant. | Case No. 17-cv-00755 CW<br><br>[~~PROPOSED~~] ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEY FEES, COSTS, AND SERVICE AWARDS<br><br>Re: Dkt. No. 152, 147 |

    On December 9, 2020, and February 3, 2021, this Court heard the motion for final approval of a class action settlement brought by Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon (Plaintiffs).  The Court has reviewed (1) the motion and the supporting papers, including the operative Settlement Agreement and Release (Agreement or Settlement), Jason Rathod Decl., Ex. 1, Docket No. 143-1; (2) any objections filed with or presented to the Court; (3) Plaintiffs' and Defendant Libre by Nexus, Inc.'s (LBN) (collectively, the Parties) responses to any objections; (4) counsel's arguments; and (5) the parties' filings after the December 9, 2020, hearing.  Based on this review and the findings below, the Court GRANTS the motion for final approval of the Settlement, as well as Plaintiffs' motion for attorneys' fees, costs, and service awards.

FINDINGS

1. Unless otherwise specified, defined terms in the Agreement have the same definition as used in this Final Approval Order and Judgment.

2. This Court has jurisdiction over the subject matter of the Agreement with respect to and over all parties to the Agreement, including Plaintiffs and all Settlement Class Members.

3. Venue is proper in this judicial district.

4. The Court finds that the parties entered into the Settlement in good faith; that the Settlement is fair, reasonable, and adequate; and that the Settlement satisfies the standards and applicable requirements for final approval under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

5. The Parties adequately performed their obligations to date under the Agreement.

6. Defendant LBN and the Settlement Administrator provided notice to the Settlement Class Members in compliance with the Agreement, Rule 23, the California and United States Constitutions, and other applicable law.  The notice: (a) fully and accurately informed Class Members about the lawsuit and Settlement; (b) provided sufficient information so that the Settlement Class Members were able to decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the Settlement; (c) provided procedures for Class Members to file written objections to the Settlement, appear at the final fairness hearing, and state objections to the Settlement; and (d) provided the time, date, and place of the final fairness hearing.  The Court has afforded a full

opportunity to all Settlement Class Members to be heard. Accordingly, the Court determines that all Settlement Class Members, except those who timely excluded themselves from the Settlement Class, are bound by this Final Approval Order and Judgment.

7. Within ten (10) days after the filing of the Agreement in this Court, LBN served a notice of the proposed settlement upon the appropriate state official of each State in which a Class member resides and upon the Attorney General of the United States. The Court finds that the notice provided by LBN satisfies the requirements of 28 U.S.C. § 1715(b) and that more than ninety (90) days have elapsed since LBN provided the required notice, as required by 28 U.S.C. § 1715(d).

8. An award of $800,000 in attorneys' fees and costs is fair and reasonable in light of the nature of this case, Class Counsel's experience and efforts in prosecuting this Action, and the benefits obtained for the Class. This amount represents twenty-five percent of the settlement fund and is in line with the twenty-five-percent benchmark that the Ninth Circuit deems to be presumptively reasonable. When cross-checked against the lodestar, which is $1,838,964.81, the award represents a multiplier of .44, which further supports the Court's finding that the award is fair and reasonable.

9. An incentive award to Plaintiffs in the amount of $10,000 for each named Plaintiff, for a total of $40,000, is fair and reasonable in light of the risks that Plaintiffs undertook (including financial, professional, and emotional) in commencing this Action as the Class Representatives; the time and effort

1 spent by Plaintiffs in litigating this Action as the Class
2 Representatives; Plaintiffs' full release and waiver of all known
3 and unknown claims; and Plaintiffs' public interest and service.
4     IT IS HEREBY ORDERED THAT:
5     1. Class Members.  For Settlement purposes only, the Court
6 makes final its preliminary certification of the following
7 Settlement Class:

> All current or former LBN "program participants" and "sponsors" who paid, or caused to be paid on their behalf, a fee to LBN.  Excluded from the Class are: (a) individuals for whom LBN or any surety or bond company has paid a treasury invoice or the bond or for whom a demand for payment for breach of a bond has been made by the U.S. Government which remains outstanding or open; (b) any judge or magistrate presiding over this action and members of their families; (c) Defendant and its current or former employees; and (d) all persons who properly execute and file a timely request for exclusion.

The Class is also comprised of three Subclasses, defined as follows:

> <u>Current Program Participant Subclass</u>:
>
> All current LBN "program participants" and "sponsors" who paid, or caused to be paid, or caused to be paid on their behalf, a fee to LBN.
>
> <u>Former and Current Program Participant Payments Subclass</u>:
>
> All former LBN "program participants" who paid, or caused to be paid on their behalf, a "Program Payment" to LBN and all current LBN "program participants" who, within six months of the "Final Settlement Approval Date" have been issued a Form I-391.

4

> Sponsor Payments Subclass:
>
> All sponsors of members of the Former and Current Program Participants Payments Subclass who paid a fee to LBN, including any initial payment or set up fee.

2. Binding Effect of Order.  This Order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Class Members, including those who did not properly request exclusion under paragraph eight of the Preliminary Approval and Provisional Class Certification Order, Docket No. 144.  This Order does not bind persons who filed timely and valid requests for exclusion.  The persons who properly requested to be excluded from the Settlement are listed in Exhibit D to the Declaration of Jennifer Keough, Docket No. 152-2.

3. Objections Overruled.  The Court has considered and hereby overrules all objections brought to the Court's attention, whether properly filed or not.

The parties clarified and agreed during the December 9, 2020, hearing, (1) that attorneys' fees will not be paid before eligible Settlement Class Members receive their cash payment under the Settlement; (2) that the Settlement Class Members will not be releasing any personal injury claims; (3) that the release carves out claims brought by state attorneys general; and (4) that the release will not preclude state attorneys general from obtaining restitution or other relief on behalf of consumers. Accordingly, the objections of the attorneys general of New York, Virginia, and Massachusetts (attorneys general) with respect to these matters are overruled as moot.  See Reply Br. by the

5

Attorneys General at 3, Docket No. 155 (stating that the parties' clarifications "resolve" the objections of the attorneys general with respect to the aforementioned matters).

The attorneys general object to the Settlement on the grounds that the monetary relief that eligible Settlement Class Members will receive is unjustifiably delayed and discounted, and that the terms describing the timing of LBN's cash payments are not sufficiently clear.  The Court overrules this objection on the grounds that the parties have shown that the timing and amounts of the monetary relief at issue are appropriate in light of LBN's strained financial situation, and that the Settlement is sufficiently definite as to the timing for when LBN must make and complete the cash payments required by the Settlement.  Moreover, Plaintiffs represent, and the Court finds, that the other relief that LBN is required to provide pursuant to the Settlement, which will not be delayed or reduced as a result of LBN's financial situation, is the most significant and important aspect of the Settlement Class Members' recovery under the Settlement, and that this weighs in favor of granting final approval of the Settlement.

The attorneys general also object to the notice plan, arguing that, unless the Court requires the Settlement Administrator to send additional text messages or direct mailings to the Settlement Class Members, the notice plan does not satisfy the requirements of Rule 23 and due process.  The Court overrules this objection on the grounds that (1) the parties represent that the Settlement Class Members change residences frequently and that text messages are, therefore, the method of communication

most likely to be effective in reaching them; (2) the text messages that the Settlement Administrator has sent to date were sent to the most recent numbers that LBN has for Settlement Class Members; (3) the notice plan required forms of notice other than, and in addition to, text messages, including direct postcard notice to the Settlement Class Members who could not be reasonably reached by text message, published notice, mailed notice to the American Immigration Lawyers Association and National Immigration Project of the National Lawyers Guild, and publication of the notice on the Settlement Website; and (4) there is evidence that the notice plan was effective, as the settlement website had more than 6,000 visitors and the settlement phone number received more than 2,000 calls.  In light of the foregoing, the Court finds that the notice plan was the best practicable under the circumstances and that it satisfies the requirements of Rule 23 and due process.  See, e.g., Rosas v. Sarbanand Farms, LLC, No. C18-0112-JCC, 2019 WL 859225, at *2 (W.D. Wash. Feb. 22, 2019) (approving plan to notify settlement class members "by text message" as the best practicable on the ground that "class members do not have permanent addresses in the U.S. and class counsel has 96 percent of their phone numbers"); Avendano v. Averus, Inc., No. 14-CV-01614-CMA-MJW, 2016 WL 11692088, at *2 (D. Colo. Oct. 25, 2016) ("Given the undisputed transient nature of the class and Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action.").

7

Objector Oscar Campos, who is represented by Kelly Salzmann of the Legal Aid Justice Center, objects to the Settlement, arguing that it is not clear as to whether Settlement Class Members will be able to assert an affirmative defense of fraud in the inducement or lack of contract formation to the extent that LBN or third parties attempt to collect on Settlement Class Members' debts in the future.  The Court overrules this objection on the ground that the Settlement does not expressly waive any affirmative defense that any Settlement Class Member may raise in any future debt collection proceedings filed by LBN against any Settlement Class Member.

4. No Admission.  Neither this Final Approval Order and Judgment nor the Agreement is an admission or concession by LBN of the validity of any claims or of any liability or wrongdoing or of any violation of law and not an admission by Plaintiffs that their claims lacked merit.

5. Dismissal.  This Court hereby dismisses with prejudice this Action and all claims of Class Representatives and Settlement Class Members against LBN that have been, or could have been, alleged in the Action arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action.

6. Release.  Plaintiffs and all Settlement Class Members who did not properly request exclusion are deemed to have released and discharged LBN from all claims arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised

based on the allegations of the Action, including without limitation allegations made in any version of the complaint filed in the Action and claims released under the Settlement Agreement, as described in the Agreement.

7. By operation of this judgment, Plaintiffs, but not Settlement Class Members, also expressly waive any and all claims, rights, or benefits they may have under California Civil Code § 1542 and any similar federal or state law, right, rule, or legal principle that may apply.  California Civil Code § 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8. LBN releases, waives, and forever discharges Plaintiffs and each Member of the Payments Subclasses ("Plaintiff Releasees") who has fully paid his or her obligations to LBN and who has not opted out of the Settlement Class from any and all claims it has or may have against the Plaintiff Releasees with respect to any claim for existing Program Payments or fees.

9. Injunction Against Asserting Released Claims.  Class Representatives and the Settlement Class Members, and LBN, having released all claims as described above, are permanently enjoined from commencing or prosecuting any of those claims against the released parties as described above, provided, however, that this injunction shall not apply to individual claims of Settlement Class Members who properly excluded themselves from the

9

Settlement Class, who are listed in Exhibit D to the Declaration of Jennifer Keough, Docket No. 152-2.  This injunction is necessary to protect and effectuate the Settlement, this Final Approval Order and Judgment, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

10. Class Relief.  The Settlement Amount will be used to provide benefits to or on behalf of the Settlement Class as set forth in the Agreement.  Payments shall be made according to the schedule set forth in the Agreement.

a. Cash relief.  The Settlement Administrator shall issue a payment to each Former and Current Program Participant Payments Subclass Member and Sponsor Payments Subclass Member in accordance with the Agreement.  If there is an amount remaining following the initial distribution such that each recipient would receive at least $5 in a secondary distribution, then there shall be a secondary distribution, as stated in the Agreement.  If any funds remain after this second distribution, or if there is an amount less than $5 per recipient following the initial distribution, those funds shall be paid to the Cy Pres Recipients in accordance with the Agreement.

b. Debt relief.  The remainder of the Settlement Amount, after payment of the cash relief referenced above, Notice and other Administrative Costs, any Incentive Award as set forth herein, and any Fee and Expense Award as set forth herein, will consist of credits to be made to the accounts of current program

10

participants for past due program fees due and owing as of the date the Plaintiffs filed their motion for Preliminary Approval, as set forth in the Agreement.

c. Additional monetary relief.  As set forth in the Agreement, members of the Current Program Participant Subclass will benefit from several financial changes to their contracts with LBN and LBN's business practices.  First, Program Participants who make three (3) consecutive monthly payments on time and in full will have their monthly recurring fee reduced by ten percent (10%) [the Consecutive Payment Discount].  Program Participants who make an additional three (3) consecutive monthly payments on time and in full (for a total of 6 consecutive on time and in full payments) will have their monthly recurring fee reduced by a further ten percent (10%) from the original fee amount set for each program participant [the Second Consecutive Payment Discount] for a total of a twenty percent (20%) discount from their original recurring fee.  Second, Program Participants who pay more than $420 per month in monthly recurring program fees, and pay on time and in full by the first of the month, shall have their payment that month reduced to $415.  Third, LBN will impose a total payment cap for Program Payments, excluding the initial payment and set up fees made by the program participants or their sponsors, to an amount not to exceed the face amount of the bond.  Fourth, LBN will stop all monthly payments upon termination of immigration proceedings.  Fifth, LBN will provide fee waivers of at least $150,000 per year to Program Participants.

d. Other business practice changes.  LBN will also

11

provide programmatic and other non-monetary benefits to Settlement Class Members through other business practice changes set forth in the Agreement, which include but are not limited to: (1) translating written and verbal contracts and posting them online; (2) providing clear and concise contract terms; (3) using best efforts to ensure meaningful program participant and sponsor review of contracts prior to signing; (4) not making any immigration-related threats; (5) modifying language on criminal prosecution; (5) representing that LBN has no present intent to collect certain debt from program participants or their sponsors; (6) removing GPS monitors in a timely manner for pregnancy or medical necessity, or upon termination of immigration proceedings; (7) not requiring leg-affixed GPS monitors for new program participants with bonds of less than $7,500 (impacting approximately 19% of program participants); (8) transitioning to technologically upgraded ankle monitors that are less intrusive and do not require program participants to stay in place to charge the monitors, by December 31, 2020, at the latest; and (9) using commercially reasonable efforts to transition away from use of ankle monitors altogether and to instead use wrist bracelet monitors or other similarly less intrusive monitors, such as cellular telephones or periodic check-ins, by December 31, 2021, at the latest.  Further details as to these business practices and any exceptions are set forth in the Settlement Agreement.

11. Attorneys' Fees and Costs.  Class Counsel is awarded $800,000 total in attorneys' fees and costs to be paid from the Settlement Amount, but not the Cash Settlement Fund, in accordance with the terms set forth in the Settlement Agreement

and pursuant to the parties' representations during the hearing on December 9, 2020.

12. Incentive Award.  Plaintiffs are each awarded $10,000 as a service award to be paid from the Settlement Amount, but not the Cash Settlement Fund, in accordance with the terms set forth in the Agreement.

13. Settlement Administrator Costs.  The Court approves the payment to the Settlement Administrator of a total amount not to exceed $80,000, to be paid from the Settlement Amount, but not the Cash Settlement Fund.

14. Judgment.  The Court finds that there is no reason for delay and directs the Clerk to enter judgment in accordance with the terms of this Order.

15. Court's Jurisdiction.  Without affecting the finality of this Final Approval Order and Judgment, pursuant to the Parties' request, the Court retains jurisdiction over this Action and the Parties pursuant to the terms of the Agreement.

16. Status Report.  Within thirty days of the date when cash payments to Authorized Claimants are completed, or December 31, 2023, whichever comes first, Class Counsel shall file a status report to the Court specifying the total amount paid to Authorized Claimants and the total amount of uncashed checks that will be paid to the approved Cy Pres Recipients.

IT IS SO ORDERED.

Dated: February 8, 2021

_____
CLAUDIA WILKEN
United States District Judge