IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN QUINTANILLA VASQUEZ, et al.,

Plaintiffs,

v.

LIBRE BY NEXUS, INC.,

Defendant.

Case No. 17-cv-00755 CW

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR AN ORDER HOLDING DEFENDANT IN CIVIL CONTEMPT AND IMPOSING CIVIL CONTEMPT SANCTIONS**

(Re: Dkt. No. 218)

Now before the Court is Plaintiffs' motion for an order holding Defendant Libre by Nexus, Inc. (LBN) in civil contempt and imposing civil contempt sanctions on LBN.  Docket No. 218.  For the reasons set forth below, and in light of the argument heard on September 15, 2022, the Court grants the motion in part and denies it in part.

I.      **BACKGROUND**

On February 8, 2021, the Court granted final approval of the parties' settlement agreement (Final Approval Order).  *See* Docket No. 184.  The operative version of the settlement agreement was filed as Exhibit 1 to the Declaration of Jason Rathod, Docket No. 143-1, and its terms were incorporated into the Final Approval Order.  *See generally* Docket No. 184.  In the Final Approval Order, the Court ordered LBN to take certain actions pursuant to the terms of the settlement agreement, which include the following:

First, the Court ordered LBN to provide to the members of the settlement class and subclasses, which are defined in the settlement agreement and the Final Approval Order, with the

Settlement Amount[1], which consists of consideration whose total monetary value is $3,200,000. Docket No. 184 at 10-13; *see also* Docket No. 143-1 at ECF header pages 10-11. The Settlement Amount is comprised of the following components:

1.  A Cash Settlement Fund of $750,000, to be distributed on a *pro rata* basis to the members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass. Docket No. 143-1 at ECF header page 11. The Court required LBN to make payments toward the Cash Settlement Fund based on the payment schedule set forth in the settlement agreement.[2] Docket No. 184 at 10.

2.  An incentive award to each of the four named plaintiffs of $10,000, for a total of $40,000. Docket No. 143-1 at ECF header page 9. The Court required LBN to make payments toward the incentive awards based on the payment schedule set forth in the settlement agreement. Docket No. 184 at 13.

3.  $800,000 in attorneys' fees and costs to be paid into an escrow account established by the settlement administrator, to be distributed to Class Counsel only after the members of the Former and Current Program Participant Payments Subclass and

---

[1] Capitalized terms are defined in, and have the same meaning as in, the settlement agreement.

[2] Under the payment schedule set forth in the settlement agreement, *see* Docket No. 143-1 at ECF header pages 14-15, LBN was required to begin making payments on a weekly basis toward the $750,000 Cash Settlement Fund, the $40,000 in incentive awards, and the $800,000 award of attorneys' fees and costs on December 1, 2021, if its quarterly revenues met certain thresholds relative to its quarterly revenues for 2019. *Id.* The amount of LBN's weekly payments would be determined starting on December 1, 2021, and on a quarterly basis thereafter, based on benchmarks comparing LBN's current quarterly revenues with its revenues for the same quarter in 2019. *Id.* To the extent that LBN's weekly payments under this payment schedule did not satisfy, by January 1, 2023, the cash amounts that LBN owed (i.e., the $750,000 Cash Settlement Fund, the $40,000 in incentive awards, and the $800,000 award of attorneys' fees and costs), then LBN would be required to pay the remainder in twelve equal monthly installments beginning on January 20, 2023. *Id.* In response to a motion to enforce the settlement agreement that Plaintiffs filed in 2021, the Court, in an order filed on July 30, 2021, clarified the logistics of the payment schedule and benchmarks set forth in the settlement agreement on the basis that doing so would help enforce and effectuate the settlement agreement. *See* Docket No. 203 at 8. In relevant part, the Court ordered that the quarterly revenue comparisons for determining the amounts that LBN must pay on a weekly basis starting on December 1, 2021, shall be made based on financial statements for LBN prepared by an external accountant and certified under penalty of perjury by counsel for LBN. *See id.* at 8-9.

United States District Court
Northern District of California

United States District Court
Northern District of California

Sponsor Payments Subclass receive their Cash Settlement Fund distributions. Docket No. 143-1 at ECF header page 26. The Court required LBN to pay these fees based on the payment schedule set forth in the settlement agreement. Docket No. 184 at 12-13.

4.  $80,000 in costs of settlement administration, to be paid in accordance with the terms of the settlement agreement. Docket No. 184 at 10. Under the terms of the settlement agreement, LBN was required to make an initial deposit of these costs within fourteen days of the date on which the Court granted preliminary approval of the settlement agreement, and thereafter was required to make periodic payments within thirty days of approval by Class Counsel and LBN's counsel of an invoice by the settlement administrator. *See* Docket No. 143-1 at ECF header page 14.

5.  $1,530,000 for a Debt Relief Fund, which consists of credits that LBN must apply to the accounts of members of the Current Program Participant Subclass on a *pro rata* basis according to the terms of the settlement agreement. Docket No. 143-1 at ECF header pages 13-14. The Court ordered LBN to apply these credits pursuant to the terms of the settlement agreement, Docket No. 184 at 10-11, which, in turn, required LBN to apply the credits within twenty days of the date on which the Court granted final approval of the settlement agreement, Docket No. 143-1 at ECF header page 15.

Second, the Court ordered LBN, pursuant to the terms of the settlement agreement, to provide to members of the Current Program Participant Subclass additional monetary relief in the form of:

1.  Discounts of up to twenty percent with respect to monthly recurring fees based on whether members of the Current Program Participant Subclass made consecutive monthly payments as set forth in the settlement agreement (Consecutive Payment Discount).[3] *See* Docket No. 184 at 11; Docket No. 143-1 at ECF header pages 15-

---

[3] "Program Participants who make three (3) consecutive monthly payments on time and in full will have their monthly recurring fee reduced by ten percent (10%) [the Consecutive Payment

16.  The Consecutive Payment Discount was to be implemented by LBN by the later of April 1, 2020, or within twenty days of the Final Settlement Approval Date. *See* Docket No. 143-1 at ECF header page 17.

2.    A reduction of monthly recurring program fees to $415 for each member of the Current Program Participant Subclass who paid more than $420 per month and made on-time and in-full payments according to the terms of the settlement agreement (Timely and In Full Payment Discount).  Docket No. 184 at 11; Docket No. 143-1 at ECF header page 16.  The Timely and In Full Payment Discount was to be implemented by LBN by the later of April 1, 2020, or within twenty days of the Final Settlement Approval Date.  *See* Docket No. 143-1 at ECF header page 17.

3.    A total payment cap for program payments made by members of the Current Program Participant Subclass, excluding the initial payment and set-up fees, to an amount not to exceed the face amount of the bond (Total Payment Cap).  Docket No. 184 at 11; Docket No. 143-1 at ECF header page 16.  The Total Payment Cap was to be applied to the accounts of Current Program Participant Subclass members within twenty days of the date the Court granted preliminary approval of the settlement agreement.  *See* Docket No. 143-1 at ECF header pages 16-17.

Third, the Court ordered LBN, pursuant to the terms of the settlement agreement, to provide the settlement class members with a variety of non-monetary benefits.  *See* Docket No. 184 at 11-12; Docket No. 143-1 at ECF header pages 17-21.

Pursuant to the settlement agreement's terms, this Court retained jurisdiction over the action and the parties, including to enforce, interpret, and effectuate the settlement agreement and the Court's Final Approval Order.  Docket No. 184 at 13; Docket No. 143-1 at ECF header page 32.

---

Discount].  Program Participants who make an additional three (3) consecutive monthly payments on time and in full (for a total of 6 consecutive on time and in full payments) will have their monthly recurring fee reduced by a further ten percent (10%) from the original fee amount set for each program participant [the Second Consecutive Payment Discount] for a total of a twenty percent (20%) discount from their original recurring fee."  Docket No. 184 at 11.

United States District Court
Northern District of California

1    Since it entered the Final Approval Order on February 8, 2021, the Court has issued

2    several orders in response to evidence presented by Plaintiffs that LBN has failed to comply with

3    the Final Approval Order and the terms of the settlement agreement incorporated therein.  In those

4    orders, the Court required LBN, among other things, to comply with these obligations, to provide

5    Class Counsel with declarations signed under penalty of perjury and records sufficient to

6    demonstrate its compliance with the same, and to respond to communications from Class Counsel

7    within one business day.  *See* Order of July 30, 2021, Docket No. 203; Order of November 12,

8    2021, Docket No. 209; Order of January 12, 2022, Docket No. 216.

9    **II.    LEGAL STANDARD**

10    Civil contempt "consists of a party's disobedience to a specific and definite court order by

11    failure to take all reasonable steps within the party's power to comply."  *Inst. of Cetacean Rsch. v.*

12    *Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (citation omitted).  In a civil

13    contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence

14    that the contemnors violated a specific and definite order of the court.  The burden then shifts to

15    the contemnors to demonstrate why they were unable to comply."  *Fed. Trade Comm'n v.*

16    *Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and internal quotation

17    marks omitted).  Remedies that (1) "coerce compliance with a court order" or (2) are "meant to

18    compensate the complainant for actual losses" fall within the scope of civil contempt sanctions.

19    *See Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d

20    1122, 1129 (9th Cir. 2013) ("[A] sanction generally is civil if it coerces compliance with a court

21    order or is a remedial sanction meant to compensate the complainant for actual losses.") (citation

22    omitted).  In contrast with criminal contempt sanctions, "civil contempt sanctions, or those

23    penalties designed to compel future compliance with a court order, are considered to be coercive

24    and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon

25    notice and an opportunity to be heard.  Neither a jury trial nor proof beyond a reasonable doubt is

26    required."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

27    "[A]lthough the district court generally must impose the minimum sanction necessary to secure

28

1    compliance . . . the district court retains discretion to establish appropriate sanctions[.]" *United*

2    *States v. Bright*, 596 F.3d 683, 696 (9th Cir. 2010) (internal citations omitted).

3        Where a court order incorporates the terms of a settlement agreement, a district court has

4    the authority to modify the court order and the settlement agreement terms incorporated therein if

5    it finds that there has been a change in factual circumstances. *See Kelly v. Wengler*, 822 F.3d

6    1085, 1097 (9th Cir. 2016). "Under well established law, substantial violation of a court order

7    constitutes a significant change in factual circumstances." *Id.* at 1098.

8    **III.   DISCUSSION**

9        Plaintiffs move for an order holding LBN in civil contempt and imposing civil contempt

10   sanctions on it. Docket No 218. Plaintiffs contend that LBN has not complied, or otherwise has

11   not provided them with sufficient documentation to demonstrate its compliance, with several key

12   terms of the settlement agreement, the Final Approval Order that incorporates those terms, and

13   several other orders issued by the Court. *Id.* at 1. Plaintiffs request that the Court impose a

14   variety of civil contempt sanctions on LBN, which are described in their motion and their

15   proposed order, *see generally* Docket Nos. 218 and 218-9, on the basis that those sanctions would

16   coerce LBN's compliance or would otherwise compensate them for losses they suffered as a result

17   of LBN's noncompliance.

18       In lieu of filing an opposition to Plaintiffs' motion, LBN filed an unsworn letter signed by

19   Evan Ajin. *See* Docket No. 219. In other filings, Ajin represented that he is a corporate secretary

20   of LBN. *See* Docket No. 208-1. In his letter, which Ajin represents is a "[r]esponse from LBN

21   management team," Docket No. 219 at 1, Ajin states that the pandemic and "significant shifts in

22   immigration policy" have resulted in a "long-term reduction in clients" for LBN that has "created

23   a significant reduction in revenue," *id.* Ajin also states that he remains willing to "work with

24   Counsel for the Plaintiffs" to resolve any lingering disputes over LBN's alleged noncompliance

25   with the Court's orders and the terms of the settlement agreement. *Id.* at 1-3. The unsworn Ajin

26   letter is unaccompanied by any evidence showing the state of LBN's financial condition or the

27   steps that LBN has taken, if any, to comply with the Court's orders and its obligations under the

28   settlement agreement.

1   Below, the Court addresses each of the alleged instances of LBN's noncompliance that

2   Plaintiffs discuss in their motion, as well as Ajin's response, if any, to each alleged instance of

3   noncompliance.

4       **A.**     **Payments Required by the Settlement Agreement for Cash Settlement Fund, Incentive Awards, and Attorneys' Fees and Costs Award**

5

6   Plaintiffs argue that LBN has failed to make payments according to the payment schedule

7   set forth in the settlement agreement to satisfy the cash amounts it owes under the settlement

8   agreement, which total $1,590,000 and are comprised of $750,00 for the Cash Settlement Fund,

9   $40,000 for incentive awards for the named plaintiffs, and $800,000 in attorneys' fees and costs

10  for Class Counsel.  Plaintiffs contend that, under the payment schedule set forth in the settlement

11  agreement, *see* Docket No. 143-1 at ECF header pages 14-16, LBN was required to deposit on a

12  weekly basis with the settlement administrator payments that would be used to satisfy those cash

13  amounts it owes beginning on December 1, 2021, and until the earlier of either: (a) all outstanding

14  cash amounts being paid in full, or (b) January 1, 2023, at which time LBN would be required to

15  pay the remainder of the cash amounts it owes in twelve equal monthly instalments beginning in

16  January 2023.  The amount that LBN would be required to deposit on a weekly basis beginning on

17  December 1, 2021, depended on revenue benchmarks set forth in the settlement agreement, which

18  compared the amount of LBN's quarterly revenue for certain quarters with LBN's quarterly

19  revenue for the corresponding quarters in 2019.

20  As Plaintiffs point out, the Court clarified the mechanics of the payment schedule and

21  benchmarks in question in its order of July 30, 2021.  In that order, the Court, among other things,

22  required LBN to produce to Plaintiffs, for the purpose of determining the weekly amounts that

23  LBN would be required to pay based on the revenue benchmarks set forth in the settlement

24  agreement, financial statements prepared by an external accountant and certified under penalty of

25  perjury by LBN counsel.  *See* Docket No. 203 at 8-10.  The Court required LBN order to provide

26  these statements to Class Counsel starting on December 1, 2021, and thereafter on a quarterly

27  basis.  *See id.*  In an order issued on January 12, 2022, the Court found that LBN had failed to

28  produce the first of the required financial statements, which had been due on December 1, 2021,

United States District Court
Northern District of California

1    and it ordered LBN to produce the financial statement to Class Counsel within fourteen days of

2    that order.  *See* Docket No. 216 at 3.

3         Plaintiffs contend that, to date, LBN has not provided them with any financial statement

4    that complies with the Court's orders of July 30, 2021, and January 12, 2022 (i.e., one that was

5    generated by an external accountant and was certified under penalty of perjury by counsel for

6    LBN) even though LBN was required to produce these statements on a quarterly basis starting on

7    December 1, 2021.  *See* Rathod Decl. ¶ 25.  Plaintiffs acknowledge that LBN filed an unsworn

8    statement in December 2021 and January 2022 by Rebecca Wells, a person who purports to be a

9    former external accountant for LBN but is now LBN's Chief Financial Officer, *see* Docket No.

10   217-4.  Plaintiffs contend that Wells' unsworn statement is insufficient to comply with the Court's

11   orders of July 30, 2021, and January 12, 2022, because it was not generated by a person who

12   *currently* is an external accountant for LBN and is not certified under penalty of perjury by

13   counsel for LBN (or even by Wells herself).  Plaintiffs argue that, because LBN has not provided

14   them with certified financial statements prepared by an external accountant showing how its

15   quarterly revenues compare to its 2019 revenues, the Court should not permit LBN to delay its

16   payments toward the cash amounts it owes under the settlement agreement, because the settlement

17   agreement contemplates delayed payments by LBN only to the extent that LBN is able to

18   demonstrate a revenue shortfall relative to its 2019 revenues pursuant to the benchmarks set forth

19   in the agreement.

20        Plaintiffs request that the Court, as a civil contempt sanction, draw an adverse inference

21   against LBN and assume that, on each date on which LBN was required to produce to Class

22   Counsel certified financial statements generated by an external accountant, LBN's quarterly

23   revenue was in the range of one-hundred to one-hundred-and-ten percent relative to its revenue for

24   the corresponding 2019 quarter.  Plaintiffs argue that, if the Court draws this adverse inference,

25   then, under the payment schedule set forth in the settlement agreement, LBN would have been

26   required to pay $100,000 per week starting on December 1, 2021, until the date on which LBN

27   finished paying the cash amounts it owes under the settlement agreement (which total

28   $1,590,000), which would have been on March 28, 2022 (approximately sixteen weeks after

United States District Court
Northern District of California

8

1    making the first weekly payment of $100,000 on December 1, 2021). Accordingly, if the Court

2    draws the adverse inference that Plaintiffs request, LBN would be required to pay immediately all

3    of the cash amounts it owes under the settlement agreement.

4         In his unsworn letter, Ajin provides no response to Plaintiffs' representations that LBN has

5    failed to produce the financial statements generated by an external accountant and certified under

6    penalty of perjury by LBN counsel that the Court ordered LBN to produce in multiple orders. *See*

7    *generally* Docket No. 219. Ajin states only that "LBN is unable to make the payments that

8    Plaintiff's counsel would like to accelerate" and that Ajin "remains willing to work with Counsel

9    for the Plaintiffs" to resolve this issue. *Id.* at 2. Ajin also states that LBN's revenues have

10    decreased as a result of the pandemic. *Id.*

11         The Court finds that Plaintiffs have met their burden to show that LBN violated the Court's

12    orders of July 30, 2021, and January 12, 2022, by failing to provide Class Counsel with financial

13    statements prepared by an external accountant and certified under penalty of perjury by LBN's

14    counsel on December 1, 2021, and on a quarterly basis thereafter. *See* Rathod Decl. ¶ 25. LBN

15    has neither pointed to any evidence showing that it took all reasonable steps within its power to

16    comply with these orders, nor has it explained why it has failed, to date, to produce the certified

17    financial statements in question. *See generally* Docket No. 219. Ajin's unsworn and unsupported

18    statements regarding LBN's purported reduction in revenues are insufficient to comply with the

19    July 30, 2021, and January 12, 2022, orders, or to reliably establish that LBN's revenues fell

20    below the thresholds and benchmarks set forth in the settlement agreement. Likewise, the

21    statement signed by LBN's former external accountant and current CFO, Rebecca Wells, which

22    LBN filed on the docket in December 2021 and January 2022, also is insufficient to comply with

23    the Court's orders of July 30, 2021, and January 12, 2022, because that statement was not

24    prepared by a person who currently is an external accountant for LBN, nor was it certified by

25    counsel for LBN under penalty of perjury.[4] *See* Docket No. 217-4.

26    _____

27         [4] The statement in question is signed by "Rebecca Wells, CPA," who purports to be a
     former external accountant of LBN who was "brought in-house as Libre's Chief Financial

28    Officer." Docket No. 217-4. Above the signature line, the phrase "I certify that this statement is
     true and accurate" appears. *See* Docket No. 217-4. The statement does not contain any indication

United States District Court
Northern District of California

1    The Court also finds that Plaintiffs have met their burden to show that LBN is in violation

2 of the Final Approval Order and the terms of the settlement agreement incorporated therein, which

3 required LBN to begin to make payments towards the cash amounts it owes under the settlement

4 agreement beginning on December 1, 2021.  Plaintiffs have represented, and LBN has not

5 disputed, that LBN has made no payments toward the cash amounts it owes under the settlement

6 agreement to date.

7    Accordingly, the Court finds that LBN is in civil contempt and that civil contempt

8 sanctions against it are warranted.  *See Kelly*, 822 F.3d at 1096 ("A contemnor in violation of a

9 court order may avoid a finding of civil contempt only by showing it took all reasonable steps to

10 comply with the order.").

11    The Court finds that the adverse inference that Plaintiffs request is an appropriate civil

12 contempt sanction, as it would serve to coerce LBN's compliance with the terms of the settlement

13 agreement that require it to pay the cash amounts totaling $1,590,000, and begin to compensate

14 Plaintiffs for its consistent failure to do so.  Therefore, the Court will infer that, had LBN

15 produced the certified financial statements by an external accountant that the Court ordered, such

16 statements would have revealed that LBN's revenues were such that it would have been required,

17 under the benchmarks and payment schedule set forth in the settlement agreement, to pay the

18 maximum weekly amount of $100,000 toward the cash amounts it owes under the settlement

19 agreement.  Such weekly payments would have begun on December 1, 2021, and ended the week

20 of March 28, 2022, when the entire cash amount LBN owes ($1,590,000) would have been

21 satisfied.  Because it is undisputed that LBN has failed to pay any amount toward the $1,590,000

22 it owes, and that this amount should have been paid in full by the week of March 28, 2022 (under

23 the adverse inference that the Court has drawn), the Court hereby orders LBN to pay the entire

24 cash amount it owes ($1,590,000) within ten business days of the date this order is filed.  For each

25 day that LBN fails to pay this amount by the date specified in this order, LBN shall pay a fine of

26

27 ───────────────

that it was reviewed by counsel for LBN.  It also lacks any statement by Wells or anyone else

28 attesting *under penalty of perjury* that the revenues discussed in the statement are true and correct.

1   $1,000 per day of continued noncompliance, which LBN shall pay to the settlement administrator

2   for the benefit of, and eventual distribution to[5], members of the Former and Current Program

3   Participant Payments Subclass and Sponsor Payments Subclass.[6]  The Court finds that these civil

4   contempt sanctions are necessary to coerce LBN's compliance with the Court's orders.

5       **B.**    **Costs of Settlement Administration**

6          Plaintiffs argue that, in its order of July 30, 2021, Docket No. 203 at 4, the Court ordered

7   LBN to pay, within fourteen days of that order (or by August 14, 2021), the $80,000 that LBN

8   owes in administration costs pursuant to the settlement agreement and the Final Approval Order.[7]

9   Plaintiffs represent that, despite their continued requests that LBN pay the $80,000 it owes, LBN

10   has failed to comply with the Court's July 30, 2021, order because, to date, LBN has paid only

11   $8,000 of the $80,000 it owes for the costs of settlement administration.  *See* Rathod Decl. ¶ 20.

12   Plaintiffs request that the Court order LBN to pay immediately the $72,000 that it still owes to the

13   settlement administrator, with interest.

14          In the unsworn letter that Ajin filed, he states that "LBN is aware of the requirement and

15   the outstanding balance owed" but that LBN's revenues have decreased as a result of the

16   pandemic.  Docket No. 219 at 2.  Ajin further represents that LBN will "repay the remaining fees

17   before 90 days."  *Id.*

---

20       [5] The distribution of any fines collected by the settlement administrator for the benefit of members of the Former and Current Program Participant Payments Subclass and Sponsor

21   Payments Subclasses pursuant to this order shall be effectuated pursuant to the distribution plan set forth in the settlement agreement for the Cash Settlement Fund.

23       [6] Any fine of $1,000 per day that LBN incurs for noncompliance, as set forth in this order, shall be cumulative (i.e., each $1,000 per-day fine shall be per each instance of noncompliance

24   with respect to each of the subject matters regarding which the Court has separately ordered LBN to take certain actions, as described above) and shall be in addition to (1) any other judgment, fine,

25   or fee imposed against LBN in this action, and (2) any amounts that LBN is obligated to pay pursuant to the terms of the settlement agreement, the Final Approval Order, and any other order previously issued by the Court.

27       [7] Before the Court entered its order of July 30, 2021, Plaintiffs represent, and LBN does not dispute, that the parties had agreed that LBN would pay the $80,000 in administration costs by

28   March 11, 2021, which was thirty days after the Court issued the Final Approval Order.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court finds that Plaintiffs have met their burden to show that LBN violated the Court's

2    order of July 30, 2021, as it is undisputed that LBN has not yet paid all of the $80,000 that LBN

3    owes under the terms of the settlement agreement for the costs of settlement administration.  LBN

4    has failed to point to any evidence showing that it took all reasonable steps within its power to

5    comply with the Court's July 30, 2021, order, which required it to pay the entire $80,000 within

6    fourteen days of that order.  Ajin's unsworn and unsupported statements regarding LBN's

7    purported reduction in revenues are insufficient to establish that LBN's financial condition

8    prevented LBN from complying with the Court's July 30, 2021, order.  As discussed above, the

9    Court has required LBN on multiple occasions to produce to Class Counsel financial statements

10   generated by an external accountant and certified by LBN counsel under penalty of perjury to

11   reliably demonstrate the state of its revenues, but LBN has repeatedly failed to produce them.

12   Without reliable evidence as to LBN's financial condition, the Court cannot reasonably infer that

13   LBN's financial condition has prevented LBN from complying with its obligation to pay the

14   $80,000 in costs of settlement administration pursuant to the Court's July 30, 2021, order.

15   Accordingly, the Court finds LBN in civil contempt of the Court's orders, and that

16   imposing civil contempt sanctions against LBN is warranted.  The Court orders LBN to pay,

17   within ten business days of the date of this order, the remainder of the $80,000 it owes for the

18   costs of settlement administration ($72,000), with interest to be calculated from August 14, 2021,

19   to the present.[8]  The Court finds that these civil contempt sanctions are necessary to coerce LBN's

20   compliance with the Court's orders and to compensate the settlement administrator for losses it

21   suffered as a result of LBN's noncompliance.

22   Additionally, for each day that LBN fails to pay this amount by the date specified in this

23   order, LBN shall pay a fine of $1,000 per day of continued noncompliance, which LBN shall pay

24   to the settlement administrator for the benefit of, and eventual distribution to, members of the

---

[8] Interest, for the purpose of complying with this order, shall be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).  Interest shall be computed daily and shall be compounded annually.  28 U.S.C. § 1961(b).

United States District Court
Northern District of California

1    Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  The

2    Court finds that these civil contempt sanctions are necessary to coerce LBN's compliance with the

3    Court's orders.

4         **C.    Attorneys' Fees for Enforcement Motion Filed in 2021**

5         Plaintiffs point out that, in its order of July 30, 2021, Docket No. 203 at 4, the Court

6    ordered LBN to pay $34,142.60 for the attorneys' fees and costs that Class Counsel incurred in

7    bringing a motion to enforce the settlement agreement in 2021.  Plaintiffs also point out that the

8    Court again ordered LBN to pay the $34,142.60 in question in its orders of November 12, 2021,

9    Docket No. 209, and January 12, 2022, Docket No. 216.  Plaintiffs represent that LBN has failed

10   to comply with the Court's orders because LBN, to date, has not paid any of the $34,142.60 that

11   the Court required it to pay.  Plaintiffs request that the Court order LBN to pay immediately into a

12   trust account held by the settlement administrator the $34,142.60 at issue, with interest.

13        In the unsworn letter that Ajin filed, he provides no response to Plaintiffs' representations

14   that LBN has failed to pay the $34,142.60 in question.  *See generally* Docket No. 219.

15        The Court finds that Plaintiffs have met their burden to show that LBN violated several

16   court orders by failing to pay the $34,142.60 at issue.  In its order of July 30, 2021, the Court

17   ordered LBN to pay the $34,142.60 at issue into a trust account held by the settlement

18   administrator.  *See* Docket No. 203 at 4.  On November 12, 2021, the Court issued another order

19   requiring LBN, within seven days of the order, to file a declaration under penalty of perjury signed

20   by a LBN principal and supporting documentation showing that LBN "has paid the $34,142.60 in

21   attorneys' fees and costs into the trust account controlled by the settlement administrator."  Docket

22   No. 209 at 3.  On January 12, 2022, the Court issued yet another order requiring LBN, within

23   seven days of that order, to pay the $34,142.60 at issue to the extent that it had not done so, and to

24   file a declaration confirming that it had paid that amount.  Docket No. 216 at 3.  LBN points to no

25   evidence showing that it complied with any of these orders or that it took all reasonable steps in its

26   power to comply with these orders.  Ajin's unsworn and unsupported statements in his letter

27   regarding LBN's purported reduction in revenues are insufficient to establish that LBN's financial

28

United States District Court
Northern District of California

1   condition prevented LBN from complying with the Court's orders of July 30, 2021, November 12,

2   2021, and January 12, 2022, for the reasons discussed above.

3           Accordingly, the Court finds that LBN is in civil contempt and that imposing civil

4   contempt sanctions against LBN is warranted.  The Court orders LBN to pay, within ten business

5   days of the date of this order, the $34,142.60 it owes for Class Counsel's attorneys' fees and costs

6   in connection with their 2021 enforcement motion, with interest to be calculated from July 30,

7   2021, to the present.  These amounts shall be paid into a trust held by the settlement administrator

8   and shall not be distributed to Class Counsel until cash distributions pursuant to the settlement

9   agreement and the Court's orders are first made to members of the Former and Current Program

10  Participant Payments Subclass and Sponsor Payments Subclass.  The Court finds that these civil

11  contempt sanctions are necessary to coerce LBN's compliance with the Court's orders and to

12  compensate the Class Counsel for losses they suffered as a result of LBN's noncompliance.

13          Additionally, for each day that LBN fails to pay the $34,142.60 amount plus interest as

14  indicated herein, LBN shall pay a fine of $1,000 per day of continued noncompliance, which LBN

15  shall pay to the settlement administrator for the benefit of, and eventual distribution to, members

16  of the Former and Current Program Participant Payments Subclass and Sponsor Payments

17  Subclass.  The Court finds that these civil contempt sanctions are necessary to coerce LBN's

18  compliance with the Court's orders.

19          **D.      Implementation of Timely and In Full Payment Discount and Consecutive

20          Payment Discount**

21          Plaintiffs contend that LBN has violated several Court orders and the terms of the

22  settlement agreement incorporated therein by failing to demonstrate that it has implemented the

23  Timely and In Full Payment Discount and the Consecutive Payment Discount required by the

24  settlement agreement.  Plaintiffs contend that LBN should have applied those discounts to the

25  accounts of members of the Current Program Participant Subclass no later than March 31, 2021.

26  In its order of July 30, 2021, the Court required LBN, within seven days of that order, to file

27  declarations under penalty of perjury and supporting documents demonstrating its compliance

28  with the terms of the settlement agreement, including those requiring the implementation of the

1   Timely and In Full Payment Discount and the Consecutive Payment Discount.  *See* Docket No.

2   203 at 5-7.  The Court again ordered LBN in an order dated January 12, 2022, to provide Class

3   Counsel with sufficient documentation to show that LBN had implemented the discounts at issue.

4   *See* Docket No. 216 at 3-4.

5          Plaintiffs argue that, to date, LBN has failed to provide them with documentation sufficient

6   to show that they have implemented the Timely and In Full Payment Discount and the

7   Consecutive Payment Discount.  Plaintiffs further contend that materials that LBN has provided

8   them to date indicate that LBN has not applied the discounts in question according to the terms of

9   the settlement agreement.  Plaintiffs contend that, instead of implementing the discounts at issue

10  as required in the agreement, LBN appears to have simply applied an across-the-board discount so

11  that Current Program Participant Subclass members' monthly fees are capped at $400.  Plaintiffs

12  argue that LBN's application of a flat, across-the-board cap of $400 does not excuse or negate its

13  failure to provide members of the Current Program Participant Subclass with the discounts

14  required under the settlement agreement.  According to Plaintiffs, the discounts set forth in the

15  settlement agreement can result in monthly payments that are less than $400 and are, therefore,

16  more favorable to members of the Current Program Participant Subclass than the flat, across-the-

17  board cap that LBN has purportedly applied.

18         Plaintiffs request that the Court order LBN to provide immediate refunds to members of

19  the Current Program Participant Subclass to the extent that it failed to apply the discounts in

20  question according to the terms of the settlement agreement as of March 31, 2021, and to pay

21  interest on those refunds calculated from March 31, 2021, to the present.  Plaintiffs further request

22  that the Court order LBN to reduce "the payment amounts" of settlement class members by twenty

23  percent "across the board" and that the Court order LBN to implement a new accounting system to

24  ensure that the discounts at issue are actually implemented by LBN and that members of the

25  Current Program Participant Subclass are not charged fees or other amounts in excess of what they

26  are supposed to pay under the terms of the settlement agreement.  Docket No. 218 at 12-13.

27         In the letter filed in response to the present motion, Ajin states conclusorily that Plaintiffs

28  have failed to show that LBN has failed to comply with its obligation to implement the discounts

in question.  Docket No. 219 at 2.  Ajin also contends, without pointing to any evidence, that LBN has "complied to best of its capabilities and in the terms requested," and that he remains willing to work with Class Counsel to resolve any lingering disputes.  *Id.*  Ajin otherwise does not respond to Plaintiffs' arguments.

The Court finds that Plaintiffs have met their burden to show that LBN violated several court orders, including those issued on July 30, 2021, and January 12, 2022, by failing to provide Class Counsel with documentation sufficient to show that it has implemented the Timely and In Full Payment Discount and the Consecutive Payment Discount as set forth in the settlement agreement.  Plaintiffs have shown that, after receiving documents that LBN provided to them that purportedly demonstrated LBN's implementation of the discounts at issue, Class Counsel emailed LBN's principals and counsel on April 8, 2022, to notify them that the documents that LBN had provided to them appeared to indicate that the discounts had not, in fact, been implemented according to the terms of the settlement agreement.  *See* Docket No. 218-5.  Plaintiffs represent, *see* Rathod Decl. ¶ 11, and LBN does not dispute, that LBN failed to respond to Plaintiffs' email. Ajin's conclusory and unsupported assertions in his letter that LBN has "complied to the best of its capabilities and in the terms requested" are insufficient to demonstrate that LBN provided Class Counsel with documentation sufficient to show that LBN has implemented the Timely and In Full Payment Discount and the Consecutive Payment Discount according to the terms of the settlement agreement.[9]

Accordingly, the Court finds that LBN is in civil contempt and that the following relief is warranted.  The Court orders LBN to provide proof that it has implemented the In Full Payment Discount and the Consecutive Payment Discount pursuant to the terms of the settlement agreement to the accounts of a sample of eligible members of the Current Program Participant Subclass, as follows.  No later than five business days from the date this order is filed, Class Counsel shall

---

[9] LBN is required to apply the Timely and In Full Payment Discount and the Consecutive Payment Discount exactly as described in the settlement agreement.  A failure to implement the discounts in question exactly as described in the settlement agreement would constitute a violation of the terms of the settlement agreement and the orders incorporating such terms and requiring compliance with the terms of the settlement agreement.

provide LBN with the names of fifty members of the Current Program Participant Subclass who are eligible to receive, and should have received by March 31, 2021, at the latest, the Timely and In Full Payment Discount and the Consecutive Payment Discount pursuant to the terms of the settlement agreement.  Within five business days of receiving these names, LBN shall provide to Class Counsel billing records and other documents sufficient to show that it has implemented the Timely and In Full Payment Discount and the Consecutive Payment Discount with respect to the fifty people selected by Class Counsel, as well as billing records and other documents sufficient to show the date on which LBN implemented the discounts in question.  The billing records and documents that LBN shall produce to Class Counsel shall be accompanied by a declaration signed under penalty of perjury by LBN's principals that authenticates the records and documents and attests to the truthfulness and accuracy of their contents.

If, upon their receipt and review of the billing records and documents for the fifty people selected by Class Counsel, Class Counsel believe in good faith that LBN has failed to apply the Timely and In Full Payment Discount and the Consecutive Payment Discount as required under the terms of the settlement agreement, then Class Counsel may file a supplemental motion for civil contempt sanctions.  LBN may file a response to Plaintiffs' supplemental motion for civil contempt sanctions within fourteen days of the date that it is filed, and Plaintiffs may file a reply within seven days thereafter.  Once the briefing is completed, the Court may rule on the supplemental motion on the papers or may refer the matter to a magistrate judge for resolution.

Until LBN has demonstrated its compliance with the terms of the settlement agreement requiring it to implement the Timely and In Full Payment Discount and the Consecutive Payment Discount, as described in this order, LBN shall not refer to a third-party collections agency any alleged debt owed by a member of the Current Program Participant Subclass who was eligible to receive the Timely and In Full Payment Discount or the Consecutive Payment Discount under the terms of the settlement agreement.  The Court will lift this prohibition once LBN establishes that it is in compliance with the terms of the settlement agreement requiring it to implement the Timely and In Full Payment Discount and the Consecutive Payment Discount, as described in this order. While the prohibition is in effect, LBN shall be subject to a fine of $1,000 per day of

noncompliance with the prohibition, which LBN shall pay to the settlement administrator for the benefit of, and eventual distribution to, members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  The Court finds that the prohibition on referring debts to third-party collection agencies and the monetary fine for noncompliance with that prohibition are necessary to coerce LBN's compliance with the Court's orders and the terms of the settlement agreement incorporated therein.

The Court declines at this time to require LBN, as Plaintiffs request, to apply an across-the-board discount of twenty percent to the accounts of members of the Current Program Participant Subclass, or to impose any other sanctions on LBN, as a remedy for LBN's undisputed failure to demonstrate its implementation of the discounts at issue.

### E.    Implementation of Total Payment Cap

Plaintiffs argue that, under the terms of the settlement agreement, LBN was required, by no later than August 20, 2020, which was twenty days after the date on which the Court granted preliminary approval of the settlement agreement, to implement the Total Payment Cap to the accounts of members of the Current Program Participant Subclass so that their program payments, excluding the initial payment and set-up fees, did not exceed the face amount of the bond. Plaintiffs contend that LBN has not demonstrated that it has implemented the Total Payment Cap despite multiple Court orders requiring it to do so.

As Plaintiffs point out, on July 30, 2021, the Court found that Plaintiffs had shown that LBN had not yet implemented the Total Payment Cap and it ordered LBN to file, within seven days of that order, declarations under penalty of perjury and supporting documents demonstrating its compliance with the terms of the settlement agreement, including those requiring the implementation of the Total Payment Cap.  *See* Docket No. 203 at 5-7.  Plaintiffs also point out that, on November 12, 2022, the Court again found that LBN had failed to demonstrate that it had implemented the Total Payment Cap, *see* Docket No. 209 at 2, and it ordered LBN to file within seven days another declaration under penalty of perjury signed by an LBN principal, and supporting documentation, showing that LBN had implemented the Total Payment Cap and that

United States District Court
Northern District of California

1    the program payments of members of the Current Program Participant Subclass had not exceeded

2    at all relevant times the face amount of the bond, *see id.* at 3.

3            Plaintiffs contend that thereafter they made a showing that LBN had produced to Class

4    Counsel a spreadsheet in PDF format that showed more than one thousand instances in which

5    LBN program participants' payments had exceeded the face value of the bond.  The Court then

6    ordered LBN on January 12, 2022, to produce to Class Counsel in native format and within

7    fourteen days of that order the same spreadsheet that it had previously produced in PDF format, as

8    well as "individual analysis and documentation sufficient to explain any instances where a Class

9    Member's total monthly payments exceeded his or her bond amount," *see* Docket No. 216 at 3.

10   Plaintiffs contend that, since the Court's order of January 12, 2022, LBN produced to them the

11   spreadsheet in native format, as well as explanations for apparent violations of the Total Payment

12   Cap, but only as to twenty participants that LBN selected.  Plaintiffs contend that they are unable

13   to determine based on the twenty participants that LBN selected whether LBN has implemented

14   the Total Payment Cap for all members of the Current Program Participant Subclass who are

15   eligible under the terms of the settlement agreement to have their payments capped to the face

16   value of their bond.  Plaintiffs represent that they asked LBN by email on April 8, 2022, to provide

17   explanations for apparent violations of the Total Payment Cap for twenty additional participants to

18   be selected by Class Counsel, *see* Docket No. 218-5 and Rathod Decl. ¶¶ 7-11, but LBN never

19   responded to that email.

20           Plaintiffs request that the Court order LBN to immediately provide proof of compliance

21   with the Total Payment Cap by providing individual analysis and documentation for an additional

22   twenty participants, to be selected by Class Counsel, whose program payments appear to exceed

23   the face value of their bond in violation of the Total Payment Cap.

24           In his unsworn letter, Ajin argues conclusorily that Plaintiffs have failed to show that LBN

25   has failed to comply with its obligation to implement the Total Payment Cap.  Docket No. 219 at

26   2.  He also contends that he remains willing to work with Class Counsel to resolve any lingering

27   disputes.  *Id.*  Ajin otherwise does not respond to Plaintiffs' arguments.

28

United States District Court
Northern District of California

The Court finds that Plaintiffs have met their burden to show that LBN violated the Court's order of January 12, 2022, by failing to provide Class Counsel with "individual analysis and documentation sufficient to explain any instances where a Class Member's total monthly payments exceeded his or her bond amount," *see* Docket No. 216 at 3; *see also* Docket No. 218-5 and Rathod Decl. ¶¶ 7-11.  LBN has not pointed to any evidence showing that it took all reasonable steps to comply with its obligation under the Court's January 12, 2022, order to provide the individual analysis and documentation at issue.

Accordingly, the Court finds that that the following relief is warranted.  The Court orders LBN to provide proof that it has implemented the Total Payment Cap pursuant to the terms of the settlement agreement to the accounts of a sample of eligible members of the Current Program Participant Subclass, as follows.  No later than five business days from the date this order is filed, Class Counsel shall provide LBN with the names of fifty members of the Current Program Participant Subclass who are eligible to receive, and should have received, the Total Payment Cap pursuant to the terms of the settlement agreement.  Within five business days of receiving these names, LBN shall provide to Class Counsel billing records and other documents sufficient to show that it has implemented the Total Payment Cap with respect to the fifty people selected by Class Counsel, as well as billing records and other documents sufficient to show the date on which LBN implemented the discounts in question.  The billing records and documents that LBN shall produce to Class Counsel shall be accompanied by a declaration signed under penalty of perjury by LBN's principals that authenticates the records and documents and attests to the truthfulness and accuracy of their contents.

If, upon their receipt and review of the billing records and documents for the fifty people selected by Class Counsel, Class Counsel believe in good faith that LBN has failed to apply the Total Payment Cap as required under the terms of the settlement agreement, then Class Counsel may file a supplemental motion for civil contempt sanctions.  LBN may file a response to Plaintiffs' supplemental motion for civil contempt sanctions within fourteen days of the date that it is filed, and Plaintiffs may file a reply within seven days thereafter.  Once the briefing is

United States District Court
Northern District of California

completed, the Court may rule on the supplemental motion on the papers or may refer the matter to a magistrate judge for resolution.

Until LBN has demonstrated its compliance with the terms of the settlement agreement requiring it to implement the Total Payment Cap, as described in this order, LBN shall not refer to a third-party collections agency any alleged debt owed by a member of the Current Program Participant Subclass who was eligible to receive the Total Payment Cap under the terms of the settlement agreement. The Court will lift this prohibition once LBN establishes that it is in compliance with the terms of the settlement agreement requiring it to implement the Total Payment Cap, as described in this order. While the prohibition is in effect, LBN shall be subject to a fine of $1,000 per day of noncompliance with the prohibition, which LBN shall pay to the settlement administrator for the benefit of, and eventual distribution to, members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass. The Court finds that the prohibition on referring debts to third-party collection agencies and the monetary fine for noncompliance with that prohibition are necessary to coerce LBN's compliance with the Court's orders and the terms of the settlement agreement incorporated therein.

F.      Implementation of Debt Relief Fund

Plaintiffs argue that LBN was required to implement the $1,530,000 Debt Relief Fund by twenty days after the Court granted final approval of the settlement agreement. To implement the Debt Relief Fund, LBN was required to apply credits that totaled $1,530,000 on a *pro rata* basis to the accounts of members of the Current Program Participant Subclass. Plaintiffs point out that, after they made a showing that LBN had failed to implement the Debt Relief Fund independently from other credits that LBN may have applied to the accounts of participants pursuant to LBN's obligations in other actions, the Court ordered LBN on July 30, 2021, to provide proof of its implementation of the Debt Relief Fund within seven days. *See* Docket No. 203 at 5. Specifically, the Court ordered LBN to file declarations under penalty of perjury signed by its principals, as well as business records, client billing records, and other documents sufficient to show "LBN's timely implementation of the $1.53 million debt relief" required under the settlement agreement "independent of debt relief that LBN may have provided in other actions[.]"

United States District Court
Northern District of California

*See id.*  The Court further ordered LBN on July 30, 2021, to provide refunds with interest to the accounts of affected settlement class members to the extent that it had failed to comply with the terms of the settlement agreement with financial implication to the members of the settlement class, including the provisions for debt relief.  *Id.* at 10.  The Court again ordered LBN on January 12, 2022, to implement the Debt Relief Fund and to provide Class Counsel with "sufficient records to show compliance[.]"  *See* Docket No. 216 at 3.  Plaintiffs represent that LBN has failed to provide them with sufficient records to demonstrate that it has implemented the Debt Relief Fund.  Plaintiffs contend that they requested by email on April 8, 2022, that LNB provide them with the billing records of fifty members of the Current Program Participant Subclass to be selected by Class Counsel showing that LBN had applied the credits at issue to their accounts, *see* Docket No. 218-5, but LBN has not responded to their email to date.

Plaintiffs request that the Court order LBN to immediately provide proof of its implementation of the Debt Relief Fund by producing to Class Counsel the billing records of fifty members of the Current Program Participant Subclass who are entitled to receive the credits at issue under the terms of the settlement agreement.  The fifty members are to be selected by Class Counsel.

In his unsworn letter, Ajin states that "LBN has applied $1.53 million in credits" and that LBN "at its own expense rais[ed] the total to over $2 in an attempt to demonstrate good faith to the Court."  Docket No. 219 at 1.  Ajin also states that LBN has not "refused" to provide the "sampling" that Class Counsel requested and that he remains willing to work with Class Counsel "to resolve this issue."  *Id.*

The Court finds that Plaintiffs have met their burden to show that LBN violated the Court's order of January 12, 2022, *see* Docket No. 216 at 3, by failing to provide Class Counsel with "sufficient records to show compliance" with the terms of the settlement agreement requiring that LBN implement the Debt Relief Fund.  *See* Docket No. 218-5 and Rathod Decl. ¶¶ 2-3.  LBN has not pointed to any evidence showing that it took all reasonable steps to comply with its obligation under the Court's January 12, 2022, order to provide Class Counsel the records at issue.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Accordingly, the Court finds that LBN is in civil contempt and that the following relief is warranted.  The Court orders LBN to provide proof that it has implemented the Debt Relief Fund pursuant to the terms of the settlement agreement to the accounts of a sample of eligible members of the Current Program Participant Subclass, as follows.  No later than five business days from the date this order is filed, Class Counsel shall provide LBN with the names of fifty members of the Current Program Participant Subclass who are eligible to receive, and should have received, the Debt Relief Fund credits pursuant to the terms of the settlement agreement.  Within five business days of receiving these names, LBN shall provide to Class Counsel billing records and other documents sufficient to show that it has implemented the Debt Relief Fund credits with respect to the fifty people selected by Class Counsel, as well as billing records and other documents sufficient to show the date on which LBN implemented the credits in question.  The billing records and documents that LBN shall produce to Class Counsel shall be accompanied by a declaration signed under penalty of perjury by LBN's principals that authenticates the records and documents and attests to the truthfulness and accuracy of their contents.

If, upon their receipt and review of the billing records and documents for the fifty people selected by Class Counsel, Class Counsel believe in good faith that LBN has failed to apply the Debt Relief Fund credits as required under the terms of the settlement agreement, then Class Counsel may file a supplemental motion for civil contempt sanctions.  LBN may file a response to Plaintiffs' supplemental motion for civil contempt sanctions within fourteen days of the date that it is filed, and Plaintiffs may file a reply within seven days thereafter.  Once the briefing is completed, the Court may rule on the supplemental motion on the papers or may refer the matter to a magistrate judge for resolution.

Until LBN has demonstrated its compliance with the terms of the settlement agreement requiring it to implement the Debt Relief Fund, as described in this order, LBN shall not refer to a third-party collections agency any alleged debt owed by a member of the Current Program Participant Subclass who was eligible to receive the Debt Relief Fund credits under the terms of the settlement agreement.  The Court will lift this prohibition once LBN establishes that it is in compliance with the terms of the settlement agreement requiring it to implement the Debt Relief

United States District Court
Northern District of California

Fund, as described in this order.  While the prohibition is in effect, LBN shall be subject to a fine of $1,000 per day of noncompliance with the prohibition, which LBN shall pay to the settlement administrator for the benefit of, and eventual distribution to, members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  The Court finds that the prohibition on referring debts to third-party collection agencies and the monetary fine for noncompliance with that prohibition are necessary to coerce LBN's compliance with the Court's orders and the terms of the settlement agreement incorporated therein.

> G.    **Attorneys' Fees in Connection with Present Motion**

Plaintiffs request that the Court order LBN to pay for the $53,021.60 in attorneys' fees they incurred in connection with the present motion.  Plaintiffs contend that the settlement agreement provides for an award of attorneys' fees and costs for any party who prevails in enforcing the settlement agreement.  Plaintiffs also argue that the Court has discretion to award them the attorneys' fees they incurred in bringing the present motion as a remedial measure for LBN's civil contempt.

In his unsworn letter, Ajin does not specifically address Plaintiffs' entitlement to, or the reasonableness of their request for, an award of attorneys' fees.  *See* Docket No. 219 at 3.  Ajin states only that "the goal of class counsel seems to be to run up extreme legal fees[.]"  *Id.*

A district court has discretion to award attorneys' fees and costs as a remedial measure in a proceeding for civil contempt.  *See Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) (holding that a district court has discretion "to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure" and that a finding of "willful" disobedience with a court order is not required for a district court to award fees and costs as a remedial measure in civil contempt proceedings).  The Court finds that an award to Class Counsel of the attorneys' fees they incurred in connection with the present motion is warranted, as Plaintiffs have demonstrated that LBN has failed to comply with several court orders and the terms of the settlement agreement incorporated therein, as discussed above.

The Court finds that the lodestar that Plaintiffs have requested, namely $53,021.60, is fair and reasonable in light of the results that Class Counsel obtained in the context of the present

motion, the quality of the representation, the contingent nature of their compensation, and the fact that Class Counsel's payment will be delayed until members of the settlement classes receive their compensation under the terms of the settlement agreement.  The amount requested is the product[10] of 69.4 hours billed at a rate of $764, which is a reasonable rate when considering the rates billed by counsel with similar experience for similar legal services.[11]  *See* Rathod Decl. ¶ 27 & Docket No. 218-8.  The 69.4 hours claimed were reasonably expended on tasks that were necessary to bring the present motion, including investigating LBN's compliance (or lack thereof) with the Court's orders and the terms of the settlement agreement incorporated therein, communicating with LBN regarding the same, and researching and drafting the present motion.  *See id.*  LBN did not challenge the reasonableness of Class Counsel's requested hours or hourly rates in the Ajin letter that LBN filed in opposition to the present motion, and it has, therefore, waived any objections to the same.  *See Perry*, 759 F.2d at 706 (finding that party held in civil contempt waived objections to reasonableness of requested attorneys' fees and costs because it "failed to challenge the reasonableness of the amount of the fee award requested before the district court").

Accordingly, the Court orders LBN to pay, within ten business days of the date that this order is filed, $53,021.60 for the attorneys' fees that Class Counsel incurred in connection with the present motion.  LBN shall pay this amount into a trust held by the settlement administrator and the amount shall not be distributed to Class Counsel until cash distributions pursuant to the settlement agreement and the Court's orders are made first to members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.

---

[10] Plaintiffs refer to a different amount in their motion, namely $53,022.6.  That appears to be a typing error, as the product of $764 and 69.4 is $53,021.60.

[11] Class Counsel, Jesse Newmark and Jason Rathod, represent that they have more than eleven years of experience and argue that the requested hourly rate of $764 for their work is reasonable in light of the Laffey Matrix, which sets $764 as the reasonable hourly rate for attorneys with eleven to nineteen years of experience.  *See* Rathod Decl. ¶ 27.  The Laffey Matrix is "a widely recognized compilation of attorney and paralegal rates based on various levels of experience" upon which courts, including those in this district, routinely rely to determine the reasonableness of attorney hourly rates.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010).  The Court finds that the requested hourly rate of $764 is reasonable in light of the Laffey Matrix and the fact that LBN did not object to the requested hourly rate.

IV.    **CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for an order holding LBN in civil contempt and imposing civil contempt sanctions against LBN.  The Court will issue a separate order delineating the civil contempt sanctions that the Court imposes on LBN.

IT IS SO ORDERED.

Dated:  October 3, 2022

CLAUDIA WILKEN
United States District Judge