ANNICK M. PERSINGER, SBN 272996
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
(510) 254-6808
*apersinger@tzlegal.com*

JESSE NEWMARK, SBN 247488
**CENTRO LEGAL DE LA RAZA**
3022 International Boulevard, Suite 410
Oakland, California 94601
(510) 437-1863
*jnewmark@centrolegal.org*

JASON S. RATHOD, *pro hac vice*
NICHOLAS A. MIGLIACCIO, *pro hac vice*
**MIGLICACCIO & RATHOD LLP**
412 H Street, Northeast, Suite 302
Washington District of Columbia 20002
(202) 470-3520
*nmigliaccio@classlawdc.com*
*jrathod@classlawdc.com*

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, VICTOR HUGO CATALAN MOLINA, and KEVIN CALDERON, *individually and on behalf of all others similarly situated,*<br><br>                    Plaintiffs,<br><br>        v.<br><br>LIBRE BY NEXUS, INC. and JOHN DOES 1-50,<br><br>                    Defendants. | Case No. 4:17-cv-00755-CW<br><br>**NOTICE OF MOTION AND SUPPLEMENTAL MOTION TO HOLD DEFENDANT'S PRINCIPALS IN CONTEMPT AND FOR SANCTIONS**<br><br>Judge: Hon. Claudia Wilken<br>Hearing Date: January 19, 2023<br>Time: 2:30 p.m.<br>Courtroom: TBD |

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on January 19, 2023 at 2:30 p.m. in the Courtroom of the Hon. Claudia Wilken of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon, by and through Class Counsel, will and hereby do move for an order to hold Defendant's principals—Micheal Donovan, Evan Ajin, and Richard Moore—in civil contempt for failing to cure Defendant's contempt despite their responsibility to do so.  Plaintiffs further request sanctions on the terms set forth herein, for Defendant and its principals to pay Plaintiffs' attorneys' fees and costs for making the instant motion, and to take such other action as the Court may find appropriate. Plaintiffs also seek an amended judgment that includes Micheal Donovan, Evan Ajin, and Richard Moore (the "LBN Principals").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Jason Rathod ("Rathod Decl.") and Cameron Partovi ("Partovi Decl.") submitted herewith; the docket in this case; and all other documents or argument as the Court may consider.

Date: November 23, 2022

**TYCKO & ZAVAREEI LLP**

By:  _/s/ Annick M. Persinger_
ANNICK M. PERSINGER, SBN 272996
1970 Broadway, Suite 1070
Oakland, California 94612
(510) 254-6808
apersinger@tzlegal.com

JESSE NEWMARK, SBN 247488
**CENTRO LEGAL DE LA RAZA**
3022 International Boulevard, Suite 410
Oakland, California 94601
(510) 437-1863
jnewmark@centrolegal.org

1

JASON S. RATHOD, *pro hac vice*
NICHOLAS A. MIGLIACCIO, *pro hac vice*

2

**MIGLICACCIO & RATHOD LLP**
412 H Street, Northeast, Suite 302

3

Washington District of Columbia 20002
(202) 470-3520

4

*nmigliaccio@classlawdc.com*
*jrathod@classlawdc.com*

5

6

*Counsel for Plaintiffs and the Class*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND OF CONTEMPT PROCEEDINGS .........................................1

    A.  The Court Predicts That Individual Sanctions May Be Necessary. ............1

    B.  The Court Enters a Contempt Order Against LBN. .....................................2

    C.  LBN Ignores the Court's Contempt Order. .................................................3

III. LBN'S CONTINUED FLAGRANT VIOLATION DEMONSTRATES THE NEED
    TO HOLD LBN'S PRINCIPALS IN CONTEMPT AND TO INCREASE THE
    SEVERITY OF SANCTIONS. .............................................................................5

    A.  Legal Standard .............................................................................................5

    B.  The LBN Principals Should Be Held in Contempt to Coerce LBN's Compliance
       with the Settlement Orders. .........................................................................6

       1.  The LBN Principals are "Legally Identified with" LBN..................6

          a.   Micheal Donovan.................................................................8

          b.   Evan Ajin ............................................................................9

          c.   Richard Moore.................................................................. 10

       2.  The LBN Principals Aided LBN's Violations. ..............................10

       3.  The LBN Principals Had Notice of the Settlement Orders. ...........11

    C.  The Obstructive Conduct of LBN and the LBN Principals Warrants Imposition of
       Severe Sanctions. ...................................................................................... 13

IV.  LBN MUST PAY CLASS COUNSEL'S ATTORNEYS' FEES IN BRINGING THIS
    MOTION ........................................................................................................... 14

V.  Amending the Judgment to Clarify LBN's and the Principal's obligations is Appropriate........... 14

VI. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Campbell v. Keystone Aerial Surveys, Inc.*
  138 F.3d 996 (5th Cir. 1998) ...................................................................................... 6, 14

*Frankl v. HTH Corp.*
  832 F. Supp. 2d 1179 (D. Haw. 2011) .............................................................................. 7

*Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*
  10 F.3d 693 (9th Cir. 1993) ............................................................................................... 5

*Hernandez v. County of Monterey*
  2019 WL 1934882 (N.D. Cal. May 1, 2019) .................................................................. 14

*In re Crystal Palace Gambling Hall, Inc.*
  817 F.2d 1361 (9th Cir. 1987) ........................................................................................... 5

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*
  774 F.3d 935 (9th Cir. 2014) ............................................................................................. 6

*J.L. v. Cuccinelli*
  2020 WL 2562895 (N.D. Cal. Feb. 20, 2020) .................................................................. 6

*Kelly v. Wengler*
  822 F.3d 1085 (9th Cir. 2016) ....................................................................................... 5, 6

*Leads Club, Inc. v. Peterson*
  2008 WL 186504 (S.D. Cal. Jan. 22, 2008) ................................................................... 15

*Luv N'Care, Ltd. v. Laurain*
  2019 WL 4279028 (D. Nev. Sept. 10, 2019) .................................................................... 8

*Martin v. City of Barstow*
  2015 WL 12743594 (C.D. Cal. Dec. 21, 2015) .............................................................. 15

*NLRB v. Sequoia Dist. Council of Carpenters, AFL-CIO*
  568 F.2d 628 (9th Cir. 1977) ................................................................................... 6, 7, 12

*Optronics Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*
  2020 WL 3617007 (N.D. Cal. July 2, 2020) ............................................................... 6, 13

*Perry v. O'Donnell*
  759 F.2d 702 (9th Cir. 1985) ........................................................................................... 14

*RLI Ins. Co. v. Nexus Servs., Inc.,*
  2022 WL 2654227 (W.D. Va. July 8, 2022) .................................................................. 7, 9

*SEC v. Hickey*
  322 F.3d 1123 (9th Cir. 2003) ........................................................................................... 5

*Shillitani v. United States*
   384 U.S. 364 (1966) ............................................................................................ 13

*United States v. Greyhound Corp.*
   363 F. Supp. 525 (N.D. Ill. 1973) ....................................................................... 6

*United States v. Laurins*
   857 F.2d 529 (9th Cir. 1988) .......................................................................6, 7, 8

*United States v. Powers*
   629 F.2d 619 (9th Cir. 1980) ......................................................................... 6, 13

*United States v. Seetapun*
   750 F.2d 607 (7th Cir. 1984) ............................................................................... 7

*United States v. Voss*
   82 F.3d 1521 (10th Cir. 1996) ............................................................................. 8

*Whittaker Corp. v. Execuair Corp.*
   953 F.2d 510 (9th Cir. 1992) ............................................................................. 13

*Wilson v. United States*
   221 U.S. 361 (1911) ............................................................................................. 8

**STATUTES**

18 U.S.C. § 401 ........................................................................................................ 6

18 U.S.C. § 402 ........................................................................................................ 6

**OTHER AUTHORITIES**

Robert E. Jones, et al.
   Rutter Group Practice Guide: Fed. Civ. Trials & Evid. (June 2022) .......................... 6, 13

## I.     INTRODUCTION

Plaintiffs Juan Quintanilla Vasquez, Gabriela Perdomo Ortiz, Victor Hugo Catalan Molina, and Kevin Calderon, by and through Class Counsel, respectfully seek an order holding the principals of Defendant Libre by Nexus ("LBN")—Micheal Donovan, Richard Moore, and Evan Ajin (the "LBN Principals")—in civil contempt and imposing coercive sanctions. Additionally, Plaintiffs seek an amended judgment that includes and obligates the LBN Principals along with LBN.

For nearly *two years*, at the direction of the LBN Principals, LBN has flagrantly violated the parties' Settlement Agreement and the Court's prior orders issued in this action. During this time, the LBN Principals—who admit they are in control of LBN and responsible for its conduct—have chosen delay and obstruction over compliance to avoid having to make good on the promises LBN made in the Settlement Agreement.

On October 3, 2022, recognizing LBN's unacceptable behavior, the Court issued an order holding LBN in contempt and imposing coercive sanctions. Dkt. 225 ("Contempt Order"). But, shielded by their company, the LBN Principals are no closer to compliance today than they were on October 3. Without individual responsibility it is clear that the LBN Principals will continue to shirk compliance with Court orders.

Accordingly, Plaintiffs respectfully request that the Court hold the LBN Principals in contempt in recognition of their role as the architects of LBN's misconduct. Plaintiffs further request sanctions on the terms set forth herein, for LBN and the LBN Principals to pay Plaintiffs' attorneys' fees and costs for making the instant motion, and to take such other action as the court may find appropriate. Finally, Plaintiffs seek an amended judgment that includes the LBN Principals along with LBN and makes clear that the LBN Principals are also obligated by the original February 8, 2021 Class Action Judgment in this Action, as well as by the enforcement and contempt orders subsequently entered by the Court.  *See* [Proposed] Amended Judgment.

## II.     BACKGROUND OF CONTEMPT PROCEEDINGS

### A.     The Court Predicts That Individual Sanctions May Be Necessary.

During the September 15, 2022, hearing regarding Plaintiffs' First Contempt Motion, the Court voiced its concern that the monetary penalties requested in that motion would be ineffective

1   given LBN's stubborn refusal to comply with the Court's prior orders. Rathod Decl., ¶ 9, Ex. 2

2   [2021.09.15 Hearing Tr.] at 6:8-18. The Court also suggested the possibility that one or more of the

3   LBN Principals could be held in contempt given the severity of LBN's noncompliance:

> [H]ow is this going to help? I've been ordering these monetary penalties for some time now and nothing seems to be happening. Do you have a plan for what you'll do if monetary penalties are not complied with? I guess I should say that civil contempt . . . has coercive remedies that can be ordering someone to do something . . . it can be ordering them to pay a coercive fine that they must pay per day for their noncompliance up to and including coercive jail time, **which can be custody time to be served until compliance is had**.

8   *Id.* (emphasis added); *see also id.* at 20:11-17 (observing that another court found "individual

9   responsibility on the part of Mr. Donovan," but stating, "I don't have a request like that before me at

10   this point").

11       During the hearing, and in the Court's subsequent Contempt Order opinion, the Court

12   recognized that LBN had made no showing of its inability to comply with any of the Court's prior

13   orders. Rathod Decl., ¶ 9, Ex. 2 [2021.09.15 Hearing Tr.] at 6:19-22 ("[T]here is no showing that any

14   payment of money is impossible."); Dkt. 224 at 6 (stating that LBN has provided no "evidence

15   showing the state of LBN's financial condition or the steps that LBN has taken, if any, to comply with

16   the Court's orders and its obligations under the settlement agreement").

17       In its Contempt Order, the Court authorized Class Counsel to "file a supplemental motion

18   for civil contempt sanctions" if Class Counsel had a good faith belief, after reviewing LBN's court-

19   ordered document production, that LBN had not fully applied the forms of relief described in item

20   (2), above. Contempt Order at 3:11-19.  Because LBN made only a late and very limited document

21   production as to one of the four forms of required relief, Rathod Decl., ¶ 4, and because LBN and

22   the LBN Principals have refused do anything further to comply with the Court's prior orders, Class

23   Counsel is compelled to bring this supplemental motion for civil sanctions to hold LBN and its

24   principals in contempt.

25       **B.**    **The Court Enters a Contempt Order Against LBN.**

26       The Court's Contempt Order opinion found LBN in contempt after determining that it had

27   persistently violated numerous of the Court's prior orders, including: (1) the Final Approval Order

28   (Dkt. 184); (2) the July 30, 2021 Enforcement Order (Dkt. 203); (3) the November 12, 2021 Order

(Dkt. 209); and (4) the January 12, 2022 Order (Dkt. 216) (together, the "Settlement Orders").  (Dkt. 224 at 9-10, 12-13, 16, 20, 22, 24-25.)   In particular, the Court found that LBN had violated the Settlement Orders by:

- failing to pay a total of over $1.7 million in agreed-upon payments to the Class and to Class Counsel; failing to pay Class Counsel attorneys' fees in connection with the 2021 enforcement motion prepared by Class Counsel, plus interest calculated from July 30, 2021;

- failing to pay $72,000 in settlement administration costs, plus interest calculated from August 14, 2021; and

- by failing to provide documentation to show that LBN implemented a number of other required forms of relief to the Class, including the Debt Relief Fund, the Total Payment Cap, the Timely and in Full Payment Discount, and the Consecutive Payment Discount (collectively, "Debt and Discount Relief"). [1]

(Dkt. 224 at 9-10, 14, 17, 20-24.)  As discussed further below, the Court also imposed several additional sanctions against LBN to coerce their compliance with the Settlement Orders.

### C.   LBN Ignores the Court's Contempt Order.

Unsurprisingly, the contemptuous behavior of LBN and the LBN Principals has continued unabated since the Court issued the Contempt Order on October 3, 2022. Since October 3, neither LBN nor the LBN Principals have made any real effort to bring LBN further into compliance with any of the Settlement Orders. Rathod Decl., ¶¶ 2-6.

Most importantly, although the Court held it due and owing in the Contempt Order, LBN has not paid a single cent of the amount it owes to Settlement Class Members under the Settlement Agreement.

---

[1] This Motion adopts the terminology used by the Court to describe these forms of relief in its Contempt Order.

Furthermore, other than an incomplete document production related to the Debt and Discount Relief, and a meager alleged payment to the Settlement Administrator,[2] LBN and the LBN Principals have also done nothing to comply with any other aspect the Contempt Order since it was issued:

(1)    The Settlement Administrator has informed Class Counsel that LBN has not yet made any payments for amounts owed for (a) the Settlement Agreement (totaling $1,590,000); (b) costs of settlement administration (totaling $72,000 plus interest); (c) the $34,142.60 in attorneys' fees incurred by Class Counsel in connection with Plaintiffs' June 10, 2021, Motion to Enforce the Settlement Agreement ($34,142.60), plus interest; or (d) the $53,021.60 in attorneys' fees incurred by Class Counsel in connection with Plaintiffs' original contempt motion ("First Contempt Motion"). Rathod Decl., ¶ 6.;

(2)    As required by the Contempt Order, on October 11, 2022, Class Counsel emailed to the LBN principals (Ajin, Moore, and Donovan) a list of fifty eligible class members for the four forms of Debt and Discount Relief. Rathod Decl. ¶ 4, Ex. 1. LBN was required to provide documents sufficient to prove its compliance with these items within five business days of receiving Class Counsel's email (by October 18, 2022), including sworn declarations by LBN's principals authenticating these documents. Contempt Order at 3. Only after the Court ordered the parties to provide status reports on November 4, 2022, LBN finally responded to Class Counsel's email, purporting to provide relevant records for twenty-five of the fifty class members selected as to the Debt Relief Fund. Rathod Decl., ¶ 4. Class Counsel have yet to carefully review the documents provided, but even assuming they are sufficient for those class members, LBN was still almost a month late in providing these partial

---

[2] LBN claims in its status report that it sent a payment of $2,000 to the Settlement Administrator. Dkt. 230. While this payment may be forthcoming, LBN's claim is notably not supported by any evidence that payment was made, or even a declaration from one of LBN's principals to that effect. Furthermore, even if this payment is forthcoming, it falls far short of compliance with the Settlement and Contempt Orders.

1     records for the required Debt Relief Fund, and has yet to provide any sampling for the

2     other three forms of relief ordered by the Court Rathod Decl., ¶ 5.

3     (3)    LBN has not paid any amount of the cumulative $1,000 per day sanctions that it has

4     accrued for LBN's noncompliance with the above items. Rathod Decl., ¶ 7. The total

5     of the daily sanctions accrued as of November 22, 2022, is $174,000. *Id.*

6   **III.**  **LBN'S CONTINUED FLAGRANT VIOLATION DEMONSTRATES THE**

        **NEED TO HOLD LBN'S PRINCIPALS IN CONTEMPT AND TO**

7         **INCREASE THE SEVERITY OF SANCTIONS.**

8     It is indisputable that LBN remains in contempt of the Court's prior orders. LBN's

9 noncompliance is now even more pronounced than at the time of the Court's Contempt Order

10 because it has ignored the additional requirements and sanctions set forth in that order. Rathod Decl.,

11 ¶¶ 2-7. LBN has also provided no new evidence to Class Counsel or the Court showing its inability to

12 comply. Rathod Decl., ¶ 8.

13     For the reasons discussed below, the Court should hold in civil contempt the LBN Principals,

14 as these individuals are admittedly responsible for LBN's noncompliance, and have actively obstructed

15 its compliance. Furthermore, Plaintiffs ask the Court to enter an Amended Judgment that includes the

16 LBN Principals.

17       **A.**    **Legal Standard**

18     "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by

19 failure to take all reasonable steps within the party's power to comply." *Go-Video v. Motion Picture Ass'n*

20 *of Am.* (*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*), 10 F.3d 693, 695 (9th Cir. 1993). "District

21 courts have broad equitable power to order appropriate relief in civil contempt proceedings." *SEC v.*

22 *Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). When a settlement has been incorporated in a court's

23 order and judgment, and the settlement has been breached, the court may hold the breaching party in

24 contempt and issue appropriate civil sanctions, including to "coerce[] compliance" or "compensate

25 the complainant for actual losses." *Kelly v. Wengler*, 822 F.3d 1085, 1095-98 (9th Cir. 2016).

26     "The contempt 'need not be willful,' and there is no good faith exception to the requirement

27 of obedience to a court order." *Id.* (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365

28 (9th Cir. 1987)). The contemnor may only avoid a finding of civil contempt by showing it "took all

1  reasonable steps to comply with the order" it violated. *Kelly*, 822 F.3d at 1096 (emphasis in original)

2  (citing *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014)). Civil

3  contempt must be proven by clear and convincing evidence. *See J.L. v. Cuccinelli*, 2020 WL 2562895, at

4  *2 (N.D. Cal. Feb. 20, 2020).

5      Finally, "[a]n order to a corporation binds those who are legally responsible for its affairs."

6  *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988). Accordingly, individuals affiliated with a

7  contemnor corporate party may themselves "be liable for contempt where the non-part[ies] ha[ve]

8  notice of the order and (1) aid[] the party in violating the court order or (2) [are] legally identified with

9  [the corporation]." *Optronics Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2020 WL 3617907, at *2-3 (N.D.

10  Cal. July 2, 2020).

11      Federal courts are further empowered under 18 U.S.C. §§ 401 and 402 "to impose fine or

12  imprisonment for" contemptuous conduct. *United States v. Powers*, 629 F.2d 619, 624 (9th Cir. 1980);

13  *see also* Robert E. Jones, et al., Rutter Group Practice Guide: Fed. Civ. Trials & Evid. (June 2022) ¶

14  13:312 ("[A] court may punish civil contempt by both a fine *and* imprisonment." (citing *Campbell v.*

15  *Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1005 (5th Cir. 1998))).

16      **B.      The LBN Principals Should Be Held in Contempt to Coerce LBN's**
              **Compliance with the Settlement Orders.**

17

18                    1.      The LBN Principals are "Legally Identified with" LBN.

19      Non-parties to an action, such as the LBN Principals, are "legally identified" with a

20  corporation because they are "officially responsible for the conduct of its affairs." *NLRB v. Sequoia*

21  *Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 634 (9th Cir. 1977) (quoting *United States v. Greyhound*

22  *Corp.*, 363 F. Supp. 525, 571 (N.D. Ill. 1973)); *accord Laurins*, 857 F.2d at 535 ("An order to a

23  corporation binds those who are legally responsible for the conduct of its affairs."). The titles held by

24  the LBN Principals, along with the statements and actions taken throughout this litigation indicate

25  that Micheal Donovan, Evan Ajin, and Richard Moore are legally identified and officially responsible

26  for the conduct of LBN's affairs.

27      *First*, the LBN Principals' titles within LBN are sufficient to show that they are legally

28  identified with LBN.

1    Donovan and Ajin are both officers of LBN: Donovan is the Chief Executive Officer, and

2    Ajin is LBN's "Corporate Secretary and . . . principal." Rathod Decl., ¶¶ 10-11, Exs. 3-4 [Aug. 24,

3    2021 Ajin Decl.; Nov. 19, 2021 Donovan Decl.].)

4    LBN's website also identifies Ajin as LBN's Vice President of Operations. LBN's March 2021

5    Annual Report filed with the State of Virginia declares that Moore was, at least at that time, LBN's

6    Vice President and Executive Director. Rathod Decl., ¶ 12, Ex. 5 [Mar. 30, 2021 Annual Report].

7    This Court has also identified Donovan, Ajin, and Moore each as the principals of LBN.

8    Specifically, in advance of the September 15, 2022 Contempt Motion hearing ("Contempt Motion

9    Hearing"), the Court—based on recent findings of another federal court on a robust record—

10   identified Donovan, Ajin, and Moore each as the principals of LBN. *See* Dkt. No. 218 at 9 (citing *RLI*

11   *Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2022 WL 2654227, at *1 (W.D. Va. July 8, 2022)).

12   LBN has done nothing to dispute this finding and, in fact, LBN's counsel itself identified each of

13   Donovan, Ajin, and Moore as LBN's "individual principals" during the September 15, 2022 Contempt

14   Motion hearing ("Contempt Motion Hearing"), acknowledging the responsibility of these individuals

15   over LBN's operations. Rathod Decl., ¶ 9, Ex. 2 [Sept. 15, 2022 Contempt Motion Hearing Tr.] at

16   3:18-19.

17   That the LBN Principals occupy such key roles within LBN is sufficient to show that they are

18   legally identified with the corporation for purposes of holding them in contempt. *Laurins*, 857 F.2d at

19   535 ("De facto as well as de jure officers are responsible for enabling a corporation to comply with

20   orders directed to it." (citing *United States v. Seetapun*, 750 F.2d 607 (7th Cir. 1984)); *N.L.R.B. v. Sequoia*

21   *Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977) ("It can hardly be argued that

22   the principal officers of a labor union are not legally identified with it, and thus liable in contempt for

23   disobeying an order directed to the union."); *Frankl v. HTH Corp.*, 832 F. Supp. 2d 1179, 1213 (D.

24   Haw. 2011) ("Respondents can hardly argue that Minicola, as HTH's Regional Vice President and the

25   Hotel's acting general manager and human resources manager, is not legally identified with

26   Respondents such that he cannot be held in contempt . . . .").

27   **Second**, the LBN Principals' statements and actions taken throughout this litigation

28   demonstrate both their general control over LBN's operations and their specific responsibility for

1    ensuring LBN's compliance with the Settlement Agreement and the Court's orders. *Luv N'Care, Ltd.*

2    *v. Laurain*, 2019 WL 4279028, at *5 (D. Nev. Sept. 10, 2019) (member of company legally identified

3    with corporation where he "acted on behalf of [the company] in connection with the subpoena" that

4    the company was accused of obstructing and spoke with attorneys regarding his possession of

5    "potentially responsive documents"); *see generally United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir.

6    1996) (individuals with knowledge of a court's order "who 'fail to take appropriate action within their

7    power for the performance of the corporate duty'" may be found guilty of contempt alongside the

8    corporation) (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)).

9                                    a.    <u>Micheal Donovan</u>

10            Donovan has signed declarations filed with the Court in this action in which he speaks on

11    LBN's behalf, through his "personal knowledge," regarding LBN's efforts to comply with the

12    Settlement and Contempt Orders. *E.g.*, Rathod Decl., ¶ 11, Ex. 4 [Nov. 19, 2021 Donovan Decl.].

13    That Donovan attested to LBN's behavior in such detail based on his personal knowledge shows the

14    significant degree of control Donovan has over these compliance efforts. For instance, Donovan

15    testified (unpersuasively and ultimately incorrectly) regarding the date by which "Libre's accounting

16    system" would be implemented; the purpose behind LBN's "good-faith dialog with Class Counsel"

17    regarding the Settlement Agreement; and LBN's "full[] inten[tion] to pay the Attorneys' Fees" and

18    "the Administration Fees." Rathod Decl., ¶ 11, Ex. 4 [Nov. 19, 2021 Donovan Decl.]] ¶¶ 1, 4-5, 15,

19    17. Furthermore, Donovan describes himself in his November 19, 2021 Declaration as LBN's

20    "***controlling*** principal." Rathod Decl., ¶ 11, Ex. 4 [Nov. 19, 2021 Donovan Decl.] ¶ 1 (emphasis

21    added).

22            Donovan also executed the Settlement Agreement on LBN's behalf, further demonstrating

23    his control over LBN. Dkt. 143-1 at 38. *See, e.g.*, *Laurins*, 857 F.2d at 535 (evidence that non-party

24    signed checks on behalf of the company contributed to finding that he was legally identified with

25    company).

26            Furthermore, in a federal action in Virginia stemming from LBN's persistent refusal to

27    cooperate in litigation and pay amounts owing, the court found that Donovan was responsible for

28    ensuring LBN's compliance with discovery subpoenas. *RLI Ins. Co. v. Nexus Servs., Inc.*, 2022 WL

2654227, at *1 (Order re RLI Insurance Co.'s Motions for Contempt). Donovan is no less responsible for managing LBN's litigation conduct in this action.

b.   <u>Evan Ajin</u>

Ajin, like Donovan, signed declarations in this action—drawing from his personal knowledge—describing LBN's "compliance" with the Settlement Orders. Rathod Decl., ¶ 13, Ex. 6 [Dkt. 213]. Ajin's submission of these declarations signifies that he plays a large role in ensuring LBN's compliance. Ajin even stated in his November 30, 2021, declaration that he is "personally involved in supervising the efforts" to process the "Fee Waivers and Debt Relief Credits" required by the Settlement Orders, and described "[t]hese efforts" as "extremely time consuming." Rathod Decl., ¶ 13, Ex. 6 [Nov. 30, 2021 Ajin Decl.] ¶¶ 23-24.

Further, from late 2021 onward, Ajin began representing LBN directly in email correspondence with Class Counsel regarding LBN's repeated failures to satisfy their obligations to the Class and the Court. *E.g.*, Rathod Decl., ¶ 4, Ex. 1; ¶ 14, Ex. 7. In this correspondence, Ajin repeatedly demonstrates his control over LBN's compliance:

- On September 29, 2021, Ajin stated that LBN modified the addendum to its Standard Operating Procedures "to knock another item off [Class Counsel's] compliance list," and proposed producing a "random sample" of debt relief payments to prove LBN's compliance with its Debt Relief Fund obligations, Rathod Decl., ¶ 14, Ex. 7, at 8-9;

- On March 2, 2022, Ajin stated that LBN was "work[ing] through . . . complex issues" relating to its compliance, and asked for Class Counsel to "give [LBN] additional time," Rathod Decl., ¶ 4, Ex. 1, at 6-7;

- On March 17, 2022, Ajin sent Class Counsel an email in response to Class Counsel's February 18, 2022 email which included a number of proposals to negotiate LBN's obligations. Rathod Decl., ¶ 4, Ex. 1, at 3-4.

- On November 14, 2022, Ajin finally responded to Class Counsel's email providing class member sample lists to LBN, by describing the work purportedly being undertaken by LBN, and providing a notarized affidavit from Ajin. Rathod Decl., ¶ 4.

1   Further, on August 25, 2022, Ajin sent a letter to the Court in response to Plaintiffs' First

2   Contempt Motion, stating that he "personally . . . volunteered" to "work[] out . . . issues" regarding

3   LBN's compliance, acknowledging his control over LBN's conduct. Dkt. 219 at 1.

4                       c.   <u>Richard Moore</u>

5   Moore, like Ajin, exercised control over LBN's obligations by trying to negotiate the terms of

6   its compliance with Class Counsel. In Ajin's September 29, 2021 email to Class Counsel, Ajin states,

7   "Richard Moore would like to come out to California and meet with you, Mr. Rathod, one-on-one, to

8   resolve this and related financial issues pertaining to the Settlement." Rathod Decl., ¶ 14, Ex. 7, at 7-

9   8. On October 1, 2022, Moore reaffirmed in an email to Class Counsel that he wanted a meeting to

10  "mediate[] in good faith," to "work out differences." Rathod Decl., ¶ 14, Ex. 7, at 5-6.

11  Later, on October 27, 2021, Moore explained to Class Counsel that he was "working with

12  technicians and consultants" to develop "new software" to assist LBN's compliance efforts, evincing

13  his oversight and control over this process. Rathod Decl., ¶ 14, Ex. 7, at 3.

14  In sum, the LBN Principals' official roles within LBN, combined with their various admissions

15  throughout this litigation regarding their role in securing LBN's compliance with the Settlement

16  Orders, show that they are legally identified with LBN for purposes of holding them in contempt.

17                  2.   <u>The LBN Principals Aided LBN's Violations.</u>

18  Much of the evidence described above is evidence not only of the LBN Principals'

19  responsibility over LBN, but of their active role in causing LBN to violate the Settlement Orders,

20  which also suffices to establish their liability for LBN's contempt. *See Optronic Techs., Inc.*, 2020 WL

21  3617907, at *2-3 (non-parties are liable for contempt when they "aid[] the party in violating the court

22  order").

23  Instead of working to bring LBN into compliance with the Settlement Agreement and Orders,

24  the LBN Principals have engaged in a pattern of endless delay ***for nearly two years*** that appears at

25  this point to be an intentional effort to delay LBN's performance of its obligations for as long as

26  possible.

27  For instance, on September 29, 2021, Ajin responded to Class Counsel's email regarding

28  LBN's noncompliance by proposing that Moore negotiate the terms of LBN's compliance with Class

1   Counsel, even though there was absolutely nothing negotiable about the need for LBN to comply

2   with orders issued by the Court. Rathod Decl., ¶ 14, Ex. 7, at 7-8. Later in the same email thread,

3   Moore continues the LBN Principals' delay tactics by promising Class Counsel that LBN was

4   developing "new software" that would enable LBN to generate documentation more easily regarding

5   the forms of relief for which LBN was required to provide proof of compliance. *Id.* at 2-3. More than

6   one year later, LBN has yet to provide adequate supporting documentation for these forms of relief.

7   　　　Donovan and Ajin's statements submitted in this action were similarly designed to reassure

8   the Court and Class Counsel while continuing to cause LBN to avoid its obligations. For instance,

9   Donovan promises in his January 26, 2022 Declaration that LBN "intends to" fully pay "the

10  Administration Costs and Attorney's fees by March 1, 2022." Rathod Decl., ¶ 16, Ex. 8 [Jan. 26, 2022

11  Donovan Decl.] ¶ 13. Ajin made a number of equally hollow promises in his August 25, 2022 letter

12  to the Court, including that LBN would repay the remaining costs of settlement administration

13  "before 90 days." Dkt. 219 at 4.  As of November 22, 2022, 89 days after August 25, 2022, LBN is

14  nowhere close to fulfilling this promise. LBN alleges that it paid $2,000 to the Settlement

15  Administrator on November 14, 2022, in an unsworn status report filed by LBN's counsel.  Dkt. 230.

16  LBN has produced no evidence that this payment was actually made. And even if this meager payment

17  was made, it would be yet another instance where LBN makes a paltry effort toward its vast obligations

18  at the eleventh hour to avoid stoking further sanctions from the Court or demands from Class

19  Counsel.

20  　　　　　　　　　3.　　The LBN Principals Had Notice of the Settlement Orders.

21  　　　It is evident from the record of this action, and from Class Counsel's correspondence with

22  LBN, that each of the LBN Principals were aware of and deeply familiar with the Settlement Orders.

23  　　　*First*, each of the three LBN Principals attended the Contempt Motion Hearing. Dkt. 223

24  (Civil Minutes from Contempt Motion Hearing, stating that Donovan, Ajin, and Moore were in

25  attendance). Their attendance by itself means that the LBN Principals were familiar with the subject

26  matter of the hearing—the terms of the Court's prior orders, and LBN's violations of each of these

27  orders. Furthermore, the LBN Principals would have necessarily become aware of LBN's prior

28  violations of the Settlement Orders, and LBN's further obligations and sanctions memorialized in the

Contempt Order, as these were discussed at length during the hearing. *E.g.*, Rathod Decl., ¶ 9, Ex. 2 [Sept. 15, 2022, Contempt Motion Hearing Tr.] at 11:21-12:1 (settlement administrator fee); 12:2-6 (attorneys' fees for Plaintiffs' prior Motion to Enforce the Settlement Agreement); 12:17-20 ($1,000 daily coercive sanctions); 12:21-13:2 ($1.59 million class fund and daily coercive sanctions); 13:3-13 (Consecutive Payment Discount and proposal for LBN to provide proof of compliance based on samples); 15:1-18:11 (discussing Total Payment Cap and proposal for LBN to provide proof of compliance based on samples); 19:25-20:6 (discussing request for attorneys' fees in connection with the First Contempt Motion and daily coercive sanctions).

**Second**, the LBN Principals were involved in email correspondence with Class Counsel in which Class Counsel repeatedly and specifically reminded the LBN Principals of LBN's unmet obligations. *See* Rathod Decl., ¶ 14, Ex. 7, at 2-10 (email thread in which Moore, Donovan, and Ajin are copied, discussing LBN's failure to comply with specific terms of the Settlement Agreement and the Settlement Orders); Rathod Decl., ¶ 4, Ex. 1, at 1 (summarizing several of LBN's obligations set forth in the Contempt Order, and attaching the Contempt Order).

**Third**, the LBN Principals undoubtedly have notice of the Settlement Orders by nature of their intimate involvement with this litigation, and by affirmatively causing LBN's noncompliance, as discussed above. *See Sequoia Dist. Council of Carpenters*, 568 F.2d at 634 (non-parties' "long-standing relation to the underlying controversy" sufficient evidence that the non-parties received notice of the order for purposes of establishing contempt).

The LBN Principals could not have declared that they were working to bring LBN into compliance with the Settlement Orders, or that they wished to negotiate the terms of LBN's compliance, without first having notice of these orders. Further, Ajin and Donovan each submitted declarations to testify to LBN's efforts to comply with the Settlement Orders and acknowledged that they were required to do so by the July 2021 Enforcement Order (Dkt. 203) and the November 12, 2021 Order (Dkt. 209), respectively. Rathod Decl., ¶ 13, Ex. 6 [Nov. 30, 2021 Ajin Decl.] ¶ 1; *id.*, ¶ 15, Ex. 8 [Jan. 26, 2022 Donovan Decl.] ¶ 2. In their declarations, Ajin and Donovan discussed the terms of the Settlement Orders in detail. *See generally* Rathod Decl., ¶ 13, Ex. 6 [Nov. 30, 2021 Ajin Decl.]; *id.*, ¶ 15, Ex. 8 [Jan. 26, 2022 Donovan Decl.]. Similarly, in Ajin's August 25, 2022 letter to the

Court, he refers to several of LBN's compliance obligations in his attempt to explain LBN's efforts to date with regard to each item. Dkt. 219. Furthermore, by volunteering to "work[] out . . . issues" regarding LBN's compliance, Ajin acknowledges his familiarity with the nature of LBN's obligations. *Id.* at 1.

Accordingly, because the LBN Principals are legally identified with LBN, aided LBN's violations of the Settlement Orders, and had notice of these orders, the LBN Principals should be held in contempt alongside LBN. *See Optronic Techs.*, 2020 WL 3617907, at *2-3 (stating that "a non-party can be liable for contempt where the non-party has notice of the order and (1) aids the party in violating the court order or (2) is legally identified with him").

### C.    The Obstructive Conduct of LBN and the LBN Principals Warrants Imposition of Severe Sanctions.

Because LBN and the LBN Principals continue to violate the Court's orders—for nearly **two years** and even after the Court already implemented coercive sanctions in the Contempt Order—Plaintiffs request that the Court impose more severe sanctions targeting the LBN Principals individually. The Court has broad discretion to impose civil contempt sanctions to coerce compliance with its prior orders. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (contempt sanctions may vary in severity based on "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired"); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

In addition to continuing to sanction LBN as described in the Court's Contempt Order, Plaintiffs request that the Court hold the LBN Principals jointly and severally responsible for all of LBN's unsatisfied obligations under the Settlement Orders, and all sanctions imposed on LBN in the Contempt Order. Plaintiffs further request that the Court imprison the LBN Principals until LBN's contempt is purged in order to coerce the LBN Principals into bringing LBN into compliance with the Settlement Orders. *See United States v. Powers*, 629 F.2d 619, 624 (9th Cir. 1980) (stating that federal courts may "impose fine[s] or imprisonment for" contemptuous conduct); Robert E. Jones, et al., Rutter Group Practice Guide: Fed. Civ. Trials & Evid. (June 2022) ¶ 13:312 ("[A] court may punish

civil contempt by both a fine *and* imprisonment." (citing *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1005 (5th Cir. 1998))). Plaintiffs' requests regarding the LBN Principals are amply justified given the extent of LBN's noncompliance, the LBN Principals' responsibility for LBN's affairs, and the LBN Principals' apparent decision to cause LBN ***not*** to comply with the Settlement Orders.

## IV.   LBN MUST PAY CLASS COUNSEL'S ATTORNEYS' FEES IN BRINGING THIS MOTION

The settlement expressly provides for reasonable attorneys' fees and costs to the prevailing party in any proceeding to enforce the terms of the settlement. *See* Settlement at 35, § VII(W). Moreover, trial courts "should have the discretion to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). Class Counsel has already expended more than 101 hours bringing this motion. This includes, among other things, time investigating LBN's prior violations, communicating with LBN's counsel, and preparing this Motion. *See* Partovi Decl., ¶¶ 2-5. Using the latest version of the reasonable hourly rate scale reviewed by the Court in approving the attorneys' fees for this settlement and subsequent enforcement efforts, Class Counsel's total lodestar for this motion to date is $74,952. *See* Partovi Decl., ¶ 5. Class Counsel anticipate they will devote additional time to a reply brief and hearing on this motion and will then update their fee request accordingly.

Class Counsel respectfully requests that the Court order LBN to pay in full Plaintiffs' attorneys' fees for having to bring this motion. *See Hernandez v. County of Monterey*, 2019 WL 1934882, at *6 (N.D. Cal. May 1, 2019) (granting fee and expense request to plaintiffs in connection with their work performed to enforce settlement agreement). The Court should order that these fees be held in a trust account by the Settlement Administrator, so that cash payments continue to be made first to the Class, with distribution of fees and costs to Class Counsel only after those payments to the Class.

## V.   AMENDING THE JUDGMENT TO CLARIFY LBN'S AND THE PRINCIPAL'S OBLIGATIONS IS APPROPRIATE

As of the date that this Motion is filed, LBN owes a total of $1,749,164.18 in Court-ordered attorneys' fees and amounts owed under the Settlement Agreement, plus interest accruing for several of LBN's outstanding payments. Additionally, the daily $1,000 coercive sanctions imposed by the Court against LBN in the Contempt Order have accrued to a total of $174,000 as of November 22,

1   2022. Given LBN's indifference to these debts to date, the amount owed will undoubtedly continue

2   to grow. Plaintiffs request that the Court convert the $1,879,164.18 owed by LBN as of November

3   22, 2022, plus interest, to a judgment against LBN and the LBN Principals to enable Plaintiffs to begin

4   the collections process to recover these sums. *See Martin v. City of Barstow*, 2015 WL 12743594, at *2

5   (C.D. Cal. Dec. 21, 2015) (entering "separate judgment" to enable defendants to "enforce this Order

6   and the prior sanction issued as a single money judgment"); *Leads Club, Inc. v. Peterson*, 2008 WL

7   186504, at *2 (S.D. Cal. Jan. 22, 2008) (issuing "a new, separate judgment based on the sanctions order

8   amount").

9       Furthermore, given the high likelihood that LBN and the LBN Principals will continue to

10  ignore their obligations to pay the Contempt Order's daily sanctions, Plaintiffs request that the Court

11  fashion its judgment so that further amounts accruing under the Contempt Order will be converted

12  into judgments every thirty days until LBN and the LBN Principals purge their contempt. *See*

13  [Proposed] Amended Judgment.

14      **VI.    CONCLUSION**

15      LBN and the LBN Principals audaciously continue to disregard the obligations imposed by

16  the Settlement Orders and have made no further efforts to satisfy these obligations even after the

17  Court imposed coercive sanctions against LBN. Accordingly, only increasingly severe sanctions can

18  coerce LBN into compliance and allow the Class Members to receive the relief to which they are

19  entitled under the Settlement Agreement. Therefore, Plaintiffs respectfully request that the Court

20  order the relief requested herein and any such other relief the Court deems appropriate.

21

22  Date: November 23, 2022                    **TYCKO & ZAVAREEI LLP**

23                                             By:  _/s/ Annick M. Persinger_
                                               ANNICK M. PERSINGER, SBN 272996
24                                             1970 Broadway, Suite 1070
                                               Oakland, California 94612
25                                             (510) 254-6808
                                               *apersinger@tzlegal.com*
26

27

28

JESSE NEWMARK, SBN 247488
**CENTRO LEGAL DE LA RAZA**
3022 International Boulevard, Suite 410
Oakland, California 94601
(510) 437-1863
*jnewmark@centrolegal.org*

JASON S. RATHOD, *pro hac vice*
NICHOLAS A. MIGLIACCIO, *pro hac vice*
**MIGLIACCIO & RATHOD LLP**
412 H Street, Northeast, Suite 302
Washington District of Columbia 20002
(202) 470-3520
*nmigliaccio@classlawdc.com*
*jrathod@classlawdc.com*

*Counsel for Plaintiffs and the Class*