ANNICK M. PERSINGER, SBN 272996
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
(510) 254-6808
*apersinger@tzlegal.com*

JESSE NEWMARK, SBN 247488
**CENTRO LEGAL DE LA RAZA**
3022 International Boulevard, Suite 410
Oakland, California 94601
(510) 437-1863
*jnewmark@centrolegal.org*

JASON S. RATHOD, *pro hac vice*
NICHOLAS A. MIGLIACCIO, *pro hac vice*
**MIGLICACCIO & RATHOD LLP**
412 H Street, Northeast, Suite 302
Washington District of Columbia 20002
(202) 470-3520
*nmigliaccio@classlawdc.com*
*jrathod@classlawdc.com*

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| JUAN QUINTANILLA VASQUEZ, GABRIELA PERDOMO ORTIZ, VICTOR HUGO CATALAN MOLINA, and KEVIN CALDERON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>LIBRE BY NEXUS, INC. and JOHN DOES 1-50,<br><br>Defendants. | Case No. 4:17-cv-00755-CW<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION TO HOLD DEFENDANT'S PRINCIPALS IN CONTEMPT AND FOR SANCTIONS**<br><br>Judge: Hon. Claudia Wilken<br>Hearing Date: January 19, 2022<br>Time: 2:30 p.m.<br>Courtroom: TBD |

**TABLE OF CONTENTS**

P<small>AGE</small>(<small>S</small>)

I.   INTRODUCTION AND BACKGROUND ..................................................................................1

II.  MR. SHOREMAN'S DECLARATION HAS NO BEARING ON PLAINTIFFS' REQUEST FOR SANCTIONS AGAINST THE LBN PRINCIPALS ...................................2

III. THE COURT HAS AUTHORITY TO HOLD THE LBN PRINCIPALS LIABLE FOR THE FULL AMOUNT OF THE JUDGMENT AGAINST DEFENDANT ..............4

IV.  CONCLUSION ..................................................................................................................6

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*,
    340 F.3d 373 (6th Cir. 2003) .................................................................................................. 5, 6

*Lasar v. Ford Motor Co.*,
    399 F.3d 1101 (9th Cir. 2005) ...................................................................................................... 5

*Luv N'Care, Ltd. v. Laurain*,
    2019 WL 4279028 (D. Nev. Sept. 10, 2019) ................................................................................ 3

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
    2020 WL 3617907 (N.D. Cal. July 2, 2020) ................................................................................ 4

*United States v. Voss*,
    82 F.3d 1521 (10th Cir. 1996) ...................................................................................................... 4

*Whittaker Corp. v. Execuair Corp.*,
    953 F.2d 510 (9th Cir. 1992) ........................................................................................................ 5

**TREATISES**

11A Mary Kay Kane, *Federal Practice & Procedure* § 2960 (3d ed. 2022) ............................. 5, 6

I.      INTRODUCTION AND BACKGROUND

For the last two years, Plaintiffs have fought to secure Defendant Libre by Nexus's ("LBN" or "Defendant") compliance with this Court's orders and the parties' Settlement Agreement. At every turn, LBN's principals—Micheal Donovan, Richard Moore, and Evan Ajin (the "LBN Principals")—have intentionally delayed and obstructed compliance with the Court orders and Settlement Agreement to avoid having to fulfill LBN's obligations. The LBN Principals' persistent noncompliance, which continued even after the Court issued an order holding LBN in contempt and imposing coercive sanctions (Dkt. 225 ["Contempt Order"]), forced Plaintiffs to file a motion on November 23, 2022, requesting that the Court impose coercive civil sanctions on the LBN Principals. Dkt. 232 ("Supplemental Contempt Motion").

Unsurprisingly, consistent with the LBN Principals' prior conduct of ignoring their obligations to the Court and under the Settlement Agreement, neither Defendant nor any of the LBN Principals filed an opposition to the Supplemental Contempt Motion by the December 7, 2022, deadline. Dkt. 236 (Order to Show Cause) at 1. Furthermore, neither Defendant nor any of the LBN Principals have responded in any way to the Court's Order to Show Cause "why civil contempt sanctions should not be imposed against" the LBN Principals by the December 27, 2022 deadline imposed by the Court. *Id.* at 1.

In fact, the only effort to respond to the Court's Order to Show Cause was from two of Defendant's lawyers, Mr. Shoreman and Mr. Payson, who both separately declared on December 14, 2022, that they had sent copies of the Order to Show Cause to the LBN Principals. Dkts. 237-38. Mr. Shoreman's Declaration included a second sentence stating that "Richard Moore is no longer an officer or director of LBN and owns no interest in the company." Dkt. 237. That unspecific and unsupported second sentence is insufficient to show that Mr. Moore is no longer a principal, and should have no impact on the Court's decision regarding civil contempt.

In response to Mr. Shoreman's Declaration, on January 7, 2023, the Court issued an order stating that "some of the civil contempt sanctions that Plaintiffs request . . . fall within the scope of

permissible civil contempt sanctions that can be imposed against LBN's principals," and directing Plaintiffs to file a reply brief addressing two narrow issues:

> (1) "The impact, if any," that Mr. Shoreman's December 14, 2022 Declaration has on Plaintiffs' request for civil contempt sanctions against the LBN Principals; and
>
> (2) Whether the Court can amend its judgment entered against LBN "pursuant to [the] settlement agreement . . . to make a non-party [the LBN Principals] liable for amounts owed by that party [Defendant] under that settlement agreement."

Dkt. 239 at 2-4.

Plaintiffs maintain that neither of these issues are a barrier to the request for civil contempt sanctions against the LBN Principals set forth in the Supplemental Contempt Motion, and address each of these issues in greater detail below.

## II. MR. SHOREMAN'S DECLARATION HAS NO BEARING ON PLAINTIFFS' REQUEST FOR SANCTIONS AGAINST THE LBN PRINCIPALS

Mr. Shoreman's January 14, 2022 Declaration is a two-sentence long document. Dkt. 237. The first sentence, "declare[d] under the penalties of perjury," states that Mr. Shoreman served copies of the Court's Order to Show Cause on the LBN Principals. The second sentence, conspicuously *not* stated under penalty of perjury, asserts that "Richard Moore is no longer an officer or director of LBN and owns no interest in the company." Dkt. 237. In no sense is this unsworn statement evidence of Moore's role with the company.

Even if Mr. Shoreman *had* attested to Mr. Moore's role with Defendant under penalty of perjury, he provides no basis for his assertion. There is nothing in Mr. Shoreman's short statement to corroborate that Mr. Shoreman, in fact, has personal knowledge of Mr. Moore's status with respect to LBN. Indeed, Mr. Shoreman, who is Defendant's outside counsel and not a company lawyer, does not and could not suggest that his assertion was based on his personal knowledge. Further, Mr. Shoreman did not attach any documentary evidence to his Declaration providing support for his statement, or provide any relevant details – such as when Mr. Moore purportedly relinquished his positions and interest at LBN. And most notably, Moore—who *would* have personal knowledge

1  regarding his role with Defendant—has unlawfully ignored two deadlines where he was *required* to
2  respond to Plaintiffs' allegations regarding his affiliation with Defendant.

3  Accordingly, the Court should give no weight to Mr. Shoreman's unsubstantiated assertion
4  that Moore is no longer an officer of Defendant. Indeed, the only evidence regarding Moore's role
5  comes from Plaintiffs, who observed in their Supplemental Contempt Motion that the Court *and*
6  *Defendant's counsel* have already identified Moore as a "principal" of LBN. Dkt. 238 at 7; *see* Dkt. 218 at
7  9 (the Court identifying each of the LBN Principals as Defendants' principals); Rathod Decl., ¶ 9, Ex.
8  2 ([Sept. 15, 2022 Contempt Motion Hearing Tr.] at 3:18-19 (Defendant's counsel identifying each of
9  the LBN Principals as Defendants' "individual principals").  Mr. Moore also appeared at that hearing,
10 and said nothing about any change in his official or unofficial capacity.

11 Moreover, regardless of whether Moore continues to be a de jure officer of Defendant, his
12 conduct throughout this litigation demonstrates that he has control over Defendant's operations and
13 has taken specific responsibility for ensuring Defendant's compliance with the Court's orders and the
14 Settlement Agreement. *See* Supplemental Contempt Motion at 10. For instance, in October 2021,
15 Moore told Class Counsel that he wanted to set up a meeting to "mediate[] in good faith" and to
16 "work out differences" between Plaintiffs and Defendant regarding Defendant's noncompliance.
17 Rathod Decl., ¶ 14, Ex. 7, at 5-6. Further, Moore also explained to Class Counsel that he was "working
18 with technicians and consultants" to develop "new software" to assist Defendant's compliance efforts.
19 Rathod Decl., ¶ 14, Ex. 7, at 3.  In March 2022, Moore again contacted Class Counsel to discuss the
20 purported impact of  "a manager transition" at LBN.  He also sold $224,850 of LBN's future
21 receivables on March 22, 2022, in exchange for $150,000.

22 Moore's statements and actions evince his oversight and control over Defendant's compliance,
23 which demonstrates that he is "legally identified" with Defendant and can be held liable for
24 Defendant's contempt. *See Luv N'Care, Ltd. v. Laurain*, 2019 WL 4279028, at *5 (D. Nev. Sept. 10,
25 2019) (member of company legally identified with corporation where he "acted on behalf of [the
26 company] in connection with the subpoena" that the company was accused of obstructing and spoke
27 with attorneys regarding his possession of potentially responsive documents"); *see generally United States*

28

*v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996) (individuals with knowledge of a court's order "who 'fail to take appropriate action within their power for the performance of the corporate duty'" may be found guilty of contempt alongside the corporation) (quoting *Wilner v. United States*, 221 U.S. 361, 376 (1911)).

Moore is also "legally identified" with Defendant because he facilitated Defendant's noncompliance with the Court's prior orders. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2020 WL 3617907, at *2-3 (N.D. Cal. July 2, 2020) (non-parties are liable for contempt when they "aid[] the party in violating the court order"). Moore, alongside Ajin and Donovan, is responsible for Defendant's two-year long pattern of obstruction. Moore's statements described above—offering to renegotiate the Settlement Agreement, which had already been executed and incorporated into the Court's final approval order and judgment, and vaguely promising that he was deploying "new software" to speed up Defendant's compliance—were empty promises designed to placate Class Counsel and allow Defendant to continue skirting its obligations.

For these reasons, Mr. Shoreman's statement is legally irrelevant to the question of whether Moore can be held in civil contempt. As explained here, and explained in detail in the Supplemental Contempt Motion, Moore is "legally identified" with Defendant and should be held in civil contempt for failing to bring Defendant into compliance with the Court's prior orders.

### III. THE COURT HAS AUTHORITY TO HOLD THE LBN PRINCIPALS LIABLE FOR THE FULL AMOUNT OF THE JUDGMENT AGAINST DEFENDANT

As Plaintiffs explained in their Supplemental Contempt Motion, Plaintiffs request that the Court convert the nearly $1.9 million owed by Defendant, plus interest, into a judgment against Defendant and the LBN Principals to allow Plaintiffs to begin the process of collecting these amounts. Otherwise, Defendant and the LBN Principals will undoubtedly continue ignoring their obligations to comply with the Court's orders and parties' Settlement Agreement, and the Class Members will be forced to continue waiting for—or perhaps never be able to recover—the relief to which they are entitled.

It is well-settled that the Court has broad discretion to impose civil contempt sanctions to coerce compliance with its prior orders. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (contempt sanctions may vary in severity based on "the character and magnitude of the harm threated by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired"); *see also* 11A Mary Kay Kane, Fed. Prac. & Proc. § 2960 (3d ed. 2022) ("A federal court's discretion includes the power to frame a sanction to fit the violation.") Given Defendant's longstanding refusal to fulfill its obligations under the Court's orders and parties' Settlement Agreement, amending the Court's prior judgment to at least enable Plaintiffs to begin collecting the amounts owed under the Settlement Agreement would be an appropriate use of the Court's broad discretion.

Further, courts have authorized the specific sanctions requested by Plaintiffs in similar circumstances. The Sixth Circuit explained that "one of the purposes of civil contempt is to compensate a complainant for its losses," and that a non-party officer of a defendant company could therefore "be fined in an amount equivalent to the original judgment" to the extent that the officer "deliberately caused the underlying judgment to remain unpaid." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383, fn. 13 (6th Cir. 2003). The Sixth Circuit rejected Gary's Electric's argument that the contempt motion was an improper "collection action" in disguise, observing that contempt orders have been "used to enforce orders for back pay." *Id.* at 385, fn. 18 (citing *NLRB v. Deena Artware, Inc.* 361 U.S. 398, 412-14 (1960) (Frankfurter, J., concurring)); *see generally Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1111-1112 (9th Cir. 2005) (acknowledging the validity of compensatory contempt sanctions, which a court may levy after providing notice and opportunity for a hearing).

Here, as explained in Plaintiffs' Supplemental Contempt Motion, the LBN Principals thwarted Defendant's compliance with the amounts owed in the Settlement Agreement by (1) admittedly having control over Defendant's affairs but choosing to do nothing to bring Defendant into compliance; and (2) deliberately aiding Defendant's noncompliance by deploying ceaseless delay tactics for two years. Supplemental Contempt Motion at 6-11. Accordingly, because the LBN Principals "deliberately

caused the underlying judgment to remain unpaid," converting the amount currently owed by Defendant into a judgment against Defendant and the LBN Principals is an appropriate measure to compensate Plaintiffs for the harm caused by the contempt of both Defendant and the LBN Principals. *Gary's Elec. Serv. Co.*, 340 F.3d at 383, fn. 13; *see generally* Mary Kay Kane, 11A Fed. Prac. & Proc. § 2960 (3d ed. 2022) ("A federal court's discretion includes the power to frame a sanction to fit the violation.")

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Supplemental Contempt Motion in its entirety.

Date: January 17, 2023

**TYCKO & ZAVAREEI LLP**

By: /s/ *Annick M. Persinger*
ANNICK M. PERSINGER, SBN 272996
1970 Broadway, Suite 1070
Oakland, California 94612
(510) 254-6808
apersinger@tzlegal.com

JESSE NEWMARK, SBN 247488
**CENTRO LEGAL DE LA RAZA**
3022 International Boulevard, Suite 410
Oakland, California 94601
(510) 437-1863
jnewmark@centrolegal.org

JASON S. RATHOD, *pro hac vice*
NICHOLAS A. MIGLIACCIO, *pro hac vice*
**MIGLICACCIO & RATHOD LLP**
412 H Street, Northeast, Suite 302
Washington District of Columbia 20002
(202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Counsel for Plaintiffs and the Class*