1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN QUINTANILLA VASQUEZ, et al.,

Plaintiffs,

v.

LIBRE BY NEXUS, INC.,

Defendant.

Case No. 17-cv-00755 CW

**ORDER HOLDING OFFICERS AND PRINCIPALS OF DEFENDANT LIBRE BY NEXUS, INC. IN CIVIL CONTEMPT AND IMPOSING CIVIL CONTEMPT SANCTIONS**

(Re: Dkt. No. 232)

Now before the Court is Plaintiffs' motion for an order holding the officers and principals of Defendant Libre by Nexus, Inc. (LBN), namely Micheal Donovan, Evan Ajin, and Richard Moore, in civil contempt and imposing civil contempt sanctions against them.  Docket No. 232. After Donovan, Ajin, and Moore failed to file a response to Plaintiffs' motion, the Court issued an order to show cause why civil contempt sanctions should not be imposed against them.  The Court ordered counsel for LBN to serve a copy of the order to show cause on Donovan, Ajin, and Moore, and counsel for LBN confirmed that they did so.  The deadline to file a response to the Court's order to show cause was December 27, 2022, and no response was filed.  For the reasons set forth below, and in light of the argument heard on January 19, 2023, the Court grants the motion in part and denies it in part, holding Donovan, Ajin, and Moore in civil contempt of Court and imposing sanctions as set forth below.

## I.    BACKGROUND

On February 8, 2021, the Court entered a Final Approval Order and Judgment, Docket No. 184, in which the Court granted final approval of the parties' settlement agreement.  The operative

United States District Court
Northern District of California

version of the settlement agreement was filed as Exhibit 1 to the Declaration of Jason Rathod, Docket No. 143-1, and its terms were incorporated into the Final Approval Order and Judgment, *see generally* Docket No. 184.  In the Final Approval Order and Judgment, the Court ordered LBN to take certain actions pursuant to the terms of the settlement agreement, which include the following:

First, the Court ordered LBN to provide to the members of the settlement class and subclasses, which are defined in the settlement agreement and the Final Approval Order and Judgment, with the Settlement Amount[1], which consists of consideration whose total monetary value is $3,200,000.  Docket No. 184 at 10-13; *see also* Docket No. 143-1 at ECF header pages 10-11.  The Settlement Amount is comprised of the following components:

1.  A Cash Settlement Fund of $750,000, to be distributed on a pro rata basis to the members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.  Docket No. 143-1 at ECF header page 11.  The Court required LBN to make payments toward the Cash Settlement Fund based on the payment schedule set forth in the settlement agreement.[2]  Docket No. 184 at 10.

---

[1] Capitalized terms are defined in, and have the same meaning as in, the settlement agreement.

[2] Under the payment schedule set forth in the settlement agreement, *see* Docket No. 143-1 at ECF header pages 14-15, LBN was required to begin making payments on a weekly basis toward the $750,000 Cash Settlement Fund, the $40,000 in incentive awards, and the $800,000 award of attorneys' fees and costs on December 1, 2021, if its quarterly revenues met certain thresholds relative to its quarterly revenues for 2019.  *Id.*  The amount of LBN's weekly payments would be determined starting on December 1, 2021, and on a quarterly basis thereafter, based on benchmarks comparing LBN's current quarterly revenues with its revenues for the same quarter in 2019.  *Id.*  To the extent that LBN's weekly payments under this payment schedule did not satisfy, by January 1, 2023, the cash amounts that LBN owed (i.e., the $750,000 Cash Settlement Fund, the $40,000 in incentive awards, and the $800,000 award of attorneys' fees and costs), then LBN would be required to pay the remainder in twelve equal monthly installments beginning on January 20, 2023.  *Id.*  In response to a motion to enforce the settlement agreement that Plaintiffs filed in 2021, the Court, in an order filed on July 30, 2021, clarified the logistics of the payment schedule and benchmarks set forth in the settlement agreement on the basis that doing so would help enforce and effectuate the settlement agreement.  *See* Docket No. 203 at 8.  In relevant part, the Court ordered that the quarterly revenue comparisons for determining the amounts that LBN must pay on a weekly basis starting on December 1, 2021, shall be made based on financial statements for LBN prepared by an external accountant and certified under penalty of perjury by counsel for LBN.  *See id.* at 8-9.

United States District Court
Northern District of California

2.    An incentive award to each of the four named plaintiffs of $10,000, for a total of $40,000.  Docket No. 143-1 at ECF header page 9.  The Court required LBN to make payments toward the incentive awards based on the payment schedule set forth in the settlement agreement.  Docket No. 184 at 13.

3.    $800,000 in attorneys' fees and costs to be paid into an escrow account established by the settlement administrator, to be distributed to Class Counsel only after the members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass receive their Cash Settlement Fund distributions.  Docket No. 143-1 at ECF header page 26.  The Court required LBN to pay these fees based on the payment schedule set forth in the settlement agreement.  Docket No. 184 at 12-13.

4.    $80,000 in costs of settlement administration, to be paid in accordance with the terms of the settlement agreement.  Docket No. 184 at 10.  Under the terms of the settlement agreement, LBN was required to make an initial deposit of these costs within fourteen days of the date on which the Court granted preliminary approval of the settlement agreement, and thereafter was required to make periodic payments within thirty days of approval by Class Counsel and LBN's counsel of an invoice by the settlement administrator.  *See* Docket No. 143-1 at ECF header page 14.

5.    $1,530,000 for a Debt Relief Fund, which consists of credits that LBN must apply to the accounts of members of the Current Program Participant Subclass on a pro rata basis according to the terms of the settlement agreement.  Docket No. 143-1 at ECF header pages 13-14.  The Court ordered LBN to apply these credits pursuant to the terms of the settlement agreement, Docket No. 184 at 10-11, which, in turn, required LBN to apply the credits within twenty days of the date on which the Court granted final approval of the settlement agreement, Docket No. 143-1 at ECF header page 15.

United States District Court
Northern District of California

1    Second, the Court ordered LBN, pursuant to the terms of the settlement agreement, to

2    provide to members of the Current Program Participant Subclass additional monetary relief in the

3    form of:

4    1.    Discounts of up to twenty percent with respect to monthly recurring fees based on

5          whether members of the Current Program Participant Subclass made consecutive

6          monthly payments as set forth in the settlement agreement (Consecutive Payment

7          Discount).   *See* Docket No. 184 at 11; Docket No. 143-1 at ECF header pages 15-

8          16.  The Consecutive Payment Discount was to be implemented by LBN by the

9          later of April 1, 2020, or within twenty days of the Final Settlement Approval Date.

10         *See* Docket No. 143-1 at ECF header page 17.

11   2.    A reduction of monthly recurring program fees to $415 for each member of the

12         Current Program Participant Subclass who paid more than $420 per month and

13         made on-time and in-full payments according to the terms of the settlement

14         agreement (Timely and In Full Payment Discount).  Docket No. 184 at 11; Docket

15         No. 143-1 at ECF header page 16.  The Timely and In Full Payment Discount was

16         to be implemented by LBN by the later of April 1, 2020, or within twenty days of

17         the Final Settlement Approval Date.  *See* Docket No. 143-1 at ECF header page 17.

18   3.    A total payment cap for program payments made by members of the Current

19         Program Participant Subclass, excluding the initial payment and set-up fees, to an

20         amount not to exceed the face amount of the bond (Total Payment Cap).  Docket

21         No. 184 at 11; Docket No. 143-1 at ECF header page 16.  The Total Payment Cap

22         was to be applied to the accounts of Current Program Participant Subclass members

23         within twenty days of the date the Court granted preliminary approval of the

24         settlement agreement.  *See* Docket No. 143-1 at ECF header pages 16-17.

25   Third, the Court ordered LBN, pursuant to the terms of the settlement agreement, to

26   provide the settlement class members with a variety of non-monetary benefits.  *See* Docket No.

27   184 at 11-12; Docket No. 143-1 at ECF header pages 17-21.

28

1      Pursuant to the settlement agreement's terms, this Court retained jurisdiction over the

2  action and the parties, including to enforce, interpret, and effectuate the settlement agreement and

3  the Court's Final Approval Order and Judgment.  Docket No. 184 at 13; Docket No. 143-1 at ECF

4  header page 32.

5      Since it entered the Final Approval Order and Judgment on February 8, 2021, the Court

6  has issued several orders in response to evidence presented by Plaintiffs that LBN has failed to

7  comply with the Final Approval Order and Judgment and the terms of the settlement agreement

8  incorporated therein.  *See* Order of July 30, 2021, Docket No. 203; Order of November 12, 2021,

9  Docket No. 209; Order of January 12, 2022, Docket No. 216.  In those orders (hereinafter, the

10  enforcement orders), the Court required LBN, among other things, to comply with these

11  obligations, to provide Class Counsel with declarations signed under penalty of perjury and

12  records sufficient to demonstrate its compliance with the same, and to respond to communications

13  from Class Counsel within one business day.  *Id.*  The Court also required LBN to pay the

14  attorneys' fees that Plaintiffs incurred in bringing an enforcement motion in July 2021

15  ($34,142.60).  *Id.*

16      On August 11, 2022, Plaintiffs moved for an order holding LBN in civil contempt and

17  imposing civil contempt sanctions on LBN.  Docket No. 218.  Plaintiffs argued that LBN had not

18  complied, or otherwise had not provided them with sufficient documentation to demonstrate its

19  compliance, with several key terms of the settlement agreement, the Final Approval Order and

20  Judgment that incorporates those terms, and the enforcement orders.  *Id.*

21      On September 15, 2022, the Court held a hearing on Plaintiffs' motion for an order holding

22  LBN in civil contempt.  *See* Tr. of Hr'g, Docket No. 227.  During that hearing, counsel for LBN,

23  John Shoreman, represented that Donovan, Moore, and Ajin, who attended the hearing, are LBN's

24  "individual principals," and Donovan, Moore, and Ajin did not dispute that characterization.  *See*

25  *id.* at 3.  During the hearing, the Court discussed the various violations of the Final Approval

26  Order and Judgment and the enforcement orders which formed the basis of Plaintiffs' motion, as

27  well as the various civil contempt sanctions that the Court was considering imposing on LBN at

28  Plaintiffs' request.  *See generally id.*  The Court provided Donovan, Moore, and Ajin with an

United States District Court
Northern District of California

5

1    opportunity to make a statement if they wished to do so.  Donovan and Ajin declined to make a

2    statement; Moore stated: "I look forward to working with Plaintiffs' counsel to resolve these

3    issues."  *See id.* at 27.

4         On October 3, 2022, the Court issued an order granting in part and denying in part

5    Plaintiffs' motion for an order holding LBN in civil contempt and imposing civil contempt

6    sanctions on LBN.  Docket No. 224.  The Court found that Plaintiffs had met their burden to show

7    that LBN had violated the Final Approval Order and Judgment and enforcement orders on

8    multiple occasions, by failing to make payments toward the cash amounts it owes under the

9    settlement agreement (which total $1,590,000 and are comprised of $750,000 for the Cash

10   Settlement Fund, $40,000 for incentive awards for the named plaintiffs, and $800,000 in

11   attorneys' fees and costs for Class Counsel); by failing to pay the costs of settlement

12   administration that it still owes ($72,000); by failing to implement the discounts, caps, and credits

13   to members of the settlement class and subclasses required under the terms of the settlement

14   agreement; and by failing to pay the attorneys' fees that Plaintiffs incurred in bringing an

15   enforcement motion in 2021 ($34,142.60).  *Id.* at 7-24.  The Court further found that LBN had not

16   pointed to any evidence showing that it took all reasonable steps within its power to comply with

17   the Court's orders.  The Court noted that Ajin, on behalf of LBN's management team, had filed an

18   unsworn letter in which he attempted to justify LBN's lack of compliance with the orders in

19   question on the ground that LBN had experienced a significant reduction in revenue as a result of

20   the pandemic and shifts in immigration policy.  *Id.* at 6.  The Court found that Ajin's unsworn and

21   unsupported letter was insufficient to establish that LBN's revenues had fallen below the

22   thresholds and benchmarks set forth in the settlement agreement's payment schedule, such that

23   LBN could be excused from making payments under that schedule.  *Id.* at 8-9.  The Court further

24   held that this unsworn and unsupported letter fell short of the Court's prior orders, which required

25   LBN to establish any alleged revenue reduction by way of financial statements prepared by an

26   external accountant and certified under penalty of perjury by LBN's counsel.  *See id.*

27        On the same date, October 3, 2022, the Court issued a separate order delineating the civil

28   contempt sanctions that it imposed on LBN.  Docket No. 225.  The Court ordered LBN:

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1. To pay, within ten business days (October 17, 2022), the cash amounts it owes under various terms of the settlement agreement, which total $1,590,000 and are comprised of $750,000 for the Cash Settlement Fund, $40,000 for incentive awards for the named plaintiffs, and $800,000 in attorneys' fees and costs for Class Counsel.

2. To pay, within ten business days (October 17, 2022), the remainder of the $80,000 it owes for the costs of settlement administration ($72,000) under the terms of the settlement agreement, with interest to be calculated from August 14, 2021, to the present.

3. To pay, within ten business days (October 17, 2022), the $34,142.60 it owes for Plaintiffs' attorneys' fees in connection with their 2021 motion to enforce the settlement agreement, with interest to be calculated from July 30, 2021, to the present.

4. To provide Class Counsel business records and documents sufficient to show that LBN has implemented the discounts, caps, and credits required under the terms of the settlement agreement, namely, the Timely and In Full Payment Discount, the Consecutive Payment Discount, the Total Payment Cap, and the Debt Relief Fund credits.  The Court ordered Class Counsel to identify fifty members of the Current Program Participant Subclass for each category of discounts, caps, and credits who were eligible to receive and should have received such discounts, caps, and credits.  The Court further ordered LBN to provide to Class Counsel, within five business days of Class Counsel's identification of the fifty subclass members for each type of discount, cap, and credit (October 18, 2022), billing records and other documents sufficient to show that it has implemented the discounts, caps, and credits in question, as well as the date of implementation.  The Court further ordered that the billing records and documents be accompanied by a declaration signed under penalty of perjury by LBN's principals that authenticates the records and documents and attests to the truthfulness and accuracy of their contents.

5. To abstain from referring to any third-party collection agency any alleged debt owed by a member of the Current Program Participant Subclass who was eligible to receive the Timely and In Full Payment Discount, Consecutive Payment Discount, Total Payment Cap, or Debt Relief Fund credits under the terms of the settlement agreement until LBN

has demonstrated its compliance with the terms of the settlement agreement requiring it to implement the discounts, caps, and credits in question.

6. To pay, within ten business days (October 17, 2022), $53,021.60 for the attorneys' fees that Plaintiffs incurred in connection with their August 2022 motion for an order holding LBN in civil contempt and imposing civil contempt sanctions on LBN.

7. To pay, to the settlement administrator for the benefit of, and eventual distribution to, members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass, a coercive fine of $1,000 per day of continued noncompliance as to each of the above directives.

On November 4, 2022, the Court issued an order requiring the parties to file a status report addressing the status of LBN's compliance with the Court's October 3, 2022, orders and the anticipated progress of the litigation. Docket No. 228. On November 14, 2022, each side filed a status report.

In their status report, Plaintiffs represented that LBN had not paid the amounts the Court ordered it to pay by October 17, 2022, in its orders of October 3, 2022, nor had it provided Plaintiffs with the business records and documents sufficient to show that it has implemented each of the various discounts, caps, and credits required under the terms of the settlement agreement. Docket No. 229. Plaintiffs represented that LBN provided them with partial records relating to its implementation of the Debt Relief Fund, and that LBN had not provided them with any documents or records showing its implementation of the Total Payment Cap, Timely and In Full Payment Discount, and Consecutive Payment Discount. *Id.* Plaintiffs also stated that they intended to file a supplemental motion for civil contempt sanctions against LBN's principals, and for "an amended judgment that includes Defendant's principals," by November 23, 2022. *Id.*

In its status report, LBN represented that it had sent a payment of $2,000 to the settlement administrator and that it would be making weekly payments of $2,000 "until all payments are completed." Docket No. 230. LBN did not attach to its status report any evidence of this purported $2,000 payment, and it did not specify which of the several payments it owes under the settlement agreement it intends to pay pursuant to its proposed schedule of $2,000 per week. LBN

United States District Court
Northern District of California

also represented that, because of the "revenue losses" it has suffered as a result of the pandemic and certain immigration enforcement activities, the $2,000 weekly amount was the "maximum amount of money" that it could pay pursuant to the settlement agreement while continuing to operate.  *Id.*  Although the Court required LBN in several of its prior orders to provide Plaintiffs with financial statements prepared by an external accountant and certified under penalty of perjury by counsel for LBN to substantiate any of its representations regarding its decreased revenues, *see, e.g.*, Docket No. 224 at 2 n.2, Docket No. 203 at 8, LBN did not attach any such statements to its status report.  LBN represented that it was "in the process of preparing financial documentation that show" its revenues for the preceding five years, but it did not provide a date by which it would file such documentation.  *Id.*  As of the date of this order, LBN has neither produced to Plaintiffs nor filed on the docket any financial documentation prepared by an external accountant and certified under penalty of perjury by counsel for LBN showing its revenues.

LBN also represented in its status report that it made a partial production of the documents and records pertaining to the Debt Relief Fund that the Court ordered it to produce to Class Counsel in its October 3, 2022, orders, and that it would complete its production of documents and records relating to the Debt Relief Fund, as ordered by the Court, in two weeks.  *Id.* at 2.  It also represented that it would "produce the remaining reports," presumably those showing its implementation of the remaining discounts, caps, and credits required under the settlement agreement (i.e., Total Payment Cap, Timely and In Full Payment Discount, and Consecutive Payment Discount), "on a rolling basis" with "complete production by January 30, 2023."  *Id.*  LBN represented that the delay in producing the documents and records the Court ordered it to produce in its October 3, 2022, orders was caused by the fact that its records are not in an "exportable format."  *Id.*  The Court asked during the hearing held on January 19, 2023, whether LBN had produced any additional documents and records since its initial partial production relating to the Debt Relief Fund, and neither LBN, nor Donovan, Ajin, and Moore, responded that LBN had made any subsequent productions.

On November 23, 2022, Plaintiffs moved for an order to hold the principals of LBN in civil contempt, which is the motion now before the Court.  Docket No. 232.  Plaintiffs contend

United States District Court
Northern District of California

1    that LBN has failed to comply in all respects with the Court's October 3, 2022, orders, and they

2    request that the Court hold Donovan, Ajin, and Moore in civil contempt for LBN's noncompliance

3    with such orders, as well as the enforcement orders whose violations by LBN were the basis of the

4    Court's imposition of civil contempt sanctions on LBN.  Plaintiffs argue that Donovan, Ajin, and

5    Moore, as officers and principals of LBN, are legally identified with LBN, had notice of such

6    orders, and were the "architects of LBN's" noncompliance with such orders.  *Id.*  Plaintiffs'

7    counsel, Jason S. Rathod, filed a declaration in support of Plaintiffs' motion, in which he testified

8    that LBN has failed to make any payments required under the Court's October 3, 2022, orders, and

9    that LBN has failed to provide Class Counsel the documents and business records sufficient to

10   show that LBN has implemented each of the discounts, caps, and credits required under the

11   settlement agreement.  Rathod Decl.. ¶¶ 4-5.  Rathod testified that LBN has only provided Class

12   Counsel with documents and records for twenty-five out of fifty class members that Class Counsel

13   identified in connection with the Debt Relief Fund.  *Id.*  Plaintiffs request that the Court issue an

14   order requiring Donovan, Ajin, and Moore to pay the attorneys' fees they incurred in filing the

15   present motion, the 2021 enforcement motion, and the August 2022 contempt motion with respect

16   to LBN; a $1,000 per-day fine for further noncompliance with the requirement that LBN provide

17   to Class Counsel documents sufficient to show its implementation of the discounts, caps, and

18   credits required under the settlement agreement; an order that Donovan, Ajin, and Moore be

19   immediately imprisoned; and "an amended judgment that includes the LBN Principals along with

20   LBN and makes clear that the LBN Principals are also obligated by the original February 8, 2021

21   Class Action Judgment in this Action," such that Donovan, Ajin, and Moore are liable, on a joint

22   and several basis with LBN, for the amounts that LBN owes under the settlement agreement.  *See*

23   Docket No. 232 at 1.

24          December 7, 2022, was the deadline for filing a response to Plaintiffs' motion, and no

25   response was filed.

26          On December 12, 2022, the Court issued an order to show cause why civil contempt

27   sanctions should not be imposed on Donovan, Ajin, and Moore.  Docket No. 236.  The Court

28   ordered Donovan, Ajin, and Moore to file a response to its order to show cause that was supported

1    by admissible evidence no later than December 27, 2022.  *Id.*  Additionally, the Court ordered

2    counsel for LBN to serve a copy of the Court's order to show cause on Donovan, Ajin, and Moore

3    within one business day of the date of the order and to file a declaration attesting to that within

4    two business days thereafter.  *Id.*

5              On December 14, 2022, Mr. Shoreman, counsel for LBN, filed a declaration that provides:

6                   I, John M. Shoreman, counsel to Defendant Libre by Nexus, Inc.
                     ("LBN"), pursuant to the Court's Order to Show Cause of
7                   December 12, 2022 [Dkt. 236] (the "Order"), hereby attest and
                     declare under the penalties of perjury that on December 13, 2022, I
8                   served a copy of the Order on Micheal Donovan, Evan Ajin and
                     Richard Moore via e-mail.  Please be advised that Richard Moore
9                   is no longer an officer or director of LBN and owns no interest in
                     the company.

10

11   Docket No. 237.  Also on December 14, 2022, Kenneth E. Payson, counsel for LBN, filed a

12   declaration in which he testified that he sent a copy of the order to show cause to Donovan, Ajin,

13   and Moore at the email addresses that his law firm has on file and through which he and his law

14   firm have communicated with Donovan, Ajin, and Moore in the past.  Docket No. 238.  Mr.

15   Payson further declared that he copied on that email "LBN's acting outside general counsel,

16   Michael Song of Feldmann Nagel Cantagio & Song PLLC, and LBN's other counsel of record,

17   John Shoreman, Mohammed Aly, Mario Williams, Mary Donne Peters, and Michael Gorby at the

18   current email addresses in the Court's online docket for those counsel of record."  *Id.*  Mr. Payson

19   further declared that he "received an automated response to [his] email indicating Mr. Aly was no

20   longer reachable at his email address listed in the Court's online docket" and "did not otherwise

21   receive any notification of unsuccessful delivery of [his] email referenced above."  *Id.*

22             On January 7, 2023, the Court issued an order requiring Plaintiffs to file a reply in support

23   of their motion for civil contempt sanctions by January 17, 2023.  Docket. No. 239.  The Court

24   tentatively found that Plaintiffs had made the requisite showing for the imposition of civil

25   contempt sanctions with respect to Donovan and Ajin, particularly given that Donovan and Ajin

26   had not filed any response to Plaintiffs' motion or the Court's order to show cause and had not

27   attempted to refute any of Plaintiffs' arguments or evidence.  *Id.*  The Court ordered Plaintiffs to

28   address in their reply the impact of Mr. Shoreman's declaration that Moore is no longer an officer,

director, or owner of LBN, on whether civil contempt sanctions can be imposed on him for the violations of the Court's orders addressed in Plaintiffs' motion.  The Court also ordered Plaintiffs to cite supporting authority for their request for an amended judgment that would make Donovan, Ajin, and Moore liable for LBN's obligations under the settlement agreement.

On January 17, 2023, Plaintiffs filed a reply in support of their present motion.  There, they argue that Mr. Shoreman's statement in his December 14, 2022, declaration that Moore is no longer an officer, director, or owner of LBN is not evidence because it is "conspicuously *not* stated under penalty of perjury."  Docket No. 241 at 2.  Plaintiffs argue that, in contrast, the preceding statement in Mr. Shoreman's declaration *was* under penalty of perjury; it provides that Mr. Shoreman "attest[s] and declare[s] under the penalties of perjury that on December 13, 2022, [he] served a copy of the Order [to show cause] on Micheal Donovan, Evan Ajin and Richard Moore via e-mail."  *See* Docket No. 237.  Plaintiffs further contend that, even if Mr. Shoreman's statement regarding Moore's role at LBN were under penalty of perjury, the Court should give it no weight because Mr. Shoreman did not include any facts in his declaration to demonstrate that he has personal knowledge of Moore's status at LBN, nor did he attach any supporting documentary evidence.  Docket No. 241 at 2-3.  Plaintiffs also argue that, even if it were the case that Moore is no longer a de jure officer of LBN, they have pointed to evidence showing that he was a de facto officer of LBN at all relevant times, as he had control over LBN's ability to comply with the Court's orders.  *Id.* at 3.  Plaintiffs cited authorities, which they claim support their request for an amended judgment that would make Donovan, Ajin, and Moore liable on a joint and several basis with LBN for LBN's obligations under the settlement agreement.

On January 19, 2023, a few hours before the hearing scheduled for the same date at 2:30 p.m., an application to appear pro hac vice was filed by Zachary Lawrence, who purported to represent Donovan, Ajin, and Moore in that application.  Docket No. 242.  Mr. Lawrence identified Joshua Matic as his local co-counsel.  Civil Local Rule 11-3(a)(3) requires that the designated local co-counsel in an application to appear pro hac vice be a member of the bar of the United States District Court for the Northern District of California in good standing.  Because Mr. Matic is not a member of the bar of this Court, the Court denied Mr. Lawrence's application

1    to appear pro hac vice without prejudice to re-filing once Mr. Lawrence can identify local co-

2    counsel who is a member of the bar of this Court in good standing.  Docket No. 244.

3         A few minutes before the January 19, 2023, hearing began, the Court's courtroom deputy

4    received an email from Donovan, in which he copied counsel for Plaintiffs and counsel for LBN,

5    as well as Zachary Lawrence and Joshua Matic.  In his email, Donovan requested a fourteen-day

6    continuance of the proceedings relating to the present motion so that Mr. Lawrence and Mr. Matic

7    could attempt to satisfy the requirements of this district for making an appearance as counsel for

8    Donovan, Ajin, and Moore and could, thereafter, begin to assist Donovan, Ajin, and Moore in

9    bringing LBN into compliance with the Court's orders.  Donovan indicated that he, Ajin, and

10   Moore could not begin the process of bringing LBN into compliance with the Court's orders until

11   they could obtain legal assistance, which Donovan represented they currently do not have.

12        During the hearing held on January 19, 2023, the Court denied Donovan's last-minute

13   request for a continuance of the proceedings on the ground that Donovan, Ajin, and Moore had

14   had notice of the present motion since November 2022 and of the Court's order to show cause

15   since December 13, 2022, and, therefore, they had had several weeks during which they could

16   have filed a response to the present motion or shown good cause for continuing the proceedings.

17   The Court also took into account Mr. Shoreman's representation during the January 19, 2023,

18   hearing that LBN, as well as Donovan, Ajin, and Moore, receive legal advice from corporate

19   attorney Michael Song.  Mr. Shoreman's statements undermine the credibility of Donovan's

20   statements in his email to the courtroom deputy prior to the hearing, and during the January 19,

21   2023, hearing, that LBN's failure to comply with the Court's orders is the result of a lack of legal

22   assistance.

23   II.    **LEGAL STANDARD**

24        Civil contempt "consists of a party's disobedience to a specific and definite court order by

25   failure to take all reasonable steps within the party's power to comply."  *Inst. of Cetacean Rsch. v.*

26   *Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (citation omitted).  In a civil

27   contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence

28   that the contemnors violated a specific and definite order of the court.  The burden then shifts to

United States District Court
Northern District of California

1    the contemnors to demonstrate why they were unable to comply." *Fed. Trade Comm'n v.*

2    *Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and internal quotation

3    marks omitted).

4           "An order to a corporation binds those who are legally responsible for the conduct of its

5    affairs." *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988).  Accordingly, a non-party

6    can be held in civil contempt for a corporate defendant's violations of a court order where (1) the

7    non-party either aids and abets the defendant in violating the court order or is legally identified

8    with the defendant, and (2) the non-party has notice of the court order.  *See Peterson v. Highland*

9    *Music, Inc.*, 140 F.3d 1313, 1323-24 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en*

10   *banc* (June 15, 1998) ("[T]o be held liable in contempt, it is necessary that a non-party respondent

11   must either abet the defendant [in violating the court's order] or be legally identified with him, and

12   that the non-party have notice of the order[.]") (internal citations and quotation marks omitted).

13          Remedies that (1) "coerce compliance with a court order" or (2) are "meant to compensate

14   the complainant for actual losses" fall within the scope of civil contempt sanctions.  *See Ahearn ex*

15   *rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th

16   Cir. 2013) ("[A] sanction generally is civil if it coerces compliance with a court order or is a

17   remedial sanction meant to compensate the complainant for actual losses.") (citation omitted).  In

18   contrast with criminal contempt sanctions, "civil contempt sanctions, or those penalties designed

19   to compel future compliance with a court order, are considered to be coercive and avoidable

20   through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an

21   opportunity to be heard.  Neither a jury trial nor proof beyond a reasonable doubt is required."

22   *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).  "[A]lthough the

23   district court generally must impose the minimum sanction necessary to secure compliance . . . the

24   district court retains discretion to establish appropriate sanctions[.]"  *United States v. Bright*, 596

25   F.3d 683, 696 (9th Cir. 2010) (internal citations omitted).  Where "the affidavits offered in support

26   of a finding of [civil] contempt are uncontroverted," a district court is not required to hold an

27   evidentiary hearing.  *See Peterson*, 140 F.3d at 1324 ("[W]here, as here, the affidavits offered in

28

United States District Court
Northern District of California

1    support of a finding of contempt are uncontroverted, we have held that a district court's decision

2    not to hold a full-blown evidentiary hearing does not violate due process.").

3    **III.    DISCUSSION**

4           As noted, Plaintiffs contend that LBN failed to comply with the Court's orders of October

5    3, 2022, and they move for an order holding Donovan, Ajin, and Moore in civil contempt for

6    LBN's violations of such orders, as well as LBN's violations of prior orders that led to the Court's

7    imposition of civil contempt sanctions on LBN on October 3, 2022 (hereinafter, collectively, the

8    orders at issue).  Plaintiffs contend that Donovan, Ajin, and Moore can be held in civil contempt

9    for LBN's violations of the orders at issue because they are legally identified with LBN and had

10   notice of the orders at issue.  Plaintiffs supported their motion with the declaration of their

11   counsel, Jason S. Rathod, to which various exhibits are attached.[3]  *See* Docket No. 232-1.

12          Donovan, Ajin, and Moore did not file a response to Plaintiffs' motion or to the Court's

13   order to show cause of December 12, 2022.

14          For Donovan, Ajin, and Moore to be held in civil contempt for LBN's violations of the

15   orders at issue, Plaintiffs first must establish that the orders at issue were violated by LBN.

16   Plaintiffs then must show that the elements of the *Peterson* test are satisfied.  *See Peterson*, 140

17   F.3d at 1323-24 (holding that a non-party can be held in civil contempt for a corporate defendant's

18   violations of a court order where (1) the non-party either aids and abets the defendant in violating

19   the court's order or is legally identified with the defendant, and (2) the non-party has notice of the

20   court order).

21

22

23

24   ────────────────

       [3] Those exhibits are: declarations that Donovan and Ajin previously filed in this action, in
25   which Donovan and Ajin identified themselves as officers and principals of LBN; email threads in
       which Class Counsel corresponded with Donovan, Ajin, and Moore in connection with LBN's
26   obligations under the settlement agreement and the Court's orders; and LBN's March 2021
       Annual Report filed with the State of Virginia and signed by Donovan on March 20, 2021, which
27   states that Donovan is LBN's President, Ajin is LBN's Vice President, and Moore is LBN's Vice
       President and Executive Director.  *See* Docket No. 232-1.
28

United States District Court
Northern District of California

1

## A.    Whether LBN violated the orders at issue

2     Plaintiffs argue that LBN violated and continues to be in violation of the Court's orders of

3  October 3, 2022, as well as prior orders that led to the Court's imposition of civil contempt

4  sanctions on LBN on October 3, 2022.

5     Class Counsel Jason S. Rathod testified in his declaration that LBN is in violation of the

6  Court's orders of October 3, 2022, because (1) LBN has not paid the cash amounts it owes under

7  the settlement agreement ($1,590,000 total), even though the Court ordered LBN to pay them by

8  October 17, 2022; (2) LBN has not paid the costs of settlement administration that it still owes

9  under the settlement agreement ($72,000 with interest to be calculated from August 14, 2021, to

10 the present),[4] even though the Court ordered LBN to pay them by October 17, 2022; (3) LBN has

11 not paid the attorneys' fees that Plaintiffs incurred in bringing prior motions (namely, $34,142.60

12 with interest to be calculated from July 30, 2021, to the present for Plaintiffs' 2021 motion to

13 enforce the settlement agreement, and $53,021.60 for Plaintiffs' August 2022 motion to hold LBN

14 in civil contempt and for an order imposing civil contempt sanctions on LBN), which the Court

15 ordered LBN to pay by October 17, 2022; and (4) LBN has not paid the $1,000 per-day coercive

16 fine for each day of noncompliance with each directive set forth in the Court's orders of October

17 3, 2022, which total $174,000 as of November 22, 2022, *see* Rathod Decl. ¶ 2, Docket No. 232-1.

18 Mr. Rathod also testified in his declaration that LBN is in violation of the Court's October 3,

19 2022, orders because LBN failed to provide Class Counsel the documents and business records

20 sufficient to show that LBN has implemented each of the discounts, caps, and credits required

21 under the settlement agreement, which LBN was required to do by October 18, 2022.  Mr. Rathod

22 declares that LBN has provided Class Counsel with documents and records for only twenty-five

23 out of fifty class members that Class Counsel identified in connection with the Debt Relief Fund,

24

25 _____

26     [4] As noted above, LBN represented in its November 14, 2022, status report that it paid
$2,000 toward the costs of settlement administration that it owes, but it filed no evidence to
27 support that representation.  In light of LBN's failure to proffer any evidence to demonstrate that
it, in fact, made a $2,000 payment to the settlement administrator, the Court finds that LBN has
28 not made any payments toward the $72,000 in costs of settlement administration it owes.

United States District Court
Northern District of California

1    and that LBN has not produced any documents for any of the other discounts, caps, and credits

2    that it is supposed to implement.  *Id.* ¶¶ 4-5.

3           Because Donovan, Ajin, and Moore have not filed any evidence to contradict the

4    declaration of Jason S. Rathod with respect to the alleged violations of the orders of October 3,

5    2022, despite the Court's order to show cause ordering them to do so, the Court may treat as true

6    the facts set forth in that declaration.  *See Peterson*, 140 F.3d at 1324 ("A trial court may in a

7    contempt proceeding narrow the issues by requiring that affidavits on file be controverted by

8    counter-affidavits and may thereafter treat as true the facts set forth in uncontroverted affidavits.").

9    The uncontroverted facts in the Rathod declaration establish LBN's noncompliance with the

10   Court's October 3, 2022, orders; accordingly, the burden shifts to LBN to show that it took all

11   reasonable steps to comply with such orders.  *Inst. of Cetacean Rsch.*, 774 F.3d at 945.  Neither

12   LBN nor Donovan, Ajin, and Moore have filed any evidence showing that LBN took all

13   reasonable steps to comply with the Court's October 3, 2022, orders.[5]  Accordingly, the Court

14   finds that LBN violated and continues to be in violation of the Court's October 3, 2022, orders.

15          Plaintiffs also argue that this Court found in its orders of October 3, 2022, that LBN

16   violated other orders issued prior to October 3, 2021, on multiple occasions; such violations were

17   the basis for this Court's imposition of civil contempt sanctions on LBN on October 3, 2022.  The

18   Court agrees with Plaintiffs and incorporates here by reference its findings in its October 3, 2022,

19   orders that LBN violated the Final Approval Order and Judgment and the enforcement orders of

20   July and November 2021, and January 2022, on multiple occasions, and that LBN failed to show

21   that it took all reasonable steps to comply with its obligations under such orders.  *See generally*

22   Docket Nos. 224, 225.

23

24   _____

25        [5] As noted above, LBN's status report of November 14, 2022, states that LBN's
     purportedly reduced revenues prevent it from complying with the Court's orders of October 3,
26   2022, but LBN did not attach any financial statements or other evidence on which the Court could
     find that the state of its revenues make it impossible for it to comply with the Court's orders.  The
27   Court has ordered LBN on multiple occasions to produce to Class Counsel financial statements
     generated by an external accountant and signed by LBN counsel under penalty of perjury showing
28   its revenues, *see, e.g.*, Docket No. 224 at 2 n.2, Docket No. 203 at 8, but it has not done so.

United States District Court
Northern District of California

1    In sum, the Court finds that Plaintiffs have shown that LBN violated and continues to be in

2    violation of the Court's orders of October 3, 2022, as well as prior orders that led to the Court's

3    imposition of civil contempt sanctions on LBN on October 3, 2022.

4    **B.    Whether Donovan, Ajin, and Moore can be held in civil contempt for LBN's violations of the orders at issue**

5

6    As noted, under *Peterson*, a non-party can be held in civil contempt for a corporate

7    defendant's violations of a court order where (1) the non-party either aids and abets the defendant

8    in violating the court order or is legally identified with the defendant, and (2) the non-party has

9    notice of the court order.  *See* 140 F.3d at 1323-24.

10    Plaintiffs contend that the first prong of the *Peterson* test is met because Donovan, Ajin,

11    and Moore are "legally identified" with LBN.  A non-party is legally identified with a defendant

12    corporate entity and is, therefore, bound by orders issued to the defendant corporate entity where

13    there is evidence that the non-party was "responsible for the conduct of [the defendant corporate

14    entity's] affairs," such as where there is evidence that the non-party was a de facto or de jure

15    officer of the defendant corporate entity.  *See Laurins*, 857 F.2d at 535 ("De facto as well as de

16    jure officers are responsible for enabling a corporation to comply with orders directed to it.");

17    *N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 & n.11 (9th Cir.

18    1977) (holding that non-parties were "legally identified" with a defendant corporate entity (a

19    union) and were bound by orders issued to that defendant corporate entity because they served as

20    the entity's "principal officers," as they were "Executive Secretary" and "Business Agent/District

21    Manager," respectively).

22    Here, Plaintiffs have pointed to evidence showing that Donovan and Ajin are officers and

23    principals of LBN and have had, at all relevant times, control over LBN's compliance with the

24    orders at issue.  Donovan and Ajin filed declarations in this action in which they testified that they

25    are, respectively, LBN's Chief Executive Officer and controlling principal and LBN's Corporate

26    Secretary and principal, and in which they made representations indicating that they have control

27    over LBN's compliance with the Court's orders and settlement agreement.  *See, e.g.*, Docket No.

28    210 (declaration by Micheal Donovan executed on November 18, 2021, in which he testified that

United States District Court
Northern District of California

1    he is "the Chief Executive Officer and controlling principal of defendant Libre by Nexus, Inc."

2    and made representations as to the actions that LBN would take to comply with the settlement

3    agreement and the Court's orders); Docket No. 213 (declaration by Evan Ajin executed on

4    November 29, 2021, in which he represented that he is the "Corporate Secretary and a principal of

5    defendant Libre by Nexus, Inc." and made representations as to the actions that LBN would take

6    to comply with the settlement agreement and Court's orders, which he is "personally involved in

7    supervising").  Plaintiffs also point to the transcript of the hearing held on September 15, 2022,

8    before the undersigned.  During that hearing, Mr. Shoreman identified Donovan, Ajin, and Moore

9    as LBN's "individual principals," and none of them disputed Mr. Shoreman's characterization.

10   *See* Tr. of Hr'g at 3, Docket No. 227.  Plaintiffs also point to the fact that Donovan executed the

11   settlement agreement on behalf of LBN, Docket No. 143-1 at ECF header page 38, and to email

12   correspondence between Class Counsel and Ajin in which Ajin made representations to Class

13   Counsel on behalf of LBN indicating that he had control over LBN's compliance with the

14   settlement agreement and the Court's orders.  *See* Rathod Decl. ¶¶ 4, 14 & Ex. 1, 7.  Based on the

15   foregoing, which Donovan and Ajin have not disputed, the Court finds that Donovan and Ajin are

16   "legally identified" with LBN and were bound by each of the orders at issue.  This satisfies the

17   first prong of the *Peterson* test with respect to Donovan and Ajin.  *See Sequoia*, 568 F.2d at 633 &

18   n.11; *Laurins*, 857 F.2d at 535.

19          With respect to Moore, Plaintiffs point to a March 2021 annual report filed by LBN with

20   the State of Virginia, which states that Moore was LBN's Vice President and Executive Director at

21   the time of that report's filing.  *See* Rathod Decl. ¶ 12 & Ex. 5.  Plaintiffs also point to email

22   correspondence in which Ajin and Moore made representations to Class Counsel in 2021

23   indicating that Moore had control over LBN's ability to comply with the settlement agreement and

24   the Court's orders.  *See, e.g.*, Rathod Decl. ¶ 14 & Ex. 7 (email chain from September and October

25   2021 in which Moore stated to Class Counsel that he was taking actions to facilitate LBN's

26   compliance with the settlement agreement and the Court's orders, and in which Moore was

27   identified by Ajin as a person with authority to resolve disputes on behalf of LBN as to LBN's

28   obligations under the settlement agreement and the Court's orders).  Plaintiffs also point to the

United States District Court
Northern District of California

19

transcript of the hearing held on September 15, 2022, before the undersigned, during which Mr. Shoreman identified Moore as one of LBN's "individual principals." *See* Tr. of Hr'g at 3, Docket No. 227. Moore did not dispute that characterization during the hearing; to the contrary, Moore made a statement that implied that he had responsibility for the conduct of LBN's affairs in the context of LBN's compliance with the Court's orders, namely "I look forward to working with Plaintiffs' counsel to resolve these issues." *See id.* at 27. During the hearing held on January 19, 2023, Moore stated that he negotiated with Plaintiffs, on behalf of LBN, with respect to disputes as to LBN's compliance with the Court's orders, and he did not dispute that he continues to have responsibility for the conduct of LBN's affairs in the context of LBN's compliance with the Court's orders. Based on the foregoing, the Court finds that Moore is "legally identified" with LBN and was bound by each of the orders at issue. This satisfies the first prong of the *Peterson* test with respect to Moore. *See Sequoia*, 568 F.2d at 633 & n.11; *Laurins*, 857 F.2d at 535.

Mr. Shoreman's unsupported statement in a declaration he filed on December 14, 2022, that Moore is "no longer an officer or director of LBN and owns no interest in the company," *see* Docket No. 237, does not alter this conclusion. The Court gives no weight to Mr. Shoreman's statement regarding Moore because it is not clearly under penalty of perjury, and because Mr. Shoreman did not provide a factual basis in his declaration showing that he has personal knowledge of Moore's status at LBN. Additionally, Mr. Shoreman's statement contradicts LBN's March 2021 filing with the State of Virginia. Mr. Shoreman did not attach to his declaration any documents filed by LBN with the State of Virginia showing that Moore is no longer an officer, director, or owner of LBN.

The second prong of the *Peterson* test requires that the non-party had notice of the orders that the defendant corporate entity violated. *Peterson*, 140 F.3d at 1323-24. Where, as here, the non-parties who are the subject of a motion for civil contempt sanctions are legally identified with a defendant corporate entity, the non-parties are deemed to have had notice of the orders that the defendant violated as of the date the orders were served on the defendant's attorney. *See Sequoia*, 568 F.2d at 633 (holding that, "[w]hen the order was served on [a union's] attorney, the [union] was clearly bound to abide by it," as were the union's "principal officers" who were legally

20

identified with it, because "[a] command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs").  Evidence of actual notice is not required unless the non-parties subject to a motion for civil contempt sanctions are not "legally identified" with the defendant corporate entity that violated the order in question.[6]  *See id.* ("Those not identified with a party, but in active concert or participation with him, are bound only with actual notice.").  Here, each of the orders at issue was served electronically on LBN's attorneys via ECF at the same time that the orders were posted on the docket.  *See* Civil L.R. 5-1(g) (providing that, upon the posting of an order in ECF, the ECF system will send to the registered attorneys for all parties in the case a Notice of Electronic Filing, which constitutes service on the receiving party). Accordingly, Donovan, Ajin, and Moore, as persons legally identified with LBN at all relevant times, had notice of the orders of October 3, 2022, and the enforcement orders, as of the date they were posted on the docket.  *See Sequoia*, 568 F.2d at 633.  That is sufficient to satisfy the second prong of the *Peterson* test with respect to Donovan, Ajin, and Moore.

In light of the foregoing, the Court finds and concludes that Donovan, Ajin, and Moore can be held in civil contempt under *Peterson* for LBN's violations of the orders of October 3, 2022, and the enforcement orders of July and November 2021 and January 2022.

---

[6] Although evidence of actual notice is not required in light of the Court's finding that Donovan, Ajin, and Moore were legally identified with LBN at all relevant times, the record contains evidence indicating that Donovan, Ajin, and Moore had actual notice of the orders at issue.  For example, Plaintiffs filed email correspondence that was sent to and received by Donovan, Ajin, and Moore, on the one hand, and Class Counsel, on the other hand, in which LBN's obligations under the enforcement orders and settlement agreement were discussed.  *See, e.g.*, Rathod Decl. ¶¶ 4, 14 & Ex. 1, 7.  Further, as discussed above, Donovan and Ajin filed declarations discussing LBN's obligations under the enforcement orders and settlement agreement.  *See, e.g.*, Docket Nos. 210, 213.  Additionally, Donovan, Ajin, and Moore attended the September 15, 2022, hearing, during which LBN's obligations under, and violations of, the enforcement orders were discussed at length, as were the coercive and remedial civil contempt sanctions that the Court was considering imposing on LBN, which were later described in more detail in its orders of October 3, 2022.  *See generally* Docket No. 227.  Further, counsel for LBN declared that they emailed to Donovan, Ajin, and Moore a copy of the Court's order to show cause of December 12, 2022, which referred to the orders at issue.  The foregoing is sufficient to find that Donovan, Ajin, and Moore had actual notice of the orders at issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.      **Appropriateness of civil contempt sanctions requested by Plaintiffs**

The Court next examines whether the sanctions that Plaintiffs request fall within the scope of civil contempt sanctions.  As noted, remedies that (1) "coerce compliance with a court order" or (2) are "meant to compensate the complainant for actual losses" fall within the scope of civil contempt sanctions.  *See Ahearn*, 721 F.3d at 1129.

Plaintiffs request that the Court impose civil contempt sanctions on Donovan, Ajin, and Moore in the form of an order requiring them to pay immediately, on a joint and several basis:

1.  the attorneys' fees that Plaintiffs incurred for the present motion for civil contempt sanctions against Donovan, Ajin, and Moore, which total $74,952.00, with a $1,000 per-day fine for each day of noncompliance;

2.  the attorneys' fees that Plaintiffs incurred for the enforcement motion they brought in 2021, namely $34,142.60, with interest from July 30, 2021, to the present, and a $1,000 per-day fine for each day of noncompliance after October 17, 2022;

3.  Plaintiffs' attorneys' fees for the motion for civil contempt sanctions they brought in August 2022, namely $53,021.60, with interest from October 17, 2022, to the present, and a $1,000 per-day fine for each day of noncompliance after October 17, 2022;

4.  a $1,000 per-day fine for each day of noncompliance after October 18, 2022, for a failure to provide to Class Counsel documents sufficient to show LBN's implementation of the discounts, caps, and credits required under the settlement agreement;

5.  an order that Donovan, Ajin, and Moore be immediately imprisoned until they and LBN have purged their contempt of court;

6.  "$1,590,000 for the parties' class action settlement," with a $1,000 per-day fine for each day of noncompliance after October 17, 2022; and

7.  $72,000, which are the costs of settlement administration that LBN still owes under the terms of the settlement agreement, with a $1,000 per-day fine for each day of noncompliance after October 17, 2022.

1    *See* Proposed Order, Docket No. 232-3.  Plaintiffs' request in connection with items 6 and 7,

2    above, is in the form of "an amended judgment that includes the LBN Principals along with LBN

3    and makes clear that the LBN Principals are also obligated by the original February 8, 2021 Class

4    Action Judgment in this Action[.]"  *See* Docket No. 232 at 1.

5            First, the Court finds that the attorneys' fees that Plaintiffs request for the work that Class

6    Counsel performed in connection with the present motion (item 1, above) are an appropriate

7    remedial civil contempt sanction with respect to Donovan, Ajin, and Moore.  *See Perry v.*

8    *O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) (holding that a district court has discretion "to

9    analyze each contempt case individually and decide whether an award of fees and expenses is

10   appropriate as a remedial measure" and that a finding of "willful" disobedience with a court order

11   is not required for a district court to award fees and costs as a remedial measure in civil contempt

12   proceedings).  Plaintiffs have demonstrated that Donovan, Ajin, and Moore, as officers and

13   principals of LBN at all relevant times, were bound by, and had control over LBN's ability to

14   comply with, the Court's orders of October 3, 2022, the violations of which necessitated the filing

15   of the present motion.  The Court finds that the lodestar that Plaintiffs have requested, namely

16   $74,952[7], is fair and reasonable in light of the results that Class Counsel obtained in the context of

17   the present motion, the quality of the representation, the contingent nature of their compensation,

18   and the fact that Class Counsel's payment will be delayed until members of the settlement classes

19   receive their compensation under the terms of the settlement agreement.  Donovan, Ajin, and

20

21            [7] Annick Persinger, who is counsel for Plaintiffs, declares that the $74,952 that Plaintiffs
22   request in attorneys' fees for the present motion is the product of 101.4 hours that Class Counsel
     spent collectively on the present motion, billed at a rate of $829 per hour based on the Laffey
23   Matrix for the work of Annick Persinger (37.2 hours, for a lodestar of $30,838.80), Jason Rathod
     (7.3 hours, for a lodestar of $6,051.70), and Jesse Newark (27.4 hours, for a lodestar of
24   $22,714.60), and at the rate of $508 per hour based on the Laffey Matrix for the work of Cameron
     Partovi (29.5 hours, for a lodestar of $14,986).  Persinger Decl. ¶¶ 2-4, Docket No. 232-2.  The
25   Laffey Matrix is "a widely recognized compilation of attorney and paralegal rates based on
     various levels of experience" upon which courts, including those in this district, routinely rely to
26   determine the reasonableness of attorney hourly rates.  *See Theme Promotions, Inc. v. News Am.*
     *Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010).  The Court finds that the requested
27   hourly rates of $829 and $508 are reasonable in light of the Laffey Matrix and Class Counsel's
     experience and the fact that LBN, Donovan, Ajin, and Moore did not object to the requested
28   hourly rates.

United States District Court
Northern District of California

1    Moore did not challenge the reasonableness of Class Counsel's requested hours or hourly rates

2    and they, therefore, waived any objections to the same. *See id.* at 706 (finding that party held in

3    civil contempt waived objections to reasonableness of requested attorneys' fees and costs because

4    it "failed to challenge the reasonableness of the amount of the fee award requested before the

5    district court"). The Court will order that Donovan, Ajin, and Moore pay these fees, on a joint and

6    several basis, within ten business days of the date of this order.

7         Second, the Court finds that the attorneys' fees that Plaintiffs incurred for the work that

8    Class Counsel performed in connection with the enforcement motion they brought in 2021

9    ($34,142.60 with interest from July 30, 2021, to the present) (item 2, above), and their August

10   2022 motion for an order holding LBN in civil contempt ($53,021.60, with interest from October

11   17, 2022, to the present) (item 3, above), which LBN has not paid despite the Court's October 3,

12   2022, orders, are an appropriate remedial civil contempt sanction against Donovan, Ajin, and

13   Moore, as Plaintiffs have demonstrated that Donovan, Ajin, and Moore, as officers and principals

14   of LBN at all relevant times, were bound by, and had control over LBN's ability to comply with,

15   the enforcement orders of July and November 2021 and January 2022, the violations of which

16   necessitated the filing of those motions. *See generally* Docket No. 224 (finding LBN in violation

17   of orders issued in July 2021, November 2021, and January 2022). The Court will order that

18   Donovan, Ajin, and Moore pay these fees, with interest based on the dates indicated above, on a

19   joint and several basis with LBN, within ten business days of the date of this order.

20        Third, the Court finds that a $1,000 per-day fine for each day that Donovan, Ajin, and

21   Moore fail to pay the attorneys' fees discussed above, starting from ten business days from the

22   date of this order, would be an appropriate coercive sanction. Donovan, Ajin, and Moore's failure

23   to respond to Plaintiffs' present motion or to the Court's order to show cause does not prevent the

24   Court from imposing coercive monetary sanctions. *See Richmark Corp. v. Timber Falling*

25   *Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) (holding that, while "the district court should

26   ordinarily take [the contemnor's] financial position into account" before imposing coercive

27   monetary sanctions, the district court is not precluded from imposing coercive monetary sanctions

28   "[w]here the contemnor is the only one who possesses the relevant financial information, and

United States District Court
Northern District of California

24

chooses not to disclose it"; in that case, the contemnor's "failure to present any evidence on the record may not be charged either against the [opposing party] or result in a holding that the district court abused its discretion in imposing the sanction") (citation and internal quotation marks omitted). These coercive fines, which the Court finds will incentivize Donovan, Ajin, and Moore to comply with the Court's orders, shall be paid to the settlement administrator for the benefit of, and eventual distribution to[8], members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.

Fourth, the Court finds that a $1,000 per-day fine for each day after this order is filed that LBN fails to provide, pursuant to the Court's orders of October 3, 2022, documents and records to Class Counsel sufficient to show LBN's implementation of the discounts, caps, and credits required under the settlement agreement (item 4, above), also would be an appropriate coercive civil contempt sanction with respect to Donovan, Ajin, and Moore. The Court has found that these individuals continue to be officers and principals of LBN and continue to have control over LBN's compliance with the Court's orders of October 3, 2022, including the requirement in those orders that LBN produce documents sufficient to show its implementation of the discounts, caps, and credits in question. These fines, which the Court finds will incentivize Donovan, Ajin, and Moore to bring LBN into compliance with the Court's orders, shall be paid to the settlement administrator for the benefit of, and eventual distribution to, members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclass.

Fifth, the Court declines, at this juncture, to issue an order that Donovan, Ajin, and Moore be immediately imprisoned, as Plaintiffs request (item 5, above).

Finally, as noted, Plaintiffs request the entry of an amended judgment that makes Donovan, Ajin, and Moore liable, on a joint and several basis with LBN, for the cash amounts that LBN owes under the settlement agreement ($1,590,000), and the $72,000 for costs of settlement

---

[8] The distribution of any fines collected by the settlement administrator for the benefit of members of the Former and Current Program Participant Payments Subclass and Sponsor Payments Subclasses pursuant to this order shall be effectuated pursuant to the distribution plan set forth in the settlement agreement for the Cash Settlement Fund.

United States District Court
Northern District of California

1    administration that LBN still owes under the settlement agreement (items 6 and 7, above).  The

2    authorities that Plaintiffs cite in their opening brief do not support granting that request.  Those

3    authorities provide that a new, *separate* judgment can be entered to facilitate the collection of civil

4    contempt sanctions imposed against a non-party.  *See Martin v. City of Barstow*, No.

5    EDCV1302193ABSPX, 2015 WL 12743594, at *2 (C.D. Cal. Dec. 21, 2015) (ordering the entry

6    of a "separate judgment" against a non-party, namely counsel for plaintiffs, to facilitate the

7    collection of civil contempt sanctions imposed against that non-party); *Leads Club, Inc. v.*

8    *Peterson*, No. CIV. 05CV1717-J JMA, 2008 WL 186504, at *1 (S.D. Cal. Jan. 22, 2008) (ordering

9    the entry of a "new, separate judgment" against a non-party, namely counsel for plaintiff, to

10   facilitate the enforcement of a civil contempt order against that non-party and collection of civil

11   contempt sanctions imposed against that non-party).

12          The authorities that Plaintiffs cite in their reply do not address the issue of amended

13   judgments.  Those authorities provide that a court has discretion to determine the amount and

14   duration of civil contempt sanctions.  *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1111-1112

15   (9th Cir. 2005) (holding that compensatory sanctions fall within the scope of civil contempt

16   sanctions and that a district court has discretion to fashion them); *Whittaker Corp. v. Execuair*

17   *Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (same with respect with coercive civil contempt

18   sanctions).

19          Plaintiffs cite a Sixth Circuit opinion in their reply, namely *Elec. Workers Pension Trust*

20   *Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 n.13 (6th Cir. 2003)

21   (*Gary's Electric*), for the proposition that "courts have authorized the specific sanctions requested

22   by Plaintiffs in similar circumstances."  *See* Reply at 5.  There, the Sixth Circuit reversed a district

23   court's denial of a request to hold the president and sole owner of a corporate defendant (Gary's

24   Electric) in civil contempt for the corporate defendant's failure to make payments to a union

25   pursuant to a court order enforcing a collective bargaining agreement (CBA).  340 F.3d at 376.

26   The parties' dispute began in arbitration, during which the arbitrator found that Gary's Electric

27   had failed to comply with its obligations under the CBA to pay for certain employees' benefits,

28   and ordered Gary's Electric to pay for past-due benefits and future benefits due under the CBA.

*Id.* at 376-77.  When Gary's Electric failed to comply with the arbitrator's order, the union filed an action in federal court requesting that the district court enter a judgment enforcing the arbitrator's order.  *Id.*  The district court granted summary judgment in favor of the union, enforcing the arbitrator's order against Gary's Electric and requiring the company to make payments pursuant to the CBA.  *Id.*  While an appeal of the summary judgment order was pending, the union initiated civil contempt proceedings against Gary's Electric, as well as the company's the sole owner and president (Russell Pipia), for failing to make payments under the CBA as had been ordered by the district court.  *Id.* at 377.  The union presented evidence that Pipia had wasted corporate assets to avoid making the court-required payments.  *Id.*  The district court granted the contempt motion with respect to Gary's Electric but denied it with respect to Pipia on the basis that Pipia was not a defendant in the action.  *Id.*

The Sixth Circuit reversed, holding that the district court had the authority to hold Pipia in civil contempt even if he was not a defendant in the action, because "Pipia, as an officer of the corporation and the one responsible for the corporation's affairs, was subject to the court's order just as the corporation itself was."  *Id.* at 382.  Further, the Sixth Circuit adopted for the first time a standard for defending against allegations of civil contempt that had previously been adopted by the Eighth Circuit in *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500 (8th Cir. 2000), which requires an alleged contemnor whose defense is a "present inability to comply" to show that "he is not responsible for the present inability to pay."  *Id.* at 383.  The Sixth Circuit remanded the action for further proceedings in connection with the union's contempt motion against Pipia, reasoning that the union was "entitled to further development of the record regarding a possible contempt finding against [Pipia] personally."  *Id.* at 384.  The Sixth Circuit held that, on remand, Pipia would need to show why Gary's Electric could not pay the amounts it owed under the CBA and would also "need to show that he was not the cause of Gary's Electric's inability to pay."  *Id.*

Plaintiffs specifically point to footnote 13 in *Gary's Electric*.  In that footnote, the Sixth Circuit clarified its interpretation of *Chicago Truck Drivers* in the context of its discussion of the civil contempt sanctions that the district court could impose against Pipia on remand; that footnote provides:

> To the extent that *Chicago Truck Drivers* suggests that the defendant officer could not be held liable for an amount equivalent to the underlying delinquent payments because he was never sued in his individual capacity, we disagree. Because one of the purposes of civil contempt is to compensate a complainant for its losses, we note that Pipia can be fined in an amount equivalent to the original judgment. The district court should consider to what extent Pipia deliberately caused the underlying judgment to remain unpaid and should sanction accordingly.

*Id.* at 383 n.13.

Nothing in *Gary's Electric* suggests that a court may amend a judgment to make an officer or owner of a defendant corporation liable for the amounts the defendant corporation owes in that action. At best, footnote 13 suggests, in dicta, that the district court could, on remand, impose a civil contempt sanction on the president and sole owner of Gary's Electric that is "equivalent" to the amount that Gary's Electric owed under the judgment entered by the district court against the company and which the company had failed to pay. This dicta does not support Plaintiffs' request for an amended judgment.

To the extent that Plaintiffs have converted their request for an amended judgment to a request for an order imposing civil contempt sanctions on Donovan, Ajin, and Moore in an amount "equivalent" to the amounts that LBN owes under the settlement agreement, the Court denies that request without prejudice. If the other civil contempt sanctions that the Court imposes pursuant to this order on Donovan, Ajin, and Moore, as discussed above, do not result in LBN's payment of the amounts it owes under the settlement agreement, or in its production of documents and records showing that it has implemented the discounts, caps, and credits required under the settlement agreement, then the Court will entertain a motion for further sanctions against LBN's principals in the amounts that LBN owes under the settlement agreement. In any such motion, Plaintiffs may submit evidence indicating that LBN's failure to pay the amounts it owes under the settlement agreement was "deliberately caused" by LBN's principals. *See Gary's Electric*, 340 F.3d at 383 n.13.

The Court, therefore, declines to amend the judgment as Plaintiffs request, or to impose at this juncture a civil contempt sanction on Donovan, Ajin, and Moore in an amount that is equivalent to the amounts that LBN owes under the settlement agreement.

The Court will, however, enter new, separate judgments to facilitate the collection of the civil contempt sanctions that the Court imposed on October 3, 2022, on LBN, and the civil contempt sanctions that the Court now imposes on Donovan, Ajin, and Moore.  *See Martin*, 2015 WL 12743594, at *2; *Leads Club*, 2008 WL 186504, at *1.

Within seven days of the date of this order, Plaintiffs shall file a proposed judgment in favor of Plaintiffs and against LBN for the civil contempt sanctions that the Court imposed on LBN on October 3, 2022, and a proposed judgment in favor of Plaintiffs and against Donovan, Ajin, and Moore for the civil contempt sanctions that the Court now imposes on them.  The proposed judgments shall be worded in a manner that will permit Plaintiffs to collect the civil contempt sanctions and execute the judgments.  In the proposed judgments, Plaintiffs shall, for the interest that the Court has awarded them as a civil contempt sanction against LBN, Donovan, Ajin, and Moore, calculate the interest owed by LBN, Donovan, Ajin, and Moore, respectively, to a date certain[9] and state in the proposed judgments that the interest amounts are as of that date. Similarly, for the $1,000 per-day coercive fines that have accrued to date, Plaintiffs shall calculate the fines owed by LBN, Donovan, Ajin, and Moore, respectively, to a date certain and state in the proposed judgments that the fine amounts are as of that date.

## IV.    CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for an order holding Donovan, Ajin, and Moore in civil contempt and imposing civil contempt sanctions against them.  The Court finds that Donovan, Ajin, and Moore are in contempt of Court for the

---

[9] Interest, for the purpose of complying with this order, shall be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Interest shall be computed daily and shall be compounded annually.  28 U.S.C. § 1961(b).

United States District Court
Northern District of California

1   reasons set forth in this order.  The Court will issue a separate order delineating the civil contempt

2   sanctions that the Court imposes on Donovan, Ajin, and Moore.

3          IT IS SO ORDERED.

4

5   Dated: January 23, 2023

                                            _____
6                                           CLAUDIA WILKEN
                                            United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28